IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CATHOLIC DIOCESE OF WILMINGTON, | ) | Case No. 09-13560 (CSS) |
| INC., a Delaware Corporation,[1] | ) | |
| | ) | |
| Debtor. | ) | **Objection Deadline: November 25, 2009 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date: December 2, 2009 at 9:00 a.m. (ET)** |
| | ) | |

## DEBTOR'S MOTION FOR ORDER UNDER SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE EXTENDING THE AUTOMATIC STAY TO THE PARISHES TO PREVENT THE CONTINUATION OF CERTAIN PERSONAL INJURY ACTIONS

The above-captioned debtor and debtor in possession ("CDOW" or the "Debtor"), with the consent of the Official Committee of Unsecured Creditors (the "Committee") and State Court Counsel,[2] hereby moves (the "Motion") the Court for entry of an order, pursuant to sections 105(a) and 362(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), to extend the automatic stay to certain parishes (each a "Parish" and collectively, the "Parishes") to prevent the continued prosecution of all pending actions arising under the Delaware Child Victim's Act of 2007, 10 *Del. C.* § 8145 (the "CVA") in which CDOW and a Parish are co-defendants (collectively, the "Parish Co-Defendant Cases").[3] In support of the Motion, CDOW respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 5439. The Debtor's mailing address is 1925 Delaware Avenue, P.O. Box 2030, Wilmington, Delaware 19899-2030.

[2] The respective State Court Counsel currently represents the plaintiff in all Parish Co-Defendant Cases and consists of the following: Manly & Stewart, Dalton & Associates, P.A., Conaty, Curran & Sisk, Jeff Anderson & Associates, P.A., The Neuberger Firm, P.A., and Jacobs & Crumplar, P.A.

[3] The names and case numbers of the Parish Co-Defendant Cases to be stayed or otherwise enjoined pursuant to the Motion are identified on Exhibit 1 to the proposed form of order attached hereto as Exhibit A.

## PRELIMINARY STATEMENT

1.  CDOW filed its bankruptcy petition seeking chapter 11 relief in order to enable a fair and equitable distribution of its assets to all of its creditors, while at the same time continuing the work of the Church within the Diocese of Wilmington to the fullest extent possible using the resources dedicated to those purposes. A hallmark of bankruptcy proceedings is that the debtor be given some breathing room, through the automatic stay, to marshal its assets, to assess its liabilities, and to plan for its successful reorganization. With that purpose in mind, CDOW seeks entry of an order extending the automatic stay to the Parishes to stay the Parish Co-Defendant Cases in their entirety until sixty (60) days after the deadline for creditors to file prepetition claims in this chapter 11 case (the "Stay Period"), without prejudice to the Debtor's right to seek a further extension of the stay.

2.  CDOW seeks the relief requested to ensure that CDOW will have the breathing room necessary to avoid the diversion of its resources, the distraction of its key personnel who are essential to the success of the restructuring , the prejudice through collateral estoppel and claims for indemnification and contribution, and the dissipation of assets which would occur if these 70 or more lawsuits are permitted to go forward at this time. It is the Debtor's goal to treat all creditors equitably and to develop a process for a fair distribution of its assets. It would be to the detriment of all other creditors, including the other child sex abuse claimants, to permit the Parish Co-Defendant Cases to continue against the non-debtor defendants at this time.

3.  If the automatic stay is not extended to the Parishes to stay the continued prosecution of the Parish Co-Defendant Cases as against the Parishes and other non-debtor parties (collectively with the Parishes, the "Non-Debtor Parties") for the duration of the Stay

2

DB02:8915059.3    068902.1001

Period, CDOW and its estate will be irreparably harmed and the purposes and policies of the Bankruptcy Code will be frustrated because, among other reasons: (i) the continued prosecution of the Parish Co-Defendant Cases would violate section 362(a) of the Bankruptcy Code by depleting the estate's assets, thus causing irreparable adverse impact on the estate to the detriment of other creditors; (ii) CDOW could be subject to substantial and prejudicial collateral estoppel risks, which will effectively compel CDOW to monitor and participate in the Parish Co-Defendant Cases, including engaging in extensive discovery and trial preparation, resulting in substantial costs to CDOW's estate and irreparable harm to its ability to reorganize by distracting key personnel who are needed to participate in CDOW's reorganization process; (iii) judgments against the Parishes in the Parish Co-Defendant Cases could increase the likelihood of a judgment against CDOW – not only because of the collateral estoppel issues, but also because the Parishes have asserted cross-claims for contribution against CDOW in each Diocese Case and CDOW would potentially have to indemnify the Parishes and other Non-Debtor Parties pursuant to agency principles; and (iv) the claims in more than twenty of the Parish Co-Defendant Cases are covered by insurance policies which cover not only CDOW, but also the Parishes in those Cases, and so any proceeds paid to cover these Parishes for losses incurred in connection with the Parish Co-Defendant Cases will directly reduce the amount of proceeds available to CDOW, thus consuming an asset of the estate to the detriment of other creditors. Thus, absent an extension of the stay to the Parishes, the Debtor, its estate and creditors will suffer real and substantial harm.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction over this matter. Venue of this proceeding in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## GENERAL BACKGROUND

5. On October 18, 2009 (the "Petition Date"), CDOW filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. CDOW is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. The Committee was appointed on November 4, 2009. No trustee or examiner has been appointed or requested.

7. Information regarding CDOW's history and business operations, its capital structure, and the events leading up to the commencement of this chapter 11 case can be found in the *Declaration of the Reverend Monsignor J. Thomas Cini in Support of Chapter 11 Petition and First-Day Relief* [Docket No. 9] (the "Cini Declaration"), which is incorporated herein by reference.

## RELEVANT BACKGROUND

A. **The Parish Co-Defendant Cases**

8. The Parish Co-Defendant Cases arise from the July 10, 2007 enactment of the CVA and applicable Delaware common law. The CVA repealed the statute of limitations in civil suits relating to child sexual abuse cases and provided a two-year window (ending July 9, 2009) in which alleged victims could bring a civil action in cases previously barred by the applicable statute of limitations.

DB02:8915059.3                                                                                         068902.1001

9.  Within the two-year statutory window, CDOW was named as a defendant in 136 sexual abuse actions under the CVA involving 147 plaintiffs (collectively, the "Pending Abuse Cases"). These actions assert various theories of primary and vicarious tort liability against CDOW (and in some instances, its personnel, including the Bishop and Monsignor Cini) on account of alleged sexual abuse occurring as long ago as 1954. Five of these cases have been settled or dismissed. Of the 131 remaining cases against CDOW, 82 involve alleged abuse by Diocesan priests, and 41 involve alleged abuse by Religious Order priests or other clerics. One case involves both Religious Order priests and a Diocesan priest. Seven cases involve alleged abusers who are not priests.

10. Parishes are named as co-defendants with CDOW in 73 of the Pending Abuse Cases. Additionally, there are five Pending Abuse Cases in which CDOW is not named as a defendant (the "Five Parish Only Cases"). As set forth below, CDOW does not at this time seek to extend to the automatic stay to the Parishes with respect to the Five Parish Only Cases, but reserves the right to do so.

**B.    The Adversary Proceeding**

11. On October 19, 2009, CDOW commenced adversary proceeding no. 09-52275 (the "Adversary Proceeding") against certain Diocese Case plaintiffs (the "Defendants") by filing its *Verified Complaint for Declaratory and Injunctive Relief* [Adv. Docket No. 1] pursuant to which CDOW sought certain declaratory and injunctive relief against the Defendants. On the same day, CDOW also filed in the Adversary Proceeding the *Debtor's Motion for Temporary Restraining Order Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure* [Adv. Docket No. 3] (the "TRO Motion").

DB02:8915059.3

068902.1001

12. Pursuant to the TRO Motion, CDOW sought to obtain a temporary restraining order against the Defendants to enjoin the prosecution of their respective personal injury actions against certain Parishes. The cases sought to be enjoined by the TRO Motion were scheduled for trial in the Superior Court for the State of Delaware (the "Superior Court"), the first of which was scheduled to commence on October 19, 2009. The Superior Court intended to conduct consecutively scheduled ten (10) day jury trials in connection with each of these actions until they were completed.

13. On October 28, 2009, the Defendants, through their respective State Court Counsel, opposed the relief sought in the TRO Motion by filing the *Defendant Survivors' Response in Opposition to the Diocese's Motion for a Temporary Restraining Order and/or a Preliminary Injunction and/or Declaratory Relief* [Adv. Docket No. 6] (the "Objection"). In response to the Objection, CDOW filed the *Plaintiff's Reply Memorandum in Support of the Motion for Injunctive Relief* [Adv. Docket No. 11] on October 30, 2009.

14. On November 2, 2009, the Court commenced an evidentiary hearing on the TRO Motion and related papers (the "Hearing"). The Hearing was continued to November 6, 2009. Prior to November 6, 2009, the Committee, the Debtor, and the Defendants, through their respective counsel, engaged in settlement negotiations over the relief sought in the TRO Motion and matters related thereto in the Debtor's chapter 11 case and the pending state court litigation between the Defendants and certain non-debtor parties to such litigation.

C. **The Stipulation Resolving The TRO Motion And Agreement Upon Related Relief Thereto**

15. At the start of the Hearing on November 6, 2009, counsel for the Debtor, the Defendants, the Committee, and State Court Counsel (i) advised the Court that a proposed settlement (the "Settlement") had been reached among the Debtor, the Committee, the

DB02:8915059.3  068902.1001

Defendants, State Court Counsel, and the Parishes (collectively, the "Parties"), (ii) set forth the material terms of the Settlement on the record, and (iii) advised the Court that the Parties would be submitting a written stipulation and proposed form of order memorializing the Settlement by way of certification of counsel. The Court "So Ordered" the record to immediately effectuate the Settlement subject to receiving the proposed form of order.

16. The Debtor expects the form of stipulated order (the "Stipulation") will be submitted to the Court shortly and will be served once entered. The salient terms of the Stipulation are as follows:[4]

> a. Issuance of a Preliminary Injunction. The Court shall enter an order issuing a preliminary injunction against the Defendants. The Preliminary Injunction shall (i) automatically expire sixty (60) days after the deadline for creditors to file prepetition claims in this chapter 11 case (the "Bar Date"), and (ii) not extend to the Five Parish Only Cases; however, the Debtor reserves the right to seek injunctive or other relief with respect to the Five Parish Only Cases;
>
> b. Motion to Extend the Stay to All Defendant Parishes. The Debtor may file, and the Committee and State Court Counsel shall not oppose, a motion to extend the automatic stay (the "Extension Motion") to the Parishes involved in the Parish Co-Defendant Cases;
>
> c. Production of Insurance Materials. The Debtor and the Parishes shall produce certain insurance information by the deadlines put on the record at the Hearing; and
>
> d. Production of Personnel Files. The Debtor and the Parishes shall produce the personnel files for certain priests as set forth on the record at the Hearing.

17. Pertinent to the Motion, the Stipulation provides that CDOW may file, and the Committee and State Court Counsel shall not oppose, a motion to extend the automatic stay to the Parish Co-Defendant Cases. In addition, the Stipulation provides that the Court shall enter

---

[4] The summary description of the pertinent terms of the Stipulation is qualified in its entirety by the Stipulation. If there are any inconsistencies between the summary contained herein and the Stipulation, the Stipulation shall control. Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Stipulation.

7
DB02:8915059.3                                                                                                          068902.1001

an order issuing the stipulated preliminary injunction (the "<u>Preliminary Injunction</u>") against the prosecution of any prepetition litigation in which the Debtor and a Parish are co-Defendants, i.e., the Parish Co-Defendant Cases, pursuant to the terms set forth in the Stipulation. The Preliminary Injunction (i) automatically expires at the end of the Stay Period and (ii) does not extend to the Five Parish Only Cases.

18. Pursuant to the Stipulation, the Preliminary Injunction shall become effective against those certain Parishes upon the entry of an order granting the Motion. However, pending the entry of such order, the Parties have agreed to abide by the terms set forth in the Stipulation.

## RELIEF REQUESTED

19. The Debtor requests that this Court utilize its powers under section 105 of the Bankruptcy Code to extend the automatic stay of section 362(a) of the Bankruptcy Code to the Parishes to stay the Parish Co-Defendant Cases in their entirety for the duration of the Stay Period.

## BASIS FOR THE RELIEF REQUESTED

I. **THE CONTINUED PROSECUTION OF THE PARISH CO-DEFENDANT CASES SHOULD BE STAYED PURSUANT TO SECTIONS 105(a) AND 362(a) OF THE BANKRUPTCY CODE**

20. Pursuant to section 362(a) of the Bankruptcy Code, the filing of a petition under the Bankruptcy Code operates as a stay on a wide range of actions against a debtor and, under appropriate circumstances, non-debtor third parties. Specifically, section 362 of the Bankruptcy Code provides, in pertinent part, that the filing of a petition for relief under the Bankruptcy Code operates to stay:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other

8
DB02:8915059.3                                                                                                                    068902.1001

> action or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title;
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of
> property from the estate or to exercise control over property of the
> estate . . . .

11 U.S.C. § 362(a)(1) and (3). Given the nature of the allegations levied against the defendants in the Parish Co-Defendant Cases, the claims against the Non-Debtor Parties directly impact CDOW's assets, liabilities, key personnel, and records. Thus, the assertion and prosecution of such claims warrant application of the automatic stay to the Non-Debtor Parties to prevent the continuation of the Parish Co-Defendant Cases for the duration of the Stay Period.

### A. The Broad Powers of the Automatic Stay

21. The automatic stay is one of the fundamental debtor and creditor protections provided by the Bankruptcy Code. Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.), 142 F.3d 631, 637 (3d Cir. 1998) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296). It gives the debtor a breathing spell from its creditors by stopping all collection efforts, harassment, and foreclosure actions, thus relieving the debtor of the financial pressures that drove it into bankruptcy and facilitating the debtor's attempts to reorganize. Id. For creditors, the automatic stay prevents the state-law "race of the diligent," whereby creditors who act first to pursue their remedies against the debtor's property obtain payment of their claims in preference to and to the detriment of other creditors. See id.

22. Similarly, as the Court remarked in Gillman v. Continental Airlines, Inc. (In re Continental Airlines), 177 B.R. 475, 479 (D. Del. 1993):

> The automatic stay is designed to protect the debtor from an

9
DB02:8915059.3                                                                   068902.1001


...

> action or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title;
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of
> property from the estate or to exercise control over property of the
> estate . . . .

11 U.S.C. § 362(a)(1) and (3). Given the nature of the allegations levied against the defendants in the Parish Co-Defendant Cases, the claims against the Non-Debtor Parties directly impact CDOW's assets, liabilities, key personnel, and records. Thus, the assertion and prosecution of such claims warrant application of the automatic stay to the Non-Debtor Parties to prevent the continuation of the Parish Co-Defendant Cases for the duration of the Stay Period.

### A. The Broad Powers of the Automatic Stay

21. The automatic stay is one of the fundamental debtor and creditor protections provided by the Bankruptcy Code. Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.), 142 F.3d 631, 637 (3d Cir. 1998) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296). It gives the debtor a breathing spell from its creditors by stopping all collection efforts, harassment, and foreclosure actions, thus relieving the debtor of the financial pressures that drove it into bankruptcy and facilitating the debtor's attempts to reorganize. Id. For creditors, the automatic stay prevents the state-law "race of the diligent," whereby creditors who act first to pursue their remedies against the debtor's property obtain payment of their claims in preference to and to the detriment of other creditors. See id.

22. Similarly, as the Court remarked in Gillman v. Continental Airlines, Inc. (In re Continental Airlines), 177 B.R. 475, 479 (D. Del. 1993):

> The automatic stay is designed to protect the debtor from an

> uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

Id. To that end, the automatic stay operates automatically to stay all judicial actions against a debtor that were or could have been brought prior to the commencement of a bankruptcy case. See Maritime Electric Inc. v. United Jersey Bank, 959 F.2d 1194, 1203 (3d Cir. 1991).

23. Consistent with the broad reach Congress intended for the automatic stay, courts have utilized sections 105 and 362 of the Bankruptcy Code to extend the automatic stay to non-debtors to enjoin litigation, where as here, the debtor is the real party in interest or the litigation will directly affect the debtor's assets or its ability to pursue a successful plan of reorganization. In re Continental Airlines, 177 B.R. 475, 479. See also, McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 510 (3rd Cir. 1997) ("[c]ourts have also extended the stay to non-debtor third parties where stay protection is essential to the debtor's efforts of reorganization") and In re Aldan Indus., No. 00-10360DWS, 2000 Bankr. LEXIS 342, at *11-12 (Bankr. E.D. Pa. April 3, 2000) (noting that courts have extended the automatic stay to non-debtor third parties in "unusual circumstances"). See also In re S.I. Acquisition, Inc., 817 F.2d 1142, 1146 n. 3 (5th Cir. 1987) ("We recognize that beyond the automatic stay provisions of section 362 (a)(1) and (3), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105.").

**B. Unusual Circumstances Exist that Warrant the Extension of the Automatic Stay to the Parishes to Prevent the Continuation Of the Parish Co-Defendant Cases**

24. As noted above, courts have also extended the automatic stay to non-debtor parties in "unusual circumstances." Courts have found that such "unusual circumstances"

arise where there is "[an] identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." A.H. Robins v. Piccinin (A.H. Robins), 788 F.2d 994, 999 (4th Cir.) cert. denied, 479 U.S. 876 (1986); see also W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 386 B.R. 17, 36 (Bankr. D. Del. 2008) (same); In re American Film Techs., Inc., 175 B.R. 847, 850 (Bankr. D. Del. 1994) (same); McCartney, 106 F.3d 510 (same). In addition, circumstances may also be "unusual," and the scope of the automatic stay broadened, where the "stay protection is essential to the debtor's efforts of reorganization." McCartney, 106 F.3d at 509. In the present matter, "unusual circumstances" warrant the extension of the automatic stay to the Parishes to prevent the continuation of the Parish Co-Defendant Cases for the duration of the Stay Period.

25. Courts in this district and elsewhere have consistently enjoined the prosecution of suits against third parties pursuant to sections 362(a)(1) and 105(a) of the Bankruptcy Code where there is a strong identity of interest between the debtor and the third party defendants. See W.R. Grace & Co., 386 B.R. at 54 (extending automatic stay to co-defendants of debtor in personal injury actions); see also A.H. Robins, 788 F.2d at 998-1007 (though complaint named officers and directors as defendants, debtor was the "real party defendant"); cf. McCartney 106 F.3d at 509 (citing A.H. Robins with approval). Moreover, the automatic stay has been extended to non-debtor co-defendants when (as here) the claims against the non-debtors and the debtor are "inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding." In re The 1031 Tax Group, LLC, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (quoting In re Ionosphere Clubs, Inc.,111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990)).

DB02:8915059.3                                    068902.1001

26. Extending the stay under these circumstances promotes the policies underlying the automatic stay where (as here) the Debtor is the true target of the litigation, and continuation of the Parish Co-Defendant Cases as against the Parishes and other Non-Debtor Parties is tantamount to continuing the actions against the Debtor due to the Parishes' cross-claims for indemnification and contribution as well as the risk of adverse issue preclusion. Id. Under these circumstances, the automatic stay would be effectively nullified by continued litigation against the Parishes.

### 1. CDOW and the Parishes Share an Identity of Interest With Respect to the Parish Co-Defendant Cases

27. CDOW is the real party in interest in the Parish Co-Defendant Cases and the continued prosecution of such actions will adversely affect CDOW's estate and unduly interfere with CDOW's active reorganization efforts. Specifically, the following facts demonstrate an identity of interest between the Debtor and the Parishes: (i) the alleged policies, procedures and practices which underlie the Parish Co-Defendant Cases are the alleged policies, practices and procedures of CDOW, not the Parishes or other Non-Debtor Parties; (ii) the fraud, conspiracy, and aiding and abetting claims asserted in the Parish Co-Defendant Cases require proof that CDOW and the applicable Parish and/or other Non-Debtor Parties acted in concert and cannot be presented and adjudicated without impacting CDOW's interests; and (iii) the testimonial and documentary evidence that the plaintiffs (collectively, the "Tort Claimants") will rely on at the trials of the Parish Co-Defendant Cases are directed squarely at CDOW, and not the Parishes or other Non-Debtor Parties.

28. The following factors also support extension of the stay: (i) the claims asserted against the Parishes and other Non-Debtor Parties are so closely intertwined with the claims asserted against CDOW in the that CDOW may be exposed to collateral estoppel, adverse

DB02:8915059.3　　　068902.1001

precedent, vicarious liability, or imputed admissions if the litigation continues. See In re Continental, 177 B.R. at 481; In re American Film Techs., Inc., 175 B.R. at 851; see also In re Lomas Financial Corp., 117 B.R. 64, 66-67 (S.D.N.Y. 1990) (it was not possible for the debtor "to be a bystander to a suit which may have a $20 million issue preclusion effect against it"); (ii) continuation of the Diocese Cases would divert key personnel such as Monsignor Cini from the reorganization process and, as a result, undermine the administration of the estate and the ability of CDOW to successfully consummate a plan of reorganization See In re Continental Airlines, 177 B.R. at 479, 481; In re Rickel Home Centers, Inc., 199 B.R. 498, 501 (Bankr. D. Del. 1996); and (iii) continuing the Parish Co-Defendant Cases would expose CDOW to the risk of the Parishes' cross-claims for indemnification and contribution. Any one of these factors alone is cause for relief. Given that all of them exist in this case, the Court should extend the automatic stay provisions of 362 (a) to bar further prosecution of the Parish Co-Defendant Cases against the Parishes and other Non-Debtor Parties.

    **2. CDOW Will Be Forced to Participate in the Parish Co-Defendant Cases to Protect Its Own Interests**

    29. The extension of the automatic stay is appropriate under these circumstances because, even if a claim of collateral estoppel or vicarious liability is ultimately defeated, the looming possibility that these doctrines might affect CDOW's rights leaves it with little choice but to actively participate in the Parish Co-Defendant Cases in order to effectively protect its own interests. See, e.g., In re Lomas Financial Corp., 117 B.R. at 67. The existence of a bona fide possibility of preclusion on factual issues related to CDOW's liability for alleged abuse establishes a basis to extend the stay. See In re American Film Techs., 175 B.R. at 850 (citations omitted); In re Lomas Financial Corp., 117 B.R. at 66-67 (action alleging wrongdoing against debtor's officers stayed partly as a result of the threat of issue preclusion); Sudbury, Inc.

13
DB02:8915059.3                                                                                                                                                068902.1001

v. Escott (In re Sudbury, Inc.), 140 B.R. 461, 463 (Bankr. N.D. Ohio 1992) (debtor's liability "*may* be determined on collateral estoppel principles [by fact determinations reached on same fact issues] in Plaintiffs' actions" against non-debtors) (emphasis added); In re Johns-Manville Corp., 40 B.R. 219 (S.D.N.Y. 1984) (affirming decision to stay actions against debtor's insurance carriers partly because of concerns about issue preclusion).

30. Here, judgment against the Parishes and other Non-Debtor Parties is tantamount to a judgment against CDOW because many of the allegations asserted by the Tort Claimants in their respective Parish Co-Defendant Case arise out of the same operative factual allegations – namely, that the plaintiffs were abused and the institutional defendants such as the Diocese and Parishes had actual or constructive notice of such abuse. If the Tort Claimants succeed in establishing liability on the part of the Parishes and/or other Non-Debtor Parties, such liability could be imputed to CDOW. Thus, the Parish Co-Defendant Cases could substantially prejudice CDOW by precluding it from re-litigating any issues of fact or law determined in the Parish Co-Defendant Cases, including those issues that are critical to its defenses. As a result, if the Parish Co-Defendant Cases are allowed to proceed, CDOW may be denied the opportunity to present its own defenses should it need to litigate the Parishes' cross-claims for contribution and indemnification.

31. It is precisely in cases like this one – where there is such identity of subject matter, issues and parties that the debtor would be compelled to participate in the litigation in order to avoid the issue preclusive effect of findings of fact and law determined without its participation – that courts have extended the stay to actions against non-debtors. See See In re American Film Techs., 175 B.R. at 850 (citations omitted); In re Lomas Financial Corp., 117 B.R. at 66-67 (extending the stay to non-debtors because it was not possible for the

14

debtor "to be a bystander to a suit which may have a $20 million issue preclusion effect against it"); In re Johns-Manville Corp., 40 B.R. at 222-231 (affirming decision to stay action against non-debtors where "Debtor would be forced to participate actively in those actions in order to protect its interests" and "might also be collaterally estopped on issues of policy coverage and liability.").

### 3. Continuation of the Parish Co-Defendant Cases Will Disrupt CDOW's Reorganization Process

32. Continuation of the Parish Co-Defendant Cases should also be stayed in order to prevent the diversion of key CDOW personnel from the reorganization process. See In re Continental Airlines, 177 B.R. at 481 (entering a stay where the debtor's participation in the litigation against the debtor's officers and directors would substantially detract from the debtor's reorganization efforts); see also In re Zenith Lab., Inc., 104 B.R. 659, 665-66 (D. N.J. 1989) (same). The Parish Co-Defendant Cases will divert key personnel from their roles in the reorganization process because key personnel, namely Monsignor Cini, will likely be forced to actively participate in discovery, testify at each trial of the Parish Co-Defendant Cases and be required to take an active part in defending against the allegations against the Non-Debtor Parties rather than working on CDOW's reorganization. See e.g., In re Continental Airlines, 177 B.R. at 481 (continuation of litigation against the debtor's officers and directors who are heavily involved in the reorganization efforts would "substantially detract from the directors' reorganization efforts and would hinder [the debtor's] ability to emerge successfully from bankruptcy under a confirmed plan of reorganization); American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc., (In re Eagle-Picher Indus.), 963 F.2d 855, 861-62 (6th Cir. 1992) (continuation of litigation against the debtor's officers would divert key employees from the reorganization process).

33. Because CDOW and its key personnel possess significant knowledge and documentary information relevant to the Parish Co-Defendant Cases, the reality of the present case is that, if this Court determines that the automatic stay does not apply or should not be extended to prevent the continuation of the Parish Co-Defendant Cases, CDOW's personnel and counsel are likely to be compelled to participate in the more than seventy pending Parish Co-Defendant Cases and related discovery. Such substantial and time consuming involvement would result in undue economic burden and distract CDOW and its key personnel from the reorganization process.

34. Given the facts and circumstances of the Parish Co-Defendant Cases, if such actions are not stayed, CDOW would have to make Monsignor Cini and other personnel available for various and time-consuming litigation activities, and provide access to documents in addition to those being produced to the Committee pursuant to the Stipulation. The involvement of personnel and attendant expense could be great, particularly because counsel for CDOW will have to be prepare and present witnesses for depositions as well as monitor the depositions of the Tort Claimants and other parties. Moreover, absent an extension of the stay, CDOW will have to devote substantial resources to participating in trial preparation and voluminous discovery. Since continued prosecution of the Parish Co-Defendant Cases will impair CDOW's efforts to reorganize, such actions against the Non-Debtor Parties are effectively actions against CDOW and should be stayed pursuant to section 362 (a) of the Bankruptcy Code.

**B. Continued Prosecution of the Parish Co-Defendant Cases Against the Non-Debtor Parties Will Dissipate Property of CDOW's Estate to the Detriment of All Creditors**

35. Section 362(a)(3) of the Bankruptcy Code stays any attempt to obtain possession of property of the estate or of property from the bankruptcy estate. See 11 U.S.C. § 362(a)(3). In the event the Parish Co-Defendant Cases are allowed to move forward as against the Parishes and other Non-Debtor Parties, the Tort Claimants will attempt to, among other things, require the Non-Debtor Parties (and therefore CDOW) to pay monetary damages. Thus, as discussed below, the Tort Claimants are clearly seeking possession of property of CDOW's estate (or at the very least, of property *from* CDOW's estate) in violation of both the letter and the spirit of section 362(a)(3) of the Bankruptcy Code. See Penn Terra Ltd. v. Dept. of Envtl. Resources, 733 F.2d 267, 271 (3d Cir. 1984) (noting the central policy underpinning section 362 is "to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected").

36. In the event that the Parish Co-Defendant Cases are permitted to proceed, CDOW's estate would be subjected to the risk of depletion of significant assets to the detriment of the estate and other creditors. To permit this to happen would, among other things, violate the central policy of bankruptcy law that similarly situated creditors should be treated equally because the legally valid claims of CDOW's other creditors, who stand on equal footing with the Tort Claimants as general unsecured creditors of CDOW, would be adversely impacted. See In re Sacred Heart Hosp., 212 B.R. 467, 472 (E.D. Pa. 1997) ("The bankruptcy system is designed to distribute the estate as equally as possible among similarly situated creditors."). In order to prevent the piecemeal distribution of estate assets, including proceeds of the applicable general

liability insurance policies (the "Policies"), to the Tort Claimants, on a first-come, first-served basis, the Court should extend the stay to the Parishes to permit an orderly distribution to creditors under a confirmed chapter 11 plan of reorganization.

37. This Court has held that proceeds of a corporate insurance policy, insuring the debtor, its subsidiaries and its officers and directors are, for the purposes of the automatic stay, property of the debtor's estate. See PHP Healthcare Corp. v. HIP Foundation, Inc. (In re PHP), Adv. No A99-18 (MFW) (Bankr. D. Del. Mar. 31, 1999) (Walrath, J.). A copy of the Court's decision in In re PHP is attached hereto as Exhibit B. In re PHP, this Court granted an extension of the stay to certain non-debtors, who were insured with the debtor under an insurance policy, and held that "the proceeds of the Insurance Policy are property of the estate subject to the automatic stay." Id. at 7.

38. This Court's dispositive holding in In re PHP is supported by numerous other courts and the leading commentators. See ACandS, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 260 (3d Cir. 2006) ("The possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies."); A.H. Robins, 788 F.2d 994, 1001 ("actions . . . against officers or employees of the debtor who may be entitled to indemnification under such [corporate liability insurance] policy or who qualify as additional insureds under the policies are to be stayed under section 362(a)(3)"); In re Circle K Corp., 121 B.R. 257, 261 (Bankr. D. Ariz. 1990) (staying securities fraud action against debtor's current and former directors and officers because the insurance policy constituted property of the estate and continuation of litigation could leave other potential claimants with "reduced, little or no coverage"); Minoco Group of Companies, Ltd. v.

18

DB02:8915059.3  068902.1001

First State Underwriters Agency (In re Minoco Group of Companies, Ltd.), 799 F.2d 517, 519 (9th Cir. 1986) (same). According to the leading treatise on bankruptcy law:

> If, for example, the debtor and its officers and its directors are co-insureds under a business insurance policy, the estate will have an interest in a portion of the policy limits, otherwise it will suffer the irreparable injury of the loss of coverage, with concomitant reduction in the likelihood of successful reorganization . . . . Allowing such insurance to be depleted on a first-come, first-served basis outside of bankruptcy runs directly contrary to the strong bankruptcy policy of ratable distribution to similar claimants.

Lawrence P. King, Collier On Bankruptcy § 105.03[1][b] (15th ed. 1998).

39. In this case, there are Policies that are similar to the policy in In re PHP insofar as they cover not only CDOW, but also the Parishes in more than twenty of the Parish Co-Defendant Cases. Under such Policies, any proceeds paid on behalf of these Parishes for losses incurred in connection with the Parish Co-Defendant Cases will directly reduce the amount of proceeds available to CDOW, thus consuming an asset of the estate to the detriment of other creditors.

40. Moreover, as discussed above, to the extent that the Non-Debtor Parties are required to incur costs and expenses in defending the Parish Co-Defendant Cases, or satisfy a judgment, they may be entitled to recover from CDOW under common law theories of indemnification and contribution. In such event, the Parish Co-Defendant Cases will directly deplete assets of the estate. Based on the foregoing, the Court should prevent the continuation of the Parish Co-Defendant Cases by extending the stay to the Parishes to permit an orderly distribution to CDOW's creditors under a confirmed chapter 11 plan of reorganization.

## NOTICE

41. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) State Court Counsel; (iv) the respective courts in which the Parish Co-Defendant Cases are pending; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

WHEREFORE, based on the foregoing, CDOW respectfully requests entry of the proposed form of order annexed hereto as Exhibit A and for such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
November 13, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Michael S. Neiburg (No. 5275)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Proposed Counsel for the Debtor and
Debtor in Possession