IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 09-13560 (CSS) |
| CATHOLIC DIOCESE OF WILMINGTON, INC. | : | |
| | : | |
| | : | |
| DEBTOR. | : | |

**Joinder to Opposition of the Official Committee of Unsecured Creditors to Debtor's Motion for Order Authorizing the Debtor (i) to Continue Providing Pensions, Sustenance and/or Medical Coverage in the Ordinary Course to Certain Retired or Removed Priests Accused of Sexual Abuse; and (ii) to Use Certain Restricted Funds to Pay Prepetition Priest Pension Obligations**

Jacobs & Crumplar, P.A. and The Neuberger Firm, P.A. join in the Motion filed by the Creditors' Committee's attorney and add the following additional statements.

The records produced heretofore and set out in some detail in the Creditors' Motion, show that despite their repeated public statements, the Church is determined to protect the predator priests and not the young children and their parents from criminal sexual abusers of the Diocese.

It is clear that every step the Diocese has taken has been motivated by two things: (1) prevention of public scandal and (2) protection of the Catholic clergy, whether or not they are sex offenders.  When individuals such as DeLuca and Dempster admitted to abuse of young catholic altar boys, the Church's response should have been quick and unequivocal – future children should have been protected and these sex offender priests should have been punished and removed from the parishes and as priests.  Instead, they were encouraged, cajoled and taken care of by the Parish and Diocese.  Individuals, such as DeLuca and Dempster, were allowed to retire in a face saving way, such as there was absolutely no shame whatsoever attached to their

retirement from the priesthood.  In fact, in 2000, the Diocese put out a book celebrating one of the anniversaries of the Diocese, where what was written is in praise of their priests.  It is even more outrageous that cash payments were made to these individuals so that they would not cause trouble and go quietly, and this is why the priests should not be paid [Ex. 1 is to Fr. DeLuca].

There has been evidence developed in these cases to date that reveals another nefarious reason for the above reprehensible practice.  Unlike significant amount of current public opinion in the United States, and practices in many other Christian churches, the Catholic Church has taken the position that homosexuality, even amongst consenting adults is an abomination and should never be allowed.  The undersigned has no problem with that position of the Catholic Church – it is their right to hold that belief.  The problem is that they do so in a very hypocritical way because while they condemn publicly adult homosexuals who are attempting to enter into what they consider a loving and mutually respectful relationship, adult homosexual activities among adult priests with other priests has been rife within this Diocese.  Evidence has been developed that even some of the highest officials in the Diocese, including a former bishop, may have been engaged in such practices which the Church publicly condemns.  If this is true, this is all the more reason why the sex offender priests were able to extract these blackmail payments from Church officials after they were caught abusing children.[1]

---

[1] Former Bishop Mulvee was the Bishop for the Diocese of Wilmington in 1993, when DeLuca and Dempster were removed and given sweet heart deals.  Evidence in the DeLuca case revealed that Mulvee has been living for a number of years with another close priest who Monsignor Lemon described as "his companion."  Although this priest is not a member of the Diocese, when Mulvee came here at his personal request, another Bishop allowed the other priest to come down so he could spend time with Mulvee.  Bishop Mulvee wintered over with this priest in Florida, share and own together a house on Cape Cod and despite being a member of the Diocese of Manchester, the other priest has received permission to live at the same rectory in Rhode Island with his life long companion, Bishop Mulvee.  When asked about the nature of their relationship, Bishop Mulvee refused to answer those questions. [Ex. 2 and Ex. 3]

It should also be noted that St. Mary's seminary, which has been one of the unofficial feeder seminaries for this Diocese, has long been known as one of the purple seminaries within the American Church, such that in the past, many Dioceses have refused to accept candidates from that seminary.

The request here to continue to pay the pensions or any funds to these abusers, as a right of the Debtor, when it is clear it only continues the conspiracy of paying off criminals who should have no moral or legal right to Diocese assets should be disallowed. These priests have no right to payment or charity from the funds of this Diocese, which should be conserved to pay the victims of the Church's actions. By churches, we include the Diocese and all its works.[2]

        Respectfully submitted,

        **JACOBS & CRUMPLAR, P.A.**

By: */s/ Thomas C. Crumplar*
    Thomas C. Crumplar (#0942)
    2 East 7th Street, Suite 400
    Wilmington, DE  19801

    **THE NEUBERGER FIRM, P.A.**

*/s/ Thomas S. Neuberger*
Thomas S. Neuberger, Esquire
2 East 7th Street, Suite 302
Wilmington, DE   19801-3707

*Attorneys for Tort Creditors*

Dated:  December 15, 2009

S:\Tort\CSAL General File\DIOCESE BANKRUPTCY\Pleadings\121509_Joinder re Cred Committee Motion_Tcc.doc

---

[2] Exhibits 1, 2 and 3 are the subject of a Protective Order entered by Superior Court and need to be filed under seal. A Motion will be filed under separate cover.