# THE NEUBERGER FIRM
ATTORNEYS AND COUNSELLORS AT LAW

TWO EAST SEVENTH STREET, SUITE 302
WILMINGTON, DELAWARE 19801-3707

THOMAS S. NEUBERGER, ESQUIRE
STEPHEN J. NEUBERGER, ESQUIRE
RAEANN WARNER, ESQUIRE

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

PHONE: (302) 655-0582
FAX: (302) 655-9329

February 23, 2010          <u>**Via E-File & Hand Delivery**</u>

The Honorable Christopher S. Sontchi
United State Bankruptcy Court for the District of Delaware
824 North Market Street
Wilmington, DE 19801

**RE:**    <u>**In re: Catholic Diocese of Wilmington, Case No. 09-13560 (CSS)**</u>
       <u>**Response to St. Ann's Request to Drain the Pooled Investment Account**</u>

Dear Judge Sontchi,

On behalf of John F. Dougherty and the Unofficial Committee of State Court Abuse Survivors, counsel submits this letter in opposition to St. Ann's request.

Ironically, in its letter attacking both the ethics and integrity of undersigned counsel, St. Ann's failed to apprise the Court of several highly relevant facts which bear directly on the issue of St. Ann's improper efforts to drain the Pooled Investment Account of limited monies that are better spent compensating the many survivors of the Diocese's admitted "cover up"[1] of its priest's sexual abuse of young children.

**A. Mr. Reardon Has Testified that He Represents St. Ann's "Pro Bono ... Year After Year At No Charge."** Attorney Mark Reardon is and has long been lead counsel representing St. Ann's in the underlying state court litigation.[2] Notably absent from St. Ann's letter is any mention of Mr. Reardon's key May 29, 2007 testimony before the State of Delaware House Judiciary Committee during the legislative debates surrounding the ultimate unanimous enactment by the Delaware General Assembly of the landmark Delaware Child Victim's Act of 2007, 10 Del.C. § 8145. Under withering questioning, Mr. Reardon admitted then that he has long represented all of his church abuse clients "pro bono ... year after year at no charge."

---

[1] (Tab A at p. 2, line 2 - Msgr. Cini's Confidential Sept. 13, 2004 internal memorandum). Msgr. Cini wears several hats, including Vicar General of the Diocese and Pastor of St. Ann's. (D.I. 81 at p. 30-31, 57).

[2] The first case against St. Ann's was filed in December 2006 by Father Carley survivor Doug McClure. See <u>McClure v. Catholic Diocese of Wilmington, Inc. and St. Ann's Roman Catholic Church</u>, C.A.No. 06C-12-235-CLS (Del.Super.). Additionally, Mr. Reardon has been involved in the underlying state court priest sex abuse litigation since its inception in January 2004 where he served as lead defense counsel. See <u>Eden v. Oblates of St. Francis de Sales, Inc.</u>, et al., C.A.No. 04C-01-069-CLS (Del.Super.).

(emphasis added).[3] Similarly, on July 13, 2007, Mr. Reardon confirmed his testimony of six weeks before to the Delaware General Assembly and again admitted and advised opposing counsel that he was representing all of his church abuse clients, including St. Ann's, "pro bono."[4]

Accordingly, because Mr. Reardon represents St. Ann's parish "pro bono ... year after year at no charge," it is premature to contend that without an immediate payment of $260,000 St. Ann's will have no defense in the current trial. There simply is no current need for St. Ann's to drain the Pooled Investment Account of $260,000 to pay non-existent attorneys' fees on an emergency basis. Instead this matter should be considered in the normal fashion by a Motion, discovery, a hearing where proof is offered, and the right to cross-examination and argument on an actual record, and not simply upon unfounded assertions made by counsel by St. Ann's which lack any documentary or testimonial support. Procedural due process requires no less.

**B. The Parish Has Had Its Own Insurance in Place Since the 1950s.** Continuing, contrary to the unsworn assertions of counsel for St. Ann's, the parish also fails to note that St. Ann's does in fact have insurance such that, even if Mr. Reardon was not servicing the parish "pro bono," the parish otherwise has the ability to present its legal defense through counsel paid by the insurance company.

First, in a letter last week to Judge Calvin L. Scott, Jr. of the Delaware Superior Court, Mr. Reardon admitted to the existence of insurance coverage for the parish.[5] Although Mr. Reardon characterized the discovery of these documents as "recent," as explained below, these insurance coverage documents date from approximately 1950 and have been known to exist for at least several years.

Second, less than a month after the filing of the McClure action, on January 18, 2007, lead Diocesan counsel Anthony Flynn placed a call to plaintiff's counsel to discuss various issues, including insurance coverage. Specific to insurance, Mr. Flynn stated that in the 1950s and 1960s, St. Ann's parish had its own insurance policies and that these policies also named the Diocese as a covered insured. Mr. Flynn explained that the Diocese did not centralize and take over responsibility of obtaining insurance coverage for itself and its parishes until sometime in

---

[3] (Tab B at 125 - Transcript of House Judiciary Committee Hearing, dated May 29, 2007). Given that the subsequent lawsuit brought by the Oblates' insurance company has revealed that Mr. Reardon was in fact paid in full by them for his services, see U.S. Fire Insur. Co vs Oblates of St. Francis de Sales, C.A.No. 08C-09-054-CLS (Del.Super.), it appears that the years of his "pro bono" defense services must have been provided to St. Ann's and his other parish clients.

[4] (Tab C at ¶ 9 - Declaration of Stephen J. Neuberger).

[5] (Tab D at 7-8).

the 1970-1980s.[6] Before that, and since the 1950s, St. Ann's has had its own insurance policy.

This has been a known fact for more than three years, yet St. Ann's sat on its hands and now protests that it is just learning of the availability of insurance coverage.

Third, on August 1, 2007, plaintiff's counsel met with Mr. Flynn to discuss aspects of the overall priest sex abuse litigation against the Diocese and its parishes, including insurance coverage. Mr. Flynn stated, among other things, that prior to 1978, many of the individual parishes took out their own insurance before the Diocese consolidated everything in 1978. He specifically explained that for the 1950-1960s, St. Ann's, St. Elizabeth's and St. John the Beloved parishes all had their own parish insurance.[7]

Accordingly, given that the Diocese itself admits that St. Ann's (and also St. John the Beloved) parish have insurance coverage, and Mr. Reardon agreed and so informed the Superior Court of this fact, there is no need to drain the limited resources of the Pooled Investment Account to pay for attorneys' fees for which a defense by counsel paid by the carrier is available.

If the parish wishes to prove otherwise, then its proffer of proof should be put to the test, after appropriate discovery, a hearing and cross-examination.

**C. The Parish Has Substantial Independent Assets.** Last, St. Ann's also fails to note that it does in fact have significant assets such that the parish has the ability to independently pay for its own legal defense.

St. Ann's church dates back to 1887 and encompasses an entire block in a prosperous area of the City of Wilmington. This includes the church, the school, social hall and other buildings. A conservative estimate of the value of this property is $5 million.[8]

Accordingly, putting to the side the facts of St. Ann's "pro bono" legal representation and long ago discovered insurance coverage, if St. Ann's somehow needs additional funds for legal expenses, it need only obtain a line of credit against its vast real estate holdings and the investment account can remain untouched. Due to the emergency nature of the present proceeding, a mortgage or lien search cannot be conducted of these properties to determine that they can be freely encumbered. But if there are liens, it should be up to St. Ann's to prove this fact, not the survivors.

---

[6] (Tab C at ¶ 8).

[7] (Tab C at ¶ 10).

[8] As the Diocese is aware, the recent sale by St. Thomas parish (which also is located in Wilmington, although not in as prosperous of an area), of its school building <u>alone</u> raised $3 million.

The Honorable Christopher S. Sontchi
February 23, 2010
Page 4

**D. The Diocese and St. Ann's Have Failed to Make a Proper Record to Support their Request.** Undersigned counsel has submitted a proper record by Declaration and documents in opposition to the pending matter and the disbursement application should be denied because of the failure of St. Ann's to create a proper record to support its application. In the event the record is considered to be in conflict despite the lack of competent proof by St. Ann's, the fact dispute is material. Accordingly, Mr. Dougherty and the state court survivors respectfully request appropriate discovery, a hearing, and cross examination of St. Ann's witnesses.

**E. The Necessary Discovery if the Court Finds a Conflict in the Record.** The necessary discovery includes, the depositions of Mr. Reardon and Mr. Flynn as well as the production of the following documents -

- All insurance policies,
- All correspondence regarding the carrier providing a defense in the <u>Dougherty</u> litigation,
- All written fee agreements regarding defense of the <u>Dougherty</u> case,[9]
- All billing records in the <u>Dougherty</u> case, from the time of its filing to the present,
- Records of all unbilled time by the Reardon firm in defense of the <u>Dougherty</u> matter,
- Records of all payments received to date by the Reardon firm in defense of all childhood sexual abuse litigation against St. Ann's to explain the conflict between St. Ann's testimony to the Delaware General Assembly and its assertions to this Court.[10]

**F. Laches Also Bars St. Ann's Claims.** To the extent St. Ann's somehow asserts that it needs to drain the Pooled Investment Account because it finds itself behind the eight ball in that it has only recently discovered the existence of the relevant insurance, laches bars such a false claim.[11]

---

[9] <u>See</u> <u>Montgomery County v. MicroVote Corp.</u>, 175 F.3d 296 (3d Cir. 1999) (holding that neither the attorney-client nor the work product privilege shield fee arrangements when relevant).

[10] Specifically including the cases brought by plaintiffs and Father Carley survivors <u>Douglas McClure</u> - filed December 28, 2006, abuse from 1954-1956; <u>John Roe #1</u> - filed July 29, 2008, abuse from 1958-1962; <u>John Roe #3</u> - filed April 30, 2009, abuse in 1963; and <u>John Dougherty</u> - filed June 16, 2009, abuse from 1954-1961.

[11] The doctrine of laches applies when a party with knowledge, engages in an inexcusable delay and the delay is prejudicial to another party. <u>In re Network Access Solutions, Corp.</u>, 330 B.R. 67, 79 (Bankr. D.Del. 2005); <u>accord</u> <u>In the matter of Phoenix, Ltd.</u>, 198 B.R. 78, 90 (Bankr. D.Del. 1996); <u>see</u> <u>U.S. v. Korech</u>, 59 F.3d 431, 445 (3d Cir. 1995) ("The elements of laches are (1) lack of diligence by party against whom the defense is asserted and (2) prejudice to the party asserting the defense.").

The Honorable Christopher S. Sontchi
February 23, 2010
Page 5

      As explained above, both St. Ann's and the Diocese have long been aware of the relevant insurance policies and related issues since January 17, 2007 at the latest. The failure of both St. Ann's and the Diocese for three years to pursue insurance coverage with any modicum of due diligence despite the existence of numerous cases providing a strong incentive to do so during the relevant time frame,[12] is a problem of their own making. They cannot now come to this Court, hat in hand, pleading poverty when they have failed to act on or otherwise seek to protect their legal rights regarding insurance coverage of which they have long had knowledge. Because of their inexcusable delay, the state court abuser survivors will be prejudiced if St. Ann's is now permitted to drain the Pooled Investment Account, the ownership of which is hotly disputed and which should be used to compensate the many survivors of the "cover up," the existence of which has been admitted by St. Ann's Pastor and Vicar General of the Diocese, Msgr. Cini.

      I am at the Court's disposal to address these matters further.

Respectfully Submitted,

/s/ Thomas S. Neuberger

cc:    All Counsel (via e-File)

---

[12] See footnote 10 above.