IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CATHOLIC DIOCESE OF WILMINGTON, INC., a Delaware Corporation, | ) ) | Case No. 09-13560 (CSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Adv. Case No. _____ |
| OFFICIAL COMMITTEE OF LAY EMPLOYEES OF THE CATHOLIC DIOCESE OF WILMINGTON, INC. | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CATHOLIC DIOCESE OF WILMINGTON, INC., a Delaware non-stock Corporation; | ) ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

The Official Committee of Lay Employees (the "Committee" or "Plaintiff") in the above

captioned case (the "Debtor" or "Diocese") brings this action for declaratory and related relief

against the defendants named herein, pursuant to 28 U.S.C. § 2201, for the purpose of, among

other things, determining a question of actual controversy between the parties hereto. Plaintiff,

upon knowledge with respect to itself, and upon information and belief as to all other matters,

alleges as follows:

### INTRODUCTION

1.      By this complaint, the Committee seeks a determination from the Court: (a) that

certain funds (the "Pension Funds") held by the Defendant in the Defendant's pooled investment

account (the "PIA") are funds that are being held by the Defendant to and for the exclusive

benefit of the participants in the Diocese of Wilmington Pension Lay Employees Pension Plan

(the "Pension Plan"); (b) that the Pension Funds are not property of the Debtor's bankruptcy estate; and (c) that the Defendant breached its fiduciary duty to the participants and/or beneficiaries of the Pension Plan by, among other things, improperly directing that the pension funds belonging to the participants and/or beneficiaries of the Pension Plan be deposited into the PIA that is maintained and controlled by the Defendant.

2.     While the Committee believes additional claims and causes of action exist against the Defendant and certain of its officers, employees, agents, representatives, advisors and members of the Lay Pension Plan Advisory Board (the "Board"), the Committee is not asserting any such claims or causes of action at this time. However, the Committee reserves the right to assert such claims in the future, including claims for damages relating to breach of contract, breach of fiduciary duty, negligence, and gross or wanton misconduct.

## THE PARTIES

3.     Plaintiff is the Official Committee of Lay Employees. The Office of the United States Trustee appointed the Committee on April 30, 2010.

4.     The defendant (the "Defendant," "Debtor" or "Diocese") is the debtor in the above-captioned chapter 11 bankruptcy case and the legal entity through which the Bishop of the Diocese conducts the temporal affairs of the Roman Catholic Diocese of Wilmington. On information and belief, the Diocese uses the "Roman Catholic Diocese of Wilmington" to refer to the juridic person of the Diocese under Canon law. The term Diocese used herein refers to both the secular legal entity and the juridic person. The Most Reverend W. Francis Malooly (the current Bishop of the Diocese and hereafter "Bishop Malooly") is the sole member and President of the Diocese. The Diocese has no board of directors or comparable governing body.

5.     It should be noted that over 1,780 individuals (the "Lay Employees") participate in, or are beneficiaries of, the Pension Plan maintained and sponsored by the Debtor.

6. The Pension Plan is a defined benefit plan.

7. The Lay Employees include all full-time employees of: (a) the Diocese; (b) the Diocese's affiliated not-for-profit organizations (the "non-Debtor Catholic Entities"), and (c) the Diocese's affiliated parishes and parish schools (including all full-time school-related personnel teachers, secretaries, aides, staff, cafeteria and maintenance workers, directors or coordinators of religious education).

8. Collectively, the Lay Employees provide various religious, educational, charitable and other social services to hundreds of thousands of individuals and families residing in Delaware and the nine counties of the Eastern Shore of Maryland, including but not limited to: (a) 13,918 Catholic School students; (b) 9,923 religious education students; (c) 233,000 Catholic faithful; and (d) over 80,000 individuals and families who receive critical direct care human resources from Catholic Charities, Inc.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

10. This adversary proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding is a core proceeding arising in the Diocese's chapter 11 case pending in this Court.

12. The Diocese has recognized that the Committee may bring this action.

## FACTUAL BACKGROUND

13.    On October 18, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") thereby commencing the bankruptcy case.

14.    The Debtor continues to operate its business and manage its properties and affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

15.    The Debtor commencement of the above-captioned bankruptcy case as of the Petition Date created an "estate" as defined in 11 U.S.C. § 541(a).

**a)    The Diocese's Employee Pension Plans**

16.    The Pension Plan is the successor of several earlier defined benefit pension plans sponsored and maintained by the Diocese.

17.    On October 2, 1966, the Debtor implemented a pension plan to provide retirement and survivor benefits for employees of the Diocese central offices as well as for the employees of the catholic schools affiliated with the Diocese (the "Original Pension Plan").

18.    On July 1, 1984, the Debtor implemented a second pension plan, the Parish Employee Pension Plan (the "Parish Pension Plan"). The Parish Employee Pension Plan was established to provide retirement and survivor benefits to employees of the parishes affiliated with the Diocese.

19.    Rather than maintain two separate pension plans, on or about July 1, 1990, the Diocese merged the Original Pension Plan and the Parish Pension Plan into a single pension plan known as the "Diocese of Wilmington Pension Plan for Lay Employees."

20.    Catholic Charities, Inc. an not-for-profit organization , established a similar retirement plan for its employees, effective July 1, 1980, known as the "Catholic Charities, Inc. Pension Plan."

21.     On January 1, 2006, at the direction and oversight of the Debtor, the Catholic Charities, Inc. Pension Plan was merged with and into the Diocese of Wilmington Pension Plan for Lay Employees, thereby creating the "Diocese of Wilmington Lay Employees Pension Plan" (the "Lay Employee Pension Plan")  A true and correct photocopy of the Lay Employee Pension Plan is attached hereto as **Exhibit A**.

22.     Upon information and belief, at the time of January 1, 2006 merger, the Catholic Charities, Inc. Pension Plan was "overfunded" and sufficient funds existed within the Pension Plan to pay, in full, the vested retirement benefits of the then participants and beneficiaries of the Catholic Charities, Inc. Pension Plan.

**b)     The Lay Employee Pension Plan**

23.     All full-time employees of the Diocese and all full-time employees of the Catholic not-for-profit organizations within the territorial boundaries of the Roman Catholic Diocese of Wilmington (the "non-Debtor Catholic Entities"), the parishes and parish schools also within the territorial boundaries of the Roman Catholic Diocese of Wilmington (including all full-time school-related personnel teachers, secretaries, aides, staff, cafeteria and maintenance workers, directors or coordinators of religious education) are eligible to participate in the Lay Employee Pension Plan.  The employees who are entitled to participate in the Lay Employee Pension Plan are hereinafter referred to as the "Lay Employees."

24.     The Lay Employee Pension Plan was established for the exclusive benefit of all eligible Lay Employees and does not cover the clergy or religious personnel employed by the Debtor, as the clergy and religious personnel participate in a separate and distinct retirement plan(s).

### c) The Law Governing The Pension Plan

25.     The Lay Employee Pension Plan is considered a "church plan," and as such is exempt from certain requirements of the Employee Retirement Security Act ("ERISA").

26.     Although it is considered a "church plan," the Lay Employee Pension Plan is to be construed and enforced according to the laws of the State of Delaware, the applicable rules and regulations of the Internal Revenue Code and the applicable rules and regulations of ERISA.

### d) The Retirement Benefits Provided Under The Pension Plan

27.     The Lay Employee Pension Plan was established to provide a guaranteed lifetime income to eligible Lay Employees upon their retirement, or in the event a Lay Employee does not live to retirement age, to provide additional security to the Lay Employee's family.

28.     All full-time Lay Employees are eligible to participate in the Lay Employee Pension Plan upon completion of one year of service and attainment of age 21.

29.     In order to be considered a full-time employee for purposes of eligibility for the Lay Employee Pension Plan, an employee must work 1,200 or more hours annually.

30.     The Diocese pays the entire cost of the Lay Employee Pension Plan, and employees are not required to contribute any of their own money to the Lay Employee Pension Plan.

31.     The Lay Employee Pension plan provides a normal retirement benefit equal to 1% of the employee's monthly compensation for each year of service.  For example, an employee with 30 years of service would receive a monthly pension equal to 30% of his or her average monthly compensation beginning at the Lay Employee's normal retirement age.

32.    Participants are eligible to retire on the later of attainment of age 65 or after completing 5 years of plan participation. The Lay Employee Pension Plan also allows for an early retirement option for those participants who have reached age 55 with at least 5 years of service.

33.    Participants who choose to elect early retirement option under the Lay Employee Pension Plan are eligible to receive a benefit equal to 1% of average compensation for each year of service subject to an actuarial reduction equal to 5% per year (calculated to the nearest month) for each year prior to age 65 that the benefits are paid. For example, a participant with 32 years of service who chooses to begin benefits at age 60 would receive a pension equal to 24% of pay. This is calculated by reducing the participant's age 65 pension of 32% of pay (1% per year x 32 years) by 25% (5% per year x 5 years' early commencement).

34.    Benefits due a Lay Employee under the Lay Employees Pension Plan are to be paid in the form of a life annuity.

35.    Lay Employees who are married are required to receive their benefits in the form of a joint and 50% survivor annuity with their spouse. Under this option benefits are payable for as long as the participant lives, and after the participant's death, assuming the participant's spouse is still living, the benefits will continue for one-half the original amount for as long as the participant's spouse lives. The amount of the reduction will vary depending on the ages of the participant and their spouse.

36.    Lay Employees may choose from other annuity options that will provide different forms of protection for their beneficiaries, but the benefit under any option chosen must be reduced to be of equal value with a single life annuity.

37. Lay Employees are 100% vested in their accrued benefit under the Lay Employee Pension Plan after completion of 5 years of service. The "accrued benefit" is equal to 1% of the participant's average monthly pay for each year of service. For example, a participant with 10 years of service would be 100% vested in an accrued benefit equal to 10% (i.e., 1% per year x 10 years) of his or her highest 5 consecutive year average monthly pay. Benefits will be payable beginning at age 65, and will be provided under an annuity contract which is to be purchased in the Lay Employee's name.

38. If a Lay Employee dies before reaching retirement age, the Lay Employee's beneficiary will receive an amount equal to the present economic value of the Lay Employee's accrued benefit under the Lay Employees Pension Plan.

39. Married participants in the Lay Employees Pension Plan are required by Federal law to name their spouse as their beneficiary under the Lay Employees Pension Plan. Married participants are, however, allowed to waive this requirement provided their spouse gives his or her notarized consent, and the participant is at least 35 years of age.

40. Unmarried participants in the Lay Employees Pension Plan may name anyone they choose as their beneficiary.

41. If a participant is unable to continue employment due to physical or mental disability the participant will be automatically fully vested in his or her accrued benefit. A disabled participant may elect to receive their full accrued benefit payable beginning at age 65 or an actuarially reduced benefit payable immediately.

42. When a Lay Employee who is a "Participant" (as defined in the Lay Employees Pension Plan) retires, the Diocese, as Administrator of the Pension Plan, shall take all necessary

steps to cause the payment of the Participant's "Accrued Benefit" (as defined in the Lay Employees Pension Plan).

43. Unless otherwise elected by the Lay Employee, a Lay Employee who is married on the "Annuity Starting Date" (as defined in the Pension Plan) shall receive the value of the Participant's benefits in the form of a joint and survivor annuity.

44. A Lay Employee who is not married on the "Annuity Starting Date" shall receive the value of the Participant's benefit in the form of a single life annuity.

45. A Lay Employee may waive their right to receive a joint and survivor annuity (married Participant) or life annuity (unmarried Participant) and choose instead a monthly pension commencing on the "Participant's Retirement Date" (as defined in the Pension Plan) and continuing for life.

46. The Diocese makes all contributions to the Lay Employee Pension Plan.

47. Upon information and belief, some employers, like Catholic Charities, Inc., pay or directly reimburse the Diocese for the cost of the contributions made to the Lay Employees Pension Plan on behalf of the employer.

48. Upon further information and belief, some employers, like the Parishes, do not directly pay or reimburse the Diocese for the cost of the contributions made to the Lay Employees Pension Plan. Rather, such amounts are effectively subsumed within the assessments paid by the Parishes to the Diocese.

e) **Key Provisions Of The Pension Plan**

49. The Diocese is the "Administrator" of the Lay Employee Pension Plan.

50. A "Beneficiary" is defined under the Lay Employee Pension Plan as a person designated to receive the benefits which are payable under the Lay Employee Pension Plan upon or after the death of a Participant.

51. "Employer" is defined under the Lay Employee Pension Plan as the Catholic Diocese of Wilmington, Inc. and any successor which shall maintain the Lay Employee Pension Plan, and any predecessor which has maintained the Lay Employee Pension Plan. The term Employer also includes any Participating Employer (e.g. parish) which adopts the Lay Employee Pension Plan.

52. "Fiduciary" is defined under the Lay Employee Pension Plan as any person who (a) exercises any discretionary authority or discretionary control respecting management of the Lay Employee Pension Plan or exercises any authority or control respecting management or disposition of its assets, (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Lay Employee Pension Plan or has any authority or responsibility to do so, or (c) has any discretionary authority or discretionary responsibility in the administration of the Lay Employee Pension Plan.

53. "Participant" is defined under the Lay Employees Pension Plan as an "Eligible Employee" who participates in the Lay Employee Pension Plan.

54. "Trustee" is defined under the Lay Employee Pension Plan as the person or entity named as the trustee or named in any separate trust forming a part of the Lay Employee Pension Plan, and any successors.

55. "Trust Fund" is defined under the Lay Employee Pension Plan as the assets of the Plan and Trust as the same shall exist from time to time.

56. Pursuant to Section 2.1 of the Lay Employees Pension Plan, the Diocese, as Employer is empowered to appoint and remove the Trustee and the Administrator from time to time as it deems necessary for the proper administration of the Lay Employee Pension Plan to ensure that the Lay Employee Pension Plan is being operated for the exclusive benefit of the Participants and their Beneficiaries in accordance with the terms of the Lay Employee Pension Plan, the Internal Revenue Code, and ERISA.

57. Pursuant to Section 2.2 of the Lay Employees Pension Plan, the Diocese shall be the Administrator of the Lay Employees Pension Plan.

58. Pursuant to Section 2.3 of the Lay Employees Pension Plan, the Diocese, as Administrator, is to administer the Lay Employees Pension Plan for the exclusive benefit of the Participants and Beneficiaries of the Lay Employees Pension Plan.

59. The Diocese, as Administrator, is also charged with the duties of the general administration of the Lay Employees Pension Plan, and is responsible for maintaining a record of all actions taken, including maintaining all books, records, policies and other data necessary for the proper administration of the Lay Employees Pension Plan.

60. The Diocese, as Administrator, is also responsible for the appointment of advisers to the Lay Employees Pension Plan and the payment of expenses incurred in the administration of the Lay Employees Pension Plan.

61. As the Employer, the Diocese is required to establish a funding policy and method of funding which shall be consistent with the requirements of Title I of the Act (ERISA).

62. As the Employer, the Diocese is required to periodically review the performance of any Fiduciary or other person to whom duties have been delegated or allocated by it under the provisions of the Lay Employee Pension Plan.

63.    The primary responsibility of the Administrator is to administer the Lay Employee Pension Plan for the exclusive benefit of the Participants and their Beneficiaries, subject to the specific terms of the Lay Employee Pension Plan.

64.    The Administrator of the Lay Employee Pension Plan is also charged with the duties of the general administration of the Lay Employee Pension Plan.

65.    The Administrator may also establish procedures to carry out the purposes of the Lay Employee Pension Plan, provided, however, that any procedure, discretionary act, interpretation or construction shall be done in a nondiscriminatory manner and shall be consistent with the intent that the Lay Employee Pension Plan shall continue to be deemed a qualified plan under the terms of Internal Revenue Code Section 401(a), *and shall comply with the terms of the Act (ERISA) and all regulations issued pursuant thereto.*

66.    The Administrator is also required to keep a record of all actions taken and shall keep all other books of account, records, policies, and other data that may be necessary for proper administration of the Lay Employee Pension Plan and shall be responsible for supplying all information and reports to the Internal Revenue Service, Department of Labor, Participants, Beneficiaries and others as required by law.

67.    When a Participant retires, the Administrator shall immediately take, pursuant to the Lay Employee Pension Plan, all necessary steps and execute all required documents to cause the payment of the Participant's Accrued Benefit pursuant to the Lay Employee Pension Plan.

68.    Pursuant to Section 8.1(b) of the Lay Employee Pension Plan, no amendment to the Lay Employee Pension Plan shall be effective if it authorizes or permits any part of the Trust Fund (as defined in the Lay Employee Pension Plan) to be used for or diverted to any purpose *other than for the exclusive benefit of the Participants or their Beneficiaries or estates; or causes*

*any reduction in the Accrued Benefit of any Participant; or causes or permits any portion of the Trust to revert or become property of the Employer.*

69.    The Diocese, as the Employer, shall have the right at any time to amend the Lay Employee Pension Plan, subject to the limitations set forth in the Lay Employee Pension Plan. However, any amendment which affects the rights, duties or responsibilities of the Trustee or Administrator may only be made with the Trustee's or Administrator's written consent.

70.    No amendment to the Lay Employee Pension Plan shall be effective if it authorizes or permits any part of the Trust Fund (other than such part as is required to pay taxes and administration expenses) to be used for or diverted to any purpose other than for the exclusive benefit of the Participants or their Beneficiaries or estates; or causes of any reduction in the Accrued Benefit of any Participant (except to the extent permitted under Code Section 412(c)(3)); or causes or permits any portion of the Trust Fund to revert to or become property of the Employer.

71.    Pursuant to Section 12.2(a) of the Lay Employee Pension Plan no benefit which shall be payable out of the Trust Fund to any person (including a Participant or the Participant's Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void.

72.    Pursuant to Section 12.6(a) of the Lay Employee Pension Plan, it shall be impossible by operation of the Lay Employee Pension Plan, or of the Trust, by termination of either, by the power of revocation or amendment, by the happening of any contingency, by collateral arrangement or by any other means, for any part of the corpus or income of any Trust Fund maintained pursuant to the Lay Employee Plan or any funds contributed thereto to be used

for, or diverted to, purposes other than the exclusive benefit of Participants, Former Participants, or their Beneficiaries.

73. The "named Fiduciaries" of the Lay Employee Pension Plan are (1) the Diocese, as the Employer, (2) the Diocese, as the Administrator, (3) the Trustee, and (4) any Investment Manager appointed under the Lay Employee Pension Plan.

74. In general, the Diocese, as Employer, has sole responsibility for making the contributions provided for under Section 4.1; and shall have the authority to appoint and remove the Trustee and the Administrator; to formulate the Lay Employees Pension Plan's "funding policy and method"; and to amend or terminate, in whole or in part, the Lay Employees Pension Plan.

75. The Diocese, as Administrator, shall have the sole responsibility for the administration of the Lay Employee Pension Plan, including, but not limited to, the items specified at Article II of the Lay Employees Pension Plan, as the same may be allocated or delegated thereunder.

76. The Trustee shall have the sole responsibility of management of the assets held under the Trust, except to the extend directed pursuant to Article II or with response to those assets, the management of which has been assigned to an Investment Manager, who shall be solely responsible for the management of the assets assigned to it, all as specifically provided in the Lay Employee Pension Plan.

77. Each named Fiduciary warrants that any directions given, information furnished, or action taken by it shall be in accordance with the provision of the Lay Employees Pension Plan, authorizing or providing for such direction, information or action of another named Fiduciary as being proper under the Plan, and is not required under the Lay Employees Pension

Plan to inquire into the propriety of any such direction, information or action. It is intended under the Lay Employees Pension Plan that each named Fiduciary shall be responsible for the proper exercise of its own powers, duties, responsibilities and obligations under the Lay Employees Pension Plan.

      **f)**      **The Trust Agreement With Mellon Bank, N.A. And Requirement That All Pension Funds Are To Be Held For The Exclusive Benefit Or The Lay Employees**

78.      On or about November 1, 1998, the Diocese, as Employer, Administrator, Fiduciary and Trustee of the Lay Employees Pension Plan, entered into a trust agreement (the "Pension Trust Agreement") with Mellon Bank, N.A., now Bank of New York Mellon, N.A. ("Mellon" or "Trustee"), as Trustee.

79.      Through the Pension Trust Agreement, the Diocese appointed Mellon as the trustee of the Trust to hold the Pension Funds of the Lay Employee Pension Plan in trust for the exclusive benefit of the Participants of the Lay Employee Pension Plan.

80.      The Pension Funds held by Mellon for the Lay Employees Pension Plan are held in a separate and distinct trust fund account (the "Pension Trust Funds Account).

81.      The Pension Funds and Pension Trust Fund Account are not property of the Debtor's bankruptcy estate.

82.      Pursuant to Section 1.1(e) of the Trust Agreement, notwithstanding anything else in this Agreement to the contrary in the Pension Trust Agreement *no portion of the Pension Funds shall be invested in real estate.*

83.      Pursuant to Section 2.4 of the Trust Agreement, at no time prior to the satisfaction of all liabilities with respect to participants and their beneficiaries under the Lay Employees Pension Plan *shall any part of the Pension Funds be used for or diverted to any purpose other*

than for the exclusive benefit of the Participants and their Beneficiaries of the Lay Employees Pension Plan.

84.     Pursuant to Section 2.6 of the Trust Agreement, to the extent assets of the Lay Employees Pension Plan are to be held in checking accounts outside the Trust Agreement, the Dicoese, as *the Named Fiduciary shall cause such assets to be held in trust and secure from the claims of all creditors of the Diocese.*

85.     Pursuant to Section 9.1 of the Trust Agreement, except as may be provided by law, the Pension Funds shall not be subject to any form of attachment, garnishment, sequestration or other actions of collection afforded creditors of the Diocese.

### g)     The Pension Funds Held By Bank Of New York Mellon

86.     Upon information and belief, as of October 31, 2010, Mellon, or its successor Bank of New York Mellon, N.A., held approximately $4.81 million of Pension Funds in the Pension Trust Fund Account pursuant to the Trust Agreement.

87.     The Pension Funds held in the Pension Trust Fund Account are being held for the exclusive benefit of the Participants and Beneficiaries of the Lay Employees Pension Plan.

88.     The Pension Funds held in the Pension Trust Fund account are not property of the Diocese's bankruptcy estate.

89.     The Pension Funds held in the of the Pension Trust Fund Account may not be used or diverted to anyone prior to the satisfaction of all liabilities due and owing the Lay Employees and their Beneficiaries under the Lay Employees Pension Plan.

### h)     The Pension Funds Held In the Diocese's Pooled Investment Account

90.     Upon information and belief, the Diocese, maintains a pooled investment program on behalf of itself, its affiliated non-debtor Catholic Entities and the Parishes.

91.    The Diocese operates the program through an account known as the PIA.

92.    Upon information and belief, the Diocese, on the advice of certain employees, agents, representatives, advisors and/or consultants, directed that the Diocese's annual contributions to the Lay Employees Pension Plan be deposited in the PIA rather than in the Pension Trust Fund Account maintained by Mellon.

93.    The Diocese directed that the annual contributions to the Lay Employees Pension Trust Fund be deposited into the PIA as the Diocese believed the funds held in the PIA would earn a high rate of interest (higher rate of return) than what the Diocese could expect to receive/earn from depositing the annual contributions into the Pension Trust Fund maintained by Mellon.

94.    Consequently, rather than depositing the annual contributions in the Pension Trust Fund Account,  per the Pension Trust Agreement, the Diocese began depositing annual pension contributions into the PIA.

95.    Upon information and belief, as of October 31, 2010, the amount of Pension Funds held in the PIA approximated $4.371 million.

96.    The Pension Funds held in the PIA are being held by the Diocese for the exclusive benefit of the Lay Employees and are not property of the Diocese's bankruptcy estate and may not be used to satisfy the claims of any of the Diocese's other creditors.

97.    The Pension Funds held in the PIA may not be used or diverted to anyone prior to the satisfaction of all liabilities with respect to Lay Employees and their Beneficiaries under the Lay Employees Pension Plan.

**i)** **The Diocese's Failure To Consult With Lay Employee Pension Advisory Board**

98.    The Diocese is named as the "Employer" under the Lay Employee Pension Plan. The Trustee of the Lay Employee Pension Plan is the "Lay Pension Plan Advisory Committee."

99.    Upon information and belief, at all relevant times hereto, Mgsr. Cini has served as the Chair of the Lay Pension Plan Advisory Committee.

100.    Upon information and belief, the Lay Employee Pension Advisory Committee has met only 2 times in the last 30 years, once in 1996 and possibly once in 2000.

101.    Upon further information and belief the Diocese never consulted with, nor relied upon, the Lay Employee Pension Advisory Committee, when the Diocese made the decision to deposit annual pension contributions to the PIA rather than to the Pension Trust Fund maintained by Mellon.

102.    Upon further information and belief,  the Lay Employee Pension Advisory Committee did not authorize, nor approve, the Diocese's decision to deposit the annual pension contributions into the PIA versus depositing the annual contributions with the Pension Trust Fund maintained by Mellon.

**j)** **The Diocese Unilaterally Changes How It Pays Benefits Under the Plan**

103.    In January 2009, the Diocese, without consulting the Lay Employee Pension Advisory Board, decided to discontinue purchasing life annuity contracts for retired Lay Employees in accordance with the terms and provisions of the Lay Employee Pension Plan.

104.    Rather, the Diocese decided to shift to a "pay-as-you-go" system, whereby, in lieu of purchasing an annuity contract for the retired Lay Employee pursuant to the terms of the Lay Employee Pension Plan, the Diocese would directly pay the monthly retirement benefit due a retired Lay Employee from the Pension Trust Fund Account maintained by Mellon.

105.    The "pay-as-you-go" system unilaterally adopted by the Diocese violates the terms and provisions of the Lay Employees Pension Plan, as well as certain provisions of applicable state and federal law, including certain provisions of the Internal Revenue Code and ERISA.

### k)    Relevant Internal Revenue Code Provisions With Respect To A Non-ERISA Church Plan

106.    Internal Revenue Code Section 401(a) provides, in relevant part, that a trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust.

107.    Subsections (11), (12), (13), (14), (15), (19), and (20) of IRC Section 401(a) apply to "church plans" as that term is defined in Section 3(33) of the ERISA.

108.    Pursuant to Internal Revenue Code section 401(a)(2), also known as the "Exclusive Benefit Rule," no part of the assets of the pension trust fund may be used or diverted to anyone prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust.

### Count I
### Declaratory Judgment That The Pension Funds Held In The PIA Are Being Held For The Exclusive Benefit Of The Participants And Beneficiaries Of The Lay Employees Pension Plan

109.    The Committee restates and reincorporates paragraphs 1 through 104 as if the same are fully restated herein.

110.    The Diocese has deposited certain pension funds belonging to the Lay Employee Pension Plan in the PIA.

111.    The pension funds deposited by the Diocese in the PIA are readily identifiable.

112. The pension funds deposited by the Diocese into the PIA were deposited into the PIA for the exclusive benefit of the Participants and Beneficiaries of the Lay Employee Pension Plan.

113. The pension funds deposited by the Diocese into the PIA are "pension trust funds" and are not property of the Debtor's bankruptcy estate, and are not subject to the claims of the Debtor's other creditors.

114. Wherefore, the Committee respectfully requests that the Court enter an order declaring: (a) that the Pension Funds held by in the Diocese's PIA are funds that are being held by the Defendant to and for the exclusive benefit of the participants in Pension Plan; (b) that the Pension Funds are not property of the Debtor's bankruptcy estate; and (c) that the Pension Funds are not subject to the claims of the Diocese's other creditors.

**Count II**
**Declaratory Judgment That The Pension Funds**
**Held In The PIA Are Not The Property Of The Debtor's Bankruptcy Estate**

115. The Committee restates and reincorporates paragraphs 1 through 104 as if the same are fully restated herein.

116. The Diocese has deposited certain Pension Funds belonging to the Lay Employee Pension Plan in the PIA.

117. The Pension Funds deposited by the Diocese in the PIA are readily identifiable.

118. The Pension Funds deposited by the Diocese into the PIA were deposited into the PIA for the exclusive benefit of the Participants and Beneficiaries of the Lay Employee Pension Plan.

119. The Pension Funds deposited by the Diocese into the PIA are "pension trust funds" and are not property of the Debtor's bankruptcy estate, and are not subject to the claims of the Debtor's other creditors.

120. Wherefore, the Committee respectfully requests that the Court enter an order declaring: (a) that the Pension Funds are not property of the Debtor's bankruptcy estate; and (b) that the Pension Funds are not subject to the claims of the Diocese's other creditors.

### Count III
### Declaratory Judgment That The Pension Funds
### Held In The PIA Are Being Held In Trust For The Benefit Of
### The Participants And Beneficiaries Of The Lay Employees Pension Plan

121. The Committee restates and reincorporates paragraphs 1 through 104 as if the same are fully restated herein.

122. The Diocese has deposited certain Pension Funds belonging to the Lay Employee Pension Plan in the PIA.

123. The Pension Funds deposited by the Diocese in the PIA are readily identifiable.

124. The Pension Funds deposited by the Diocese into the PIA were deposited into the PIA for the exclusive benefit of the Participants and Beneficiaries of the Lay Employee Pension Plan.

125. The Pension Funds deposited by the Diocese into the PIA are "pension trust funds" and are not property of the Debtor's bankruptcy estate, and are not subject to the claims of the Debtor's other creditors.

126. Wherefore, the Committee respectfully requests that the Court enter an order declaring: (a) that the Pension Funds held by in the Diocese's PIA that are being held by the Defendant to and for the exclusive benefit of the participants in the Diocese of Wilmington

Pension Lay Employees Pension Plan (the "Pension Plan"); (b) that the Pension Funds are not property of the Debtor's bankruptcy estate; and (c) that the Pension Funds are not subject to the claims of the Diocese's other creditors.

## Count IV
### Declaratory Judgment That By Depositing The Pension Funds Into the PIA The Diocese Breached Its Fiduciary Duties Of Due Care, Loyalty and Prudence To The Participants And Beneficiaries Of The Lay Employees Pension

127.    The Committee restates and reincorporates paragraphs 1 through 104 as if the same are fully restated herein.

128.    As a fiduciary of the Lay Employees Pension Plan the Diocese is obligated to administer the Lay Employees Pension Plan for the exclusive benefit of the Participants and Beneficiaries of the Lay Employees Pension Plan.

129.    As a fiduciary of the Lay Employees Pension Plan, the Diocese is obligated to prevent self-dealing.

130.    As a fiduciary of the Lay Employee Pension Plan the Diocese is obligated to act with the skill, care, prudence and diligence on behalf of the Participants and Beneficiaries of the Lay Employee Pension plan.

131.    As a fiduciary of the Lay Employee Pension Plan the Diocese is obligated to follow the terms and provisions of the Lay Employees Pension Plan.

132.    As a fiduciary of the Lay Employee Pension Plan the Diocese owes a duty of care to the Participants and Beneficiaries of the Lay Employees Pension Plan.

133.    As a fiduciary of the Lay Employee Pension Plan the Diocese owes a duty of loyalty to the Participants and Beneficiaries of the Lay Employees Pension Plan.

134. By depositing the pension funds of the Lay Employees Pension Plan into the PIA, the Diocese breached its obligation to administer the Lay Employees Pension Plan for the exclusive benefit of the Participants and Beneficiaries of the Lay Employees Pension Plan.

135. By depositing the pension funds of the Lay Employees Pension Plan into the PIA, and by failing to consult with the Lay Employees Pension Advisory Board, and by unilaterally changing the terms of the Lay Employee Pension Plan, the Diocese breached its obligation to prevent self-dealing .

136. By depositing the pension funds of the Lay Employees Plan into the PIA, and by failing to consult with the Lay Employees Pension Advisory Board, and by unilaterally changing the terms of the Lay Employee Pension Plan, the Diocese failed to act with the skill, care, prudence and diligence required of the Diocese, and thereby breached its duty to the Participants and Beneficiaries of the Lay Employee Pension Plan.

137. By depositing the pension funds of the Lay Employees Plan into the PIA, and by failing to consult with the Lay Employees Pension Advisory Board, and by unilaterally changing the terms of the Lay Employee Pension Plan, the Diocese has failed to follow the terms and provisions of the Lay Employees Pension Plan.

138. By depositing the pension funds of the Lay Employees Plan into the PIA, and by failing to consult with the Lay Employees Pension Advisory Board, and by unilaterally changing the terms of the Lay Employee Pension Plan, the Diocese breached its duty of care to the Participants and Beneficiaries of the Lay Employees Pension Plan.

139. By depositing the pension funds of the Lay Employees Plan into the PIA, and by failing to consult with the Lay Employees Pension Advisory Board, and by unilaterally changing

the terms of the Lay Employee Pension Plan, the Diocese breached its duty of loyalty to the Participants and Beneficiaries of the Lay Employees Pension Plan.

140.    By depositing the pension funds of the Lay Employees Plan into the PIA, and by failing to consult with the Lay Employees Pension Advisory Board, and by unilaterally changing the terms of the Lay Employee Pension Plan, the Diocese failed to act with the skill, care, prudence required under the Lay Employees Pension Plan, applicable state law, ERISA and the Internal Revenue Code.

141.    Wherefore, the Committee respectfully requests that Court enter an order declaring that: (a) the Diocese failed to administer the Lay Employees Pension Plan for the exclusive benefit of the Participants and Beneficiaries of the Lay Employees Pension Plan; (b) the Diocese engaged in self-dealing in connection with the Lay Employees Pension Plan; (c) the Diocese failed to act with the skill, care, prudence and diligence on behalf of the Participants and Beneficiaries of the Lay Employee Pension Plan; (e) the Diocese failed to follow the terms and provisions of the Lay Employees Pension Plan; (f) the Diocese breached its duty of care to the Participants and Beneficiaries of the Lay Employees Pension Plan; (g) the Diocese breached its duty of loyalty to the Participants and Beneficiaries of the Lay Employees Pension Plan; (h) the Diocese failed to act with the skill, care and  prudence required under the Lay Employees Pension Plan, applicable state law, ERISA and the Internal Revenue Code.

### Conclusion

**WHEREFORE**, the Official Committee of Lay Employees of the Catholic Diocese of Wilmington, Inc., respectfully requests the Court grant the above requested relief and grant the Committee any and all further relief the Court deems just and appropriate.

Dated: January **4**, 2011

**GREENBERG TRAURIG, LLP**

Donald J. Detweiler (No. 3087)
Sandra G. M. Selzer (No. 4283)
Matthew L. Hinker (No. 5348)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
T (302) 661-7000
F (302) 661-7360
detweilerd@gtlaw.com

Counsel to the Official Committee of Lay
Employees