## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CATHOLIC DIOCESE OF WILMINGTON, INC., | ) Case No. 09-13560 (CSS) |
| a Delaware Corporation, | ) |
| | ) Honorable Christopher S. Sontchi |
| Debtor.[1] | ) |
| | ) |

## SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## OF CATHOLIC DIOCESE OF WILMINGTON, INC.

Dated: May 23, 2011

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anthony G. Flynn (No. 74)
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Maris J. Finnegan (No. 5294)
Patrick A. Jackson (No. 4976)
Justin H. Rucki (No. 5304)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtor*

---

[1] The last four digits of the Debtor 's federal tax identification number are 5439. The Debtor's mailing address is 1925 Delaware Avenue, P.O. Box 2030, Wilmington, Delaware 19899-2030.

068902.1001

TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARTICLE I : DEFINITIONS AND INTERPRETATION ................................................... 1

   1.1    DEFINED TERMS ................................................................................................. 1

   1.2    INTERPRETATION .............................................................................................. 1

   1.3    TIME PERIODS .................................................................................................... 2

   1.4    EXHIBITS ............................................................................................................. 2

   1.5    PROVISIONS DEEMED STRICKEN .................................................................. 2

ARTICLE II : TREATMENT OF UNCLASSIFIED CLAIMS ........................................... 2

   2.1    ADMINISTRATIVE CLAIMS ............................................................................ 2

       (a)      Treatment .................................................................................... 2
       (b)      General Administrative Bar Date ............................................. 3
       (c)      Bar Date for Professional Claims ............................................ 4

   2.2    STATUTORY FEES ............................................................................................. 4

   2.3    PRIORITY TAX CLAIMS ................................................................................... 4

ARTICLE III : CLASSIFICATION OF CLAIMS ............................................................... 5

   3.1    SUMMARY ........................................................................................................... 5

   3.2    CLASSIFICATION .............................................................................................. 5

   3.3    IMPAIRMENT; VOTING .................................................................................... 5

       (a)      Non-Voting Classes ................................................................... 5
       (b)      Voting Classes ........................................................................... 5

ARTICLE IV : TREATMENT OF CLASSIFIED CLAIMS ............................................... 5

   4.1    SECURED CLAIMS (CLASS 1) ......................................................................... 5

   4.2    PRIORITY CLAIMS (CLASS 2) ........................................................................ 6

   4.3    SURVIVOR CLAIMS (CLASS 3A) .................................................................... 6

       (a)      Treatment in a Settlement Plan ............................................... 6
       (b)      Treatment in a CDOW-Only Plan ........................................... 6

i

| | | |
|---|---|---|
| 4.4 | LAY PENSION CLAIMS (CLASS 3B) | 7 |
| (a) | Treatment in a Settlement Plan | 7 |
| (b) | Treatment in a CDOW-Only Plan | 7 |
| 4.5 | DEDA BOND TRANSACTION CLAIMS (CLASS 3C) | 7 |
| (a) | Treatment under a Settlement Plan | 7 |
| (b) | Treatment under a CDOW-Only Plan | 7 |
| (c) | Timing and Manner of Election; Effect of No Election | 8 |
| 4.6 | CLERGY PENSION CLAIMS (CLASS 3D) | 8 |
| (a) | Treatment in a Settlement Plan | 8 |
| (b) | Treatment in a CDOW-Only Plan | 8 |
| 4.7 | GIFT ANNUITY CLAIMS (CLASS 3E) | 8 |
| (a) | Treatment in a Settlement Plan | 9 |
| (b) | Treatment in a CDOW-Only Plan | 9 |
| 4.8 | OTHER UNSECURED CLAIMS (CLASS 3F) | 9 |
| (a) | Treatment in a Settlement Plan | 9 |
| (b) | Treatment in a CDOW-Only Plan | 9 |
| 4.9 | PENALTY CLAIMS (CLASS 4) | 9 |
| (a) | Treatment in a Settlement Plan | 9 |
| (b) | Treatment in a CDOW-Only Plan | 9 |
| ARTICLE V : PROPOSED SETTLEMENTS EMBODIED IN PLAN | | 10 |
| 5.1 | PROVISIONS APPLICABLE TO SETTLEMENT PLAN | 10 |
| (a) | NDCE Settlement Contribution | 10 |
| (b) | Insurer Settlement Contribution | 10 |
| (c) | Assignment of Estate's Order/Perpetrator Indemnification Claims to Settlement Trust | 11 |
| (d) | Assignment of Third-Party Indemnity Claims to Parish-Only Survivor Claimants | 11 |
| (e) | Resolution of PIA Litigation | 11 |
| (f) | Suspension of Duties of Fee Examiner | 11 |
| (g) | Debtor Waiver and Release of Estate Causes of Action Against Non-Debtor Catholic Entities and Settling Insurers | 11 |
| (h) | Resolution of Disputes Regarding Restricted PIA Funds | 12 |
| (i) | Additional Documentation; Non-Material Modifications | 12 |
| (j) | Non-Settling Insurers Unaffected | 12 |
| 5.2 | CONDITIONS PRECEDENT TO SETTLEMENT PLAN | 12 |
| (a) | Overwhelming Acceptance by Survivors | 12 |
| (b) | Non-Accepting Survivors Bound by Plan | 12 |
| (c) | Resolution of Objections | 13 |
| 5.3 | PROVISIONS APPLICABLE TO CDOW-ONLY PLAN | 13 |

ii

(a)      Resolution of PIA Investment Claims ........................................ 13

(b)      Limitation on PIA Distribution Clawback Claims .................... 13

(c)      St. Ann Indemnity Claim ........................................................ 13

5.4     RESERVATION OF RIGHTS .......................................................... 13

5.5     FORBEARANCE FROM PROSECUTION OF CDOW-ONLY PLAN ........... 13

ARTICLE VI : MEANS OF IMPLEMENTING A SETTLEMENT PLAN .................... 14

6.1     APPLICABILITY OF THIS ARTICLE ............................................. 14

6.2     IMPLEMENTATION OF PLAN ...................................................... 14

6.3     VESTING ASSETS IN THE SETTLEMENT TRUST ............................ 14

6.4     ASSUMPTION OF LIABILITY FOR SURVIVOR CLAIMS .................... 14

6.5     SETTLEMENT TRUST DISTRIBUTION PROCEDURES ...................... 14

6.6     RETENTION OF JURISDICTION .................................................. 15

ARTICLE VII : THE SETTLEMENT TRUST IN A SETTLEMENT PLAN ................. 16

7.1     APPLICABILITY OF THIS ARTICLE ............................................. 16

7.2     FORMATION AND FUNDING OF THE SETTLEMENT TRUST ............. 16

7.3     NO EXECUTION ....................................................................... 16

7.4     SETTLEMENT TRUST AGREEMENT ............................................ 16

7.5     TAX MATTERS ....................................................................... 17

7.6     APPOINTMENT OF THE SETTLEMENT TRUSTEE ......................... 17

7.7     APPOINTMENT OF THE SETTLEMENT ARBITRATOR ................... 17

7.8     MISCELLANEOUS PROVISIONS ................................................. 17

ARTICLE VIII : MEANS OF IMPLEMENTING A CDOW-ONLY PLAN ................. 18

8.1     APPLICABILITY OF THIS ARTICLE ............................................. 18

8.2     IMPLEMENTATION OF PLAN ...................................................... 18

8.3     VESTING OF ASSETS IN THE PLAN TRUST ................................. 18

8.4     ASSUMPTION OF PLAN OBLIGATIONS AND LIABILITY
        FOR CLAIMS ......................................................................... 18

iii

8.5    IBNR RESERVES ................................................................ 19

8.6    RETENTION OF JURISDICTION ...................................... 19
    (a)    By the Bankruptcy Court.......................................... 19
    (b)    By the District Court ................................................ 21

ARTICLE IX : THE PLAN TRUST IN A CDOW-ONLY PLAN ......... 21

9.1    APPLICABILITY OF THIS ARTICLE .............................. 21

9.2    FORMATION AND FUNDING OF THE PLAN TRUST ......... 21

9.3    PLAN TRUST AGREEMENT ............................................. 21

9.4    TAX MATTERS ................................................................. 22

9.5    APPOINTMENT OF THE PLAN TRUSTEE ....................... 22

9.6    RIGHTS AND RESPONSIBILITIES OF THE PLAN TRUSTEE ......... 22

9.7    INVESTMENT POWERS; PERMITTED CASH EXPENDITURES ........... 24

9.8    REGISTRY OF BENEFICIAL INTERESTS ....................... 24

9.9    NON-TRANSFERABILITY OF INTERESTS ..................... 24

9.10    TERMINATION .............................................................. 24

9.11    PLAN OVERSIGHT COMMITTEE .................................. 25
    (a)    Appointment .............................................................. 25
    (b)    Membership ............................................................... 25
    (c)    Fiduciary Duties ........................................................ 25
    (d)    Rights and Duties ...................................................... 25
    (e)    No Compensation ....................................................... 26

9.12    LIABILITY; INDEMNIFICATION .................................. 26

9.13    RETENTION OF PROFESSIONALS ................................ 26
    (a)    Plan Trust Professionals ............................................ 26
    (b)    Plan Oversight Committee Professionals ................... 27

9.14    PRESERVATION OF ALL CAUSES OF ACTION ............. 27

9.15    SUCCESSION TO LITIGATION ..................................... 27

ARTICLE X : PROCEDURES FOR LIQUIDATION AND ALLOWANCE OF
    SURVIVOR CLAIMS IN CDOW-ONLY PLAN ................... 27

10.1    APPLICABILITY OF THIS ARTICLE .............................. 27

iv

10.2    CLASS 3A ELECTION OF ADR, LITIGATION, OR CONVENIENCE TREATMENT ........................................................................... 27

10.3    GLOBAL REMOVAL OF PENDING STATE-COURT LITIGATION .......... 27

10.4    SURVIVOR ADR PROCESS ................................................................... 28

10.5    SURVIVOR LITIGATION PROCESS ...................................................... 28

10.6    SURVIVOR CONVENIENCE PROCESS .................................................. 28

10.7    EFFECT OF NO ELECTION ................................................................... 28

10.8    CIVIL COMPLAINT BY SURVIVOR LITIGATION CLAIMANT .............. 28

10.9    FEES AND EXPENSES ......................................................................... 29

10.10  AGREEMENTS OUTSIDE THE ADR AND LITIGATION PROCEDURES ........................................................................................ 29

ARTICLE XI : INSURANCE POLICIES ................................................................. 29

11.1    CONTINUATION OF INSURANCE POLICIES ....................................... 29

11.2    PROVISIONS APPLICABLE TO CDOW-ONLY PLAN ........................... 30

(a)       Right to Insurance Proceeds ..................................................... 30
(b)       Insurance Neutrality ................................................................... 30
(c)       Additional Protections ............................................................... 30

ARTICLE XII : THE POOLED INVESTMENT ACCOUNT ...................................... 31

12.1    CONTINUATION OF PIA CUSTODY AGREEMENT AND INVESTMENT MANAGEMENT AGREEMENTS ................................... 31

12.2    CONTINUATION OF TRUST RELATIONSHIPS .................................... 32

12.3    RIGHTS OF CUSTODIAN AND INVESTMENT MANAGERS .................... 32

12.4    DISPUTE ESCROWS IN CDOW-ONLY PLAN ....................................... 32

(a)       Non-Debtor PIA Dispute Escrow ............................................. 32
(b)       Restricted Fund Dispute Escrow .............................................. 33
(c)       Lay Pension Dispute Escrow ...................................................... 34
(d)       Accounting ................................................................................... 34

12.5    USE OF UNDISPUTED RESTRICTED PIA FUNDS ............................... 35

12.6    FINAL § 345 WAIVER ........................................................................ 35

**ARTICLE XIII : PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION** ....................................... 35

13.1   NO EFFECT ON SURVIVOR CLAIMS IN SETTLEMENT PLAN .............. 35

13.2   RESERVATION OF RIGHTS TO OBJECT TO CLAIMS ............................. 35

13.3   OBJECTIONS TO CLAIMS ................................................................. 35

13.4   SERVICE OF OBJECTIONS ............................................................... 36

13.5   DETERMINATION OF CLAIMS .......................................................... 36

13.6   NO DISTRIBUTIONS PENDING ALLOWANCE ...................................... 36

13.7   CLAIM ESTIMATION ...................................................................... 37

**ARTICLE XIV : DISTRIBUTIONS UNDER THE PLAN** ........................................ 37

14.1   NO EFFECT ON SURVIVOR CLAIMS IN SETTLEMENT PLAN .............. 37

14.2   TIMING OF DISTRIBUTIONS ........................................................... 37

  (a)       S/A/P Claims ............................................................... 37
  (b)       Interim Distributions on Account of Allowed Claims in CDOW-Only Plan ...................................................... 37

14.3   PAYMENT DATE ........................................................................... 38

14.4   UNDELIVERABLE DISTRIBUTIONS .................................................... 38

14.5   SETOFFS ..................................................................................... 38

14.6   NO INTEREST ON CLAIMS ............................................................. 38

14.7   WITHHOLDING TAXES ................................................................... 38

**ARTICLE XV : EFFECTIVENESS OF THE PLAN** .............................................. 39

15.1   CONDITIONS PRECEDENT TO EFFECTIVE DATE ............................... 39

  (a)       Approval of Disclosure Statement ............................... 39
  (b)       Entry of Confirmation Order ....................................... 39
  (c)       Establishment of S/A/P Claims Reserve ...................... 39
  (d)       Appointment of Special Arbitrator .............................. 39
  (e)       Lay Pension Plan Reaffirmation Agreement ................ 39
  (f)       Conditions Applicable to Settlement Plan .................. 39
  (g)       Conditions Applicable to CDOW-Only Plan ................ 40

15.2   NON-CONSUMMATION OF SETTLEMENT PLAN ................................. 41

15.3    NON-CONSUMMATION OF CDOW-ONLY PLAN ......................................... 41

ARTICLE XVI : EFFECTS OF CONFIRMATION ......................................................... 42

16.1    DISSOLUTION OF OFFICIAL COMMITTEES.............................................. 42

16.2    DISCHARGE INJUNCTION ......................................................................... 42

16.3    CHANNELING INJUNCTION IN SETTLEMENT PLAN.............................. 43

16.4    EXCULPATION; LIMITATION OF LIABILITY ............................................ 43

ARTICLE XVII : THE REORGANIZED DEBTOR......................................................... 44

17.1    CONTINUED CORPORATE EXISTENCE ...................................................... 44

17.2    VESTING OF ASSETS .................................................................................. 44

17.3    IDENTITY OF OFFICERS OF REORGANIZED DEBTOR ........................... 44

17.4    FURTHER AUTHORIZATION ..................................................................... 44

17.5    VOLUNTARY UNDERTAKINGS OF REORGANIZED DEBTOR, THE
        BISHOP, AND THE NON-DEBTOR CATHOLIC ENTITIES ...................... 44

    (a)        Lay Pension Plan Reaffirmation Agreement............................................ 44
    (b)        Establishment of Charitable Trust for Survivors..................................... 45
    (c)        Additional Non-Monetary Undertakings for the
               Protection of Children ........................................................................... 45

17.6    MANDATORY ARBITRATION OF DISPUTES ........................................... 45

ARTICLE XVIII : MISCELLANEOUS PROVISIONS ................................................... 46

18.1    REJECTION OF UNASSUMED EXECUTORY CONTRACTS...................... 46

18.2    FINAL ORDER............................................................................................. 46

18.3    AMENDMENTS AND MODIFICATIONS ................................................... 46

18.4    U.S. TRUSTEE REPORTS ........................................................................... 46

18.5    NO WAIVER................................................................................................ 46

18.6    TAX EXEMPTION ....................................................................................... 46

18.7    NON-SEVERABILITY ................................................................................. 47

18.8    REVOCATION ............................................................................................. 47

YCST01:10757554.7                                                                              068902.1001

18.9    CONTROLLING DOCUMENTS ............................................................... 47

18.10   GOVERNING LAW .............................................................................. 47

18.11   NOTICES............................................................................................. 47

18.12   FILING OF ADDITIONAL DOCUMENTS ......................................... 48

18.13   POWERS OF OFFICERS .................................................................... 48

18.14   DIRECTION TO A PARTY ................................................................. 48

18.15   SUCCESSORS AND ASSIGNS.......................................................... 48

18.16   CERTAIN ACTIONS .......................................................................... 49

18.17   FINAL DECREE ................................................................................. 49

18.18   PLAN AS SETTLEMENT COMMUNICATION ................................. 49

ARTICLE XIX : BANKRUPTCY RULE 9019 REQUEST ................................. 49

ARTICLE XX : CONFIRMATION REQUEST ................................................. 50

YCST01:10757554.7                                                                    068902.1001

**INTRODUCTION**

Catholic Diocese of Wilmington, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case, proposes this Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code. The Plan contemplates, first and foremost, the consummation of a global settlement of clerical sexual abuse Claims against the Debtor and the Non-Debtor Catholic Entities memorialized in a certain Settlement Term Sheet dated February 2, 2011, by and among the Debtor and State Court Counsel. However, in the event this global settlement is not approved by the Bankruptcy Court or otherwise cannot be consummated, the Plan contemplates the creation of a liquidating trust for the benefit of all Creditors of the Debtor, to which substantially all Assets of the Estate will be transferred, which trust will be responsible for the liquidation of Assets and payment of Creditors in accordance with the Bankruptcy Code and applicable nonbankruptcy law.

**ARTICLE I:**
**DEFINITIONS AND INTERPRETATION**

**1.1    DEFINED TERMS.** For the purposes of the Plan, except as expressly provided and unless the context otherwise requires, all capitalized terms not otherwise defined in context have the meanings ascribed to them in Exhibit A hereto. For purposes of Exhibits D, E, and F, all capitalized terms defined in such Exhibits shall have the meanings ascribed to them therein, notwithstanding any contrary definition in Exhibit A.

**1.2    INTERPRETATION.** For purposes of the Plan:

(a)    any term that is not defined herein, but that is used in the Bankruptcy Code and/or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code and/or the Bankruptcy Rules, as applicable;

(b)    the term "including" is intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to";

(c)    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(d)    the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(e)    any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(f)    any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented;

1

(g)    unless otherwise specified, all references in the Plan to "Articles," "Sections," and "Exhibits" are references to Articles, Sections, and Exhibits of or to the Plan;

(h)    the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(i)    captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan;

(j)    any provision of the Plan deemed stricken by operation of Section 1.5 shall not affect the interpretation of any provision of the Plan not so stricken; and

(k)    the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

**1.3    TIME PERIODS.** In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. If any act under the Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.4    EXHIBITS.** All Exhibits to the Plan (including the Supplemental Plan Documents) are hereby incorporated by reference and made part of the Plan as if set forth fully herein, <u>provided</u> <u>that</u>, for the purposes of interpretation of <u>Exhibits D</u>, <u>E</u>, and <u>F</u>, each such Exhibit shall be interpreted by its own terms, it being intended that such Exhibits constitute stand-alone documents that shall be interpreted and applied independent of the Plan.

**1.5    PROVISIONS DEEMED STRICKEN.** Articles, Sections, and provisions of, and Exhibits to, the Plan that are by their terms effective only in a Settlement Plan shall be deemed stricken if the Plan is confirmed as a CDOW-Only Plan. Articles, Sections, and provisions of, and Exhibits to, the Plan that are by their terms effective only in a CDOW-Only Plan shall be deemed stricken if the Plan is confirmed as a Settlement Plan.

### ARTICLE II:
### <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

**2.1    ADMINISTRATIVE CLAIMS.** As provided in § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article II.

(a)    **Treatment.** Subject to the bar date provisions herein and additional requirements for Professionals and certain other Persons set forth below, each

holder of an Allowed Administrative Claim against the Debtor shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, unless the holder agrees or shall have agreed to other treatment of such Claim no less favorable to the Debtor; provided, however, that any Administrative Claim incurred postpetition by the Debtor in the ordinary course of its operations or arising pursuant to one or more postpetition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor (if before the Effective Date) or the Plan Administrator (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other.

      **(b)**      **General Administrative Bar Date.**

      (1)      Except as otherwise set forth in this Section 2.1, requests for payment of Administrative Claims must be Filed and served on the Post-Confirmation Notice Parties no later than (A) thirty (30) days after a notice of the Effective Date is Filed with the Bankruptcy Court and served, or (B) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 30-day period (the "Administrative Claim Bar Date"). Holders of Administrative Claims (including the holders of any Claims for federal, state or local taxes, but excluding Professional Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtor, the Plan Administrator, the Reorganized Debtor, or any of their property. Notwithstanding the foregoing, any Bar Dates established during the course of this Chapter 11 Case shall remain in full force and effect.

      (2)      All objections to allowance of Administrative Claims (excluding Professional Claims) must be Filed by any parties in interest no later than ninety (90) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"). The Administrative Claim Objection Deadline may be initially extended for an additional ninety (90) days at the sole discretion of the Plan Administrator upon the Filing of a notice of the extended Administrative Claim Objection Deadline with the Bankruptcy Court. Thereafter, the Administrative Claim Objection Deadline may be further extended by an Order of the Bankruptcy Court, which Order may be granted without notice to any party in interest. If no objection to the applicable Administrative Claim is Filed on or before the Administrative Claim Objection Deadline, as may be extended, such Administrative Claim will be deemed Allowed, subject to the Bankruptcy Court's discretion to extend such bar date retroactively. For the avoidance of doubt, the Administrative Claim Objection Deadline established by this subparagraph (2), as may be extended, shall control over any contrary deadline set forth in any requests for payment of Administrative Claims.

      (3)      The Administrative Bar Date shall not apply to any request for payment of an Administrative Claim that is a Survivor Claim.

      

(c)        **Bar Date for Professional Claims.**

(1)        All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Case) shall File and serve on the Post-Confirmation Notice Parties and the Fee Examiner (unless the duties of the Fee Examiner have been suspended as provided herein) an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than (A) sixty (60) days after a notice of the Effective Date is filed with the Bankruptcy Court and served, or (B) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 60-day period (the "Professional Claims Bar Date").

(2)        Objections to Professional Claims or Claims of other Persons for compensation or reimbursement of expenses must be Filed and served on the Post-Confirmation Notice Parties and the Professionals or other Persons to whose application the objections are addressed on or before  (A) forty-five (45) days after the Professional Claims Bar Date or (B) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Plan Administrator (on and after the Effective Date), as applicable, and the affected Professional or other Person.

**2.2        STATUTORY FEES.** All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Plan Administrator shall pay quarterly fees to the U.S. Trustee, in Cash, until the Chapter 11 Case is closed, and a Final Decree is entered. In addition, the Plan Administrator shall File post-Confirmation Date quarterly reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to File a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and its Estate.

**2.3        PRIORITY TAX CLAIMS.** With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Plan Administrator shall (i) pay such Claim in Cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtor (if before the Effective Date) or the Plan Administrator (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtor or the Plan Administrator than the treatment set forth in clause (i) of this sentence.

## ARTICLE III:
## CLASSIFICATION OF CLAIMS

    **3.1**    **SUMMARY.** The categories of Claims listed below classify Claims (except for Administrative Claims and Priority Tax Claims) for all purposes, including voting, confirmation of the Plan and distribution pursuant to the Plan.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|-------|-------------|------------|--------|
| 1 | Secured Claims | Unimpaired | No |
| 2 | Priority Claims | Unimpaired | No |
| 3A | Survivor Claims | Impaired | Yes |
| 3B | Lay Pension Claims | Impaired | Yes |
| 3C | DEDA Bond Transaction Claims | Impaired | Yes |
| 3D | Clergy Pension Claims | Potentially Impaired | Yes |
| 3E | Gift Annuity Claims | Potentially Impaired | Yes |
| 3F | Other Unsecured Claims | Potentially Impaired | Yes |
| 4 | Penalty Claims | Impaired | No |

    **3.2**    **CLASSIFICATION.** The Claims against the Debtor shall be classified as specified above (other than Administrative Claims and Priority Tax Claims, which shall be unclassified and treated in accordance with Article II above). Consistent with § 1122 of the Bankruptcy Code, a Claim is classified by the Plan in a particular Class only to the extent the Claim is within the description of the Class, and a Claim is classified in a different Class to the extent it is within the description of that different Class.

    **3.3**    **IMPAIRMENT; VOTING.**

        **(a)**    **Non-Voting Classes.** As set forth above, Classes 1 and 2 are Unimpaired by the Plan and holders of Claims in these Classes are conclusively presumed to have accepted the Plan. Class 4 is Impaired by the Plan, but because holders of Claims in this Class will not retain or receive any property under the Plan on account of such Claims, this Class is conclusively presumed to have rejected the Plan.

        **(b)**    **Voting Classes.** Classes 3A, 3B, 3C, 3D, 3E and 3F are (or may be) Impaired by the Plan, and holders of Claims in these Classes shall be entitled to vote to accept or reject the Plan.

## ARTICLE IV:
## TREATMENT OF CLASSIFIED CLAIMS

    **4.1**    **SECURED CLAIMS (CLASS 1).** Class 1 consists of Secured Claims. With respect to each Allowed Class 1 Claim, the legal, equitable, and contractual rights to which such Allowed Claim entitles its holder shall be reinstated in full on the Effective Date.

YCST01:10757554.7        068902.1001

**4.2    PRIORITY CLAIMS (CLASS 2).** Class 2 consists of Priority Claims. Unless the holder of an Allowed Class 2 Claim and the Debtor (if prior to the Effective Date) or the Plan Administrator (on and after the Effective Date) agree to a different treatment, on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 2 Claim becomes an Allowed Claim (or as soon thereafter as is practicable), the Plan Administrator shall pay each such Allowed Class 2 Claim in full, in Cash, without interest.

**4.3    SURVIVOR CLAIMS (CLASS 3A).** Class 3A consists of Survivor Claims (other than Survivor Claims that are Administrative Claims) and, if the Plan is confirmed as a Settlement Plan, the Third-Party Indemnity Claims assigned to Parish-Only Survivor Claimants pursuant to Section 5.1(d). The Parish-Only Survivor Claimants shall receive Class 3A Ballots solely for the purposes of (i) voting to accept or reject the Plan as a Settlement Plan, (ii) if applicable, indicating their approval of the settlements embodied in Article V and agreement to be bound by the Channeling Injunction set forth in Section 16.3, and (iii) making any elections that may be required by the Settlement Trust Distribution Procedures to be proposed by the Creditors Committee pursuant to Section 6.5.

**(a)    Treatment in a Settlement Plan.** If the Plan is confirmed as a Settlement Plan:

(1)    Class 3A Claims shall be Allowed and liquidated, or Disallowed, exclusively in accordance with the Settlement Trust Distribution Procedures; and

(2)    each holder of an Allowed Class 3A Claim shall receive a distribution on such Claim from the Settlement Trust, in accordance with the Settlement Trust Distribution Procedures, in full satisfaction, settlement, and release of, and in exchange for, his or her Class 3A Claim.

**(b)    Treatment in a CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan:

(1)    Class 3A Claims shall be liquidated and Allowed, or Disallowed, in accordance with Article X;

(2)    each holder of an Allowed Survivor Convenience Claim, within ten (10) days after Allowance of such Claim pursuant to Section 10.6, shall receive an initial Distribution from the Plan Trust in the amount equal to 50% of his or her Allowed Claim (i.e., $37,500 for Claims arising out of Abuse by Diocesan priests or employees, or $12,500 for Claims arising out of Abuse by Religious Order clerics or employees, as applicable), which Distribution shall be final and indefeasible, and shall not be subject to reduction or disgorgement for any reason; and

(3)    each holder of an Allowed Class 3A Claim shall receive a Pro Rata Distribution on such Claim from the Plan Trust in full satisfaction, settlement, and release of, and in exchange for, his or her Class 3A Claim, provided that the amount of Distribution to any holder of a Survivor Convenience

6

Claim shall be reduced by the amount of the Distribution made pursuant to Section 4.3(b)(2).

**4.4   LAY PENSION CLAIMS (CLASS 3B).** Class 3B consists of Lay Pension Claims.

**(a)   Treatment in a Settlement Plan.** If the Plan is confirmed as a Settlement Plan, then in full satisfaction, settlement, and release of, and in exchange for, all Allowed Class 3B Claims, and as a condition precedent to the Effective Date: (i) the Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, the Lay Pension Fund to the Lay Pension Plan Trust on behalf of the Debtor; and (ii) Cash or other property having a value not less than $5,000,000 in the aggregate (the value of any non-Cash property being determined by Order of the Bankruptcy Court, after notice and a hearing, which hearing may be the Confirmation Hearing) shall be contributed by or on behalf of the Debtor to the Lay Pension Plan Trust.

**(b)   Treatment in a CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan, each holder of an Allowed Class 3B Claim shall be entitled to a Pro Rata Distribution from the Plan Trust in full satisfaction, settlement, and release of, and in exchange for, his or her Allowed Class 3B Claim, which distribution shall be made to the Lay Pension Plan Trust on behalf of such holder.

**4.5   DEDA BOND TRANSACTION CLAIMS (CLASS 3C).** Class 3C consists of DEDA Bond Transaction Claims.

**(a)   Treatment under a Settlement Plan.** If the Plan is confirmed as a Settlement Plan, then in full satisfaction, settlement, and release of, and in exchange for, the Class 3C Claims, each holder of an Allowed Class 3C Claim shall, at its election, receive one of the following:

**(1)**   a promissory note substantially in the form to be proposed by the Debtor and filed as a Supplemental Plan Document, which note shall be agreeable in all respects to the Debtor, in its sole discretion, and executed by the Reorganized Debtor (and payable solely by the Reorganized Debtor, and not by the Plan Trust) on the Effective Date in a principal amount equal to the Allowed amount of such Class 3C Claim; or

**(2)**   a Pro Rata distribution on such Claim from the Capital Campaign Fund.

**(b)   Treatment under a CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan, then in full satisfaction, settlement, and release of, and in exchange for, the Class 3C Claims, each holder of an Allowed Class 3C Claim shall, at its election, receive one of the following:

**(1)**   a promissory note substantially in the form to be proposed by the Debtor and filed as a Supplemental Plan Document, which note shall be agreeable in all respects to the Debtor, in its sole discretion, and executed by the

7

Reorganized Debtor (and payable solely by the Reorganized Debtor, and not by the Plan Trust) on the Effective Date in a principal amount equal to the Allowed amount of such Class 3C Claim; or

(2)    subject fully to Section 12.4(b) (to the extent the Capital Campaign Fund is a Disputed Restricted PIA Fund), a Pro Rata distribution on such Claim from the Capital Campaign Fund, provided, however, that if the Capital Campaign Fund is determined by a Final Order to have been an Unrestricted Asset of the Debtor, then (i) any promissory note executed by the Reorganized Debtor in accordance with the foregoing paragraph 4.5(b)(1) shall be deemed cancelled, void *ab initio*, and without legal effect, and (ii) as soon as practicable after entry of such Final Order, (A) the Reorganized Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, the Capital Campaign Fund to the Plan Trust on behalf of the Debtor, and (B) each holder of an Allowed Class 3C Claim shall receive a Pro Rata distribution on such Claim from the Plan Trust in full satisfaction, settlement, and release of, and in exchange for, its Class 3C Claim.

(c)    **Timing and Manner of Election; Effect of No Election.** Each holder of a Class 3C Claim shall make the election required by Section 4.5(a) or (b), as applicable, in a writing Filed on or prior to the Confirmation Date. If no such election is made by the holder of a Class 3C Claim in accordance with this Section 4.5(c), then such holder shall be deemed to have elected treatment of its Class 3C Claim under Section 4.5(a)(2) or (b)(2), as applicable, which election shall be irrevocable except as otherwise agreed in writing by the Debtor or the Reorganized Debtor.

**4.6    CLERGY PENSION CLAIMS (CLASS 3D).** Class 3D consists of Clergy Pension Claims.

(a)    **Treatment in a Settlement Plan.** If the Plan is confirmed as a Settlement Plan, then with respect to each Class 3D Claim, the legal, equitable, and contractual rights to which such Claim entitles its holder shall be reinstated in full on the Effective Date.

(b)    **Treatment in a CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan, then with respect to each Class 3D Claim, the legal, equitable, and contractual rights to which such Claim entitles its holder shall be reinstated in full on the Effective Date; provided, however, that if the Clergy Pension Fund is determined by a Final Order to have been an Unrestricted Asset of the Debtor, then as soon as practicable thereafter, the Reorganized Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, the Clergy Pension Fund to the Plan Trust on behalf of the Debtor, and each holder of an Allowed Class 3D Claim shall receive a Pro Rata distribution on such Claim from the Plan Trust in full satisfaction, settlement, and release of, and in exchange for, such Class 3D Claim.

**4.7    GIFT ANNUITY CLAIMS (CLASS 3E).** Class 3E consists of Gift Annuity Claims.

(a)    **Treatment in a Settlement Plan.** If the Plan is confirmed as a Settlement Plan, then with respect to each Class 3E Claim, the legal, equitable, and contractual rights to which such Claim entitles its holder shall be reinstated in full on the Effective Date.

(b)    **Treatment in a CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan, then with respect to each Class 3E Claim, the legal, equitable, and contractual rights to which such Claim entitles its holder shall be reinstated in full on the Effective Date; provided, however, that to the extent any Gift Annuity Fund is determined by a Final Order to have been an Unrestricted Asset of the Debtor, then as soon as practicable thereafter, (i) the Reorganized Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, such Gift Annuity Fund to the Plan Trust on behalf of the Debtor, (ii) the Plan Trustee shall File a motion in the Bankruptcy Court pursuant to Bankruptcy Code § 502(c)(1) to estimate for distribution purposes the Allowed amount of the Class 3E Claim corresponding to the Gift Annuity Fund, and (iii) the holder of such Allowed Class 3E Claim shall receive a Pro Rata distribution on such Claim from the Plan Trust in full satisfaction, settlement, and release of, and in exchange for, his or her Class 3E Claim.

**4.8    OTHER UNSECURED CLAIMS (CLASS 3F).** Class 3F consists of Other Unsecured Claims.

(a)    **Treatment in a Settlement Plan.** If the Plan is confirmed as a Settlement Plan, then with respect to each Class 3F Claim, the legal, equitable, and contractual rights to which such Claim entitles its holder shall be reinstated in full on the Effective Date.

(b)    **Treatment in a CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan, each holder of an Allowed Class 3F Claim shall receive a Pro Rata distribution from the Plan Trust in full satisfaction, settlement, and release of, and in exchange for, its Class 3F Claim.

**4.9    PENALTY CLAIMS (CLASS 4).** Class 4 consists of Penalty Claims.

(a)    **Treatment in a Settlement Plan.** If the Plan is confirmed as a Settlement Plan, then holders of Class 4 Claims shall not receive or retain any property under the Plan on account of such Claims.

(b)    **Treatment in a CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan, then if, and only if, all Allowed Pari Passu Claims are paid in full (including any Claims entitled to a distribution pursuant to § 726(a)(1)-(3) of the Bankruptcy Code), each holder of an Allowed Class 4 Claim shall receive a Pro Rata distribution from the Plan Trust in full satisfaction, settlement, and release of, and in exchange for, its Class 4 Claim. Holders of Class 4 Claims are not expected to receive or retain any property under the Plan on account of such Claims.

## ARTICLE V:
## PROPOSED SETTLEMENTS EMBODIED IN PLAN

**5.1    PROVISIONS APPLICABLE TO SETTLEMENT PLAN.** The following provisions shall apply in a Settlement Plan:

(a)    **NDCE Settlement Contribution.** On or before the Settlement Funding Date, Cash in the amount of $61,968,441 in the aggregate shall be contributed to the Settlement Trust by or on behalf of the Non-Debtor Catholic Entities in consideration for, and conditioned upon, (i) treatment of the Non-Debtor Catholic Entities as Protected Parties under Section 16.3, (ii) treatment of the Survivor Claims of the Parish-Only Survivor Claimants as Class 3A Claims as set forth in Section 5.1(d), (iii) resolution of the PIA Litigation as set forth in Section 5.1(e), (iii) waiver and release of all Causes of Action of the Estate against the Non-Debtor Catholic Entities or property of the Non-Debtor Catholic Entities (including Alter Ego Claims, Substantive Consolidation Claims, PIA Distribution Clawback Claims, and PIA Surcharge Claims) as set forth in Section 5.1(g), (iv) resolution of all potential disputes regarding Restricted PIA Funds as set forth in Section 5.1(h), and (v) the Confirmation Order's provision for payment to Survivor John Vai from the Settlement Trust as set forth in Section 15.1(f)(1)(ii). As additional consideration for, and expressly conditioned upon, clauses (i)-(v) of the preceding sentence, and subject to the occurrence of the Effective Date, each of the Non-Debtor Catholic Entities shall (i) agree to the non-monetary undertakings set forth in <u>Exhibits D</u> and <u>E</u>; (ii) waive and release any and all PIA Investment Claims, PIA Breach Claims, and Third-Party Indemnity Claims arising from or relating to Survivor Claims subject to Section 16.3; (iii) consent to the sale of the Non-Debtor Catholic Entities' interests, if any, in any Settled Insurance Policy to the applicable Settling Insurer and to the contribution of the proceeds of such sale to the Settlement Trust in accordance with Section 5.1(b); (iv) upon request by a Settling Insurer, execute Insurance Buy-Back Agreements with respect to any Settled Insurance Policies in which the Non-Debtor Catholic Entities have, or may have, an interest; and (v) assign to the Settlement Trust all right, title and interest in and to any and all Order/Perpetrator Indemnification Claims.

(b)    **Insurer Settlement Contribution.** On or before the Settlement Funding Date, Cash in the amount of $15,456,559 in the aggregate shall be contributed by the Settling Insurers to the Settlement Trust, in consideration for, and expressly conditioned upon, (i) the Bankruptcy Court's approval of the sale of the Estate's interest in each Settled Insurance Policy to the applicable Settling Insurer pursuant to § 363(b) and 1123(a)(5) of the Bankruptcy Code, free and clear of all claims and interests, in accordance with the applicable form of Insurance Buy-Back Agreement to be filed as a Supplemental Plan Document, (ii) treatment of the Settling Insurers as Protected Parties under Section 16.3, (iii) waiver and release of all Causes of Action of the Estate against the Settling Insurers or property of the Settling Insurers as set forth in Section 5.1(g). As additional consideration for, and expressly conditioned upon, clauses (i)-(iii) of the preceding sentence, and subject to the occurrence of the Effective Date, each of the Settling Insurers shall assign to the Settlement Trust all right, title and interest in and to any and all Order/Perpetrator Indemnification Claims.

(c)    **Assignment of Estate's Order/Perpetrator Indemnification Claims to Settlement Trust.** As additional consideration for, and expressly conditioned upon, treatment of the Non-Debtor Catholic Entities in accordance with Sections 16.3 and 5.1(e), (g) and (h), and subject to the occurrence of the Effective Date, the Debtor, on behalf of itself and its Estate, shall assign to the Settlement Trust all right, title and interest in and to any and all Order/Perpetrator Indemnification Claims.

(d)    **Assignment of Third-Party Indemnity Claims to Parish-Only Survivor Claimants.** As additional consideration for, and expressly conditioned upon, treatment of the Non-Debtor Catholic Entities in accordance with Sections 16.3 and 5.1(e), (g) and (h), and subject to the occurrence of the Effective Date, each Non-Debtor Catholic Entity shall assign to each Parish-Only Survivor Claimant all right, title and interest in and to any Third-Party Indemnity Claim against the Debtor arising from or relating to the Survivor Claim of such Parish-Only Survivor Claimant.

(e)    **Resolution of PIA Litigation.** In consideration of the Non-Debtor Catholic Entities' agreement to provide the NDCE Settlement Contribution and other consideration set forth in Section 5.1(a), and to withdraw the appeal of the Phase I Judgment and Orders as set forth in this Section, the Confirmation Order shall (i) provide that, subject to the occurrence of the Effective Date, the Phase I Judgment and Orders are vacated and the PIA Litigation is dismissed, with prejudice (provided that the vacatur of the Phase I Judgment and Orders shall have no impact on the Phase I Opinions), (ii) declare that, subject to the occurrence of the Effective Date, the Disputed Non-Debtor PIA Funds are not property of the estate by operation of § 541(d) of the Bankruptcy Code; and (iii) effective immediately upon entry of the Confirmation Order, authorize the transfer of Cash proceeds of Disputed Non-Debtor PIA Funds to the Settlement Trust in an aggregate amount not to exceed the NDCE Settlement Contribution. As soon as practicable after the Effective Date, the Debtor and the Non-Debtor Catholic Entities party to the PIA Litigation shall withdraw (or move to dismiss, to the extent necessary) their appeal of the Phase I Judgment and Orders.

(f)    **Suspension of Duties of Fee Examiner.** To facilitate the Reorganized Debtor's performance of its financial obligations under the Plan, the Debtor shall request that the Bankruptcy Court suspend the duties of the Fee Examiner as of the Confirmation Date. Suspension of the Fee Examiner's duties pursuant to this Section 5.1(f) shall not limit the statutory rights and obligations of parties in interest in this Chapter 11 Case, including the rights of parties in interest to object to Professional Claims.

(g)    **Debtor Waiver and Release of Estate Causes of Action Against Non-Debtor Catholic Entities and Settling Insurers.** In consideration of the contributions and other consideration to be provided by the Non-Debtor Catholic Entities and the Settling Insurers pursuant to Section 5.1(a) and (b), the Debtor, on behalf of itself and the Debtor Releasors, irrevocably and unconditionally, without limitation, shall release, acquit, and forever discharge each of the Non-Debtor Catholic Entities and Settling Insurers from any and all Causes of Action of the Estate (including Chapter 5 Actions, Alter Ego Claims, and Substantive Consolidation Claims) against any such Non-

11

Debtor Catholic Entity or Settling Insurer, or the property of any such Non-Debtor Catholic Entity or Settling Insurer, such release to be effective upon the Effective Date.

        **(h)**    **Resolution of Disputes Regarding Restricted PIA Funds.** The Confirmation Order shall find, subject to the occurrence of the Effective Date, that the Restricted PIA Funds (including the Capital Campaign Fund, the Clergy Pension Fund, and the Gift Annuity Funds) are Restricted Assets and constitute Undisputed Restricted PIA Funds for all purposes under the Plan.

        **(i)**    **Additional Documentation; Non-Material Modifications.** From and after the Effective Date, the Settlement Trustee, the Reorganized Debtor, and the Settling Parties shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Article V without further Order of the Bankruptcy Court. Additionally, the Settlement Trustee, the Reorganized Debtor, and the Settling Parties may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement contained in this Article V, subject to Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of a Class 3A Claim without the prior written agreement of such holder. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented under this Section 5.1(i), if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class. An Order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section 5.1(i) shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

        **(j)**    **Non-Settling Insurers Unaffected.** For the avoidance of doubt, the rights and obligations of Non-Settling Insurers shall be unaffected by this Article V and shall be governed solely by Article XI.

    **5.2**    **CONDITIONS PRECEDENT TO SETTLEMENT PLAN.** The Plan shall constitute a Settlement Plan if it is accepted by Class 3A and the following conditions are satisfied or duly waived (by a writing executed by the Debtor) as of the Confirmation Date:

        **(a)**    **Overwhelming Acceptance by Survivors.** The Plan has been accepted as a Settlement Plan by at least eighty-five percent (85%) in number of holders of Class 3A Claims that are filed as of the Voting Record Date (including Parish-Only Survivor Claimants to whom Ballots are provided pursuant to Section 5.1(d)) who are represented by counsel, each of which holders has indicated on his or her Ballot that he or she approves the settlements embodied in Article V and agrees to be bound by the Channeling Injunction set forth in Section 16.3.

        **(b)**    **Non-Accepting Survivors Bound by Plan.** The Bankruptcy Court has ruled that the settlements embodied in Article V and the Channeling Injunction set forth in Section 16.3 are binding upon, and enforceable by their terms against, all holders

12

of Survivor Claims (including, specifically, all Survivor Claims that are secured in whole or in part by a lien in property of any Non-Debtor Catholic Entity), irrespective of whether any such holder (i) has voted to accept the Plan, (ii) has approved the settlements embodied in Article V, or (iii) has agreed to be bound by the Channeling Injunction in Section 16.3.

        **(c)**    **Resolution of Objections.** Each and every objection to confirmation of the Plan as a Settlement Plan has been withdrawn, overruled by the Bankruptcy Court, or resolved in a manner that does not materially and adversely change the treatment of any holder of a Class 3A Claim or materially alter the non-monetary undertakings of the Reorganized Debtor under Section 17.5(c).

        **5.3**    **PROVISIONS APPLICABLE TO CDOW-ONLY PLAN.** If the Plan is confirmed as a CDOW-Only Plan, then the following provisions shall apply:

        **(a)**    **Resolution of PIA Investment Claims.** The Confirmation Order shall provide that the PIA Investment Claims of the Non-Debtor Pooled Investors shall be Allowed in the amounts with respect to each of the Disputed Non-Debtor PIA Funds set forth in <u>Exhibit B</u> hereto, <u>provided</u>, <u>however</u>, that to the extent any Disputed Non-Debtor PIA Funds are determined by a Final Order not to be Unrestricted Assets of the Estate, the PIA Investment Claims with respect to such Disputed Non-Debtor PIA Funds shall be Disallowed.

        **(b)**    **Limitation on PIA Distribution Clawback Claims.** The Confirmation Order shall provide that, notwithstanding anything to the contrary in any Interim PIA Withdrawal Order, the amount of any PIA Distribution Clawback Claim against a Non-Debtor Pooled Investor shall be reduced by the value of any property transferred to the Debtor by or on behalf of such Non-Debtor Pooled Investor between the Petition Date and the Effective Date, except to the extent that such Non-Debtor Pooled Investor was under a Secular Legal Duty to transfer property to the Debtor.

        **(c)**    **St. Ann Indemnity Claim.** The St. Ann Indemnity Claim shall be liquidated and Allowed (or Disallowed) as if it were a Survivor Claim against the Debtor, and the Debtor, on behalf of itself and the Debtor Releasors, shall waive any defense to such Claim that is based upon Survivor John Dougherty's prior release of Claims against the Debtor.

        **5.4**    **RESERVATION OF RIGHTS.** The Debtor reserves the right to sell property of the Estate and/or compromise Causes of Action on behalf of the Estate at any time prior to the Effective Date, subject to Bankruptcy Court approval. Notice of any such sale or compromise sought as part of the Plan shall be Filed as a Supplemental Plan Document, and approval of such sale or settlement shall be considered at the Confirmation Hearing or as soon thereafter as is practicable.

        **5.5**    **FORBEARANCE FROM PROSECUTION OF CDOW-ONLY PLAN.** The Debtor shall not seek confirmation of the Plan as a CDOW-Only Plan until after it has sought confirmation of the Plan as a Settlement Plan. If the Bankruptcy Court does not

13

confirm the Plan as a Settlement Plan, the Debtor shall meet and confer with the Creditors Committee and the Lay Employees Committee to establish a schedule for litigation, if any, relating to confirmation of the Plan as a CDOW-Only Plan. Pending the occurrence of this meet-and-confer and the Bankruptcy Court's entry of an order regarding discovery and pleading deadlines related thereto, no party in interest will be required to File any pleading or initiate/continue any discovery related to confirmation of the Plan as a CDOW-Only Plan.

## ARTICLE VI:
## MEANS OF IMPLEMENTING A SETTLEMENT PLAN

**6.1    APPLICABILITY OF THIS ARTICLE.** This Article shall apply only if the Plan is confirmed as a Settlement Plan.

**6.2    IMPLEMENTATION OF PLAN.** The Debtor proposes that the Plan be implemented and consummated through the means contemplated by § 1123(a)(5)(A), (B), and (D)-(G) and § 1123(b)(2)-(4) and (6) of the Bankruptcy Code on and after the Effective Date.

**6.3    VESTING ASSETS IN THE SETTLEMENT TRUST.** On the Effective Date, all Settlement Trust Assets shall vest in the Settlement Trust, and the Debtor, the Non-Debtor Catholic Entities, and the Settling Insurers, as applicable, shall be deemed for all purposes to have transferred all right, title, and interest in and to the Settlement Trust Assets to the Settlement Trust for the benefit of the holders of Survivor Claims, whether or not such Claims are Allowed Claims as of the Effective Date. From and after the Effective Date, the Reorganized Debtor, the Non-Debtor Catholic Entities, and the Settling Insurers shall have no further interest in or with respect to the Settlement Trust Assets.

**6.4    ASSUMPTION OF LIABILITY FOR SURVIVOR CLAIMS.** On the Effective Date the Settlement Trust shall assume liability for, and shall succeed to all rights and defenses of the Debtor and the Non-Debtor Catholic Entities with respect to, all Survivor Claims arising prior to the Effective Date (other than Survivor Claims that are Administrative Claims), which shall be Allowed and liquidated, or Disallowed, solely pursuant to the Settlement Trust Distribution Procedures.

**6.5    SETTLEMENT TRUST DISTRIBUTION PROCEDURES.** The Creditors Committee shall, not less than seven (7) days prior to the Voting Deadline, propose Settlement Trust Distribution Procedures, subject to approval by the Bankruptcy Court at the Confirmation Hearing. The Settlement Trust Distribution Procedures may include any appropriate provision not inconsistent with the applicable provisions of this Plan and the Bankruptcy Code, provided, however, that nothing in the Settlement Trust Distribution Procedures shall (i) impose any costs, directly or indirectly, upon the Estate or any Protected Party relating to the liquidation and Allowance (or Disallowance) of Class 3A Claims, or distributions from the Settlement Trust to holders of Class 3A Claims, or (ii) otherwise modify the rights or obligations of the Estate or any Protected Party as otherwise set forth in the Plan. If the proposed Settlement Trust Distribution Procedures will require holders of Class 3A Claims to make elections on their Ballots, then in connection with the Debtor's request for approval of the Disclosure Statement, the Creditors Committee shall File and seek approval by the Bankruptcy Court of an addendum to the Disclosure Statement, to be included in the Solicitation Packages

14

sent to holders of Class 3A Claims, which contains "adequate information" about the proposed Settlement Trust Distribution Procedures within the meaning of § 1125(a)(1) of the Bankruptcy Code.

6.6    **RETENTION OF JURISDICTION.** Pursuant to §§ 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. §§ 1334 and 157, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction (i) over the Chapter 11 Case, and (ii) to hear and determine all core proceedings arising under the Bankruptcy Code or in the Chapter 11 Case, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of, the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

(a)    over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

(b)    over proceedings to determine the extent, validity, and/or priority of any Lien asserted against property of the Debtor, the Estate, or the Reorganized Debtor, or property abandoned or transferred by the Debtor, the Estate, or the Reorganized Debtor;

(c)    over matters relating to the subordination of Claims;

(d)    to enter and implement such Orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)    to consider and approve modifications of or amendments to the Plan, and/or to cure any defects or omissions or to reconcile any inconsistencies in any Order of the Bankruptcy Court, including the Confirmation Order;

(f)    to issue Orders in aid of execution, implementation, or consummation of the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith, including the Settlement Trust Agreement and the Settlement Trust;

(g)    over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith, including the Settlement Trust Agreement and the Settlement Trust;

(h)    over requests for allowance and/or payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code and any objections thereto;

(i)    over all Fee Applications;

(j)    over matters concerning state, local, or federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

15

(k)    over conflicts and disputes among the Reorganized Debtor and holders of Claims;

(l)    over disputes concerning the existence, nature, or scope of the Debtor's discharge or the channeling injunction, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(m)    to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Debtor, the Estate or its property, the Creditors Committee or Lay Employees Committee, the Plan Trust or its property, the Plan Trustee, the Plan Oversight Committee, the Professionals, or the Confirmation Order;

(n)    to enter a Final Decree closing the Chapter 11 Case;

(o)    to enforce all orders previously entered by the Bankruptcy Court; and

(p)    over any and all core matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan.

## ARTICLE VII:
## THE SETTLEMENT TRUST IN A SETTLEMENT PLAN

7.1    **APPLICABILITY OF THIS ARTICLE.** This Article shall apply only if the Plan is confirmed as a Settlement Plan.

7.2    **FORMATION AND FUNDING OF THE SETTLEMENT TRUST.** On or prior to the Effective Date, the Settlement Trust shall be formed and funded with the NDCE Settlement Contribution and the Insurer Settlement Contribution. The holders of Class 3A Claims shall be the sole beneficiaries of the Settlement Trust.

7.3    **NO EXECUTION.** All funds held in the Settlement Trust will remain property of the Settlement Trust until such time as the funds have actually been paid to and received by a Person or Entity entitled to receive payment pursuant to the terms of the Plan and the Settlement Trust Documents. Except as expressly provided in the Settlement Trust Documents and the Plan, the Settlement Trust shall not be responsible for any Claims against the Debtor.

7.4    **SETTLEMENT TRUST AGREEMENT.** The Creditors Committee shall File the proposed Settlement Trust Agreement with the Bankruptcy Court as a Supplemental Plan Document. The Settlement Trust Agreement shall contain provisions customary to settlement trust agreements utilized in comparable circumstances, including any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Settlement Trustee. The Settlement Trust Agreement shall also contain provisions necessary to ensure the Settlement Trust will receive future payments from Religious Orders if

16

and when holders of Class 3A Claims receive property from the Religious Orders and/or the Religious Orders' insurance companies related to Claims of such holders against Religious Orders.

      **7.5    TAX MATTERS.** The Settlement Trust is expected to be tax exempt. The Settlement Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the IRC and the Treasury Regulations promulgated thereunder, and Delaware law and the regulations promulgated thereunder, and shall pay from the Settlement Trust all taxes, assessments, and levies upon the Settlement Trust, if any.

      **7.6    APPOINTMENT OF THE SETTLEMENT TRUSTEE.** Subject to approval by the Bankruptcy Court, the Settlement Trustee will be Marla Eskin, Esq. The Settlement Trustee shall be appointed by the Bankruptcy Court in the Confirmation Order and shall commence serving no later than on the Effective Date. The Settlement Trustee will act only pursuant to the provisions of the Plan, the Confirmation Order, and the Settlement Trust Documents. The Settlement Trustee may not assign any of its rights or obligations. The Settlement Trustee will be responsible for defending the Settlement Trust against all Survivor Claims and will serve as the paying agent responsible for distribution of payments to holders of Survivor Claims. The Settlement Trustee will be entitled to receive a reasonable fee and reimbursement of reasonable costs and expenses for its services, with such fees and cost to be paid from the Settlement Trust.

      **7.7    APPOINTMENT OF THE SETTLEMENT ARBITRATOR.** Subject to approval by the Bankruptcy Court, the proposed Settlement Arbitrator will be Hon. Thomas B. Rutter (retired). The Settlement Arbitrator shall be appointed by the Bankruptcy Court in the Confirmation Order (or re-appointed, to the extent previously appointed by Order of the Bankruptcy Court) and shall commence serving no later than on the Effective Date. The Settlement Arbitrator will be entitled to receive a reasonable fee and reimbursement of reasonable costs and expenses for its services, with such fees and cost to be paid from the Settlement Trust.

      **7.8    MISCELLANEOUS PROVISIONS.** All funds paid to the Settlement Trustee pursuant to the Plan will be deposited in the Settlement Trust. The Settlement Trustee shall invest all funds that are deposited in the Settlement Trust at its discretion subject to the terms of the Settlement Trust Documents. The Settlement Trustee may distribute funds to the beneficiaries of the Settlement Trust by payment to the client trust accounts of the attorneys of record representing the beneficiaries as determined by the filed Proofs of Claim. The Settlement Trustee shall have no liability to the beneficiaries of the Settlement Trust on account of the administration of the funds once the funds are transferred to the client trust accounts of the beneficiaries' attorneys of record. Pursuant to the instructions of the Settlement Arbitrator and notwithstanding any provision of Allocation Plan, the Settlement Trustee may make interim payments to beneficiaries of a Creditor Pool. Upon entry of an order by a court of competent jurisdiction authorizing termination and dissolution of the Settlement Trust, the Settlement Trustee will promptly proceed to wind up the affairs of the Settlement Trust. Upon termination of the Settlement Trust, and provided that all fees and expenses of the Settlement Trust have been paid or provided for in full and that no more than $50,000 remains in the Settlement Trust, the Settlement Trustee will deliver all funds and other investments remaining in the Settlement

Trust, if any, including any investment earnings thereon, to a charity supporting survivors of childhood sexual abuse to be chosen by the Settlement Trustee after consultation with members of the dissolved Creditors Committee.

## ARTICLE VIII:
## MEANS OF IMPLEMENTING A CDOW-ONLY PLAN

**8.1    APPLICABILITY OF THIS ARTICLE.** This Article shall apply only if the Plan is confirmed as a CDOW-Only Plan.

**8.2    IMPLEMENTATION OF PLAN.** The Debtor proposes that the Plan be implemented and consummated through the means contemplated by § 1123(a)(5)(A), (B), and (D)-(G) and § 1123(b)(2)-(4) and (6) of the Bankruptcy Code on and after the Effective Date.

**8.3    VESTING OF ASSETS IN THE PLAN TRUST.** On the Effective Date, all Plan Trust Assets shall vest in the Plan Trust, and the Debtor shall be deemed for all purposes to have transferred all right, title, and interest of its Estate in the Plan Trust Assets to the Plan Trust for the benefit of the holders of Claims against the Debtor's Estate, whether or not such Claims are Allowed Claims as of the Effective Date. On the Effective Date or as soon as practicable thereafter, the Reorganized Debtor shall take all actions reasonably necessary to transfer control of any Plan Trust Assets not subject to Sections 8.5, 11.2(a), or 12.4 to the Plan Trust. Upon the transfer of control of Plan Trust Assets in accordance with the foregoing sentence, the Reorganized Debtor shall have no further interest in or with respect to such Plan Trust Assets. From and after the Effective Date, with respect to the IBNR Reserves and the Designated Insurance Policies, the Reorganized Debtor shall perform the duties set forth in Sections 8.5 and 11.2(a), respectively; and upon completion of its duties under Sections 8.5 or 11.2(a), as applicable, the Reorganized Debtor shall have no further interest in or with respect to the IBNR Reserves or the Designated Insurance Policies, respectively. From and after the Effective Date, the Reorganized Debtor shall manage the Disputed Non-Debtor PIA Funds, the Disputed Restricted PIA Funds, and the Lay Pension Fund as set forth in Sections 12.4(a), (b) and (c), respectively. Upon completion of its duties under Sections 12.4(a), (b) or (c), as applicable, the Reorganized Debtor shall have no further interest in or with respect to the Disputed Non-Debtor PIA Funds, the Disputed Restricted PIA Funds, or the Lay Pension Fund, respectively.

**8.4    ASSUMPTION OF PLAN OBLIGATIONS AND LIABILITY FOR CLAIMS.** On the Effective Date, all of the Debtor's rights and obligations, if any, with respect to each and every S/A/P Claim and Unsecured Claim, and all other rights and obligations of the Debtor under the Plan, shall be assigned to and assumed by the Plan Trust, provided that the Reorganized Debtor shall have standing, and shall retain the right, to object to any Claim. In particular, and without limiting the generality of the foregoing, on the Effective Date the Plan Trust shall assume liability for, and shall succeed to all rights and defenses of the Debtor with respect to, all Survivor Claims arising prior to the Effective Date, provided, however, that such assumption of liability by the Plan Trust shall not relieve the Debtor, the Reorganized Debtor, any Non-Debtor Catholic Entity, or any Insurer of any obligation arising under any Designated Insurance Policy.

18

**8.5    IBNR RESERVES.** The Reorganized Debtor shall hold and administer the IBNR Reserves for the benefit of the Plan Trust, and shall provide the Plan Trust monthly reports of Claims paid from the IBNR Reserves. The Reorganized Debtor shall remit to the Plan Trust any surplus remaining in the IBNR Reserves after all covered Claims for self-insured plan years that commenced prior to the Effective Date have been paid, as determined by the Third-Party Administrators. The Reorganized Debtor may, but shall not be required to, maintain the IBNR Reserves in the Pooled Investment Account, provided that if the IBNR Reserves are maintained in the Pooled Investment Account, they shall be managed by the Reorganized Debtor in accordance with the PIA Custody Agreement and the Investment Management Agreements, in consultation with the Plan Trustee, for the benefit of the Plan Trust to the extent of its residual interest in the surplus, if any, of the IBNR Reserves. The Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes between the Reorganized Debtor and the Plan Trustee regarding the management of the IBNR Reserves pursuant to this Section.

**8.6    RETENTION OF JURISDICTION.**

(a)    **By the Bankruptcy Court.** Pursuant to §§ 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. §§ 1334 and 157, on and after the Effective Date, the Bankruptcy Court shall retain (i) original and exclusive jurisdiction over the Chapter 11 Case, (ii) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case, (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case and having a close nexus with the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

(1)    over all Causes of Action (including particularly, the Designated Causes of Action) and proceedings to recover Assets of the Estate, wherever located;

(2)    over disputes concerning the ownership of Claims;

(3)    over disputes concerning the distribution or retention of consideration under the Plan;

(4)    over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

(5)    over proceedings to determine the extent, validity, and/or priority of any Lien asserted against property of the Debtor, the Estate, or the Plan Trust, or property abandoned or transferred by the Debtor, the Estate, or the Plan Trust;

(6)    over proceedings to determine the amount, if any, of interest to be paid to holders of Allowed Unsecured Claims if Allowed Unsecured

19

Claims (including any Claims entitled to a distribution pursuant to § 726(a)(1)-(4) of the Bankruptcy Code) are paid in full pursuant to the terms of the Plan;

(7)     over proceedings to determine the amount, if any, to be distributed to holders of Allowed Penalty Claims;

(8)     over matters related to the Assets of the Estate or of the Plan Trust, including liquidation of Plan Trust Assets;

(9)     over matters related to the attachment, encumbrance, forfeiture, and disputes as to the management, of Assets held *in custodia legis* pursuant to Section 12.4;

(10)     over disputes as to the management of the IBNR Reserves pursuant to Section 8.5;

(11)     over matters relating to the subordination of Claims;

(12)     to enter and implement such Orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(13)     to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any Order of the Bankruptcy Court, including the Confirmation Order;

(14)     to issue Orders in aid of execution, implementation, or consummation of the Plan;

(15)     over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith;

(16)     over requests for allowance and/or payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code and any objections thereto;

(17)     over all Fee Applications;

(18)     over matters concerning state, local, or federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

(19)     over conflicts and disputes among the Plan Trust, the Plan Oversight Committee, the Reorganized Debtor, and holders of Claims;

(20)     over disputes concerning the existence, nature, or scope of the Debtor's discharge or the channeling injunction, including any dispute relating to any liability arising out of the termination of employment or the termination of

any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

> (21)    to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Debtor or its property, the Reorganized Debtor or its property, the Estate or its property, the Official Committees, the Plan Trust or its property, the Plan Trustee, the Plan Oversight Committee, the Professionals, or the Confirmation Order;

> (22)    to enter a Final Decree closing the Chapter 11 Case;

> (23)    to enforce all orders previously entered by the Bankruptcy Court; and

> (24)    over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan.

    (b)    **By the District Court.** Pursuant to §§ 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. §§ 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case. Subject to, but without limiting the generality of, the foregoing, the District Court's post-Effective Date jurisdiction shall include jurisdiction:

> (1)    over objections to Survivor Claims and motions to estimate Survivor Claims for distribution purposes; and

> (2)    to hear and determine the Removed Cases.

## ARTICLE IX:
## THE PLAN TRUST IN A CDOW-ONLY PLAN

    **9.1    APPLICABILITY OF THIS ARTICLE.** This Article shall apply <u>only if</u> the Plan is confirmed as a CDOW-Only Plan.

    **9.2    FORMATION AND FUNDING OF THE PLAN TRUST.** On or prior to the Effective Date, the Plan Trust shall be formed and funded with all Plan Trust Assets consisting of Cash. The holders of Claims shall be the sole beneficiaries of the Plan Trust.

    **9.3    PLAN TRUST AGREEMENT.** The Debtor shall File the proposed Plan Trust Agreement with the Bankruptcy Court as a Supplemental Plan Document. The Plan Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Plan Trustee. The Plan Trust shall be established for the sole purpose of liquidating and distributing the Plan Trust Assets, with no objective to continue or engage in the conduct of a trade or business.

**9.4    TAX MATTERS.** The Plan Trust shall not be deemed to be the same legal entity as the Debtor, but only the assignee of certain assets and liabilities of the Debtor and a representative of the Estate for delineated purposes within the meaning of § 1123(b)(3) of the Bankruptcy Code. Neither the Plan Trust nor any portion thereof, nor any reserve, account or fund established by the Plan (including pursuant to Section 12.4) shall be treated as a "disputed ownership fund" within the meaning of Treasury Regulations § 1.468B-9(b)(1). The Plan Trust is expected to be tax exempt. The Plan Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the IRC and the Treasury Regulations promulgated thereunder, and Delaware law and the regulations promulgated thereunder, and shall pay from the Plan Trust all taxes, assessments, and levies upon the Plan Trust, if any.

**9.5    APPOINTMENT OF THE PLAN TRUSTEE.** After consultation with the Official Committees, the Debtor shall nominate a Plan Trustee, who shall be identified in the Plan Trust Agreement Filed in accordance with Section 9.3. The Plan Trustee shall be appointed by the Bankruptcy Court in the Confirmation Order and shall commence serving as the Plan Trustee on the Effective Date; provided, however, that the Person appointed as Plan Trustee shall be permitted to act in accordance with the terms of the Plan Trust Agreement from such earlier date as authorized by the Debtor, in consultation with the Official Committees, through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Plan Trust Agreement and the Plan.

**9.6    RIGHTS AND RESPONSIBILITIES OF THE PLAN TRUSTEE**

(a)    The Plan Trustee shall be deemed the Estate's representative in accordance with § 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Plan and the Plan Trust Agreement, including the powers of a trustee under §§ 704, 108 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting Claims, defenses, offsets and privileges).

(b)    The Plan Trustee shall be vested with the rights, powers and benefits set forth in the Plan Trust Agreement. Acts by the Plan Trustee will require consultation with the Plan Oversight Committee in accordance with, and only to the extent set forth in, the Plan Trust Agreement. If there is any inconsistency or ambiguity between the Plan and Confirmation Order or the Plan Trust Agreement in respect of the Plan Oversight Committee's role in the Plan Trustee's authority to act, the provisions of the Plan Trust Agreement shall control.

(c)    The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than the Bankruptcy Court against the Plan Trustee in his or her official capacity, with respect to his or her status, duties, powers, acts, or omissions as Plan Trustee.

(d)    The Plan Trustee, in his or her reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the Plan Trust

YCST01:10757554.7                                                                                                                                    068902.1001

Assets, make timely distributions and not unduly prolong the duration of the Plan Trust. The liquidation of the Plan Trust Assets may be accomplished either through the sale of Plan Trust Assets (in whole or in combination), including the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.

(e)     On the Effective Date, the Plan Trustee, in consultation with the Plan Oversight Committee, shall establish the Plan Administration Expense Reserve in an amount reasonably necessary to fund the Plan Administration Expenses.

(f)     The Plan Trustee shall be expressly authorized to do the following:

(1)     prosecute, collect, compromise and settle any Cause of Action that is a Plan Trust Asset for less than $50,000 in accordance herewith and without further approval of or application to the Bankruptcy Court or consultation with the Plan Oversight Committee;

(2)     File, prosecute, compromise and settle objections to Claims up to $50,000 (in the case of a S/A/P Claim) or $100,000 (in the case of an Unsecured Claim) without further approval of or application to the Bankruptcy Court or consultation with the Plan Oversight Committee;

(3)     open and maintain bank accounts in the name of the Plan Trust, draw checks and drafts thereon on the sole signature of the Plan Trustee, and terminate such accounts as the Plan Trustee deems appropriate;

(4)     sell or liquidate any Plan Trust Asset for less than $50,000, without further approval of or application to the Bankruptcy Court or consultation with the Plan Oversight Committee;

(5)     execute any documents, File any pleadings, and take any other actions related to, or in connection with, the liquidation of the Plan Trust Assets and the exercise of the Plan Trustee's powers granted herein, including the exercise of the Debtor's or the Official Committees' respective rights to conduct discovery and oral examination of any party under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(6)     hold legal title to any and all rights of the beneficiaries in or arising from the Plan Trust Assets, including the right to vote any Claim or interest in an unrelated case under the Bankruptcy Code and to receive any distribution thereon;

(7)     protect and enforce the rights to the Plan Trust Assets by any method he or she deems appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(8)     deliver distributions as may be authorized by the Plan;

(9)    file, if necessary, any and all tax returns with respect to the Plan Trust; pay taxes, if any, properly payable by the Plan Trust; and make distributions to the beneficiaries net of such taxes in accordance with the requirements hereof;

(10)    make all necessary filings in accordance with any applicable law, statute or regulation;

(11)    determine and satisfy any and all liabilities created, incurred or assumed by the Plan Trust;

(12)    invest moneys received by the Plan Trust or otherwise held by the Plan Trust in accordance with Section 9.7 of the Plan;

(13)    in the event that the Plan Trustee determines that the beneficiaries or the Plan Trust may, will or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences; and

(14)    utilize the Plan Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs necessary or advisable to insure the acts and omissions of the Plan Trustee.

(g)    The Plan Trustee may request an expedited determination of taxes of the Plan Trust under § 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust.

**9.7    INVESTMENT POWERS; PERMITTED CASH EXPENDITURES.** All funds held by the Plan Trust shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Plan Trust Agreement. The Plan Trustee may expend the Cash of the Plan Trust (i) as reasonably necessary to meet current liabilities and to maintain the value of the respective Assets of the Plan Trust during liquidation, (ii) to pay reasonable administrative expenses (including any taxes imposed on the Plan Trust and any professionals' fees) and (iii) to satisfy other liabilities incurred by the Plan Trust in accordance with the Plan or the Plan Trust Agreement.

**9.8    REGISTRY OF BENEFICIAL INTERESTS.** To evidence the beneficial interest in the Plan Trust of each holder of such an interest, the Plan Trustee shall maintain a registry of such holders.

**9.9    NON-TRANSFERABILITY OF INTERESTS.** Upon issuance thereof, interests in the Plan Trust shall be non-transferable, except with respect to a transfer by will or under the laws of descent and distribution. Any such transfer, however, shall not be effective until and unless the Plan Trustee receives written notice of such transfer.

**9.10    TERMINATION.** The Plan Trust shall terminate after its liquidation, administration and distribution of the Plan Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Plan Trust Agreement.

24

The Plan Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, within a period of six (6) months prior to such termination date or any extended termination date, the Plan Trustee, with the consent of the Plan Oversight Committee or by Order of the Bankruptcy Court, may extend the term of the Plan Trust if it is necessary to facilitate or complete the liquidation of the Plan Trust Assets administered by the Plan Trust; provided further, however, that the aggregate of all such extensions shall not exceed three (3) years without further Order of the Bankruptcy Court.

### 9.11    PLAN OVERSIGHT COMMITTEE

(a)    **Appointment.** The Plan Oversight Committee shall be deemed appointed on the Effective Date and as soon as practicable thereafter shall adopt bylaws to govern the actions of the Plan Oversight Committee.

(b)    **Membership.** The Plan Oversight Committee shall consist of two (2) members of the Creditors Committee, two (2) members of the Lay Employees Committee, and one (1) Non-Debtor Pooled Investor, all to be chosen by the Bankruptcy Court at the Confirmation Hearing from those Persons who File a notice of willingness to serve on the Plan Oversight Committee at least fifteen (15) days prior to the Confirmation Hearing (the "Committee Application Deadline"). In the event that fewer than two (2) members of the Creditors Committee File a notice of willingness to serve on the Plan Oversight Committee before the Committee Application Deadline, then the Creditors Committee will choose from among the holders of Survivor Claims to fill any vacancy until two (2) members have been designated. In the event that fewer than two (2) members of the Lay Employees Committee File a notice of willingness to serve on the Plan Oversight Committee before the Committee Application Deadline, then the Lay Employees Committee will choose from among the individual holders of Lay Pension Claims to fill any vacancy until two (2) members have been designated. Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership. In the event of the resignation, removal, death, or incapacity of a holder of a Survivor Claim from the Plan Oversight Committee, the remaining holder of a Survivor Claim may, but need not, designate a successor from among the holders of Survivor Claims. In the event of the resignation, removal, death, or incapacity of a holder of a Lay Pension Claim from the Plan Oversight Committee, the remaining holder of a Lay Pension Claim may, but need not, designate a successor from among the individual holders of Lay Pension Claims. Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership.

(c)    **Fiduciary Duties.** The fiduciary duties that applied to the Official Committees prior to the Effective Date shall apply to the Plan Oversight Committee. The duties and powers of the Plan Oversight Committee shall terminate upon the termination of the Plan Trust.

(d)    **Rights and Duties.** The Plan Oversight Committee's role shall be to advise and consult with the Plan Trustee as more particularly set forth in the Plan Trust Agreement. The Plan Oversight Committee shall have the rights and duties set forth in the Plan Trust Agreement.

YCST01:10757554.7

068902.1001

(e) **No Compensation.** Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Plan Oversight Committee, the members of the Plan Oversight Committee shall serve without compensation. Reasonable expenses incurred by members of the Plan Oversight Committee may be paid by the Plan Trust without need for approval of the Bankruptcy Court.

9.12 **LIABILITY; INDEMNIFICATION.** Neither the Plan Trustee, the Plan Oversight Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Plan Trustee or the Plan Oversight Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Plan Trustee or Plan Oversight Committee, nor shall such Plan Trustee, or any member of the Plan Oversight Committee, be liable for any act or omission taken or omitted to be taken in its capacity as Plan Trustee, or as a member of the Plan Oversight Committee, respectively, other than for specific acts or omissions resulting from such Plan Trustee's or such member's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Plan Trustee or the Plan Oversight Committee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Plan Trustee nor the Plan Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Plan Trustee or Plan Oversight Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Plan Trust shall indemnify and hold harmless the Plan Trustee and Plan Oversight Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, Claims, costs and expenses (including reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such Persons for actions or omissions as a result of willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty.

9.13 **RETENTION OF PROFESSIONALS**

(a) **Plan Trust Professionals.** The Plan Trust may retain professionals, including counsel, accountants, financial advisors, auditors and other agents on behalf of the Plan Trust as necessary or desirable to carry out the obligations of the Plan Trustee hereunder and under the Plan Trust Agreement. More specifically, provided such representation is permitted by applicable law, the Plan Trust may retain counsel or financial advisors in any matter related to administration of the Plan, including

26

counsel that has acted as counsel for the Debtor, the Creditors Committee, or the Lay Employees Committee in the Chapter 11 Case.

(b) **Plan Oversight Committee Professionals.** The Plan Oversight Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with the Plan Trustee, or for other purposes set forth in the Plan Trust Agreement, and the reasonable fees and expenses of such counsel shall constitute Plan Administration Expenses payable by the Plan Trust.

**9.14   PRESERVATION OF ALL CAUSES OF ACTION.** Except as otherwise provided in the Plan, the Confirmation Order or other Order of the Bankruptcy Court, or in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Plan Trust shall be vested with, retain, and may exclusively enforce and prosecute any Claims or Causes of Action that the Debtor, the Estate, the Creditors Committee, the Lay Employees Committee or the Plan Trust may have against any Person. The Plan Trustee may pursue such retained Claims or Causes of Action in accordance with the best interests of the Creditors, the Estate, and/or the Plan Trust.

**9.15   SUCCESSION TO LITIGATION.** On the Effective Date, and subject fully to Article V, the Plan Trust shall succeed (i) to the interests of the Creditors Committee in any contested matter or adversary proceeding commenced by the Creditors Committee, including any appeal therefrom, which is pending as of the Effective Date, including the PIA Litigation; and (ii) to the interests of the Debtor in any contested matter, adversary proceeding, or nonbankruptcy litigation against the Debtor, including any appeal therefrom, which is pending as of the Effective Date, other than the PIA Litigation. The Reorganized Debtor shall succeed to the interests of the Debtor in the PIA Litigation.

**ARTICLE X:**
**PROCEDURES FOR LIQUIDATION AND ALLOWANCE OF**
**SURVIVOR CLAIMS IN CDOW-ONLY PLAN**

**10.1   APPLICABILITY OF THIS ARTICLE.** This Article shall apply only if the Plan is confirmed as a CDOW-Only Plan.

**10.2   CLASS 3A ELECTION OF ADR, LITIGATION, OR CONVENIENCE TREATMENT.** Each holder of a Class 3A Claim shall elect to be treated as a holder of (i) a Survivor ADR Claim, liquidation and Allowance (or Disallowance) of which shall be governed by Section 10.4, (ii) a Survivor Litigation Claim, liquidation and Allowance (or Disallowance) of which shall be governed by Section 10.5, or (iii) a Survivor Convenience Claim, liquidation and Allowance (or Disallowance) of which shall be governed by Section 10.6. The election required by this Section must be in a writing served on the Plan Trustee no later than (i) thirty (30) days after a notice of the Effective Date is Filed with the Bankruptcy Court and served, or (ii) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 30-day period (the "Survivor Election Deadline").

**10.3   GLOBAL REMOVAL OF PENDING STATE-COURT LITIGATION.** To the extent not previously removed pursuant to Bankruptcy Rule 9001 and 28

27

U.S.C. § 1452, all cases pending in the Superior Court in which Survivor Claims are asserted shall be removed to the District Court for liquidation and Allowance (or Disallowance) of Survivor Claims in accordance with the Bankruptcy Code and Sections 10.4, 10.5 and 10.6.

**10.4   SURVIVOR ADR PROCESS.** After consultation with the Creditors Committee, the Debtor shall, in a Supplemental Plan Document, identify a disinterested Person to serve as arbitrator (the "Survivor Claims Arbitrator") and propose binding arbitration procedures (the "Survivor Claims Arbitration Procedures"), subject to approval by the Bankruptcy Court at the Confirmation Hearing, by which the Survivor Claims Arbitrator shall determine the Allowed amount of any Survivor ADR Claims (which, for the avoidance of doubt, shall be limited only to compensatory damages and shall not include any punitive or exemplary damages or pre-judgment interest).

**10.5   SURVIVOR LITIGATION PROCESS.** After consultation with the Creditors Committee, the Debtor shall, in a Supplemental Plan Document, identify a disinterested Person other than the Survivor Claims Arbitrator to serve as special mediator (the "Survivor Claims Mediator"), subject to approval by the Bankruptcy Court at the Confirmation Hearing, to whom all Survivor Litigation Claims shall be referred pursuant to Del. Bankr. L.R. 9019-3. Should the Plan Trust and the holder of a Survivor Litigation Claim be unable to reach agreement as to the Allowed amount of the Survivor Litigation Claim (which, for the avoidance of doubt, shall be limited to compensatory damages and shall not include any punitive or exemplary damages or pre-judgment interest) via mediation, the claimant may elect (i) to submit to binding arbitration before the Survivor Claims Arbitrator, which election shall be irrevocable, or (ii) to proceed with litigation against the Plan Trust in the District Court, which election shall be revocable at any time prior to the earliest of the date on which the Plan Trust has Filed a dispositive motion with respect to, or a trial has commenced on, the Claim.

**10.6   SURVIVOR CONVENIENCE PROCESS.** Each holder of a Survivor Convenience Claim shall tender to the Survivor Claims Arbitrator a sworn statement in the form to be Filed as a Supplemental Plan Document. Each Survivor Convenience Claim shall be Allowed in the amount of $75,000 (for Claims arising out of Abuse by Diocesan priests or employees) or $25,000 (for Claims arising out of Abuse by Religious Order clerics or employees), as applicable, if the Survivor Claims Arbitrator determines that (i) a Proof of Claim was timely filed by the holder of such Survivor Convenience Claim, or was deemed timely filed by Order of the Bankruptcy Court, and (ii) the sworn statement, along with the Proof of Claim filed by the holder of such Claim, establish a *Prima Facie* Case of Abuse.

**10.7   EFFECT OF NO ELECTION.** Each holder of a Class 3A Claim who does not elect to be treated as a holder of (i) a Survivor ADR Claim, (ii) a Survivor Litigation Claim, or (iii) a Survivor Convenience Claim by making such election by the Survivor Election Deadline in accordance with Section 10.2 shall be deemed to have elected treatment as a holder of a Survivor Convenience Claim, which election shall be irrevocable.

**10.8   CIVIL COMPLAINT BY SURVIVOR LITIGATION CLAIMANT.** If a holder of a Survivor Litigation Claim has not Filed a civil complaint alleging such Claim in the Superior Court or District Court before making an election to be treated as a holder of a Survivor

Litigation Claim, such holder must File in the District Court and serve on the Plan Trust such a complaint within sixty (60) days after the Effective Date. If a holder of a Survivor Litigation Claim does not File and serve such complaint, such holder shall be deemed to have elected treatment as a holder of a Survivor Convenience Claim, which election shall be irrevocable.

**10.9    FEES AND EXPENSES.** Reasonable fees and expenses of the Survivor Claims Arbitrator, the Survivor Claims Mediator, and counsel to the Plan Trust in connection with any arbitration, mediation, or litigation concerning a Survivor Claim shall constitute Plan Administration Expenses payable from the Plan Administration Expense Reserve. Upon request, the Reorganized Debtor shall reasonably cooperate (i) with the Plan Trust, the Survivor Claims Arbitrator, and the Survivor Claims Mediator in connection with any arbitration or mediation concerning a Survivor Claim, and (ii) with the Plan Trust and the holder of a Class 3A Claim with respect to discovery in connection with any litigation concerning a Survivor Claim (including by making witnesses available for deposition and trial), and the reasonable expenses of the Reorganized Debtor, including professional fees, in so doing shall constitute Plan Administration Expenses payable from the Plan Administration Expense Reserve. Nothing in this Section shall prejudice to the right of the Reorganized Debtor to object to the reasonableness of any discovery request.

**10.10  AGREEMENTS OUTSIDE THE ADR AND LITIGATION PROCEDURES.** For the avoidance of doubt, nothing in the Plan shall preclude the holder of a Class 3A Claim and the Plan Trust from stipulating to the Allowed amount of such Class 3A Claim as otherwise permitted by the Plan Trust Agreement, the Bankruptcy Code, and the Bankruptcy Rules.

**ARTICLE XI:**
**INSURANCE POLICIES**

**11.1    CONTINUATION OF INSURANCE POLICIES.** The Debtor shall identify in a Supplemental Plan Document all known Insurance Policies and specify which of such Insurance Policies are expected to be Settled Insurance Policies in a Settlement Plan. If the Plan is confirmed as a Settlement Plan, the Settled Insurance Policies shall be sold to the Settling Insurers pursuant to § 363 of the Bankruptcy Code in accordance with Section 5.1(b). Irrespective whether the Plan is confirmed as a Settlement Plan or a CDOW-Only Plan, on the Effective Date, all Insurance Policies that were not previously sold to a Settling Insurer pursuant to § 363 of the Bankruptcy Code (the "Designated Insurance Policies") shall, as applicable, either be deemed assumed by the Reorganized Debtor pursuant to §§ 365 and 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is or was an Executory Contract of the Debtor, or continued in accordance with its terms pursuant to § 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an Executory Contract of the Debtor, such that each of the parties' contractual, legal, and equitable rights under each such Designated Insurance Policy shall remain unaltered. To the extent that any or all of the Designated Insurance Policies are considered to be Executory Contracts, then the Plan shall constitute a motion to assume the Designated Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to §§ 365(a) and 1123(a)(5)(A) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor, the Estate, and all parties in interest in the

29

Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Effective Date with respect to any Designated Insurance Policy. The Debtor reserves the right to seek rejection of any Designated Insurance Policy or other available relief prior to the Effective Date.

**11.2   PROVISIONS APPLICABLE TO CDOW-ONLY PLAN.**   This Section shall apply only if the Plan is confirmed as a CDOW-Only Plan.

(a)   **Right to Insurance Proceeds.**  Whether the Designated Insurance Policies are assumed and assigned to the Reorganized Debtor or continued in accordance with their terms, the Estate's rights to any proceeds of such Designated Insurance Policies shall vest in the Plan Trust pursuant to §§ 541(c)(1) and 1123(a)(5)(B) of the Bankruptcy Code. From and after the Effective Date, the Reorganized Debtor shall cooperate reasonably with the Plan Trust to maximize the proceeds of the Designated Insurance Policies (including, upon reasonable request by the Plan Trust, by commencing and prosecuting one or more Insurance Actions with respect to the Designated Insurance Policies), and the reasonable expenses of the Reorganized Debtor, including professional fees, in so doing shall constitute Plan Administration Expenses payable from the Plan Administration Expense Reserve.

(b)   **Insurance Neutrality.** Except as otherwise provided in this Article XI, nothing in the Plan, any exhibit to the Plan, any Supplemental Plan Document, any Confirmation Order, or any other order of the Bankruptcy Court to the contrary (including any other provision that purports to be preemptory or supervening or grants a release): (a) shall affect, impair or prejudice the rights and defenses of any Insurer, the Debtor, the Reorganized Debtor, the Plan Trust, or any other insureds under any Insurance Policy in any manner; (b) shall in any way operate to, or have the effect of, impairing or having any *res judicata*, collateral estoppel, or other preclusive effect on any party's legal, equitable, or contractual rights or obligations under any Designated Insurance Policy in any respect; or (c) shall otherwise determine the applicability or non-applicability of any provision of any Insurance Policy and any such rights and obligations shall be determined under the Insurance Policy and applicable law. Additionally, any Insurance Action against any Insurer related to any Insurance Policy shall be brought in a court of competent jurisdiction other than the Bankruptcy Court; provided, however, that nothing herein waives any right of the Debtor, the Reorganized Debtor, the Plan Trust, or any Insurer to require arbitration to the extent the relevant Insurance Policy provides for such.

(c)   **Additional Protections.**

(1)   *Use of this Article.* To the extent it becomes necessary to enforce the terms of this Article XI in any Insurance Action related to any Insurance Policy, the party seeking to enforce this article may submit the terms of this Article XI to the judge presiding over such Insurance Action, and the parties to the Insurance Action shall stipulate and agree that this Article XI is binding upon them and was approved by the Bankruptcy Court in the Confirmation Order.

YCST01:10757554.7                                                    068902.1001

(2)    *Effect of this Article Generally.* Except as otherwise provided in this Article XI, with respect to and for purposes of construing and applying any Insurance Policy to resolve any Insurance Action, nothing in the Plan, the Supplemental Plan Documents, the Confirmation Order, or any other judgment, order, finding of fact, conclusion of law, determination, ruling or statement (written or oral) made or entered by the Bankruptcy Court or by any other court exercising jurisdiction over the Chapter 11 Case or any matter arising in or relating to the Chapter 11 Case, including any judgment, order, writ, or opinion entered on appeal from any of the foregoing, shall constitute an adjudication, judgment, trial, hearing on the merits, finding, conclusion, or other determination; or evidence or suggestion of any such determination, establishing or relating to the liability (in the aggregate or otherwise) or coverage obligation of any Insurer for any Claim(s).

(3)    *Effect of this Article on Exculpation, Release, Injunction and Discharge Provisions.* Notwithstanding anything to the contrary in the Plan or the Confirmation Order, no exculpation, release, injunction, or discharge provisions in the Plan or the Confirmation Order shall affect or limit the rights or obligations of, or protections afforded, the Debtor, the Reorganized Debtor, the Plan Trust, or any Insurer under this Article XI in regards to any Insurance Action arising under any Insurance Policy.

## ARTICLE XII:
## THE POOLED INVESTMENT ACCOUNT

**12.1    CONTINUATION OF PIA CUSTODY AGREEMENT AND INVESTMENT MANAGEMENT AGREEMENTS.** To the extent that the PIA Custody Agreement and the Investment Management Agreements are considered to be Executory Contracts, then notwithstanding anything contained in the Plan to the contrary, the Plan shall constitute a motion to assume the PIA Custody Agreement and the Investment Management Agreements in connection with the Plan pursuant to §§ 365 and 1123(a)(5)(A) of the Bankruptcy Code. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve each such assumption pursuant to §§ 365(a) and 1123(a)(5)(A) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtor, the Estate, and all parties in interest in the Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Effective Date with respect to the PIA Custody Agreement or the Investment Management Agreements. The Debtor reserves the right to seek rejection of the PIA Custody Agreement or any Investment Management Agreement, or seek other available relief, prior to the Effective Date. To the extent the PIA Custody Agreement and the Investment Management Agreements are not considered to be Executory Contracts, all rights thereunder shall be preserved and shall vest in the Reorganized Debtor pursuant to Section 17.2 and § 1123(a)(5)(A) of the Bankruptcy Code.

31

**12.2    CONTINUATION OF TRUST RELATIONSHIPS.** The Reorganized Debtor shall succeed to, and assume, all rights, responsibilities, and duties of the Debtor as trustee for the benefit of the Non-Debtor Pooled Investors under applicable bankruptcy law.

**12.3    RIGHTS OF CUSTODIAN AND INVESTMENT MANAGERS.** For the avoidance of doubt, nothing in the Plan is intended, nor shall it be construed, to recognize or impose any duty on the part of the Custodian or any Investment Managers (i) to any person other than the Debtor or the Reorganized Debtor, or (ii) beyond the duties imposed by the PIA Custody Agreement and Investment Management Agreements, as applicable. Notwithstanding anything to the contrary in the Plan, the Custodian and Investment Managers shall have no liability, or otherwise be in violation of the Plan, for acting in accordance with the PIA Custody Agreement and Investment Management Agreements, as applicable, including by processing any transactions initiated by the Debtor or the Reorganized Debtor that are permitted by the PIA Custody Agreement and Investment Management Agreements, as applicable. The Custodian and the Investment Managers shall be authorized to exercise their rights and perform their obligations under the PIA Custody Agreement and the Investment Management Agreements, as applicable, in the ordinary course in accordance with prepetition practices without further Order of the Bankruptcy Court. Without limiting the generality of the foregoing, the Custodian and the Investment Managers shall be authorized to surcharge the Pooled Investment Account as authorized in the PIA Custody Agreement and the Investment Management Agreements, as applicable (including for reimbursements and offsets for fees and expenses, and overdrafts), without application to the Bankruptcy Court or notice to any party (except as otherwise provided in the PIA Custody Agreement or the Investment Management Agreements, as applicable).

**12.4    DISPUTE ESCROWS IN CDOW-ONLY PLAN.** This Section shall apply only if the Plan is confirmed as a CDOW-Only Plan.

**(a)    Non-Debtor PIA Dispute Escrow.** The Confirmation Order shall (i) identify all Disputed Non-Debtor PIA Funds as of the Confirmation Date and (ii) provide that, notwithstanding anything to the contrary in the PIA Custody Agreement, such Disputed Non-Debtor PIA Funds shall be deemed to be held *in custodia legis* pending entry of a Final Order determining whether such Disputed Non-Debtor PIA Funds constitute Unrestricted Assets of the Estate. While *in custodia legis*, the Disputed Non-Debtor PIA Funds (i) shall not be subject to attachment, encumbrance, or forfeiture by any means without prior Order of the Bankruptcy Court, and (ii) shall be managed by the Reorganized Debtor in accordance with the PIA Custody Agreement and the Investment Management Agreements, in consultation with the Plan Trustee and the Non-Debtor Pooled Investors, for the benefit of the Plan Trust and the Non-Debtor Pooled Investors, as their respective interests in the Disputed Non-Debtor PIA Funds may lie. The Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes between the Reorganized Debtor, the Plan Trustee, and the Non-Debtor Pooled Investors regarding the management of Disputed Non-Debtor PIA Funds pursuant to this Section 12.4(a).

**(1)    *Permitted Distributions.*** Distributions from the Disputed Non-Debtor PIA Funds shall be subject to further Order of the Bankruptcy Court.

YCST01:10757554.7

068902.1001

(2)    *Disposition upon Resolution of Dispute.* As soon as practicable upon request by the Plan Trustee after entry of a Final Order determining any Disputed Non-Debtor PIA Fund to be an Unrestricted Asset of the Estate, the Reorganized Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, such Disputed Non-Debtor PIA Fund to the Plan Trust on behalf of the Debtor. Upon entry of a Final Order determining any Disputed Non-Debtor PIA Fund not to be an Unrestricted Asset of the Estate, the Reorganized Debtor shall be authorized to process withdrawal requests from the applicable Non-Debtor Pooled Investor without further Order of the Bankruptcy Court.

(b)    **Restricted Fund Dispute Escrow.** The Confirmation Order shall (i) identify all Disputed Restricted PIA Funds as of the Confirmation Date and (ii) provide that, notwithstanding anything to the contrary in the PIA Custody Agreement, such Disputed Restricted PIA Funds shall be deemed to be held *in custodia legis* pending entry of a Final Order determining whether such funds constitute Unrestricted Assets of the Estate. While *in custodia legis*, the Disputed Non-Debtor PIA Funds (i) shall not be subject to attachment, encumbrance, or forfeiture by any means without prior Order of the Bankruptcy Court, and (ii) shall be managed by the Reorganized Debtor in accordance with the PIA Custody Agreement and the Investment Management Agreements, in consultation with the Plan Trustee, for the benefit of the Reorganized Debtor and the Plan Trust, as their respective interests in the Disputed Restricted PIA Funds may lie. The Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes between the Reorganized Debtor and the Plan Trustee regarding the management of Disputed Restricted PIA Funds pursuant to this Section 12.4(b).

(1)    *Permitted Distributions.* The Reorganized Debtor shall be permitted to use Disputed Restricted PIA Funds other than the Capital Campaign Fund in the ordinary course in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, without further order of the Bankruptcy Court; provided, however, that the total value of each Disputed Restricted PIA Fund so utilized in each 12-month period from and after the Effective Date shall not exceed 5.5% of the total value of such Disputed Restricted PIA Fund on the last day of the last full month prior to the beginning of such period, without further Order of the Bankruptcy Court; and provided further, however, that the Reorganized Debtor shall provide the Plan Trustee monthly reports including the amount and purpose of any uses of Disputed Restricted PIA Funds.  To the extent the Capital Campaign Fund is a Disputed Restricted PIA Fund, distributions from the Capital Campaign Fund shall be subject to further Order of the Bankruptcy Court.

(2)    *Disposition upon Resolution of Dispute.* Upon entry of a Final Order determining any Disputed Restricted PIA Fund to be an Unrestricted Asset of the Estate, the Reorganized Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, such Disputed Restricted PIA Fund to the Plan Trust on behalf of the Debtor. Upon entry of a

33

Final Order determining any Disputed Restricted PIA Fund to be a Restricted Asset, the Reorganized Debtor shall be authorized to use such Disputed Restricted PIA Fund, without further notice to any Person or Order of the Bankruptcy Court, in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, provided that, to the extent the holders of Allowed Class 3C Claims elect treatment under Section 4.5(a)(2), the Capital Campaign Fund, the Capital Campaign Fund shall be distributed in accordance with Section 4.5(a)(2).

(c)    **Lay Pension Dispute Escrow.** The Confirmation Order shall provide that, notwithstanding anything to the contrary in the PIA Custody Agreement, the Lay Pension Fund shall be deemed to be held in *custodia legis* subject to the provisions of this Section 12.4(c). While in *custodia legis*, the Lay Pension Fund (i) shall not be subject to attachment, encumbrance, or forfeiture by any means without prior Order of the Bankruptcy Court, and (ii) shall be managed by the Reorganized Debtor in accordance with the PIA Custody Agreement and the Investment Management Agreements, in consultation with the Plan Trustee and the Lay Employees Committee, for the benefit of the Plan Trust and the Lay Pension Plan, as their respective interests in the Lay Pension Fund may lie. The Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes between the Reorganized Debtor, the Plan Trustee, and the Lay Employees Committee regarding the management of Lay Pension Fund pursuant to this Section 12.4(c).

(1)    *Permitted Distributions.* Distributions from the Lay Pension Fund shall be subject to further Order of the Bankruptcy Court.

(2)    *Disposition upon Resolution of Dispute.* Upon entry of a Final Order determining the Lay Pension Fund to be an Unrestricted Asset of the Estate, the Reorganized Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, such Lay Pension Fund to the Plan Trust on behalf of the Debtor. Upon entry of a Final Order determining the Lay Pension Fund to be held in trust for the benefit of the Lay Pension Plan, or to be a Restricted Asset, the Reorganized Debtor shall direct the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, the Lay Pension Fund to the Lay Pension Plan Trust on behalf of the Debtor.

(d)    **Accounting.** Until entry of a Final Order determining whether each of the Disputed Non-Debtor PIA Funds, the Lay Pension Fund, and any Disputed Restricted PIA Funds are Unrestricted Assets of the Estate, the Reorganized Debtor shall continue to utilize sub-fund accounting with respect to the Pooled Investment Account so that all post-Effective Date transfers and transactions respecting the Pooled Investment Account shall be adequately and promptly documented in, and readily ascertainable from, the Reorganized Debtor's books and records, to the same extent maintained by the Debtor prior to the commencement of the Chapter 11 Case. Nothing contained herein shall prevent the Reorganized Debtor from establishing any additional sub-fund(s) within the Pooled Investment Account as it may deem necessary and appropriate, and the Custodian

34

is authorized to process the Reorganized Debtor's request to account for transactions with respect to such sub-fund(s).

**12.5   USE OF UNDISPUTED RESTRICTED PIA FUNDS.** On and after the Effective Date, the Reorganized Debtor may use Undisputed Restricted PIA Funds without further notice to any Person or Order of the Bankruptcy Court, in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

**12.6   FINAL § 345 WAIVER.** The Plan shall constitute a renewed motion to waive the deposit requirements of § 345(b) of the Bankruptcy Code in connection with the Pooled Investment Account. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute (i) a final waiver of the deposit requirements of § 345(b) of the Bankruptcy Code, to the extent applicable, with respect to the Pooled Investment Account, for cause, and (ii) a finding by the Bankruptcy Court that such waiver is in the best interests of the Debtor, the Estate, and all parties in interest in the Chapter 11 Case.

## ARTICLE XIII:
## PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION

**13.1   NO EFFECT ON SURVIVOR CLAIMS IN SETTLEMENT PLAN.** If the Plan is confirmed as a Settlement Plan, then notwithstanding anything to the contrary in this Article, the liquidation and Allowance (or Disallowance) of Class 3A Claims channeled to the Settlement Trust pursuant to Section 16.3 shall be governed exclusively by the Settlement Trust Distribution Procedures, and the Reorganized Debtor shall have no standing to object to Allowance of any Class 3A Claim channeled to the Settlement Trust pursuant to Section 16.3.

**13.2   RESERVATION OF RIGHTS TO OBJECT TO CLAIMS.** Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Plan, or otherwise becomes an Allowed Claim prior to the Effective Date, upon the Effective Date, the Plan Administrator shall be deemed to have a reservation of any and all rights, interests and objections of the Debtor, the Official Committees, or the Estate to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured or unsecured, including any and all rights, interests and objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Debtor's or Official Committees' failure to object to any Claim in the Chapter 11 Case shall be without prejudice to the Plan Administrator's rights to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

**13.3   OBJECTIONS TO CLAIMS.** Prior to the Effective Date, the Debtor shall be responsible for pursuing any objection to the Allowance of any Claim. From and after the Effective Date, the Plan Administrator will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims (including those Claims that are subject to objection by the Debtor as of the Effective Date), provided, however, that nothing in this Section shall affect the right of any party

35

in interest (including the Reorganized Debtor) to object to any Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and the Plan. Unless otherwise provided in the Plan or by Order of the Bankruptcy Court, any objections to Claims by the Plan Administrator will be Filed and served not later than one (1) year after the later of (i) the Effective Date or (ii) the date such Claim is Filed, provided that the Plan Administrator may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by Filing a motion with the Bankruptcy Court without any requirement to provide notice to any Person, based upon a reasonable exercise of the Plan Administrator's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

13.4   **SERVICE OF OBJECTIONS.** An objection to a Claim shall be deemed properly served on the holder of such Claim if the objector effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such holder in the Chapter 11 Case.

13.5   **DETERMINATION OF CLAIMS.** From and after the Effective Date, any Claim as to which a Proof of Claim or motion or request for payment was timely Filed in the Chapter 11 Case, or deemed timely Filed by Order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending) liquidated pursuant to (i) an Order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties without the need for Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, Filed by the Debtor, the Plan Administrator, or any other party in interest on or prior to any applicable deadline for Filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, interests or Causes of Action that the Debtor or the Plan Administrator may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157.

13.6   **NO DISTRIBUTIONS PENDING ALLOWANCE.** No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Plan Administrator may, in its discretion, make a distribution in accordance with Article XIV on account of the portion of such Claim that is an Allowed Claim.

36

13.7    CLAIM ESTIMATION. In order to effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Case, the Debtor (if prior to the Effective Date) and the Plan Administrator (on and after the Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an Order of the Bankruptcy Court or the District Court, pursuant to § 502(c) of the Bankruptcy Code, estimating or limiting the amount of (i) property that must be withheld from or reserved for distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine (i) whether such Claims are subject to estimation pursuant to § 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan. If the Plan is confirmed as a CDOW-Only Plan, then on and after the Effective Date, the Reorganized Debtor shall have the right to continue to prosecute any motion commenced by the Debtor pursuant to this Section, and the reasonable fees and expenses of the professionals of the Reorganized Debtor in connection therewith shall constitute Plan Administration Expenses payable from the Plan Administration Expense Reserve.

## ARTICLE XIV:
## DISTRIBUTIONS UNDER THE PLAN

14.1    NO EFFECT ON SURVIVOR CLAIMS IN SETTLEMENT PLAN. If the Plan is confirmed as a Settlement Plan, then notwithstanding anything to the contrary in this Article, the timing and manner of distributions on account of Allowed Class 3A Claims shall be governed exclusively by the Settlement Trust Agreement and applicable nonbankruptcy law.

14.2    TIMING OF DISTRIBUTIONS

(a)    S/A/P Claims. On the Effective Date, the Plan Administrator shall establish the S/A/P Claims Reserve for all Disputed S/A/P Claims and Allowed S/A/P Claims not paid prior to the Effective Date. As soon as practicable after (and to the extent) that a Disputed S/A/P Claim becomes an Allowed S/A/P Claim, the Plan Administrator shall make a payment from the S/A/P Claims Reserve to the holder of such Claim in the Allowed amount of such Claim. After (and to the extent) a Disputed S/A/P Claim is determined not to be an Allowed S/A/P Claim, the portion of the S/A/P Claims Reserve reserved for such Claim shall be released from the S/A/P Claims Reserve and distributed or retained by the Plan Administrator, as applicable, pursuant to the terms of the Plan.

(b)    Interim Distributions on Account of Allowed Claims in CDOW-Only Plan. If the Plan is confirmed as a CDOW-Only Plan, the Plan Trust shall (i) be authorized to make annual interim Distributions on account of Allowed Claims from the Plan Trust, provided that any such distribution is warranted, economical and not unduly burdensome to the Plan Trust, and (ii) have the right to make more frequent interim distributions to holders of Allowed Claims if the Plan Trustee determines that such interim distributions are warranted, economical and not unduly burdensome to the Plan Trust; provided, however, that any such distribution(s) shall only be made if (i) the

Plan Administration Expense Reserve and S/A/P Claims Reserve are fully funded and will remain fully funded after such interim distributions are made and (ii) the Plan Trust retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Plan Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Plan Trust in accordance with the Plan or the Plan Trust Agreement.

**14.3    PAYMENT DATE.** Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

**14.4    UNDELIVERABLE DISTRIBUTIONS.** If payment or distribution to the holder of an Allowed Claim under the Plan is returned for lack of a current address for the holder or otherwise, the Plan Administrator shall File with the Bankruptcy Court the name, if known, and last known address of the holder and the reason for its inability to make payment. If, after the passage of ninety (90) days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the holder shall be distributed to the other holders of Allowed Claims in the appropriate Class or Classes (or retained by the Plan Administrator, to the extent all Allowed Claims in the appropriate Class or Classes have been satisfied in full) and the Allowed Claim shall be deemed satisfied and released, with no recourse to the Plan Administrator or property of the Plan Administrator, to the same extent as if payment or distribution had been made to the holder of the Allowed Claim.

**14.5    SETOFFS.** The Plan Administrator may, to the extent permitted under applicable law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, the Claims, rights and Causes of Action of any nature that the Plan Administrator may hold against the holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Administrator of any such Claims, rights and Causes of Action that the Plan Administrator possesses against such holder.

**14.6    NO INTEREST ON CLAIMS.** Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a holder of a Claim and approved by an Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order or Plan Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes and Allowed Claim.

**14.7    WITHHOLDING TAXES.** The Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Plan Administrator may require that the holder of an Allowed Claim provide such holder's taxpayer identification

38

number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

## ARTICLE XV:
## EFFECTIVENESS OF THE PLAN

**15.1    CONDITIONS PRECEDENT TO EFFECTIVE DATE.** The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below. The conditions set forth in this Section may be waived by the Debtor in writing, *provided that* waiver of any of the conditions set forth in subsections (e)(1)-(3) below shall require the written agreement of State Court Counsel.

(a)    **Approval of Disclosure Statement.** The Bankruptcy Court shall have approved a Disclosure Statement to the Plan in form and substance acceptable to the Debtor and the Creditors Committee, which acceptance shall not be unreasonably withheld.

(b)    **Entry of Confirmation Order.** Subject fully to Sections 15.2 and 15.3, the Confirmation Order (i) shall have been entered by the Bankruptcy Court, (ii) shall not be subject to any stay of effectiveness, and (iii) shall have become a Final Order, the Confirmation Date shall have occurred, and no request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

(c)    **Establishment of S/A/P Claims Reserve.** The S/A/P Claims Reserve shall have been established.

(d)    **Appointment of Special Arbitrator.** The appointment of the Special Arbitrator shall have been approved by Order of the Bankruptcy Court.

(e)    **Lay Pension Plan Reaffirmation Agreement.** The Debtor shall have filed the Lay Pension Plan Reaffirmation Agreement and used its best efforts to gain approval thereof by the Bankruptcy Court.

(f)    **Conditions Applicable to Settlement Plan.** If the Plan is confirmed as a Settlement Plan, the following conditions shall have been satisfied in full:

(1)    *Form of Confirmation Order.*

(i)    The Confirmation Order shall be in form and substance acceptable to the Debtor and the Creditors Committee, which acceptance shall not be unreasonably withheld.

(ii)    The Confirmation Order shall provide that, except to the extent otherwise agreed by Survivor John Vai in a writing Filed with the Bankruptcy Court, Mr. Vai shall receive from the Settlement Trust a gross distribution of not less than three million dollars ($3,000,000) from the Settlement Trust Assets allocated to The Neuberger

39

Firm, P.A., subject to Mr. Vai's obligations under his contract with his counsel.

(2) *Formation and Funding of Settlement Trust.* The Settlement Trust Agreement shall have been properly executed and filed as required by the Plan and applicable law, and the Settlement Trust shall have been formed and funded initially with the NDCE Settlement Contribution and the Insurer Settlement Contribution on or before the Settlement Funding Date.

(3) *Appointment of Settlement Trustee.* The appointment of the Settlement Trustee shall have been approved by Order of the Bankruptcy Court.

(4) *Transfer of Lay Pension Fund.* The Debtor shall have directed the Custodian to liquidate and distribute, or distribute via in-kind or inter-custodial transfer, the Lay Pension Fund to the Lay Pension Plan Trust on behalf of the Debtor, and such distribution shall have occurred.

(5) *Additional Lay Pension Funding.* Cash or other property having a value of not less than $5,000,000 in the aggregate (the value of any non-Cash property being determined by Order of the Bankruptcy Court, after notice and a hearing, which hearing may be the Confirmation Hearing) shall have been contributed to the Lay Pension Plan Trust by or on behalf of the Debtor.

(g) **Conditions Applicable to CDOW-Only Plan.** If the Plan is confirmed as a CDOW-Only Plan, the following conditions shall have been satisfied in full:

(1) *Form of Confirmation Order.* The Confirmation Order shall be in form and substance acceptable to the Debtor in its sole and absolute discretion.

(3) *Establishment of IBNR Reserves.* The Debtor shall have established the IBNR Reserves.

(4) *Formation and Funding of Plan Trust.* The Plan Trust shall have been formed and funded initially with all Plan Trust Assets consisting of Cash, and all formation documents for such entity shall have been properly executed and filed as required by the Plan and applicable law. For the avoidance of doubt, such initial funding shall not include any Cash proceeds of Disputed Non-Debtor PIA Funds, the Disputed Restricted PIA Funds, or the Lay Pension Fund disposition of which shall be governed by Section 12.4, or (ii) the IBNR Reserves, which shall be held and administered by the Reorganized Debtor pursuant to Section 8.5.

(5) *Appointment of Plan Trustee, Survivor Claims Arbitrator, and Survivor Claims Mediator.* The appointment of the Plan Trustee, the Survivor Claims Arbitrator, and the Survivor Claims Mediator shall have been approved by Order of the Bankruptcy Court.

40

(6)    *Approval of Survivor Claims Arbitration Procedures.* The Survivor Claims Arbitration Procedures shall have been approved by Order of the Bankruptcy Court.

**15.2    NON-CONSUMMATION OF SETTLEMENT PLAN.** If after the Confirmation Order is entered confirming the Plan as a Settlement Plan, each of the applicable conditions to effectiveness has not been satisfied or duly waived by ninety (90) days after the Confirmation Date, then upon motion by the Debtor, and after notice and a hearing, the Confirmation Order may be (i) modified by the Bankruptcy Court to confirm the Plan as a CDOW-Only Plan, to the extent the requirements for confirmation of the Plan as a CDOW-Only Plan are satisfied, or (ii) vacated by the Bankruptcy Court; provided however, that notwithstanding the Filing of such a motion, the Confirmation Order shall not be modified or vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Bankruptcy Court enters an Order granting the relief requested in such motion. Prior to filing any motion to modify the Confirmation Order to confirm the plan as a CDOW-Only Plan, the Debtor shall meet and confer with the Creditors Committee and the Lay Employees Committee to establish a schedule for litigation, if any, relating to confirmation of the Plan as a CDOW-Only Plan. Pending the occurrence of this meet-and-confer and the Bankruptcy Court' s entry of an order regarding discovery and pleading deadlines related thereto, no party in interest will be required to File any pleading or initiate/continue any discovery related to confirmation of the Plan as a CDOW-Only Plan. If the Confirmation Order is modified pursuant to this Section to confirm the Plan as a CDOW-Only Plan, then for all purposes under the Plan, (i) the order as modified shall constitute the "Confirmation Order," (ii) the date of entry of such order on the Bankruptcy Court's docket shall constitute the "Confirmation Date," and (iii) the hearing to consider confirmation of the Plan as a Settlement Plan and the subsequent hearing to consider modification of the Confirmation Order to confirm the Plan as a CDOW-Only Plan shall, collectively, constitute the "Confirmation Hearing." If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, nor any pleadings Filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against the Debtor, (ii) prejudice in any manner the rights of the holder of any Claim against the Debtor, (iii) prejudice in any manner the rights of the Debtor in the Chapter 11 Case, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any Person prior to the Confirmation Date.

**15.3    NON-CONSUMMATION OF CDOW-ONLY PLAN.** If after the Confirmation Order is entered confirming the Plan as a CDOW-Only Plan, each of the applicable conditions to effectiveness has not been satisfied or duly waived by ninety (90) days after the Confirmation Date, then upon motion by the Debtor, and after notice and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided however, that notwithstanding the Filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Bankruptcy Court enters an Order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, nor any pleadings Filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against the Debtor, (ii) prejudice in any manner the rights of the holder of any Claim against the Debtor, (iii) prejudice in any

41

manner the rights of the Debtor in the Chapter 11 Case, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any Person prior to the Confirmation Date.

## ARTICLE XVI:
## EFFECTS OF CONFIRMATION

**16.1    DISSOLUTION OF OFFICIAL COMMITTEES.** On the Effective Date, the Official Committees shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective Orders entered during the Chapter 11 Case, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all (i) applications for Professional Claims and (ii) requests for compensation and reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code for making a substantial contribution in the Chapter 11 Case. Notwithstanding the foregoing, if the Plan is confirmed as a CDOW-Only Plan, the Lay Employees Committee shall continue to exist post-Effective Date as an *ad hoc* committee solely for the purpose of prosecuting the Lay Pension Litigation, and the reasonable fees and expenses of counsel to such committee shall constitute Plan Administration Expenses.

**16.2    DISCHARGE INJUNCTION.** *Except as otherwise expressly provided in the Plan or in the Confirmation Order, and subject fully to Sections 11.2(b) and (c) (if the Plan is confirmed as a CDOW-Only Plan), on the Effective Date, pursuant to § 1141(d) of the Bankruptcy Code, the Debtor shall be discharged from any Claim that arose prior to the Effective Date, and all Persons who have held or asserted, hold or assert, or may in the future hold or assert a Discharged Claim shall be permanently stayed, enjoined, and restrained from taking any action, directly or indirectly for the purposes of asserting, enforcing or attempting to assert of enforce any Discharged Claim, including: (i) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Discharged Claim against the Debtor, the Reorganized Debtor, or property of the Reorganized Debtor; (ii) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or Order against the Debtor, the Reorganized Debtor, or property of the Reorganized Debtor, with respect to any Discharged Claim; (iii) creating, perfecting, or enforcing any encumbrance or lien of any kind against the Debtor, the Reorganized Debtor, or property of the Reorganized Debtor with respect to any Discharged Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Reorganized Debtor with respect to any Discharged Claim; and (v) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan. In the event any Person takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this injunction, the Plan or Confirmation Order, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the Claim of such Person is asserted will automatically be transferred to the Bankruptcy Court or the District Court for enforcement of the Plan. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party shall be entitled to an award of costs (including reasonable*

42

*attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper.*

16.3   CHANNELING INJUNCTION IN SETTLEMENT PLAN. *This Section shall apply in a Settlement Plan. On and after the Effective Date, in consideration of (a) the promises and obligations of the Debtor, the Reorganized Debtor, the Bishop, and the Non-Debtor Catholic Entities under the Plan (including the provision of the NDCE Settlement Contribution and the non-monetary undertakings set forth in Sections 17.5(b) and (c) hereof), and (b) consideration provided, or to be provided, by the Settling Insurers, all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Survivor Claim arising prior to the Effective Date (other than a Survivor Claim that is an Administrative Claim) shall be forever barred and permanently enjoined from pursuing such Survivor Claim against any Protected Party based upon or in any manner arising from or related to any acts or omissions of any Protected Party including (w) for damages of any type, including bodily injury, personal injury, emotional distress, wrongful death and/or loss of consortium, (x) for exemplary or punitive damages, (y) for attorneys' fees and other expenses, fees or costs, (z) for any remedy at law, in equity or admiralty whatsoever, heretofore, now or hereafter asserted against any Protected Party; and all Survivor Claims arising prior to the Effective Date (other than Survivor Claims that are Administrative Claims) shall be channeled to and shall be treated, administered, determined, and, if Allowed, paid under the procedures and protocols and in the amounts as established under the Plan and the Settlement Trust Agreement as the sole and exclusive remedy for all Survivor Claimants. The foregoing channeling injunction is an integral part of the Plan and essential to its consummation and implementation. It is intended that the channeling of the Survivor Claims as provided in this Section shall inure to and for the benefit of the Protected Parties and shall not, directly or indirectly, inure to or for the benefit of the Holy See (State of Vatican City) or any Non-Settling Insurer, Religious Order, or Perpetrator. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party shall be entitled to an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper.*

16.4   EXCULPATION; LIMITATION OF LIABILITY. *From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any Claim, Cause of Action or liability to any other Exculpated Party, to any holder of a Claim, or to any other party in interest, for any act or omission that occurred during and in connection with the Chapter 11 Case or in connection with the preparation and Filing of the Chapter 11 Case, the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except for Claims, Causes of Action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, the Debtor and its officers, member, employees, attorneys, financial advisors, and other Professionals shall be entitled to and granted the benefits of § 1125(e) of the Bankruptcy*

43

*Code. For the avoidance of doubt, this Section shall not, directly or indirectly, inure to or for the benefit of the Holy See (State of Vatican City), any Religious Order, or any Perpetrator.*

## ARTICLE XVII:
## THE REORGANIZED DEBTOR

**17.1    CONTINUED CORPORATE EXISTENCE.** The Debtor will, as the Reorganized Debtor, continue to exist after the Effective Date as a separate entity in accordance with the applicable laws of the State of Delaware, with all the powers of a not-for-profit, non-stock member corporation having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

**17.2    VESTING OF ASSETS.** In accordance with §§ 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Reorganization Assets shall vest in the Reorganized Debtor (or such other entity or entities specified by the Debtor in a Supplemental Plan Document, and subject to approval by the Bankruptcy Court at the Confirmation Hearing) on the Effective Date free and clear of all liens, Claims, and interests of Creditors, including successor liability Claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**17.3    IDENTITY OF OFFICERS OF REORGANIZED DEBTOR.** In accordance with § 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as officers of the Reorganized Debtor on and after the Effective Date shall be set forth in a Supplemental Plan Document.

**17.4    FURTHER AUTHORIZATION.** The Reorganized Debtor shall be entitled to seek such Orders, judgments, injunctions, rulings, and other assistance as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

**17.5    VOLUNTARY UNDERTAKINGS OF REORGANIZED DEBTOR, THE BISHOP, AND THE NON-DEBTOR CATHOLIC ENTITIES.**

**(a)    Lay Pension Plan Reaffirmation Agreement.** Pursuant to § 524(c) of the Bankruptcy Code, and subject to approval by the Bankruptcy Court, the Reorganized Debtor will reaffirm the Debtor's obligations under the Lay Pension Plan to the extent set forth in the Lay Pension Plan Reaffirmation Agreement to be Filed by the Debtor not less than seven (7) days prior to the Voting Deadline.

(1)    The Lay Pension Plan Reaffirmation Agreement shall include provisions (i) requiring that the Reorganized Debtor pay all accrued benefits under the Lay Pension Plan that were vested as of a date certain not

44

earlier than January 1, 2011, (ii) expressly stating that benefits need not be paid in the form of a third-party annuity contract, and (iii) requiring that the Reorganized Debtor make periodic contributions to the Lay Pension Plan Trust in an amount not less than two million dollars ($2,000,000) per annum, until the Lay Pension Plan (as may be modified by the Lay Pension Plan Reaffirmation Agreement) is fully funded on an actuarial basis. The Lay Pension Plan Reaffirmation Agreement may include any other appropriate provision not inconsistent with the applicable provisions of this Plan and the Bankruptcy Code.

(2)     The Debtor will use its best efforts to gain approval of the Lay Pension Plan Reaffirmation Agreement by the Bankruptcy Court at the Confirmation Hearing. If the Lay Pension Plan Reaffirmation Agreement is not approved by the Bankruptcy Court, the Debtor will request an express ruling from the Bankruptcy Court that, pursuant to § 524(f) of the Bankruptcy Code, nothing in the Plan, the Confirmation Order, or the Bankruptcy Code shall prohibit (i) the Reorganized Debtor from voluntarily honoring the Lay Pension Plan Reaffirmation Agreement or (ii) any holder of a Lay Pension Claim from accepting the Reorganized Debtor's performance under the Lay Pension Plan Reaffirmation Agreement.

**(b)     Establishment of Charitable Trust for Survivors.** The Bishop will establish and manage a charitable trust fund to provide medical, psychological, educational, or other material assistance to Survivors and their families, as determined by the Bishop in his discretion. This fund will be capitalized initially with the Bishop's Discretionary Fund, and thereafter will be funded with the proceeds of any gifts and donations to the Reorganized Debtor for the benefit of Survivors.

**(c)     Additional Non-Monetary Undertakings for the Protection of Children.** If the Plan is confirmed as a Settlement Plan, the Bishop, the Reorganized Debtor, and the Non-Debtor Catholic Entities will agree to the non-monetary undertakings set forth in Exhibits D and E. If the Plan is confirmed as a CDOW-Only Plan, the Bishop and the Reorganized Debtor will agree to the non-monetary undertakings set forth in Exhibit F.

**17.6   MANDATORY ARBITRATION OF DISPUTES.** The Confirmation Order shall refer all disputes regarding compliance with the voluntary undertakings in Sections 17.5(b) or (c) to a disinterested Person the Debtor shall identify in a Supplemental Plan Document to serve as an arbitrator (the "Special Arbitrator"). The appointment of the Special Arbitrator is subject to approval by the Bankruptcy Court. Decisions by the Special Arbitrator shall be final and non-reviewable by any court or other tribunal or authority. Responsibility for paying the reasonable fees and expenses of the Special Arbitrator in connection with the arbitration of such disputes shall be shared by the parties to the dispute.

45

## ARTICLE XVIII:
## MISCELLANEOUS PROVISIONS

**18.1    REJECTION OF UNASSUMED EXECUTORY CONTRACTS.** On the Effective Date, except for any Executory Contract (i) that was previously assumed or rejected by an Order of the Bankruptcy Court (including the Confirmation Order) or otherwise pursuant to § 365 of the Bankruptcy Code or (ii) that is subject to a pending motion to assume or reject before the Bankruptcy Court, each Executory Contract entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, and which is not expressly assumed in the Plan, shall be rejected pursuant to §§ 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejection pursuant to §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**18.2    FINAL ORDER.** Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtor (if prior to the Effective Date) or the Plan Administrator (on or after the Effective Date) upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any Order that is not a Final Order.

**18.3    AMENDMENTS AND MODIFICATIONS.** The Debtor may modify the Plan at any time prior to the Confirmation Hearing in accordance with § 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in § 1101(2) of the Bankruptcy Code) of the Plan, the Reorganized Debtor, or the Plan Trust, as appropriate, may modify the Plan in accordance with § 1127(b) of the Bankruptcy Code by the Filing a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court.

**18.4    U.S. TRUSTEE REPORTS.** From the Effective Date until a Final Decree is entered, the Plan Administrator shall, within thirty (30) days of the end of each fiscal quarter, File with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports setting forth all receipts and disbursements as required by the U.S. Trustee guidelines.

**18.5    NO WAIVER.** The failure of the Debtor to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtor's or the Plan Administrator's right to object to such Claim, in whole or in part.

**18.6    TAX EXEMPTION.** Pursuant to § 1146 of the Bankruptcy Code, the delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, including any such acts by the Debtor (if prior to the Effective Date), and the Plan Administrator (on or after the Effective Date), including any subsequent transfers of property by the Plan Administrator, and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and

46

the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

**18.7    NON-SEVERABILITY.** Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of the Plan may be stricken, altered, or invalidated, except by amendment of the Plan by the Debtor.

**18.8    REVOCATION.** The Debtor reserves the right to revoke and withdraw the Plan prior to the Confirmation Date, in which case the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, the Creditors Committee or the Lay Employees Committee, or any other Person or to prejudice in any manner the rights of the Debtor, the Creditors Committee or the Lay Employees Committee, or any other Person in any further proceedings involving the Debtor, or be deemed an admission by the Debtor, including with respect to the amount or allowability of any Claim or the value of any property of the Estate.

**18.9    CONTROLLING DOCUMENTS.** In the event and to the extent that any provision of the Plan or the Plan Trust Agreement is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or Plan Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Plan Trust Agreement is inconsistent with any provision of the Plan, the Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Plan Trust Agreement, the provisions of the Confirmation Order shall control and take precedence.

**18.10    GOVERNING LAW.** Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), and unless specifically stated, the rights, duties, and obligations arising under the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) and any corporate governance matters with respect to the Plan Trust or the Reorganized Debtor shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles.

**18.11    NOTICES.** Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

068902.1001

**If to the Debtor or the Reorganized Debtor:**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Attn:   Anthony G. Flynn
        Patrick A. Jackson

**If to the Plan Trust or the Plan Trustee:**

The parties identified in the Plan Trust Agreement to receive notices.

**If to the Plan Oversight Committee, the Survivor Claims Arbitrator, the Survivor Claims Mediator, the Special Arbitrator, or the Settlement Arbitrator:**

The parties identified in the Confirmation Order to receive notices.

**If to the Settlement Trust or the Settlement Trustee:**

The parties identified in the Settlement Trust Agreement to receive notices.

**18.12  FILING OF ADDITIONAL DOCUMENTS.** At any time before "substantial consummation" (as such term is defined in § 1102(2) of the Bankruptcy Code) of the Plan, the Debtor, the Plan Trust, the Settlement Trust, and/or the Reorganized Debtor, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

**18.13  POWERS OF OFFICERS.** The officers of the Debtor or the Reorganized Debtor, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

**18.14  DIRECTION TO A PARTY.** On and after the Effective Date, the Plan Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**18.15  SUCCESSORS AND ASSIGNS.** The Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including the Reorganized Debtor. The rights, benefits, and obligations of any entity named or referred to in the Plan shall

be binding on, and shall inure to the benefit of, any heir, executor, administrator successor, or assign of such entity.

**18.16   CERTAIN ACTIONS.** By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtor or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtor.

**18.17   FINAL DECREE.** Once the Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Plan Administrator or such other party as the Bankruptcy Court may designate in the Confirmation Order, shall File a motion with the Bankruptcy Court to obtain a Final Decree to close the Chapter 11 Case.

**18.18   PLAN AS SETTLEMENT COMMUNICATION.** The Plan (including in Article V) furnishes or offers or promises to furnish – or accepts or offers or promises to accept – valuable consideration in compromising or attempting to compromise Claims and Causes of Action that are disputed as to validity and/or amount (including Survivor Claims, the PIA Litigation, and other Claims and Causes of Action against Settling Parties). Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Federal Rule of Evidence 408 and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any disputed Claim or Cause of Action. Additionally, counsel for any Survivor should treat the Plan and the Disclosure Statement as an offer of settlement that must be transmitted to his or her client in accordance with applicable rules and standards governing the practice of law before the Bankruptcy Court.

## ARTICLE XIX:
## BANKRUPTCY RULE 9019 REQUEST

**19.1**   Pursuant to Bankruptcy Rule 9019, the Debtor hereby requests approval of all compromises and settlements included in the Plan, including the compromises and settlements set forth in Article V.

YCST01:10757554.7

068902.1001

**ARTICLE XX:**
**CONFIRMATION REQUEST**

20.1    The Debtor hereby requests confirmation of the Plan as a Cramdown Plan with respect to any Impaired Class that does not accept the Plan or is deemed to have rejected the Plan.

Dated: Wilmington, Delaware
      May 23, 2011

Respectfully submitted,

CATHOLIC DIOCESE OF WILMINGTON, INC.

_____

By: Most Rev. W. Francis Malooly, D.D.
Its: President and Sole Member

50