# EXHIBIT 1

**Form of Lay Pension Plan Reaffirmation Agreement**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CATHOLIC DIOCESE OF WILMINGTON, INC., a Delaware Corporation, | ) Case No. 09-13560 (CSS) |
| | ) |
| | ) Honorable Christopher S. Sontchi |
| Debtor.[1] | ) |
| | ) |

## LAY PENSION PLAN REAFFIRMATION AGREEMENT

**Included in this filing:**

Part A: Disclosures, Instructions, and Notice to Debtor
Part B: Lay Pension Plan Reaffirmation Agreement
Part C: Certification by Debtor's Attorney
Part D: Debtor's Statement in Support of Reaffirmation Agreement

## PART A:  DISCLOSURE STATEMENT, INSTRUCTIONS, AND NOTICE TO DEBTOR

### 1.  DISCLOSURE STATEMENT

*Before agreeing to reaffirm a debt, review these important disclosures.*

**Summary of Reaffirmation Agreement**:

This summary is made pursuant to the requirements of the Bankruptcy Code.

**Amount Reaffirmed:  $64,235,680**

The estimated amount of debt that you have agreed to reaffirm is set forth above.  This amount is stated as the net present value of estimated future payment obligations as of December 31, 2011, and does not reflect any payments previously made, or to be made, on account of such debt before or after such date.

Your agreement with your creditor may obligate you to pay additional amounts which may come due after the date of this disclosure.  Consult your agreement.

**Annual Percentage Rate:  6.5%**

---

1 The last four digits of the Debtor 's federal tax identification number are 5439. The Debtor's mailing address is 1925 Delaware Avenue, P.O. Box 2030, Wilmington, Delaware 19899-2030.

The estimated annual percentage rate applicable to the debt that you have agreed to reaffirm is set forth above. This percentage rate is equal to the actuarial discount rate applied to estimated future payments due under the Lay Pension Plan Agreement in order to arrive at a net present value of future payment obligations as of December 31, 2011.

**NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interests. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1.    Read the disclosures in <u>Part A</u> carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in <u>Part B</u> (or you may use a separate agreement you and your creditor agree upon).

2.    Complete and sign <u>Part D</u> and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3.    If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in <u>Part C</u>.

4.    The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in <u>Part B</u>) has been signed, it must be attached.

5.    If you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in <u>Part D</u>.

6.    If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement.

Are you required to enter into a reaffirmation by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interests. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it.

# PART B:  REAFFIRMATION AGREEMENT

Catholic Diocese of Wilmington, Inc. ("Employer" or the "Debtor") agrees to reaffirm the debts arising under the agreement described below.

## 1. Brief description of agreement:

That certain *Diocese of Wilmington Lay Employees Pension Plan* dated as of _____ __, 2011 (the "Lay Pension Plan") attached as Exhibit 1 hereto.

## 2. Description of any changes to the agreement made as part of this reaffirmation agreement:

See blackline attached as Exhibit 2 hereto indicating changes made by the Lay Pension Plan to the *Diocese of Wilmington Lay Employees Pension Plan* dated as of January 1, 2006.  Changes include, but are not limited to, the following:

(1) "Hard freeze" of benefits as of December 31, 2011, provided that benefits that are accrued but unvested as of that date will be permitted to vest in accordance with the ordinary vesting rules.

(2) Express statement that Employer's liability for benefits is not limited to the funded portion of such benefits.

(3) Express statement that benefits may be paid as and when due and need not be provided in the form of a third-party annuity contract.

(4) Express statement that Participants are intended beneficiaries of the Lay Pension Plan.

(5) Requirement that Employer contribute cash in the amount of five million dollars ($5,000,000) to the Lay Pension Plan Trust no later than December 31, 2011.

(6) Requirement that Employer contribute cash in the amount of two million dollars ($2,000,000) to the Lay Pension Plan Trust no later than June 30, 2013.

(7) Requirement that Employer contribute cash in the amount of two million, one-hundred thousand dollars ($2,100,000) to the Lay Pension Plan Trust no later than June 30, 2014.

(8) Requirement that Employer contribute cash in the amount of two million, two-hundred thousand dollars ($2,200,000) to the Lay Pension Plan Trust no later than June 30, 2015.

(9) Requirement that Employer contribute cash proceeds from a capital campaign to be conducted by Employer no later than December 31, 2015 in the amount of (i) five million dollars ($5,000,000) no later than December 31, 2016, and (ii) an additional five million dollars ($5,000,000) no later than December 31, 2017.

(10) Requirement that, beginning in fiscal year 2016, the Employer shall make annual contributions to the Lay Pension Plan Trust equal to the *lesser* of (i) an amount equal to two million, two-hundred thousand dollars ($2,200,000) plus 2.5% for each fiscal year after 2016; or (ii) the amount recommended by the Lay Pension Plan Administrative Committee based on an amortization schedule that assumes full funding of the Lay Pension Plan on an actuarial basis as of June 30, 2060, which schedule shall be subject to annual adjustment based on actual experience.

(11) Requirement that the Lay Pension Plan shall be fully funded on an actuarial basis by June 30, 2060.

(12) Express statement that any surplus in the Lay Pension Plan Trust upon the payment of all benefits to Participants shall revert to Employer.

(13) Requirement that all assets of the Lay Pension Plan be held in the Lay Pension Plan Trust.

(14) Substitution of Bank of New York Mellon as Trustee, and requirement that Trustee shall at all times be an independent institutional third-party trustee.

(15) Establishment of a Lay Pension Plan Administrative Committee, which will be constituted and will always include at least three (3) Beneficiaries of the Lay Pension Plan.

(16) Express statement that from and after approval of the Lay Pension Plan Reaffirmation Agreement, no amendment will be made to the Lay Pension Plan, the Lay Pension Plan Trust or any other document governing the operation or administration of the Lay Pension Plan that would reduce the rights of Participants or the obligations of the Employer under the Lay Pension Plan.

SIGNATURES:

Dated: _____ __, 2011                CATHOLIC DIOCESE OF WILMINGTON, INC.


                                        _____
                                        By: Most Rev. W. Francis Malooly, D.D.
                                        Its: President and Sole Member

Accepted by:

Dated: _____ __, 2011

BANK OF NEW YORK MELLON

_____

By:
Its:

068902.1001

## PART C:  CERTIFICATION BY DEBTOR'S ATTORNEY

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the Debtor; (2) this agreement does not impose an undue hardship on the Debtor; and (3) I have fully advised the Debtor of the legal effect and consequences of this agreement and any default under this agreement.

Dated:      Wilmington, Delaware
              _____ __, 2011

YOUNG CONAWAY STARGATT & TAYLOR, LLP


Anthony G. Flynn (No. 74)
Robert S. Brady (No. 2847)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to Catholic Diocese of Wilmington, Inc.

## PART D:  DEBTOR'S STATEMENT IN SUPPORT
## OF REAFFIRMATION AGREEMENT

1.      The Debtor believes this reaffirmation agreement will not impose an undue hardship on itself.  The Debtor can afford to make the payments on the reaffirmed debt because its annual income is expected to be approximately $_____, and its estimated annual expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements is expected to total $_____, leaving $_____ per annum to make the required payments on this reaffirmed debt.  The Debtor understands that if its income less its expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on the Debtor and must be reviewed by the court.  However, this presumption may be overcome if the Debtor explains to the satisfaction of the court how it can afford to make the payments here:

[_____]

2.      The Debtor has received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Dated: _____, 2011          CATHOLIC DIOCESE OF WILMINGTON, INC.

_____
By: Most Rev. W. Francis Malooly, D.D.
Its: President and Sole Member

# EXHIBIT 1

**Lay Pension Plan**

# DIOCESE OF WILMINGTON
# LAY EMPLOYEES PENSION PLAN

**Amended and Restated**
**Effective _____, 2011**

TABLE OF CONTENTS

**ARTICLE I**
**DEFINITIONS**

**ARTICLE I DEFINITIONS** ................................................................................................. 1

| | | |
|---|---|---|
| 1.1. | "Accrued Benefit" | 1 |
| 1.2. | "Actuarial Equivalent" | 3 |
| 1.3. | "Administrator" | 3 |
| 1.4. | "Affiliated Employer" | 3 |
| 1.5. | "Aggregate Account" | 4 |
| 1.6. | "Anniversary Date" | 4 |
| 1.7. | "Annuity Starting Date" | 4 |
| 1.8. | "Average Monthly Compensation" | 4 |
| 1.9. | "Baseline Funding Amount" | 4 |
| 1.10. | "Beneficiary" | 4 |
| 1.11. | "Code" | 4 |
| 1.12. | "Compensation" | 4 |
| 1.13. | "Contract" or "Policy" | 5 |
| 1.14. | "Earliest Retirement Age" | 5 |
| 1.15. | "Early Retirement Date" | 5 |
| 1.16. | "Eligible Employee" | 6 |
| 1.17. | "Employee" | 6 |
| 1.18. | "Employer" | 6 |
| 1.19. | "Fiduciary" | 6 |
| 1.20. | "Fiscal Year" | 6 |
| 1.21. | "Former Participant" | 7 |
| 1.22. | "415 Compensation" | 7 |
| 1.23. | "Fresh-Start Date" | 7 |
| 1.24. | "Fresh-Start Group" | 7 |
| 1.25. | "Frozen Accrued Benefit" | 7 |
| 1.26. | "Highly Compensated Employee" | 8 |
| 1.27. | "Highly Compensated Participant" | 9 |
| 1.28. | "Hour of Service" | 9 |
| 1.29. | "Investment Manager" | 10 |
| 1.30. | "Key Employee" | 10 |
| 1.31. | "Late Retirement Date" | 11 |
| 1.32. | "Leased Employee" | 11 |
| 1.33. | "Minimum Funding Amount" | 12 |
| 1.34. | "Non-Highly Compensated Participant" | 12 |
| 1.35. | "Non-Key Employee" | 12 |
| 1.36. | "Normal Retirement Age" | 12 |
| 1.37. | "Normal Retirement Date" | 12 |
| 1.38. | "1-Year Break in Service" | 12 |

1.39. "Participant" ................................................................................ 13
1.40. "Plan" ........................................................................................ 13
1.41. "Plan Year" ................................................................................ 13
1.42. "Plan Year of Service" ................................................................ 13
1.43. "Pre-Retirement Survivor Annuity" ............................................. 13
1.44. "Present Value of Accrued Benefit" ............................................ 13
1.45. "Regulation" .............................................................................. 14
1.46. "Retired Participant" .................................................................. 14
1.47. "Retirement Date ...................................................................... 14
1.48. "Social Security Retirement Age" ............................................... 14
1.49. "Terminated Participant" ........................................................... 14
1.50. "Top Heavy Plan" ...................................................................... 14
1.51. "Top Heavy Plan Year" .............................................................. 14
1.52. "Top-Paid Group" ...................................................................... 14
1.53. "Total and Permanent Disability" ............................................... 15
1.54. "Trustee" ................................................................................... 15
1.55. "Trust Fund" .............................................................................. 15
1.56. "Vested" .................................................................................... 15
1.57. "Year of Service" ....................................................................... 15

ARTICLE II ADMINISTRATION ................................................................ 16

2.1. POWERS AND RESPONSIBILITIES OF THE EMPLOYER ............... 16
2.2. DESIGNATION OF ADMINISTRATIVE AUTHORITY ..................... 17
2.3. POWERS AND DUTIES OF THE ADMINISTRATOR ...................... 17
2.4. RECORDS AND REPORTS ......................................................... 18
2.5. APPOINTMENT OF ADVISERS .................................................. 18
2.6. PAYMENT OF EXPENSES .......................................................... 18
2.7. CLAIMS PROCEDURE ............................................................... 19
2.8. CLAIMS REVIEW PROCEDURE ................................................. 19

ARTICLE III ELIGIBILITY ...................................................................... 19

3.1. CONDITIONS OF ELIGIBILITY ................................................. 19
3.2. EFFECTIVE DATE OF PARTICIPATION ...................................... 20
3.3. DETERMINATION OF ELIGIBILITY ........................................... 20
3.4. TERMINATION OF ELIGIBILITY ............................................... 20
3.5. REHIRED EMPLOYEES AND BREAKS IN SERVICE ..................... 20
3.6. ELECTION NOT TO PARTICIPATE ............................................ 21
3.7. FROZEN BENEFIT ACCRUALS .................................................. 22

ARTICLE IV CONTRIBUTION AND VALUATION ....................................... 22

4.1. PAYMENT OF CONTRIBUTIONS ............................................... 22
4.2. ACTUARIAL METHODS ............................................................. 22
4.3. QUALIFIED MILITARY SERVICE ............................................... 23

**ARTICLE V BENEFITS**................................................................................... **23**

5.1.    RETIREMENT BENEFITS ......................................................... 23
5.2.    MINIMUM BENEFIT REQUIREMENT FOR TOP HEAVY PLAN ...................... 25
5.3.    PAYMENT OF RETIREMENT BENEFITS.................................. 26
5.4.    DISABILITY RETIREMENT BENEFITS .................................... 26
5.5.    DEATH BENEFITS ................................................................. 27
5.6.    TERMINATION OF EMPLOYMENT BEFORE RETIREMENT.......................... 28
5.7.    DISTRIBUTION OF BENEFITS ................................................ 31
5.8.    DISTRIBUTION OF BENEFITS UPON DEATH ............................ 36
5.9.    TIME OF SEGREGATION OR DISTRIBUTION .......................... 39
5.10.   DISTRIBUTION FOR MINOR OR INCOMPETENT BENEFICIARY ................. 39
5.11.   LOCATION OF PARTICIPANT OR BENEFICIARY UNKNOWN ..................... 39
5.12.   EFFECT OF SOCIAL SECURITY ACT ...................................... 40
5.13.   QUALIFIED DOMESTIC RELATIONS ORDER DISTRIBUTION .................... 40
5.14.   LIMITATION OF BENEFITS ON TERMINATION ............................... 40

**ARTICLE VI CODE SECTION 415 LIMITATIONS**............................................. **42**

6.1.    ANNUAL BENEFIT.................................................................. 42
6.2.    MAXIMUM ANNUAL BENEFIT ............................................... 42
6.3.    ADJUSTMENTS TO ANNUAL BENEFIT AND LIMITATIONS .................... 43
6.4.    ANNUAL BENEFIT NOT IN EXCESS OF $10,000 ................... 44
6.5.    PARTICIPATION OR SERVICE REDUCTIONS ........................... 45
6.6.    ELIMINATION OF MULTIPLE PLAN REDUCTION ............................ 45

**ARTICLE VII TRUSTEE**................................................................................. **45**

7.1.    BASIC RESPONSIBILITIES OF THE TRUSTEE......................... 45
7.2.    INVESTMENT POWERS AND DUTIES OF THE TRUSTEE .................... 46
7.3.    OTHER POWERS OF THE TRUSTEE ........................................ 46
7.4.    DUTIES OF THE TRUSTEE REGARDING PAYMENTS ...................... 49
7.5.    TRUSTEE'S COMPENSATION AND EXPENSES AND TAXES..................... 49
7.6.    ANNUAL REPORT OF THE TRUSTEE ...................................... 49
7.7.    AUDIT.................................................................................... 50
7.8.    RESIGNATION, REMOVAL AND SUCCESSION OF TRUSTEE.................... 50
7.9.    TRANSFER OF INTEREST........................................................ 51
7.10.   TRUSTEE INDEMNIFICATION ................................................ 51
7.11.   DIRECT ROLLOVER .............................................................. 51

**ARTICLE VIII PLAN AMENDMENT**............................................................... **52**

8.1.    AMENDMENT ........................................................................ 52

**ARTICLE IX PLAN TERMINATION** ............................................................... **52**

9.1.    TERMINATION ...................................................................... 52
9.2.    LIMITATION OF BENEFITS ON PLAN TERMINATION........................ 53

**ARTICLE X MERGER, CONSOLIDATION OR TRANSFER OF ASSETS** ..................... **53**

    10.1.   REQUIREMENTS ................................................................................ 53

**ARTICLE XI TOP HEAVY** ............................................................................................ **53**

    11.1.   TOP HEAVY PLAN REQUIREMENTS ................................................ 53
    11.2.   DETERMINATION OF TOP HEAVY STATUS ...................................... 53

**ARTICLE XII MISCELLANEOUS** ............................................................................... **56**

    12.1.   PARTICIPANT'S RIGHTS ................................................................... 56
    12.2.   ALIENATION ..................................................................................... 57
    12.3.   CONSTRUCTION OF PLAN ................................................................ 58
    12.4.   GENDER AND NUMBER .................................................................... 58
    12.5.   LEGAL ACTION ................................................................................. 58
    12.6.   PROHIBITION AGAINST DIVERSION OF FUNDS ............................ 58
    12.7.   EMPLOYER'S AND TRUSTEE'S PROTECTIVE CLAUSE ................... 58
    12.8.   INSURER'S PROTECTIVE CLAUSE ................................................... 58
    12.9.   RECEIPT AND RELEASE FOR PAYMENTS ....................................... 59
    12.10.  ACTION BY THE EMPLOYER ........................................................... 59
    12.11.  NAMED FIDUCIARIES AND ALLOCATION OF RESPONSIBILITY ................. 59
    12.12.  HEADINGS ......................................................................................... 60
    12.13.  APPROVAL BY INTERNAL REVENUE SERVICE .............................. 60
    12.14.  UNIFORMITY .................................................................................... 60

**ARTICLE XIII PARTICTAT1NG EMPLOYERS** .................................................... **60**

    13.1.   ADOPTION BY OTHER EMPLOYERS ................................................ 60
    13.2.   REQUIREMENTS OF PARTICIPATING EMPLOYERS ......................... 60
    13.3.   DESIGNATION OF AGENT ................................................................ 61
    13.4.   EMPLOYEE TRANSFERS .................................................................. 61
    13.5.   AMENDMENT .................................................................................... 62
    13.6.   DISCONTINUANCE OF PARTICIPATION .......................................... 62
    13.7.   ADMINISTRATOR'S AUTHORITY ..................................................... 62

## DIOCESE OF WILMINGTON LAY EMPLOYEES PENSION PLAN

THIS AGREEMENT, hereby made and entered into this ___ day of _____ by and between Catholic Diocese of Wilmington, Inc. (herein referred to as the "Employer") and Bank of New York Mellon (herein referred to as the "Trustee").

WITNESSETH

WHEREAS, the Employer heretofore established a Pension Plan and Trust effective October 1, 1966, (hereinafter called the "Effective Date") known as Diocese of Wilmington Lay Employees Pension Plan (herein referred to as the "Plan") in recognition of the contribution made to its successful operation by lay employees and for the exclusive benefit of eligible lay employees; and

WHEREAS, Catholic Charities, Inc., an Affiliated Employer, established a similar retirement plan for lay employees effective July 1, 1980, known as the Catholic Charities, Inc. Pension Plan, which was merged with the Plan effective January 1, 2006; and

WHEREAS, on October 18, 2009, Employer filed a petition with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); and

WHEREAS, on May 23, 2011, Employer filed the *Second Amended Plan of Reorganization of Catholic Diocese of Wilmington, Inc.* (as may be amended, the "Chapter 11 Plan"), which by its terms contemplates confirmation either as a "Settlement Plan" or a "CDOW – Only Plan"); and

WHEREAS, the Bankruptcy Court has scheduled a hearing to consider confirmation of the Chapter 11 Plan as a "Settlement Plan" on July 8, 2011; and

WHEREAS, confirmation of the Chapter 11 Plan would result in the discharge of Employer's liability under the Plan, pursuant to §1141(d) of the Bankruptcy Code; and

WHEREAS, in the event the Chapter 11 Plan is confirmed as a "Settlement Plan", Employer wishes to reaffirm its obligations to Beneficiaries under the Plan to the extent set forth in this agreement;

NOW, THEREFORE, effective _____, 2011, and subject to confirmation and consummation of the Chapter 11 Plan as a "Settlement Plan", the Plan is hereby amended and restated in its entirety to provide as follows:

ARTICLE I<br/>DEFINITIONS

1.1.    "Accrued Benefit" means with respect to Group A Participants the retirement benefit a Participant would receive at his Normal Retirement Date based on the retirement benefit formula set forth in Section 5.1 of the Plan, multiplied by a fraction, not

1

greater than one (1), the numerator of which is the Participant's total number of Years of Service and the denominator of which is the aggregate number of Years of Service the Participant would have accumulated if he continued his employment until his Normal Retirement Age. With respect to Group B Participants "Accrued Benefit" means the retirement benefit a Participant would receive at Normal Retirement Date based on the retirement benefit formula set forth in Section 5.1 of the Plan, multiplied by a fraction, not greater than one (1), the numerator of which is the Participant's total number of Plan Years of Service (calculated on a fractional basis computed to the nearest month) commencing with the Effective Date of the Plan and the denominator of which is the aggregate number of Plan Years of Service (calculated on a fractional basis computed to the nearest month) the Participant would have accumulated commencing with the Effective Date of the Plan if the Participant continued employment until Normal Retirement Age.

When determining a Participant's Accrued Benefit, the retirement benefit projected to be provided pursuant to the retirement benefit formula in Section 5.1 is the monthly benefit to which the Participant would be entitled if the Participant continued to earn until Normal Retirement Age the same rate of Average Monthly Compensation upon which the Participant's retirement benefit formula is based. This rate of Average Monthly Compensation is computed on the basis of Average Monthly Compensation taken into account under the Plan (but not to exceed the ten years of service immediately preceding the determination).

The Accrued Benefit of each Participant in the Fresh-Start Group, shall be equal to the greater of (a) or (b):

      (a)    the Participant's Accrued Benefit determined with respect to the Normal Retirement Benefit formula provided in Section 5.1(a).

      (b)    the sum of (1) the Participant's Frozen Accrued Benefit, if any, and (2) the Participant's Accrued Benefit determined with respect to years beginning after the Fresh-Start Date.

Notwithstanding anything herein to the contrary, a Participant's Accrued Benefit attributable to the retirement benefit formula at the close of any Plan Year coinciding with or next following the Participant's attainment of Normal Retirement Age shall be equal to the monthly retirement benefit formula determined pursuant to Section 5.1(d) based upon service and Average Monthly Compensation determined at the close of my such Plan Year.

Notwithstanding the above, a Participant's Accrued Benefit derived from Employer contributions shall not be less than the minimum Accrued Benefit, if any, provided pursuant to Section 5.2.

Notwithstanding anything to the contrary, if this is a Plan that would otherwise fail to meet the requirements of Code Section 401(a)(26) and the Regulations thereunder because a sufficient number or percentage of Participants for a Plan Year have not accrued a benefit, then the following rules shall apply:

      (a)    The group of Participants eligible to accrue a benefit for the Plan Year shall be expanded to include the minimum number of Participants who would not otherwise

2

be eligible as are necessary to satisfy the applicable test specified above. The specific Participants who shall become eligible under the terms of this paragraph shall be those who are actively employed on the last day of the Plan Year and who have completed the greatest number of Hours of Service in the Plan Year.

(b)     If after application of paragraph (a) above, the applicable test is still not satisfied, then the group of Participants eligible to accrue a benefit for the Plan Year shall be further expanded to include the minimum number of Participants who are not actively employed on the last day of the Plan Year as are necessary to satisfy the applicable test. The specific Participants who shall become eligible to accrue a benefit shall be those Participants who have completed the greatest number of Hours of Service in the Plan Year before terminating employment.

(c)     In the event a Participant who is not a member of the group of Participants eligible to accrue a benefit becomes a member of such group, such Participant shall receive an accrual for such year which bears the same ratio to a full accrual as the number of Hours of Service the Participant actually completes bears to 1,300. Such Participant's benefit for such partial year shall be based upon the Compensation the Participant would have earned if the Participant had completed 1,300 Hours of Service.

(d)     Nothing in this Section shall permit the reduction of a Participant's Accrued Benefit. Therefore any amounts that have previously been accrued by Participants may not be reduced. Any adjustment to Accrued Benefits pursuant to this paragraph shall be considered a retroactive amendment adopted by the last day of the Plan Year.

1.2.    "Actuarial Equivalent" means with respect to Group A Participants, effective with the first day of the first Plan Year beginning after December 31, 1994, a form of benefit differing in time, period, or manner of payment from a specific benefit provided under the Plan but having the same value when computed using the Pre-Retirement Table: 1984 Uniform Premium Table; Post-Retirement Table: 1984 Uniform Premium Table and Pre-Retirement Interest: 6.5%; Post-Retirement Interest: 6.5%. With respect to Group B Participants, "Actuarial Equivalent" means, effective with the fast day of the first Plan Year beginning after December 31, 1994, a form of benefit differing in time, period, or manner of payment from a specific benefit provided under the Plan but having the same value when computed using Pre-Retirement Table: 1983 Group Annuity Table (Blended); Post-Retirement Table: 1983 Group Annuity Table (Blended) and Pre-Retirement Interest 7%; Post-Retirement Interest: 7%.

1.3.    "Administrator" means the Lay Pension Plan Administrative Committee.

1.4.    "Affiliated Employer" means any corporation which is a member of a controlled group of corporations (as defined in Code Section 414(b)) which includes the Employer; any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with the Employer; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Code Section 414(m)) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to Regulations under Code Section 414(o).

3

1.5.    "Aggregate Account" means, with respect to each Participant, the value of all accounts maintained on behalf of a Participant, whether attributable to Employer or Employee contributions, used to determine Top Heavy Plan status under the provisions of a defined contribution plan included in any Aggregation Group (as defined in Section 11.2).

1.6.    "Anniversary Date" means January 1.

1.7.    "Annuity Starting Date" means, with respect to any Participant, the first day of the first period for which an amount is paid as an annuity, or, in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitles the Participant to such benefit.

1.8.    "Average Monthly Compensation" means the monthly Compensation of a Participant averaged over the five consecutive Plan Years which produce the highest monthly average within the last ten (10) completed years of participation. If a Participant has less than five consecutive Plan Years of service from date of participation to date of termination, the Participant's Average Monthly Compensation will be based on the Participant's monthly Compensation during the Participant's months of service from date of participation to date of termination. Compensation subsequent to termination of participation pursuant to Section 3.4 shall not be recognized.

1.9.    "Baseline Funding Amount" means (i) for the Fiscal Year 2016, $2,200,000, and (ii) for each successive Fiscal Year until 2060, 102.5% of the Baseline Funding Amount for the preceding Fiscal Year.

1.10.    "Beneficiary" means the person (or entity) designated as provided in Section 5.5 to receive the benefits which are payable under the Plan upon or after the death of a Participant.

1.11.    "Code" means the Internal Revenue Code of 1986, as amended or replaced from time to time.

1.12.    "Compensation" with respect to any Participant means such Participant's wages as defined in Code Section 3401(a) and all other payments of compensation to the Employer (in the course of the Employer's trade or business) for a Plan Year for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3) and 6052. Compensation must be determined without regard to any rules under Code Section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment er the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)). Notwithstanding the foregoing, if compensation for any prior determination period is taken into account in determining a Participant's benefits for the current Plan Year, Compensation. means compensation determined pursuant to the terms of the Plan then in effect.

For purposes of this Section, the determination of Compensation shall be made by:

(a)    including amounts which are contributed by the Employer pursuant to a salary redaction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 132(f)(4) for Plan Years beginning after December 31,

2000, 402(e)(3), 402(h)(1)(13), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions.

Compensation in excess of $150,000 (or such other amount provided in. the Code) shall be disregarded. Such amount shall be adjusted for increases in the cost of living in accordance with Code Section 401(a)(17)(B), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Years beginning with or within such calendar year. If Compensation for any prior determination period is taken into account in determining a Participant's benefits for the current Plan Year, the compensation for such prior determination period is subject to the applicable annual compensation limit in effect for that prior period. For this purpose, in determining benefits in Plan Years beginning on or after January 1, 1989, the annual compensation limit in effect for determination periods beginning before that date is $200,000 (or such other amount as adjusted for increases in the cost of living in accordance with Code Section 415(d) for determination periods beginning on or after January 1, 1989 and in accordance with Code Section 401(a)(17)(B) for determination periods beginning on or after January 1, 1994). For determination periods beginning prior to January 1, 1989, the $200,000 limit shall apply only to Top Heavy Plan Years and shall not be adjusted. For any short Plan Year the Compensation limit shall be an amount equal to the Compensation limit for the calendar year in which the Plan Year begins multiplied by the ratio obtained by dividing the number of full months in the short Plan Year by twelve (12).

For Plan Years beginning after December 31, 1996, for purposes of determining Compensation, the family member aggregation rules of Code Section 401(a)(17) and Code Section 414(q)(6) (as in effect prior to the Small Business Job Protection Act of 1996) are eliminated. In determining Average Monthly Compensation, the elimination of the family member aggregation rules are treated as having been in effect for earlier years.

1.13. "Contract" or "Policy" means any life insurance policy, retirement income policy or annuity contract (group or individual) issued pursuant to the terms of the Plan. In the event of any conflict between the terms of this Plan and the terms of any contract purchased hereunder, the Plan provisions shall control.

1.14. "Earliest Retirement Age" means the earliest date on which, under the Plan, the Participant could elect to receive retirement benefits.

1.15. "Early Retirement Date" for:

(a)     Group A means the first day of the month (prior to the Normal Retirement Date) coinciding with or following on which a Participant or Former Participant attains age 55, and has completed at least 10 Years of Service with the Employer (Early Retirement Age).

(b)     Group B means the first day of the month (prior to the Normal Retirement Date) coinciding with or following the date on which a fully vested Participant or Former Participant attains age 55.

A fully vested Former Participant who separates from service and who thereafter reaches the age requirement contained herein shall be entitled to receive benefits under this Plan.

5

1.16.   "Eligible Employee" means any Employee who has satisfied the provisions of Section 3.1.

Employees who are Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall not be eligible to participate in this Plan.

Employees whose employment is governed by the terms of a collective bargaining agreement between Employee representatives (within the meaning of Code Section 7701(a)(46)) and the Employer under which retirement benefits were the subject of good faith bargaining between the parties will not be eligible to participate in this Plan unless such agreement expressly provides for coverage in this Plan.

Employees who are nonresident aliens (within the meaning of Code Section 7701(b)(1)(B)) and who receive no earned income (within the meaning of Code Section 911(d)(2)) from the Employer which constitutes income from sources within the United States (within the meaning of Code Section 861(a)(3)) shall not be eligible to participate in this Plan.

Employees of Affiliated Employers shall not be eligible to participate in this Plan unless such Affiliated Employers have specifically adopted this Plan in writing.

Employees classified by the Employer as independent contractors who are subsequently determined by the Internal Revenue Service to be Employees shall not be Eligible Employees.

1.17.   "Employee" means any person who is employed by the Employer or Affiliated Employer, and excludes any person who provides services to the Employer as an independent contractor.  Employee shall include Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and such Leased Employees do not constitute more than 20% of the recipient's non-highly compensated work force.

1.18.   "Employer" means Catholic Diocese of Wilmington, Inc. and any successor which shall maintain this Plan; and any predecessor which has maintained this Plan.  The Employer is a non-stock, non-profit corporation, with principal offices in the State of Delaware.  In addition, where appropriate, the term Employer shall include any Participating Employer (as defined in Section 13.1) which shall adopt this Plan.

1.19.   "Fiduciary" means any person who (a) exercises any discretionary authority or discretionary control respecting management of the Plan or exercises any authority or control respecting management or disposition of its assets, (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan or has any authority or responsibility to do so, or (c) has any discretionary authority or discretionary responsibility in the administration of the Plan.

1.20.   "Fiscal Year" means the Employer's accounting year of 12 months commencing on July 1 of each year and ending the following June 30.  For example, Fiscal Year 2012 would mean July 1, 2011 to June 30, 2012.

6

1.21.    "Former Participant" means a person who has been a Participant, but who has ceased to be a Participant for any reason.

1.22.    "415 Compensation" with respect to any Participant means such Participant's wages as defined in Code Section 3401(a) and all other payments of compensation by the Employer (in the course of the Employer's trade or business) for a Plan Year for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3) and 6052. "415 Compensation" must be determined without regard to any rules under Code Section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)).

For "Limitation years" beginning after December 31, 1997, for purposes of this Section, the determination of "415 Compensation" shall include any elective deferral (as defined in Code Section 402(g)(3)), and any amount which is contributed or deferred by the Employer at the election of the Participant and which is not includible in the gross income of the Participant by reason of Code Sections 125, 132(f)(4) for "limitation years" beginning after December 31, 2000 or 457.

1.23.    "Fresh-Start Date" generally means the last day of the Plan Year preceding a Plan Year for which any amendment of the Plan that directly or indirectly affects the amount of a Participant's benefit determined under the current benefit formula (such as an amendment to the definition of Compensation used in the current benefit formula or a change in the Normal Retirement Age of the Plan) is made effective. If this Plan has had a fresh-start for all Participants, and in a subsequent Plan Year is aggregated for purposes of Code Section 401(a)(4) with another plan that did not make the same fresh-start, then this Plan will have a fresh-start on the last day of the Plan Year preceding the Plan Year during which the plans are first aggregated.

1.24.    "Fresh-Start Group" means all Participants who have Accrued Benefits as of the Fresh-Start Date and have at least one Hour of Service with the Employer after that date.

1.25.    "Frozen Accrued Benefit" means a Participant's Accrued Benefit under the Plan determined as of the latest Fresh-Start Date as if the Participant terminated employment with the Employer as of the latest Fresh-Start Date, or the date the Participant actually terminated employment with the Employer, if earlier, without regard to any amendment made to the Plan after that date other than amendments recognized as effective as of or before the date under Code Section 401(b) or Regulation Section 1.401(a)(4)-11(g). If the Participant has not had a Fresh-Start Date, the Participant's Frozen Accrued Benefit will be zero.

If, as of the Participant's latest Fresh-Start date, the amount of a Participant's Frozen Accrued Benefit was limited by the application of Code Section 415, then the Participant's Frozen Accrued Benefit will be increased for years after the latest Fresh-Start Date to the extent permitted under Code Section 415(d)(1). In addition, the Frozen Accrued Benefit of a Participant whose Frozen Accrued Benefit includes the top-heavy minimum benefits provided in Section 5.2, will be increased to the extent necessary to comply with the average compensation requirement of Code Section 416(c)(1)(D)(i).

7

If: (a) the Plan's normal form of benefit in effect on the Participant's latest Fresh-Start Date is not the same as the normal form under the Plan after such Fresh-Start Date and/or (b) the Normal Retirement Age for any Participant on that date was greater than the Normal Retirement Age for that Participant under the Plan, after such Fresh-Start Date, the Frozen Accrued Benefit will be expressed as an actuarially equivalent benefit in the normal form under the Plan after the Participant's latest Fresh-Start Date, commencing at the Participant's Normal Retirement Age under the Plan in effect after such latest Fresh-Start Date.

With respect to any Participant in the Fresh-Start Group, the Participant's Frozen Accrued Benefit (as adjusted above, if applicable) will be multiplied by a fraction, not less than one, the numerator of which is the Participants Average Monthly Compensation for the current Plan Year, and the denominator is the Participant's Average Monthly Compensation as of the Fresh-Start Date, determined in the same manner as the numerator.

1.26.    "Highly Compensated Employee" means, for Plan Years beginning after December 31, 1996, an. Employee described in Code Section 414(q) and the Regulations thereunder, and generally means any Employee who:

(a)    was a "five percent owner" as defined in Section 1.30(c) at any time during the "determination year" or "look-back year"; or

(b)    for the "look-back year" had "415 Compensation" from the Employer in excess of $80,000 and was in the Top-Paid Group for the "look-back year", The $80,000 amount is adjusted at the same time and in the same manner as under Code Section 415(d), except that the base period is the calendar quarter ending September 30, 1996.

The "determination year" means the Plan Year for which testing is being performed, and the "look-back year" means the immediately preceding twelve (12) month period. However, for purposes of (b) above, the "look-back year" shall be the calendar year beginning within the twelve-month period immediately preceding the "determination year."

Notwithstanding the above, for the first Plan Year beginning after December 31, 1996, the "look-back year" shall be the calendar year ending with or within the Plan Year for which testing is being performed, and the "determination year" (if applicable) shall be the period of time, if any, which extends beyond the "look-back year" and ends on. the last day of the Plan Year for which testing is being performed (the "lag period"),

A highly compensated former Employee is based on the rules applicable to determining Highly Compensated Employee status as in effect for the "determination year," in accordance with Regulation Section 1.414(q)-1T, A-4 and IRS Notice 97-45 (or any superseding guidance).

In determining whether an Employee is a Highly Compensated Employee for a Plan Year beginning in 1997, the amendments to Code Section 414(q) stated above are treated as having been in effect for years beginning in 1996.

For purposes of this Section, for Plan Years beginning prior to January 1, 1998, the determination of "415 Compensation" shall be made by including amounts that would

8

otherwise be excluded from a Participant's gross income by reason of the application of Code Sections 125, 402(e)(3), 402(h)(1)(B), and, in the case of Employer contributions made pursuant to a salary reduction agreement, Code Section 403(b).

In determining who is a Highly Compensated Employee, Employees who are non-resident aliens and who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Additionally, all Affiliated Employers shall be taken into account as a single employer and Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and are not covered in any qualified plan maintained by the Employer. The exclusion of Leased Employees for this purpose shall be applied on a uniform and consistent basis for all of the Employer's retirement plans Highly Compensated Former Employees shall be treated as Highly Compensated Employees without regard to whether they performed services during the "determination year."

1.27.  "Highly Compensated Participant" means any Highly Compensated Employee who is eligible to participate in the component of the Plan being tested.

1.28.  "Hour of Service" means, for purposes of eligibility for participation, vesting and benefit accrual, (1) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer for the performance of duties (these hours will be credited to the Employee for the computation period in which the duties are performed); (2) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer (irrespective of whether the employment relationship has terminated) for reasons other than performance of duties (such as vacation, holidays, sickness, jury duty, disability, lay-off, military duty or leave of absence) during the applicable computation period (these hours will be calculated and credited pursuant to Department of Labor regulation 2530.200b-2 which is incorporated here-in by reference); (3) each hour for which back pay is awarded or agreed to by the Employer without regard to mitigation of damages (these hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made). The same Hours of Service shall not be credited both under (1) or (2), as the case may be, and under (3).

Notwithstanding (2) above, (i) no more than 501 Hours of Service are required to be credited to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period); (ii) an hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, or unemployment compensation or disability insurance laws; and (iii) Hours of Service are not required to be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

9

For purposes of (2) above, a payment shall be deemed to be made by or due from the Employer regardless of whether such payment is made by or due from the Employer directly, or indirectly through, among others, a trust fund, or insurer, to which the Employer contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurer, or other entity are for the benefit of particular Employees or are on behalf of a group of Employees in the aggregate.

For purposes of this Section, Hours of Service will be credited for employment with other Affiliated Employers. The provisions of Department of Labor regulations 2530.200b-2(b) and (c) are incorporated herein by reference.

1.29.    "Investment Manager" means an entity that (a) has the power to manage, acquire, or dispose of Plan assets and (b) acknowledges fiduciary responsibility to the Plan in writing. Such entity must be a person, firm, or corporation registered as an investment adviser under the Investment Advisers Act of 1940, a bank, or an insurance company.

1.30.    "Key Employee" means an Employee as defined in Code Section 416(i) and the Regulations thereunder. Generally, any Employee or former Employee (as well as each of the Employee's or former Employee's Beneficiaries) is considered a Key Employee if the Employee, at any time during the Plan Year that contains the "Determination Date" or any of the preceding four (4) Plan Years, has been included in one of the following categories:

(a)    an officer of the Employer (as that term is defined within the meaning of the Regulations under Code Section 416) having annual "415 Compensation" greater than 50 percent of the amount in effect under Code Section 415(b)(1)(A) for any such Plan Year.

(b)    one of the ten employees having annual "415 Compensation" from the Employer for a Plan Year greater than the dollar limitation in effect under Code Section 415(c)(1)(A) for the calendar year in which such Plan Year ends and owning (or considered as owning within the meaning of Code Section 318) both more than one-half percent interest and the largest interests in the Employer.

(c)    a "five percent owner" of the Employer. "Five percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than five percent (5%) of the outstanding stock of the Employer or stock possessing more than five percent (5%) of the total combined voting power of all stock of the Employer or, in the case of an unincorporated business, any person who owns more than five percent (5%) of the capital or profits interest in the Employer. In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c), (m) and (o) shall be treated as separate employers.

(d)    a "one percent owner" of the Employer having an annual "415 Compensation" from the Employer of more than $150,000. "One percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than one percent (1%) of the outstanding stock of the Employer or stock possessing more than one percent (1%) of the total combined voting power of all stock of the Employer or, in the case of an unincorporated business, any person who owns more than one percent (1%) of the capital

10

or profits interest in the Employer.  In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c), (m) and (o) shall be treated as separate employers.  However, in determining whether an individual has "415 Compensation" of more than $150,000, "415 Compensation" from each employer required to be aggregated under Code Sections 414(b), (c), (m) and (o) shall be taken into account.

For purposes of this Section, the determination of "415 Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 132(f)(4) for Plan Years beginning after December 31, 2000, 402(e)(3), 402(h)(1)(3), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions.

1.31.    "Late Retirement Date" means the first day of the month coinciding with or next following a Participant's actual Retirement Date after having reached Normal Retirement Date.

1.32.    "Leased Employee" means, for Plan Years beginning after December 31, 1996, any person (other than an Employee of the recipient Employer) who pursuant to an agreement between the recipient Employer and any other person or entity ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Code Section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient Employer.  Contributions or benefits provided a Leased Employee by the leasing organization that are attributable to services performed for the recipient Employer shall be treated as provided by the recipient Employer.  Furthermore, Compensation for a Leased Employee shall only include Compensation from the leasing organization that is attributable to services performed for the recipient Employer.  A Leased Employee shall not be considered an Employee of the recipient Employer:

(a)      if such employee is covered by a money purchase pension plan providing:

(1)      a nonintegrated employer contribution rate of at least 10% of compensation, as defined in Code Section 415(c)(3), but, for Plan Years beginning prior to January 1, 1998, including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which axe not includible in. the gross income of the Participant under Code Sections 125, 402(e)(3), 402(h)(1)(B), 403(b) or 457(h), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions, and, for Plan Years beginning prior to January 1, 2001, excluding amounts that axe not includible in gross income under Code Section 132(f)(4);

(2)      immediate participation;

(3)      full and immediate vesting; and

(b)      if Leased Employees do not constitute more than 20% of the recipient Employer's nonhighly compensated work force.

11

068902.1001

1.33.    "Minimum Funding Amount" means:

(a)    for the Fiscal Year 2013, $2,000,000;

(b)    for the Fiscal Year 2014, $2,100,000;

(c)    for the Fiscal Year 2015, $2,200,000;

(d)    for the Fiscal Year 2016 and each successive Fiscal Year until 2060, the lesser of (i) the Baseline Funding Amount and (ii) the amount recommended by the Administrator based on an amortization schedule that assumes full funding of the Plan on an actuarial basis as of June 30, 2060, which schedule shall be subject to annual adjustment based on actual experience.

1.34.    "Non-Highly Compensated Participant" means, for Plan Years beginning after December 31, 1996, any Participant who is not a Highly Compensated Employee.

1.35.    "Non-Key Employee" means any Employee or former Employee (and such Employee's or former Employee's Beneficiaries) who is not, and has never been a Key Employee.

1.36.    "Normal Retirement Age" means the Participant's 65th birthday, or his 5th anniversary of joining the Plan, if later. A Participant shall become fully Vested in the Participant's Normal Retirement Benefit upon attaining Normal Retirement Age.

1.37.    "Normal Retirement Date" means the first day of the month coinciding with or next following the Participant's Normal Retirement Age.

1.38.    "1-Year Break in Service" means the applicable computation period during which an Employee has not completed more than 500 Hours of Service with the Employer. Further, solely for the purpose of determining whether a Participant has incurred a 1-Year Break in Service, Hours of Service shall be recognized for "authorized leaves of absence" and "maternity and paternity leaves of absence." Years of Service and 1-Year Breaks in Service shall be measured on the same computation period.

"Authorized leave of absence" means an unpaid, temporary cessation from active employment with the Employer pursuant to an established nondiscriminatory policy, whether occasioned by illness, military service, or any other reason.

A "maternity or paternity leave of absence" means, for Plan Years beginning after December 31, 1984, an absence from work for any period by reason of the Employee's pregnancy, birth of the Employee's child, placement of a child with the Employee in connection with the adoption of such child, or any absence for the purpose of caring for such child for a period immediately following such birth or placement. For this purpose, Hours of Service shall be credited for the computation period in which the absence from work begins, only if credit therefore is necessary to prevent the Employee from incurring a 1-Year Break in Service, or, in any other case, in the immediately following computation period. The Hours of Service credited for a "maternity or paternity leave of absence" shall be those which would normally have been

12

credited but for such absence, or, in any case in which the Administrator is unable to determine such hours normally credited, eight (8) Hours of Service per day. The total Hours of Service required to be credited for a "maternity or paternity leave of absence" shall not exceed the number of Hours of Service needed to prevent the Employee from incurring a 1-Year Break in Service.

1.39.    "Participant" means any Eligible Employee who participates in the Plan and has not for any mason become ineligible to participate further in the Plan. Participants will be categorized into the following groups:

(a)       Group A Participants includes (1) all lay teachers of Diocesan or Parish Schools, including all full-time related personnel (secretaries, aides and directors, coordinators and administrators of religious education and their fulltime secretaries), (2) any lay person employed by the Employer and (3) Diocesan Employees except (a) Employees of Catholic Charities, Inc. hired prior to January 1, 2002, (b) substitute teachers and school nurses, and (c) Employees included in any other pension plan and trust of the Employer. Effective August 28, 2006, school nurses who have satisfied the plan's eligibility requirements are eligible to participate in this plan.

(b)       Group B Participants includes Eligible Employees of Catholic Charities, Inc. hired prior to January 1, 2002.

1.40.    "Plan" means this instrument, including all amendments thereto.

1.41.    "Plan Year" means the Plan's accounting year of twelve (12) months commencing on January 1 of each year and ending the following December 31.

1.42.    "Plan Year of Service" means a Plan Year during which an Employee is a Participant and completes 1,000 Hours of Service. For Plan Years commencing after December 31, 2006, "Plan Year of Service" means a Plan Year during which an Employee is a Participant and completes 1,300 Hours of Service. However, in determining whether a Participant has completed a Plan Year of Service in a short Plan Year, the number of the Hours of Service required shall be proportionately reduced based on the number of full months in the short Plan Year. For purposes of determining a Participant's benefit service under the Plan, plan years of service will be calculated on a fractional basis computed to the nearest month for Group B Participants only.

1.43.    "Pre-Retirement Survivor Annuity" means an immediate annuity for the life of the surviving spouse of a Participant who dies prior to the Participant's Annuity Starting Date.

1.44.    "Present Value of Accrued Benefit" means the Actuarial Equivalent lump-sum amount of a Participant's Accrued Benefit at date of valuation. Notwithstanding the foregoing, the Present Value of Accrued Benefit for the determination of Top Heavy Plan status shall be made exclusively pursuant to the provisions of Section 11.2.

1.45.    "Regulation" means the Income Tax Regulations as promulgated by the Secretary of the Treasury or a delegate of the Secretary of the Treasury, and as amended from time to time.

1.46.    "Retired Participant" means a person who has been a Participant, but who has become entitled to retirement benefits under the Plan.

1.47.    "Retirement Date" means the date as of which a Participant retires for reasons other than Total and Permanent Disability, whether such retirement occurs on a Participant's Normal Retirement Date, Early or Late Retirement Date (see Section 5.1).

1.48.    "Social Security Retirement Age" means the age used as the retirement age under Section 216(1) of the Social Security Act, except that such section shall be applied without regard to the age increase factor and as if the early retirement age under Section 216(1)(2) of such Act were 62.

1.49.    "Terminated Participant" means a person who has been a Participant, but whose employment has been terminated other than by death, Total and Permanent Disability or retirement.

1.50.    "Top Heavy Plan" means a plan described in Section 11.2(a).

1.51.    "Top Heavy Plan Year" means a Plan Year during which the Plan is a Top Heavy Plan.

1.52.    "Top-Paid Group" means the top 20 percent of Employees who performed services for the Employer during the applicable year, ranked according to the amount of "415 Compensation" received from the Employer during such year. All Affiliated Employers shall be taken into account as a single employer, and Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and are not covered in any qualified plan maintained by the Employer. Employees who are non-resident aliens who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Furthermore, for the purpose of determining the number of active Employees in any year, the following additional Employees shall also be excluded, however, such Employees shall still be considered for the purpose of identifying the particular Employees in the Top-Paid Group:

      (a)    Employees with less than six (6) months of service;

      (b)    Employees who normally work less than 17 1/2 hours per week;

      (c)    Employees who normally work less than six (6) months during a year; and

      (d)    Employees who have not yet attained age twenty-one (21).

14

In addition, if 90 percent or more of the Employees of the Employer are covered under agreements the Secretary of Labor finds to be collective bargaining agreements between Employee representatives and the Employer, and the Plan covers only Employees who are not covered under such agreements, then Employees covered by such agreements shall be excluded from both the total number of active Employees as well as from the identification of particular Employees in the Top-Paid Group.

The foregoing exclusions set forth in this Section shall be applied on a uniform and consistent basis for all purposes for which the Code Section 414(q) definition is applicable.

1.53.   "Total and Permanent Disability" means a physical. or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which renders such Participant incapable of continuing usual and customary employment with the Employer.  The disability of a Participant shall be determined by a licensed physician chosen by the Administrator.  The determination shall be applied uniformly to all Participants.

1.54.   "Trustee" means Bank of New York Mellon, or any successor person or entity named as trustee herein or in any separate trust forming a part of this Plan.

1.55.   "Trust Fund" means the assets of the Plan and Trust as the same shall exist from time to time.

1.56.   "Vested" means the portion of a Participant's benefits under the Plan that is nonforfeitable.  Commencing with the Effective Date of this Amendment and Restatement, the Employer shall have an obligation to pay all Vested Accrued Benefits, even if such Vested Accrued Benefits are unfunded.

1.57.   "Year of Service" means the computation period of twelve (12) consecutive months, herein set forth, during which an Employee has at least 1,000 Hours of Service.  For plan years commencing after December 31, 2006, "Year of Service" means the computation period of twelve (12) consecutive months, herein set forth, during which an Employee has at least 1,300 Hours of Service.  Periods of service corn ed prior to August 28, 2006, by school nurses will not be considered for purposes of determining any such Participant's Accrued Benefit; however; service completed prior to August 28, 2006, by school nurses will be considered for purposes of determining such participant's eligibility and vesting percentage.

For purposes of eligibility for participation, the initial computation period shall begin with the date on which the Employee first performs an Hour of Service.  The participation computation period beginning after a 1-Year Break in Service shall be measured from the date on which an Employee again performs an Hour of Service.  The participation computation period shall shift to the Plan Year which includes the anniversary of the date on which the Employee first performed an Hour of Service.  An Employee who is credited with the required Hours of Service in both the initial computation period (or the computation period beginning after a 1-Year Break in Service) and the Plan Year which includes the anniversary of the date on which the Employee first performed an Hour of Service, shall be credited with two (2) Years of Service for purposes of eligibility to participate.

15

068902.1001

For vesting purposes, the computation periods shall be the Plan Year, including periods prior to the Effective Date of the Plan.

The computation period shall be the Plan Year if not otherwise set forth herein.

Notwithstanding the foregoing, for any short Plan Year, the determination of whether an Employee has completed a Year of Service shall be made in accordance with Department of Labor regulation 2530.203-2(c).

Years of Service with any Affiliated Employer shall be recognized.

## ARTICLE II
## ADMINISTRATION

### 2.1.    POWERS AND RESPONSIBILITIES OF THE EMPLOYER

(a)    In addition to the general powers and responsibilities otherwise provided for in this Plan, the Employer shall be empowered to appoint and remove the Trustee and the Administrator from time to time as it deems necessary for the proper administration of the Plan to ensure that the Plan is being operated for the exclusive benefit of the Participants and their Beneficiaries in accordance with the terms of the Plan and the Code.  The Employer may appoint counsel, specialists, advisers, agents (including any non-fiduciary agent) and other persons as the Employer deems necessary or desirable in connection with the exercise of its fiduciary duties under this Plan.  The Employer may compensate such agents or advisers from the assets of the Plan as fiduciary expenses (but not including any business (settlor) expenses of the Employer), to the extent not paid by the Employer.

(b)    The Employer may, by written agreement or designation, appoint at its option an Investment Manager (qualified wider the Investment Company Act of 1940 as amended), investment adviser, or other agent to provide direction to the Trustee with respect to any or all of the Plan assets.  Such appointment shall be given by the Employer in writing in a form acceptable to the Trustee and shall specifically identify the Plan assets with respect to which the Investment Manager or other agent shall have authority to direct the investment

(c)    The Employer shall establish a "funding policy and method," i.e., it shall determine whether the Plan has a short run need for liquidity (e.g., to pay benefits) or whether liquidity is a long run goal and investment growth (and stability of same) is a more current need, or shall appoint a qualified person to do so.  The Employer or its delegate shall communicate such needs and goals to the Trustee, who shall coordinate such Plan needs with its investment policy.  The communication of such a "funding policy and method" shall not, however, constitute a directive to the Trustee as to the investment of the Trust Funds.  Such "funding policy and method" shall be consistent with the objectives of this Plan.

(d)    The Employer shall periodically review the performance of any Fiduciary or other person to whom duties have been delegated or allocated by it under the provisions of this Plan or pursuant to procedures established hereunder.  This requirement may be satisfied by formal periodic review by the Employer or by a qualified person specifically

16

designated by the Employer, through day-to-day conduct and. evaluation, or through other appropriate ways.

## 2.2.    DESIGNATION OF ADMINISTRATIVE AUTHORITY

The Employer shall appoint the members of the Lay Pension Plan Administrative Committee (the "Committee") that shall be the Administrator of the Plan.  The Committee shall consist of seven (7) members, two (2) of whom shall be designees of the Employer, two (2) of whom shall be parishioners of any of the parishes in the Diocese of Wilmington, and three (3) of whom shall be Participants in the Plan.  Any person appointed to the Committee shall signify acceptance by filing written acceptance with the Employer.  Upon the resignation or removal of any individual performing the duties of the Administrator, the Employer may designate a successor.

## 2.3.    POWERS AND DUTIES OF THE ADMINISTRATOR

The primary responsibility of the Administrator is to administer the Plan for the exclusive benefit of the Participants and their Beneficiaries, subject to the specific terms of the Plan.  The Administrator shall administer the Plan in accordance with its terms and shall have the power and discretion to construe the terms of the Plan and to determine all questions arising in connection with the administration, interpretation, and application of the Plan.  Any such determination by the Administrator shall be conclusive and binding upon all persons.  The Administrator may establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such manner and to such extent as shall be deemed necessary or advisable to carry out the purpose of the Plan; provided, however, that any procedure, discretionary act, interpretation or construction shall be done in a nondiscriminatory manner based upon uniform principles consistently applied and shall be consistent with the intent that the Plan shall continue to be deemed a qualified plan under the terms of Code Section 401(a).  The Administrator shall have all powers necessary or appropriate to accomplish the Administrator's duties under the Plan.

The Administrator shall be charged with the duties of the general administration of the Plan as set forth under the terms of the Plan, including, but not limited to, the following:

(a)    the discretion to determine all questions relating to the eligibility of Employees to participate or remain a Participant hereunder and to receive benefits under the Plan;

(b)    to compute, certify, and direct the Trustee with respect to the amount and the kind of benefits to which any Participant shall be entitled hereunder;

(c)    to authorize and direct the Trustee with respect to all discretionary or otherwise directed disbursements from the Trust;

(d)    to maintain all necessary records for the administration of the Plan;

(e)    to interpret the provisions of the Plan and to make and publish such rules for regulation of the Plan as are consistent with the terms hereof;

(f)     to determine the size and type of any Contract to be purchased from any insurer and to designate the insurer from which such Contract shall be purchased. All Policies shall be issued on a uniform basis as of each Anniversary Date with respect to all Participants under similar circumstances;

(g)     to compute and certify to the Employer and to the Trustee from time to time the sums of money necessary or desirable to be contributed to the Plan;

(h)     to consult with the Employer and the Trustee regarding the short and long-term liquidity needs of the Plan in order that the Trustee can exercise any investment discretion in a manner designed to accomplish specific objectives;

(i)     to prepare and implement a procedure for notifying Participants and Beneficiaries of their rights to elect joint and survivor annuities and Pre-Retirement Survivor Annuities;

(j)     to determine the validity of, and take appropriate action with respect to, any qualified domestic relations order received by it; and

(k)     to assist any Participant regarding the Participant's rights, benefits, or elections available under the Plan.

2.4.    RECORDS AND REPORTS

The Administrator shall keep a record of all actions taken and shall keep all other books of account, records, policies, and other data that may be necessary for proper administration of the Plan and shall be responsible for supplying all information and reports to the Internal Revenue Service, Department of Labor, Participants, Beneficiaries and others as required by law.

2.5.    APPOINTMENT OF ADVISERS

The Administrator, or the Trustee with the consent of the Administrator, may appoint counsel specialists, advisers, agents (including non-fiduciary agents) and other persons as the Administrator or the Trustee deems necessary or desirable in connection with the administration of this Plan, including but not limited to agents and advisers to assist with the administration and management of the Plan, and thereby to provide, among such other duties as the Administrator may appoint, assistance with maintaining Plan records and the providing of investment information to the Plan's investment fiduciaries.

2.6.    PAYMENT OF EXPENSES

All expenses of administration may be paid out of the Trust Fund unless paid by the Employer. Such expenses shall include any expenses incident to the functioning of the Administrator, or any person or persons retained or appointed by any named Fiduciary incident to the exercise of their duties under the Plan, including, but not limited to, fees of accountants, counsel, Investment Managers, and other specialists and their agents, and other costs of administering the Plan. Until paid, the expenses shall constitute a liability of the Trust Fund.

18

2.7.    CLAIMS PROCEDURE

Claims for benefits under the Plan maybe filed in writing with the Administrator. Written notice of the disposition of a claim shall be furnished to the claimant within ninety (90) days after the application is filed, or such period as is required by applicable law or regulation. In the event the claim is denied, the reasons for the denial shall be specifically set forth in the notice in language calculated to be understood by the claimant, pertinent provisions of the Plan shall be cited, and, where appropriate, an explanation as to how the claimant can perfect the claim will be provided. In addition, the claimant shall be furnished with an explanation of the Plan's claims review procedure.

2.8.    CLAIMS REVIEW PROCEDURE

Any Employee, former Employee, or Beneficiary of either, who has been denied a benefit by a decision of the Administrator pursuant to Section 2.7 shall be entitled to request the Administrator to give further consideration to a claim by filing with the Administrator a written request for a hearing. Such request, together with a written statement of the reasons why the claimant believes the claim should be allowed, shall be filed with the Administrator no later than sixty (60) days after receipt of the written notification provided for in Section 2.7. The Administrator shall then conduct a hearing within the next sixty (60) days, at which the claimant maybe represented by an attorney or any other representative of such claimant's choosing and expense and at which the claimant shall have an opportunity to submit written and oral evidence and arguments in support of the claim. At the hearing (or prior thereto upon five (5) business days written notice to the Administrator) the claimant or the claimant's representative shall have an opportunity to review all documents in the possession of the Administrator which are pertinent to the claim at issue and its disallowance. Either the claimant or the Administrator may cause a court reporter to attend the hearing and record the proceedings. In such event, a complete written transcript of the proceedings shall be furnished to both parties by the court reporter. The full expense of any such court reporter and such transcripts shall be borne by the party causing the court reporter to attend the hearing. A final decision as to the allowance of the claim shall be made by the Administrator within sixty (60) days of receipt of the appeal (unless there has been an extension of sixty (60) days due to special circumstances, provided the delay and the special circumstances occasioning it are communicated to the claimant within the sixty (60) day period). Such communication shall be written in a manner calculated to be understood by the claimant and shall include specific reasons for the decision and specific references to the pertinent Plan provisions on which the decision is based.

## ARTICLE III
## ELIGIBILITY

3.1.    CONDITIONS OF ELIGIBILITY

Prior to December 31, 2011, any Eligible Employee who has completed one (1) Year of Service and has attained age 21 shall be eligible to participate hereunder as of the date he has satisfied such requirements. Any Employee who was a Participant in the Plan prior to December 31, 2011 shall continue to participate in the Plan. Participation in the Plan shall be frozen as of December 31, 2011 and no new Eligible Employees shall enter the Plan after that

19

date.

### 3.2.    EFFECTIVE DATE OF PARTICIPATION

An Eligible Employee shall become a Participant effective as of the first day of the Plan Year coinciding with or next following the date on which the Employee met the eligibility requirements of Section 3.1, provided said Employee was still employed as of such date (or if not employed on such date, as of the date of rehire if a 1-Year Break in Service has not occurred or, if later, the date that the Employee would have otherwise entered the Plan had the Employee not terminated employment).

If an Employee, who has satisfied the Plan's eligibility requirements and would otherwise have become a Participant, shall go from a classification of a non-eligible Employee to an Eligible Employee, such Employee shall become a Participant on the date such Employee becomes an Eligible Employee or, if later, the date that the Employee would have otherwise entered the Plan bad the Employee always been an Eligible Employee.

If an Employee, who has satisfied the Plan's eligibility requirements and would otherwise become a Participant, shall go from a classification of an Eligible Employee to a non-eligible class of Employees, such Employee shall become a Participant in the Plan on the date such Employee again becomes an Eligible Employee; or, if later, the date that the Employee would have otherwise entered the Plan had the Employee always been an Eligible Employee,. However, if such Employee incurs a 1-Year Break in Service, eligibility will be determined under the Break in Service rules set forth in Section 3.5.

Notwithstanding the foregoing, Participation in the Plan shall be frozen as of December 31, 2011.

### 3.3.    DETERMINATION OF ELIGIBILITY

The Administrator shall determine the eligibility of each Employee for participation in the Plan based upon information furnished by the Employer.  Such determination shall be conclusive and binding upon all persons, as long as the same is made pursuant to the Plan. Such determination shall be subject to review pursuant to Section 2.8.

### 3.4.    TERMINATION OF ELIGIBILITY

In the event a Participant shall go from a classification of an Eligible Employee to an ineligible Employee, such Former Participant shall continue to vest in the Plan for each Year of Service completed while a non-eligible Employee, until such time as the Former Participant's Accrued Benefit shall be forfeited or distributed pursuant to the terms of the Plan.

### 3.5.    REHIRED EMPLOYEES AND BREAKS IN SERVICE

(a)    If any Participant becomes a Former Participant due to severance from employment with the Employer and is reemployed by the Employer before a 1-Year Break in Service occurs, the Former Participant shall become a Participant as of the reemployment date.

20

(b)     If any Participant becomes a Former Participant due to severance from employment with the Employer and is reemployed after a 1-Year Break in Service has occurred, Years of Service shall include Years of Service prior to the 1-Year Break in Service subject to the following rules:

        (1)     In the case of a Former Participant who under the Plan does not have a nonforfeitable right to any interest in the Plan resulting from Employer contributions, Years of Service before a period of 1-Year Break in Service will not be taken into account if the number of consecutive 1-Year Breaks in Service equal or exceed the greater of (A) five (5) or (B) the aggregate number of pre-break Years of Service. Such aggregate number of Years of Service will not include any Years of Service disregarded under the preceding sentence by reason of prior 1-Year Breaks in Service.

        (2)     A Former Participant who has not had Years of Service before a 1-Year Break in Service disregarded pursuant to (1) above, and completes a Year of Service for eligibility purposes, shall participate in the Plan as of the date immediately following completion of a Year of Service.

(c)     If any Participant becomes a Former Participant due to severance of employment with the Employer and again becomes a Participant, such renewed participation shall not result in duplication of benefits. Accordingly, if such Participant has received a distribution of a Vested Accrued Benefit under the Plan by reason of prior participation (and such distribution has not been repaid to the Plan with interest within a period of the earlier of five (5) years after the first date on which the Participant is subsequently reemployed by the Employer or the close of the first period of five (5) consecutive 1-Year Breaks in Service commencing after the distribution), the Participant's Accrued Benefit shall be reduced by the Actuarial Equivalent (at the date of distribution) of the Present Value of the Accrued Benefit as of the date of distribution. Any repayment by a Participant shall be equal to the total of:

        (1)     the amount of the distribution,

        (2)     interest on such distribution compounded annually at the rate of five percent (5%) per annum from the date of distribution to the date of repayment or to the last day of the first Plan Year ending on or after December 31, 1987, if earlier, and

        (3)     interest on the sum of (1) and (2) above compounded annually at the rate of one-hundred twenty percent (120%) of the federal mid-term rate (as in effect under Code Section 1274 for the first month of a Plan Year) from the beginning of the first Plan Year beginning after December 31, 1987 or the date of distribution, whichever is later, to the date of repayment.

3.6.    ELECTION NOT TO PARTICIPATE

     An Employee, may, subject to the approval of the Employer, elect voluntarily not to participate in the Plan. The election not to participate must be irrevocable and communicated to the Employer, in writing, within a reasonable period of time before the beginning of the first Plan Year in which the Employee will become eligible to participate in the Plan..

                                            

3.7.    FROZEN BENEFIT ACCRUALS

Notwithstanding any other provision of the Plan to the contrary:

(a)    Effective December 31, 2011, accruals under the Plan shall cease.

(b)    Employees who are not Participants under the Plan as of December 31, 2011 shall not be entitled to enter the Plan thereafter.

(c)    Participants who are not 100% Vested as of December 31, 2011 shall continue to accrue Years of Service solely for purposes of vesting in accordance with the provisions of the Plan.

(d)    A Participant's Accrued Benefit shall not increase or decrease after December 31, 2011 due to changes in the Participant's Compensation or Years of Service after that date.

**ARTICLE IV**
**CONTRIBUTION AND VALUATION**

4.1.    PAYMENT OF CONTRIBUTIONS

(a)    No contribution shall be required under the Plan from any Participant.  Subject to subsection (b), the Employer shall pay to the Trustee from time to time such amounts in cash as the Administrator and Employer shall determine to be necessary to provide the benefits under the Plan determined by the application of accepted actuarial methods and assumptions and also taking into account the budget limitations of the Employer.

(b)    Each Fiscal Year, the Employer shall make contributions at least equal to the Minimum Funding Amount.  In addition to the Minimum Funding Amount contributions, the Employer shall make the following contributions:

(1)    No later than December 31, 2011, Employer shall contribute $5,000,000.

(2)    Upon the conclusion of the next capital campaign of Employer to be conducted no later than December 31, 2015, Employer shall contribute to the Plan $5,000,000 than December 31, 2016 and $5,000,000 no later than December 31, 2017.

4.2.    ACTUARIAL METHODS

In establishing the liabilities under the Plan and contributions thereto, the enrolled actuary will use such methods and assumptions as will reasonably reflect the cost of the benefits. The Plan assets are to be valued on the last day of the Plan Year (or on any other date determined by the Administrator) using any reasonable method of valuation that takes into account fair market value.

068902.1001

4.3.    QUALIFIED MILITARY SERVICE

Notwithstanding any provision of this Plan to the contrary, effective December 12, 1994, contributions, benefits and service will be provided in accordance with Code Section 414(u).

## ARTICLE V
## BENEFITS

5.1.    RETIREMENT BENEFITS

(a)    For Group A Participants, the amount of monthly retirement benefit to be provided for each Participant who retires on his Normal Retirement Date shall be equal to his Accrued Benefit (herein called his Normal Retirement Benefit). A Participant's Accrued Benefit is based on a retirement benefit formula equal to 1% of such Participant's Average Monthly Compensation multiplied by the Participant's total number of Years of Service, computed to the nearest dollar. Notwithstanding the above, each Participant who terminates employment and retires on or after his Normal Retirement Date shall be provided with a monthly retirement benefit of not less than $50.

For Group B Participants, the amount of monthly retirement benefit to be provided for each Participant who retires on the Participant's Normal Retirement Date shall be equal to the Participant's Accrued Benefit (herein called the Participant's Normal Retirement Benefit). A Participant's Accrued Benefit is based on the Participant's Frozen Accrued Benefit and a retirement benefit formula equal to 1.25% of such Participant's Average Monthly Compensation multiplied by the Participant's total number of Plan Years of Service (or fraction thereof calculated to the nearest month), computed to the nearest dollar.

The "Normal Retirement Benefit" of each Participant shall not be less than the largest periodic benefit that would have been payable to the Participant upon separation from service at or prior to Normal Retirement Age under the Plan exclusive of social security supplements, premiums on disability or term insurance, and the value of disability benefits not in excess of the "Normal Retirement Benefit." For purposes of comparing periodic benefits in the same form, commencing prior to and at Normal Retirement Age, the greater benefit is determined by converting the benefit payable prior to Normal Retirement Age into the same form of annuity benefit payable at Normal Retirement Age and comparing the amount of such annuity payments. In the case of a Top Heavy Plan, the "Normal Retirement Benefit" shall not be smaller than the minimum benefit to which the Employee is entitled under Section 5.2.

(b)    A Participant may elect to retire on an Early Retirement Date. In the event that a Participant makes such an election, he shall be entitled to receive an Early Retirement Benefit as follows:

(1)    Group A Participants shall be entitled to receive an Early Retirement Benefit commencing on the first day of the month coinciding with or next following the Participant's Early Retirement Date, equal to his Accrued Benefit reduced 5% per year, calculated to the nearest month, for each year that the Participant's Early Retirement Benefit commences prior to his Normal Retirement Date.

23

(2)    Group B Participants shall be entitled to receive an Early Retirement Benefit commencing on the first day of the month coinciding with or next following the Participant's Early Retirement Date, which Early Retirement Benefit shall equal the greater of (1) the Participant's Accrued Benefit reduced by 1/15th for each of the first five (5) years and 1/30th for each of the next five (5) years and. reduced actuarially for each additional year thereafter that the first day of the month on which the Participant's Early Retirement Benefit commences precedes the Participant's Normal Retirement Date, or (2) the Actuarial Equivalent of the Participant's Accrued Benefit if such benefit is distributed in a form other than a non-decreasing life annuity payable for a period not less than the life of such Participant.

The Plan will provide a subsidized Early Retirement Benefit for any Group B Participant who had completed 10-Years of Service as of July 1, 2002.  In the event such Participant who has completed 25 Years of Service elects to commence payments after having attained age 62, the amount of his Early Retirement Benefit will be equal to the Participant's full Accrued Benefit without further reduction.  If a Participant who has completed 25 Years of Service elects to commence payments after age 55 but before age 62, the Early Retirement Benefit shall equal the greater of (1) the Participant's Accrued Benefit reduced by 1/15th for each of the first five (5) years and 1/30th for each of the next five (5) years and reduced actuarially for each additional year thereafter that the first day of the month on which the Participant's Early Retirement Benefit commences precedes big 62nd birthday.

(c)    The Normal Retirement Benefit payable to a Participant pursuant to this Section 5.1 shall be a monthly pension commencing on the Participant's Retirement Date and continuing for life.  If a Retired Group B Participant dies prior to the completion of 36 monthly payments, such monthly payments shall be continued to the Retired Participant's Beneficiary until the monthly payments made to the Retired Participant and to the Beneficiary shall total 36.  However, the form of distribution of such benefit shall be determined pursuant to the provisions of Section 5.7.

(d)    At the request of a Participant, the Participant may be continued in employment beyond Normal Retirement Date.  In such event, no retirement benefit will be paid to the Participant until the Participant actually retires, subject, however to any required minimum distributions pursuant to Section 5.7(e).  At the close of each Plan Year prior to the Participant's actual Retirement Date, a Participant shall be entitled to a retirement benefit equal to the greater of (1) the Actuarial Equivalent of the monthly retirement benefit such Participant was entitled to at the close of the prior Plan Year, or (2) the Participant's Accrued Benefit determined at the close of the Plan Year.  The monthly retirement benefit calculated pursuant to this Section 5.1(d) shall be offset by the actuarial value (determined pursuant to Section 1.2) of the total benefit distributions (pursuant to Section 5.7(e)) made by the close of the Plan Year.

Except with respect to a "five (5) percent owner," a Participant's Accrued Benefit is actuarially increased to take into account the period after age 70 1/2 in which the Participant does not receive any benefits under the Plan.  The actuarial increase begins on the April 1 following the calendar year in which the Participant attains age 70 1/2 (January 1, 1997 in the case of a. Participant who attained age 70 1/2 prior to 1996), and ends on the date on which benefits commence after retirement in an amount sufficient to satisfy Code Section 401(a)(9).

24

The amount of actuarial increase payable as of the end of the period for actuarial increases must be no less than the Actuarial Equivalent of the Participant's retirement benefits that would have been payable as of the date the actuarial increase must commence plus the Actuarial Equivalent of additional benefits accrued after that date, reduced by the Actuarial Equivalent of any distributions made after that date. The actuarial increase is generally the same as, and not in addition to, the actuarial increase required for that same period under Code Section 411 to reflect the delay in payments after normal retirement.

5.2.    MINIMUM BENEFIT REQUIREMENT FOR TOP HEAVY PLAN

(a)    The minimum Accrued Benefit derived from Employer contributions to be provided under this Section for each Employee who is a Participant during a Top Heavy Plan Year shall equal the product of (1) one-twelfth (1/12th) of "415 Compensation" averaged over the five (5) consecutive "limitation years" (or actual number of "limitation years," if less) which produce the highest average, and (2) the lesser of (i) two percent (2%) multiplied by Years of Service with respect to Group A and Plan Years of Service with respect to Group B , or (ii) twenty percent (20%), expressed as a single life annuity.

(b)    For purposes of providing the minimum benefit under Code Section 416, an Employee who is not a Participant solely because (1) such Employee's Compensation is below a stated amount or (2) such Employee declined to make mandatory contributions (if required) to the Plan will be considered to be a Participant. Furthermore, such minimum benefit shall be provided regardless of whether such Employee is employed on a specified date.

(c)    For purposes of this Section, Plan Years of Service for any Plan Year beginning before January 1, 1984, or for any Plan Year during which the Plan was not a Top Heavy Plan shall be disregarded.

(d)    For purposes of this Section, "415 Compensation" for any "limitation year" ending in a Plan Year which began prior to January 1, 1984, subsequent to the last "limitation year" during which the Plan is a Top Heavy Plan, or in which the Participant failed to complete a Year of Service with respect to Group A and Plan Years of Service with respect to Group B, shall be disregarded.

(e)    For the purposes of this Section, "415 Compensation" in excess of $150,000 (or such other amount provided in. the Code) shall be disregarded. Such amount shall be adjusted for increases in the cost of living in accordance with Code Section 401(a)(17)(B), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Year beginning with or within such calendar year. If "415 Compensation" for any prior determination period is taken into account in determining a Participant's minimum benefit for the current Plan Year, the "415 Compensation" for such determination period is subject to the applicable annual "415 Compensation" limit in effect for that prior period. For this purpose, in determining the minimum benefit in Plan Years beginning on or after January 1, 1989, the annual "415 Compensation" limit in effect for determination periods beginning before that date is $200,000 (or such other amount as adjusted for increases in the cost of living in accordance with Code Section 415(d) for determination periods beginning on or after January 1, 1989, and in

25

accordance with Code Section 401(a)(17)(B) for determination periods beginning on or after January 1, 1994). For determination periods beginning prior to January 1, 1989, the $200,000 limit shall apply only for Top Heavy Plan Years and shall not be adjusted. For any short Plan Year the "415 Compensation" limit shall be an amount equal to the "415 Compensation" limit for the calendar year in which the Plan Year begins multiplied by the ratio obtained by dividing the number of full months in the short Plan Year by twelve (12).

(f)     If Section 5.1(c) provides for the Normal Retirement Benefit to be paid in a form other than a single life annuity, the Accrued Benefit under this Section shall be the Actuarial Equivalent of the minimum Accrued Benefit under (a) above pursuant to Section 1.2.

(g)     If payment of the minimum Accrued Benefit commences at a date other than Normal Retirement Date, the minimum Accrued Benefit shall be the Actuarial Equivalent of the minimum Accrued Benefit commencing at Normal Retirement Date pursuant to Section 1.2.

(h)     To the extent required to be nonforfeitable under Section 5.6, the minimum Accrued Benefit under this Section may not be forfeited under Code Section 411(a)(3)(B) or Code Section 411(a)(3)(D).

5.3.    PAYMENT OF RETIREMENT BENEFITS

When a Participant retires, the Administrator shall immediately take pursuant to the Plan all necessary steps and execute all required documents to cause the payment of the Participant's Accrued Benefit pursuant to the Plan.

5.4.    DISABILITY RETIREMENT BENEFITS

(a)     If a Participant becomes Totally and Permanently Disabled within the meaning of Section 1.54 prior to retirement or separation from service, and such condition continues for a period of six (6) consecutive months and by reason thereof such Participant's status as an Employee ceases, then said disabled Participant shall be entitled to receive the Actuarial Equivalent of the Participant's Accrued Benefit. In the event of a Participant's Total and Permanent Disability, the Administrator shall direct the Trustee to commence payment of the benefits payable hereunder pursuant to the provisions of Sections 5.7 and 5.9 as though the Participant had retired.

(b)     The benefit payable pursuant to (a) above shall be computed as of the Anniversary Date subsequent to termination of employment.

(c)     In the event of the Terminated Participant's Total and Permanent Disability subsequent to termination of employment, the Terminated Participant (or the Terminated Participant's Beneficiary) shall receive the Actuarial Equivalent of such Terminated Participant's Vested Accrued Benefit pursuant to the provisions of Sections 5.7 and 5.9 as though the Terminated Participant had retired.

26

068902.1001

5.5.    DEATH BENEFITS

(a)    If a Participant dies prior to the Participant's Retirement Date, such Participant's Beneficiary shall receive a death benefit equal to the Actuarial Equivalent of the Accrued Benefit determined as of the Anniversary Date subsequent to or coinciding with the date of death.

(b)    Death benefits payable by reason of the death of a Participant or a Retired Participant shall be paid. to such Participant's Beneficiary in accordance with the following provisions:

(1)    Upon the death of a Participant subsequent to the Participant's Retirement Date, but prior to the Annuity Starting Date, the Participant's Beneficiary shall be entitled to a death benefit in an amount equal to the Actuarial Equivalent of the benefit the Participant would have received at the Participant's Retirement Date.

(2)    Upon the death of a Participant subsequent to the Annuity Starting Date, the Participant's Beneficiary shall be entitled to whatever death benefit maybe available under the settlement arrangements pursuant to which the Participant's benefit is made payable.

(3)    In the event of a Terminated Participant's death subsequent to the Participant's termination of employment, the Participant's Beneficiary shall receive the Present Value of such Participants Vested Accrued Benefit as of the Anniversary Date coinciding with or next following the date of the Participant's death.

(c)    The Administrator may require such proper proof of death and such evidence of the right of any person to receive the death benefit payable as a result of the death of a Participant as the Administrator may deem desirable.  The Administrator's determination of death and the right of any person to receive payment shall be conclusive.

(d)    Unless otherwise elected in the manner prescribed in Section 5.8, the Beneficiary of the death benefit shall be the Participant's surviving spouse, who shall receive such benefit in the form of a Pre-Retirement Survivor Annuity pursuant to Section 5.8.  Except, however, the Participant may designate a Beneficiary other than the spouse if:

(1)    the Participant and the Participants spouse have validly waived the Pre-Retirement Survivor Annuity in the manner prescribed in Section 5.8, and the spouse has waived the right to be the Participant's Beneficiary, or

(2)    the Participant is legally separated or has been abandoned (within the meaning of local law) and the Participant has a court order to such effect (and there is no qualified domestic relations order which provides otherwise), or

(3)    the Participant has no spouse, or

(4)    the spouse cannot be located.

YCST01:11002514.5                                                                        068902.1001

In such event, the designation of a Beneficiary shall be made on a form satisfactory to the Administrator. A Participant may at any time revoke a designation of a Beneficiary or change a Beneficiary by filing written (or in such other form as permitted by the Internal Revenue Service) notice of such revocation or change with the Administrator. However, the Participant's spouse must again consent in writing (or in such other form as permitted by the Internal Revenue Service) to any change in Beneficiary unless the original consent acknowledged that the spouse had the right to limit consent only to a specific Beneficiary and that the spouse voluntarily elected to relinquish such right. In the event no valid designation of Beneficiary exists, or if the Beneficiary is not alive, at the time of the Participant's death, the death benefit shall be payable to the Participant's estate. Additionally, if the Beneficiary does not predecease the Participant, but dies prior to the distribution of the death benefit, the death benefit will be paid to the Beneficiary's estate.

(e)     The benefit payable under this Section shall be paid pursuant to the provisions of Sections 5.8 and 5.9.

(f)     In no event shall the death benefit payable to a surviving spouse be less than the Actuarial Equivalent of the "minimum spouse's death benefit."

(g)     For the purposes of this Section, the "minimum spouse's death benefit" means a death benefit for a Vested married Participant payable in the form of a Pre-Retirement Survivor Annuity. Such annuity payments shall be equal to the amount which would be payable as a survivor annuity under the joint and survivor annuity provisions of the Plan if:

(1)     in the case of a Participant who dies after the Earliest Retirement Age, such Participant had retired with an immediate joint and survivor annuity on the day before the Participant's date of death, or

(2)     in the case of a Participant who dies on or before the Earliest Retirement Age, such Participant had:

i.     separated from service on the earlier of the actual lime of separation or the date of death,

ii.     survived to the Earliest Retirement Age,

iii.     retired with an immediate joint and survivor annuity at the Earliest Retirement Age based on the Participant's Vested Accrued Benefit on date of death, and

iv.     died on the day after the day on which said Participant would have attained the Earliest Retirement Age.

5.6.     TERMINATION OF EMPLOYMENT BEFORE RETIREMENT

(a)     Payment to a Former Participant of the Vested portion of such Former Participant's Accrued Benefit, unless such Former Participant otherwise elects, shall

YCST01:11002514.5                                                                                  068902.1001

begin not later than the 60th day after the close of the Plan Year in which the latest of the following events occurs: (1) the date on which the Participant attains the earlier of age 65 or the Normal Retirement Age specified herein; (2) the 10th anniversary of the year in which the Participant commenced participation in the Plan; or (3) the date the Participant terminates service with the Employer.

However, the Administrator shall, at the election of the Participant, direct earlier payment of the Vested portion of the Participant's Accrued Benefit after the Participant has incurred a 1-Year Break in Service. Any distribution under this paragraph shall be made in a manner which is consistent with and satisfies the provisions of Section 5.7, including, but not limited to, notice and consent requirements of Code Sections 417 and 411(a)(11) and the Regulations thereunder.

However, for Plan Years beginning after August 5, 1997, the Administrator shall direct the earlier payment of the entire Vested portion of the Present Value of Accrued Benefit, but only if it does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) and, if the distribution is made prior to October 17, 2000, has never exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution.

That portion of a Terminated Participant's Accrued Benefit that is forfeited shall be used only to reduce future costs of the Plan at such time as it becomes a forfeiture.

That portion of a Terminated Participant's Accrued Benefit that is not Vested shall become a forfeiture on the last day of the Plan Year in which the Participant incurs five (5) consecutive 1-Year Breaks in Service.

(b)    The Vested portion of any Participant's Accrued Benefit shall be a percentage of the Participant's Accrued Benefit determined on the basis of the Participant's number of Years of Service according to the following schedule:

Vesting Schedule

| Years of Service | Percentage |
|---|---|
| Less than 5 | 0 % |
| 5 | 100 % |

(c)    Notwithstanding the vesting provided for in paragraph (b) above, for any Top Heavy Plan Year, the Vested portion of the Accrued Benefit of any Participant who has an Hour of Service after the Plan becomes top heavy shall be a percentage of the Participant's Accrued Benefit determined on the basis of the Participant's number of Years of Service according to the following schedule:

Vesting Schedule

| Years of Service | Percentage |
|---|---|
| Less than 3 | 0 % |
| 3 | 100 % |

29

If in any subsequent Plan Year, the Plan ceases to be a Top Heavy Plan, the Administrator shall continue to apply the Top Heavy Vesting,

(d)    Notwithstanding the vesting schedule above, the Vested percentage of a Participant's Accrued Benefit shall not be less than the Vested percentage attained as of the later of the effective date or adoption date of this amendment and restatement

(e)    A Participant with at least three (3) Years of Service as of the expiration date of the election period may elect to have the nonforfeitable percentage computed under the Plan without regard to such amendment and restatement. If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule. The Participant's election period shall commence on the adoption date of the amendment and shall end sixty (60) days after the latest of:

(1)    the adoption date of the amendment,

(2)    the effective date of the amendment, or

(3)    the date the Participant receives written notice of the amendment from the Employer or Administrator.

(f)    The computation of a Participant's nonforfeitable percentage of such Participant's interest in the Plan shall not be reduced as the result of any direct or indirect amendment to this Plan. In the event that the Plan is amended to change or modify any vesting schedule, or if the Plan is amended in any way that directly or indirectly affects the computation of the Participant's nonforfeitable percentage, or if the Plan is deemed amended by an automatic change to a top heavy vesting schedule, then each Participant with at least three (3) Years of Service as of the expiration date of the election period may elect to have such Participant's nonforfeitable percentage computed under the Plan without regard to such amendment or change. If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule. The Participant's election period shall commence on the adoption date of the amendment and shall end sixty (60) days after the latest of:

(1)    the adoption date of the amendment,

(2)    the effective date of the amendment, or

(3)    the date the Participant receives written notice of the amendment from the Employer or Administrator.

(g)    In the event any Former Participant is re-employed after a 1-Year Break in Service has occurred, and his pre-break service is disallowed under the terms of the Section, the Employer reserves the right to waive these rules in order to allow credit for the Participant's pre-break service. The right will be exercised at the sole discretion of the Employer and may not be applied in a manner that discriminates in favor of Highly Compensated Employees.

30

(h)    In determining Years of Service for purposes of vesting under the Plan, Years of Service prior to the vesting computation period in which an Employee attained age eighteen shall be excluded.

5.7.    DISTRIBUTION OF BENEFITS

(a)    (1)  Unless otherwise elected as provided below, a Participant who is married on the Annuity Starting Date and who does not die before the Annuity Starting Date shall receive the value of all of such Participant's benefits in the form of a joint and survivor annuity.  The joint and survivor annuity is an annuity payable by the Plan that commences immediately and shall be the Actuarial Equivalent of a single life annuity; provided, however, that (i) nothing in the foregoing should be construed as requiring the purchase of a third-party annuity contract and (ii) the annuity may be a "pay as you go" annuity.  Such joint and survivor benefits following the Participant's death shall continue to the spouse during the spouse's lifetime at a rate equal to fifty percent (50%) of the rate at which such benefits were payable to the Participant.  This joint and fifty percent (50%) survivor annuity shall be considered the designated qualified joint and survivor annuity and automatic form of payment for the purposes of this Plan.  However, the Participant may, without spousal consent, elect to receive a smaller annuity benefit with continuation of payments to the spouse at a rate of seventy-five percent (75%) or one hundred percent (100%) of the rate payable to a Participant during the Participant's lifetime, which alternative joint and survivor annuity shall be the Actuarial Equivalent of the automatic joint and fifty percent (50%) survivor annuity.  An unmarried Participant shall receive the value of such Participant's benefit in the form of a life annuity; provided, however, that (i) nothing in the foregoing should be construed as requiring the purchase of a third-party annuity contract and (ii) the annuity may be a "pay as you go" annuity.  Such unmarried Participant, however, may elect in writing to waive the annuity.  The election must comply with the provisions of this Section as if it were an election to waive the joint and survivor annuity by a married Participant, but without the spousal consent requirement.  The joint and survivor annuity and the life annuity form of distribution shall be the Actuarial Equivalent of the benefits due the Participant.

(2)    Any election to waive the joint and survivor annuity must be made by the Participant in writing (or in such other form as permitted by the Internal Revenue Service) during the election period and be consented to in writing (or in such other form as permitted by the Internal Revenue Service) by the Participant's spouse.  If the spouse is legally incompetent to give consent, the spouse's legal guardian, even if such guardian is the Participant, may give consent.  Such election shall designate a Beneficiary (or a form of benefits) that may not be changed without spousal consent (unless the consent of the spouse expressly permits designations by the Participant without the requirement of further consent by the spouse).  Such spouse's consent shall be irrevocable and must acknowledge the effect of such election and be witnessed by a Plan representative or a notary public.  Such consent shall not be required if it is established to the satisfaction of the Administrator that the required consent cannot be obtained because there is no spouse, the spouse cannot be located, or other circumstances that maybe prescribed by Regulations.  The election made by the Participant and consented to by such Participant's spouse may be revoked by the Participant in writing (or in such other form as permitted by the Internal Revenue Service) without the consent of the spouse at any time during the election period.  A revocation of a prior election shall cause the Participant's benefits to be

31

distributed as a joint and survivor annuity.  The number of revocations shall not be limited.  Any new election must comply with the requirements of this paragraph.  A former spouse's waiver shall not be binding on a new spouse.

(3)     The election period to waive the joint and survivor annuity shall be the ninety (90) day period ending on the Annuity Starting Date.

(4)     For purposes of this Section, spouse or surviving spouse means the spouse or surviving spouse of the Participant, provided that a former spouse will be treated as the spouse or surviving spouse and a current spouse will not be treated as the spouse or surviving spouse to the extent provided under a qualified domestic relations order as described in Code Section 414(p).

(5)     With regard to the election, the Administrator shall provide to the Participant no less than thirty (30) days and no more than ninety (90) days before the Annuity Starting Date a written (or in such other form as permitted by the Internal Revenue Service) explanation of:

i.     the terms and conditions of the joint and survivor annuity,

ii.     the Participants right to make, and the effect of an election to waive the joint and survivor annuity,

iii.     the right of the Participants spouse to consent to any election to waive the joint and survivor annuity, and

iv.     the right of the Participant to revoke such election, and the effect of such revocation.

(6)     Notwithstanding the above, with respect to distributions made after December 31, 1996, if the Participant elects (with spousal consent, if applicable) to waive the requirement that the explanation be provided at least thirty (30) days before the Annuity Starting Date, the election period shall be extended to the thirtieth (30th) day after the date on which such explanation is provided to the Participant, unless the thirty (30) day period is waived pursuant to the following provisions.

Any distribution provided for in this Section 5.7 may commence less than thirty (30) days after the notice required by Code Section 417(a)(3) is given provided the following requirements are satisfied:

i.     the Administrator clearly informs the Participant that the Participant has a right to a period of thirty (30) days after receiving the notice to consider whether to waive the joint and survivor annuity and to elect (with spousal consent) to a form of distribution other than a joint and survivor annuity;

YCST01:11002514.5                                    068902.1001

   ii. the Participant is permitted to revoke an affirmative distribution election at least until the Annuity Starting Date, or, if later, at any time prior to the expiration of the seven (7) day period that begins the day after the explanation of the joint and survivor annuity is provided to the Participant;

   iii. the Annuity Starting Date is after the date that the explanation of the joint and survivor annuity is provided to the Participant.  However, the Annuity Starting Date may be before the date that any affirmative distribution election is made by the Participant and before the date that the distribution is permitted to commence under (iv) below; and

   iv. distribution in accordance with the affirmative election does not commence before the expiration of the seven (7) day period that begins the day after the explanation of the joint and survivor annuity is provided to the Participant.

  (b) In the event a married Participant duly elects pursuant to paragraph (a)(2) above not to receive benefits in the form of a joint and survivor annuity, or if such Participant is not married, in the form of a life annuity, the Administrator, pursuant to the election of the Participant, shall direct the Trustee to distribute to a Participant or such Participant's Beneficiary an amount which is the Actuarial Equivalent of the monthly retirement benefit provided in Section 5.1(c) in an annuity.

  However, any such annuity may not be in any form that will provide for payments over a period extending beyond either the life of the Participant (or the lives of the Participant and the Participant's designated Beneficiary) or the life expectancy of the Participant (or the life expectancy of the Participant and the Participant's designated Beneficiary).

  (c) The present value of a Participant's joint and survivor annuity derived from Employer and Employee contributions may not, for Plan Years beginning after August 5, 1997, be paid without the Participant's and the Participant's spouse's written (or in such form as permitted by the Internal Revenue Service) consent if the value exceeds $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) or, if the distribution is made prior to October 17, 2000, has ever exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution and the benefit is "immediately distributable." However, spousal consent is not required if the distribution will be made in the form of a joint and survivor annuity and the benefit is "immediately distributable."  A benefit is "immediately distributable" if any part of the benefit could be distributed to the Participant (or surviving spouse) before the Participant attains (or would have attained if not deceased) the later of the Participant's Normal Retirement Age or age 62.  Any consent required by this Section 5.7(c) must be obtained not more than ninety (90) days before commencement of the distribution and shall be made in a manner consistent with Section 5.7(a)(2).

33

             

If, for Plan Years beginning after August 5, 1997, the value of the Participant's benefit derived from Employer and Employee contributions does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) and, if the distribution is made prior to October 17, 2000, has never exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution, then the Administrator shall direct the Trustee to immediately distribute such benefit in a lump sum without the Participant's and the Participant's spouse's written consent. No distribution may be made under the preceding sentence after the Annuity Starting Date unless the Participant and the Participant's spouse consent in writing (or in such form as permitted by the Internal Revenue Service) to such distribution.

        (d)      The following rules will apply to the consent requirements set forth in subsection (c):

        (1)      No consent shall be valid unless the Participant has received a general description of the material features and an explanation of the relative values of the optional forms of benefit available under the Plan that would satisfy the notice requirements of Code Section 417.

        (2)      The Participant must be informed of the right to defer receipt of the distribution. If a Participant fails to consent, it shall be deemed an election to defer the commencement of payment of any benefit. However, any election to defer the receipt of benefits shall not apply with respect to distributions which are required under Section 5.7(e).

        (3)      Notice of the rights specified under this paragraph shall be provided no less than thirty (30) days and no more than ninety (90) days before the Annuity Starting Date.

Notwithstanding the above, the Annuity Starting Date may be a date prior to the date the explanation is provided to the Participant if the distribution does not commence until at least thirty (30) days after such explanation is provided, subject to the waiver of the thirty (30) day period as provided for in Section 5.7(a)(6).

        (4)      Written (or such other form as permitted by the Internal Revenue Service) consent of the Participant to the distribution must not be made before the Participant receives the notice and must not be made more than ninety (90) days before the Annuity Starting Date.

        (5)      No consent shall be valid if a significant detriment is imposed under the Plan on any Participant who does not consent to the distribution.

Any such distribution may commence less than thirty (30) days, subject to Section 5.7(a)(5), after the notice required under Regulation 1.411(a)-11(c) is given, provided that: (1) the Administrator clearly informs the Participant that the Participant has a right to a period of at least thirty (30) days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and (2) the Participant, after receiving the notice, affirmatively elects a distribution.

34

(e)     Notwithstanding any provision in the Plan to the contrary, the distribution of a Participant's benefits made on or after January 1, 1997, whether under the Plan or through the purchase of an annuity contract, shall be made in accordance with the following requirements and shall otherwise comply with Code Section 401(a)(9) and the Regulations thereunder (including Regulation Section 1.401(a)(9)-2), the provisions of which are incorporated herein by reference:

(1)     A Participant's benefits shall be distributed or must begin to be distributed not later than the April 1st of the calendar year following the calendar year in which the Participant attains age 70 1/2.  Such distribution shall be equal to or greater than any required distribution.  However, a Participant who is not a "five (5) percent owner" and who attains age 70 1/2 in or after a calendar year that begins after the later of (i) December 31, 1998, or (ii) the adoption date of an amendment eliminating the required distribution provided in the first sentence of this paragraph, provided that the adoption date is no later than the last day of any remedial amendment period that applies to the Plan. for changes under the Small Business Job Protection Act of 1996, shall have such benefits distributed or must begin to be distributed not later than the April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70 1/2, or (ii) the calendar year in which the Participant retires.

Alternatively, if the distribution is to be in the form of a joint and survivor annuity or single life annuity, then distributions must begin no later than the applicable April 1st as determined under the preceding paragraph and must be made over the life of the Participant (or the lives of the Participant and the Participant's designated Beneficiary) in accordance with Regulations.

(2)     Distributions to a Participant and the Participant's Beneficiaries shall only be made in accordance with the incidental death benefit requirements of Code Section 401(a)(9)(G) and the Regulations thereunder.

With respect to distributions under the Plan made for calendar years beginning on or after January 1, 2001, the Plan will apply the minimum distribution requirements of Code Section 401(a)(9) in accordance with the Regulations under Code Section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary.  This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final Regulations under Code Section 401(a)(9) or such other date specified in guidance published by the internal Revenue Service.

(f)     For purposes of this Section, the life expectancy of a Participant and a Participant's spouse (other than in the case of a life annuity) may, at the election of the Participant or the Participant's spouse, be redetermined in accordance with Regulations.  The election, once made, shall be irrevocable.  If no election is made by the time distributions must commence, then the life expectancy of the Participant and the Participant's spouse shall not be subject to recalculation.  Life expectancy and joint and last survivor expectancy shall be computed using the return multiples in Tables V and VI of Regulation Section 1.72-9.

(g)     Subject to the spouse's right of consent afforded under the Plan, the restrictions imposed by this Section shall not apply if a Participant has, prior to January 1,

35

1984, made a written designation to have retirement benefits paid in an alternative method acceptable under Code Section 401(a)(9) as in effect prior to the enactment of the Tax Equity and Fiscal Responsibility Act of 1982.

       (h)     All annuity Contracts under this Plan shall be non-transferable when distributed. Furthermore, the terms of any annuity Contract purchased and distributed to a Participant or spouse shall comply with all of the requirements of the Plan.

5.8.    DISTRIBUTION OF BENEFITS UPON DEATH

       (a)     Unless otherwise elected as provided below, a Vested Participant who dies before the Annuity Starting Date and who has a surviving spouse shall have the death benefit paid to the surviving spouse in the form of a Pre-Retirement Survivor Annuity. The Participant's spouse may direct that payment of the Pre-Retirement Survivor Annuity commence within a reasonable period after the Participant's death (but not later than the month in which the Participant would have attained the Earliest Retirement Age under the Plan if the Participant dies on or before the Earliest Retirement Age). If the spouse does not so direct, payment of such benefit will commence at the time the Participant would have attained the later of Normal Retirement Age or age 62. However, the spouse may elect a later commencement date, subject to the rules specified in Section 5.8(g).

       (b)     Any election to waive the Pre-Retirement Survivor Annuity before the Participant's death must be made by the Participant in writing (or in such other form as permitted by the Internal Revenue Service) during the election period and shall require the spouse's irrevocable consent in the same manner provided for in Section 5.7(a)(2). Further, the spouse's consent must acknowledge the specific nonspouse Beneficiary. Notwithstanding the foregoing, the nonspouse Beneficiary need not be acknowledged, provided the consent of the spouse acknowledges that the spouse has the right to limit consent only to a specific Beneficiary and that the spouse voluntarily elects to relinquish such right.

       (c)     The election period to waive the Pre-Retirement Survivor Annuity shall begin on the first day of the Plan Year in which the Participant attains age thirty-five (35) and end on the date of the Participant's death. An earlier waiver (with spousal consent) may be made provided a written (or in such other form as permitted by the Internal Revenue Service) explanation of the Pre-Retirement Survivor Annuity is given to the Participant and such waiver becomes invalid at the beginning of the Plan Year in which the Participant turns age thirty-five (35). In the event a Vested Participant separates from service prior to the beginning of the election period, the election period shall begin on the date of such separation from service.

       (d)     With regard to the election, the Administrator shall provide each Participant within the applicable period, with respect to such Participant (and consistent with Regulations), a written (or in such other form as permitted by the Internal Revenue Service) explanation of the Pre-Retirement Survivor Annuity containing comparable information to that required pursuant to Section 5.7(a)(5). For the purposes of this paragraph, the term "applicable period" means, with respect to a Participant, whichever of the following periods ends last:

                                             

(1)     The period beginning with the first day of the Plan Year in which the Participant attains age thirty-two (32) and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age thirty-five (35);

(2)     A reasonable period after the individual becomes a Participant;

(3)     A reasonable period ending after the Plan no longer fully subsidizes the cost of the Pre-Retirement Survivor Annuity with respect to the Participant;

(4)     A reasonable period ending after Code Section 401(a)(11) applies to the Participant; or

(5)     A reasonable period after separation from service in the case of a Participant who separates before attaining age thirty-five (35). For this purpose, the Administrator must provide the explanation beginning one (1) year before the separation from service and ending one (1) year after such separation. If such a Participant thereafter returns to employment with the Employer, the applicable period for such Participant shall be redetermined.

For purposes of applying this Section 5.8(d), a reasonable period ending after the enumerated events described in paragraphs (2), (3) and (4) is the end of the two (2) year period beginning one (1) year prior to the date the applicable event occurs, and ending one (1) year after that date.

(e)     If the present value of the Pre-Retirement Survivor Annuity derived from Employer and Employee contributions does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) and, if the distribution is made prior to October 17, 2000, has never exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution, then the Administrator shall direct the immediate distribution of the present value of the Pre-Retirement Survivor Annuity to the Participant's spouse. No distribution may be made under the preceding sentence after the Annuity Starting Date unless the spouse consents in writing (or in such other form as permitted by the Internal Revenue Service) to sach distribution. If the value exceeds $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) or, if the distribution is made prior to October 17, 2000, has ever exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution, then an immediate distribution of the entire amount of the Pre-Retirement Survivor Annuity may be made to the surviving spouse, provided such surviving spouse consents in writing (or in such other form as permitted by the Internal Revenue Service) to such distribution. Any consent required under this paragraph must be obtained not more than ninety (90) days before commencement of the distribution and shall be made in a manner consistent with Section 5.7(a)(2).

The present value in this regard shall be determined as provided in Section 1.44. Notwithstanding the foregoing, the present value of the Pre-Retirement Survivor Annuity shall be determined as provided in Section 1.44.

(f)    To the extent the death benefit is not paid in the form of a Pre-Retirement Survivor Annuity, it shall be paid to the Participant's Beneficiary in one lump sum in cash.

(g)    Notwithstanding any provision in the Plan to the contrary, distributions upon the death of a Participant shall be made in accordance with the following requirements and shall otherwise comply with Code Section 401(a)(9) and the Regulations thereunder. If the death benefit is paid in the form of a Pre-Retirement Survivor Annuity, then distributions to the Participant's surviving spouse must commence on or before the later of: (1) December 31st of the calendar year immediately following the calendar year in which the Participant died; or (2) December 31st of the calendar year in which the Participant would have attained age 70 1/2. If it is determined, pursuant to Regulations, that the distribution of a Participant's interest has begun and the Participant dies before the entire interest has been distributed, the remaining portion of such interest shall be distributed at least as rapidly as under the method of distribution selected pursuant to Section 5.7 as of the date of death. If a Participant dies before receiving any distributions of the interest in the Plan or before distributions are deemed to have begun pursuant to Regulations (and distributions are not to be made in the form of a Pre-Retirement Survivor Annuity), then the death benefit shall be distributed to the Participant's Beneficiaries by December 1st of the calendar year in which the fifth anniversary of the Participant's date of death occurs.

However, the 5-year distribution requirement of the preceding paragraph shall not apply to any portion of the deceased Participant's interest which is payable to or for the benefit of a designated Beneficiary. In such event, such portion may, at the election of the Participant (or the Participant's designated Beneficiary) be distributed over the life of such designated Beneficiary (or over a period not extending beyond the life expectancy of such designated Beneficiary) provided such distribution begins not later than December 31st of the calendar year immediately following the calendar year in which the Participant died. However, in the event the Participant's spouse (determined as of the date of the Participant's death) is the designated Beneficiary, the requirement that distributions commence within one year of a Participant's death shall not apply. In lieu thereof, distributions must commence on or before the later of: (1) December 31st of the calendar year immediately following the calendar year in which the Participant died; or (2) December 31st of the calendar year in which the Participant would have attained age 70 1/2. If the surviving spouse dies before distributions to such spouse begin, then the 5-year distribution requirement of this Section shall apply as if the spouse was the Participant.

(h)    For purposes of this Section, the life expectancy of a Participant and a Participant's spouse (other than in the case of a life annuity) may, at the election of the Participant or the Participant's spouse, be redetermined in accordance with Regulations. The election, once made, shall be irrevocable. If no election is made by the time distributions must commence, then the life expectancy of the Participant and the Participant's spouse shall not be subject to recalculation. Life expectancy and joint and last survivor expectancy shall be computed using the return multiples in Tables V and VI of Regulation Section 1.72-9.

(i)    For purposes of this Section, any amount paid to a child of the Participant will be treated as if it had been paid to the surviving spouse if the amount becomes payable to the surviving spouse when the child reaches the age of majority.

(j)    Subject to the spouse's right of consent afforded under the Plan, the restrictions imposed by this Section shall not apply if a Participant has, prior to January 1, 1984, made a written designation to have death benefits paid in an alternative method acceptable under Code Section 401(a)(9) as in effect prior to the enactment of the Tax Equity and Fiscal Responsibility Act of 1982.

## 5.9.    TIME OF SEGREGATION OR DISTRIBUTION

Except as limited by Sections 5.7 and 5.8, whenever the Trustee is to make a distribution or to commence a series of payments the distribution or series of payments maybe made or begun on such date or as soon thereafter as is practicable. However, unless a Former Participant elects in writing to defer the receipt of benefits (such election may not result in a death benefit that is more than incidental), the payment of benefits shall begin not later than the sixtieth (60th) day after the close of the Plan Year in which the latest of the following events occurs: (a) the date on which the Participant attains the earlier of age 65 or the Normal Retirement Age specified herein; (b) the tenth (10th) anniversary of the year in which the Participant commenced participation in the Plan; or (c) the date the Participant terminates service with the Employer.

Notwithstanding the foregoing, the failure of a Participant and, if applicable, the Participant's spouse, to consent to a distribution that is "immediately distributable" (within the meaning of Section 5.7), shall be deemed to be an. election to defer commencement of payment of any benefit sufficient to satisfy this Section.

## 5.10.    DISTRIBUTION FOR MINOR OR INCOMPETENT BENEFICIARY

In the event a distribution is to be made to a minor or incompetent Beneficiary, then the Administrator may direct that such distribution be paid to the legal guardian, or if none in the case of a minor Beneficiary, to a parent of such Beneficiary or a responsible adult with whom the Beneficiary maintains residence, or to the custodian for such Beneficiary under the Uniform Gift to Minors Act or Gift to Minors Act, if such is permitted by the laws of the state in which said Beneficiary resides. Such a payment to the legal guardian, custodian or parent of a minor Beneficiary shall fully discharge the Trustee, Employer, and Plan from further liability on account thereof.

## 5.11.    LOCATION OF PARTICIPANT OR BENEFICIARY UNKNOWN

In the event that all, or any portion, of the distribution payable to a Participant or Beneficiary hereunder shall, at the later of the Participant's attainment of age 62 or Normal Retirement Age, remain unpaid solely by reason of the inability of the Administrator, after sending a registered letter, return receipt requested, to the last known address, and after further diligent effort, to ascertain the whereabouts of such Participant or Beneficiary, the amount so distributable shall be forfeited and shall be used to reduce the cost of the Plan. Notwithstanding the foregoing, effective July 1, 2001, or if later, the adoption date of this amendment and

068902.1001

restatement, if the value of a Participant's Vested benefit derived from Employer and Employee contributions does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997), then the amount distributable may, in the sole discretion of the Administrator, either be treated as a forfeiture, or be paid directly to an. individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b) at the time it is determined that the whereabouts of the Participant or the Participant's Beneficiary cannot be ascertained.  In the event a Participant or Beneficiary is located subsequent to the benefit being forfeited, such benefit shall be restored unadjusted for earnings or losses.  However, regardless of the preceding, a benefit which is lost by reason of escheat under applicable state law is not treated as a forfeiture for purposes of this Section or as an impermissible forfeiture under the Code.

5.12.    EFFECT OF SOCIAL SECURITY ACT

        Benefits being paid to a Participant or Beneficiary under the terms of the Plan may not be decreased by reason of any post-separation Social Security benefit increases or by the increase of the Social Security wage base under Title II of the Social Security Act.  Benefits to which a Former Participant has a Vested interest may not be decreased by reason of an increase in a benefit level or wage base under Title II of the Social Security Act.

5.13.    QUALIFIED DOMESTIC RELATIONS ORDER DISTRIBUTION

        All rights and benefits, including elections, provided to a Participant in this Plan shall be subject to the rights afforded to any "alternate payee" under a "qualified domestic relations order."  Furthermore, a distribution to an "alternate payee" shall be permitted if such distribution is authorized by a "qualified domestic relations order," even if the affected Participant has not separated from service mid has not reached the Earliest Retirement Age.  For the purposes of this Section, "alternate payee" and "qualified domestic relations order" shall have the meaning set forth under Code Section 414(p).

5.14.    LIMITATION OF BENEFITS ON TERMINATION

        (a)        Benefits distributed. to any of the twenty-five (25) Highly Compensated Participants with the greatest compensation in the current or prior year are restricted such that the monthly payments are no greater than an amount equal to the monthly payment that would be made on behalf of such individual under a straight life annuity that is the Actuarial Equivalent of the sum of the individual's Accrued Benefit the individual's other benefits under the Plan (other than a social security supplement within the meaning of Regulation Section 1.411(a)-7(c)(4)(ii)), and the amount the individual is entitled to receive under a Social Security supplement.  However, the limitation of this Section 5.14 shall not apply if:

        (1)        after payment of the benefit to an individual described above, the value of Plan assets equals or exceeds one-hundred-ten percent (110%) of the value of current liabilities, as defined in Code Section 412(1)(7);

        (2)        the value of the benefits for an individual described above is less than 1 percent of the value of current liabilities before distribution; or

40

(3)    the value of the benefits payable under the Plan to an individual described above does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997).

(b)    For purposes of this Section, benefit includes any periodic income, any withdrawal values payable to a living Participant, and any death benefits not provided for by insurance on the individual's life.

(c)    An individual's otherwise restricted benefit may be distributed, in full to the affected individual it prior to receipt of the restricted amount, the individual enters into a written agreement with the Administrator to secure repayment to the Plan of the restricted amount. The restricted amount is the excess of the amounts distributed to the individual (accumulated with reasonable interest) over the amounts that could have been distributed to the individual under the straight life annuity described above (accumulated with reasonable interest). The individual may secure repayment of the restricted amount upon distribution by:

(1)    entering into an agreement for promptly depositing in escrow with an acceptable depositary, property having a fair market value equal to at least one-hundred-twenty-five percent (125%) of the restricted amount;

(2)    providing a bank letter of credit in an amount equal to at least one-hundred percent (100%) of the restricted amount; or

(3)    posting a bond equal to at least one-hundred percent (100%) of the restricted amount. The bond must be furnished by an insurance company, bonding company or other surety for federal bonds.

(d)    The escrow arrangement may permit an individual to withdraw from escrow amounts in excess of one-hundred-twenty-five percent (125%) of the restricted amount. If the market value of the property in an escrow account falls below one-hundred-ten percent (110%) of the remaining restricted amount, the individual must deposit additional property to bring the value of the property held by the depositary up to one-hundred-twenty-five percent (125%) of the restricted amount. The escrow arrangement may provide that the individual has the right to receive any income from the property placed in escrow, subject to the individual's obligation to deposit additional property, as set forth in the preceding sentence.

(e)    A surety or bank may release any liability on a bond or letter of credit in excess of one-hundred percent (100%) of the restricted amount.

(f)    If the Administrator certifies to the depositary, surety or bank that the individual (or the individual's estate) is no longer obligated to repay any restricted amount, a depositary may deliver to the individual any property held under an escrow arrangement, and a surety or bank may release any liability on an individual's bond or letter of credit.

41

## ARTICLE VI
## CODE SECTION 415 LIMITATIONS

6.1.    ANNUAL BENEFIT

For purposes of this Article, effective with the first day of the first "limitation year" beginning after December 31, 1994, "annual benefit" means the benefit payable annually under the terms of the Plan (exclusive of any benefit not required to be considered for purposes of applying the limitations of Code Section 415 to the Plan) payable in the form of a straight life annuity with no ancillary benefits.  If the benefit under the Plan is payable in any other form, the "annual benefit" shall be adjusted to the equivalent of a straight life annuity pursuant to Section 6.3(c).  Notwithstanding the foregoing, with respect to the Code Section 415 limitations prior to the effective date of this Article VI, the Old Law Benefit shall be determined on the basis of Code Section 415(b)(2)(E) as in effect on December 7, 1994.

6.2.    MAXIMUM ANNUAL BENEFIT

(a)      Notwithstanding the foregoing and subject to the exceptions below, the maximum "annual benefit" payable to a Participant under this Plan in any "limitation year" shall equal the lesser of. (1) $90,000 payable as a straight life annuity, or (2) one hundred percent (100%) of the Participant's "415 Compensation" averaged over the three consecutive "limitation years" (or actual number of "limitation years" for Employees who have been employed for less than three consecutive "limitation years") during which the Employee had the greatest aggregate "415 Compensation" from the Employer.

(b)      For purposes of applying the limitations of Code Section 415, the "limitation year" shall be the Plan Year, all qualified plans maintained by the Employer must use the same "limitation year".  If the "limitation year" is amended to a different twelve (12) consecutive month period, the new "limitation year" must begin on a date within the "limitation year" in which the amendment is made.

(c)      Notwithstanding anything in this Article to the contrary, if the Plan was in existence on May 6, 1986, and had complied at all times with the requirements of Code Section 415, the maximum "annual benefit" for any individual who is a Participant as of the first day of the "limitation year" beginning after December 31, 1986, shall not be less than the "current accrued benefit."  "Current accrued benefit" shall mean a Participant's Accrued Benefit under the Plan, determined as if the Participant had separated from service as of the close of the last "limitation year" beginning before January 1, 1987, when expressed as an annual benefit within the meaning of Code Section 415(b)(2).  In determining the amount of a Participant's "current accrued benefit," the following shall be disregarded (1) any change in the terms and conditions of the Plan after May 5, 1986; and (2) any cost of living adjustment occurring after May 5, 1986.

(d)      The dollar limitation under Code Section 415(b)(1)(A) stated in paragraph (a)(1) above shall be adjusted annually as provided in Code Section 415(d) pursuant to the Regulations.  The adjusted limitation is effective as of January 1st of each calendar year and is applicable to "limitation years" ending with or within that calendar year.

42

(e)     The limitation stated in paragraph (a)(2) above for Participants who have separated from service with a non-forfeitable right to an Accrued Benefit shall be automatically adjusted by multiplying such limitation by the cost-of-living adjustment factor prescribed by the Secretary of the Treasury under Code Section 415(d) in such manner as the Secretary shall prescribe.  The adjusted limitation shall apply to "limitation years" ending with or within the calendar year of the date of the adjustment.

(f)     For the purpose of this Article, all qualified defined benefit plans (whether terminated or not) ever maintained by the Employer shall be treated as one defined benefit plan.

If a Participant is, or has ever been, a participant ha more than one defined benefit plan maintained by the Employer, the sum of the Participant's "annual benefits" from all such plans may not exceed the maximum "annual benefit" of this Section 6.2.  Where the Participant's Employer-provided benefits wider all defined benefit plans ever maintained by the Employer (determined as of the same age) would exceed the maximum "annual benefit" applicable at that age, the Employer will reduce the rate of accrual in this Plan to the extent necessary so that the total "annual benefit" payable at any time under such plans will not exceed the maximum "annual benefit".

(g)     For the purpose of this Article, if the Employer is a member of a controlled group of corporations, trades or businesses under common control (as defined by Code Section 1563(a) or Code Section 414(b) and (c) as modified by Code Section 415(h)) or is a member of an affiliated service group (as defined by Code Section 414(m)), all Employees of such Employers shall be considered to be employed by a single Employer.

(h)     For the purpose of this Article, if this Plan is a Code Section 413(c) plan, each Employer who maintains this Plan will be considered to be a single Employer.

(i)     Notwithstanding anything contained in this Article to the contrary, the limitations, adjustments and other requirements prescribed in this Article shall at all times comply with the provisions of Code Section 415 and the Regulations thereunder.

6.3.    ADJUSTMENTS TO ANNUAL BENEFIT AND LIMITATIONS

(a)     If the "annual benefit" begins before the Participant's Social Security Retirement Age, but on or after age 62, the $90,000 limitation shall be reduced by: (1) in the case of a Participant whose Social Security Retirement Age is 65, 5/9 of 1% for each month by which benefits commence before the month in which the Participant attains age 65, or (2) in the case of a Participant whose Social Security Retirement Age is greater than 65, 5/9 of 1% for each of the first 36 months and 5/12 of 1% for each additional month (up to 24) by which benefits commence before the month in which the Participant attains Social Security Retirement Age.  If the "annual benefit" begins before age 62, the $90,000 limitation shall be the actuarial equivalent of the Participant's limitation for benefits commencing at age 62, reduced for each month by which benefits commence before the month in which the Participant attains age 62.

In order to determine actuarial equivalence for this purpose, the lesser of the equivalent amount computed using the Plan interest rate and Plan mortality table (or other

43

tabular factor) and the amount computed using five percent (5%) interest and the "Applicable Mortality Table" shall be used. For purposes of this Article, "Applicable Mortality Table" means the table prescribed by the Secretary of the Treasury. Such table shall be based on the prevailing commissioner's standard table (described in Code Section 807(d)(5)(A)) used to determine reserves for group annuity contracts issued on the date as of which the present value is being determined (without regard to any other subparagraph of Code Section 807(d)(5)). The mortality decrement shall be ignored to the extent that a forfeiture does not occur at death.

(b)    If the "annual benefit" begins after the Participant's Social Security Retirement Age the $90,000 limitation shall be increased so that it is the actuarial equivalent of the $90,000 limitation at the Participant's Social Security Retirement Age. In order to determine actuarial equivalence for this purpose, the lesser of the equivalent amount computed using the Plan interest rate and Plan mortality table (or other tabular factor) used for actuarial equivalence for late retirement benefits under the Plan and the equivalent annual amount computed using five percent (5%) and the "Applicable Mortality Table" shall be used. The mortality decrement shall be ignored to the extent that a forfeiture does not occur at death.

(c)    For purposes of adjusting the "annual benefit" to a straight life annuity, the equivalent "annual benefit" shall be the greater of the equivalent "annual benefit" computed using the Plan interest rate and Plan mortality table (or other tabular factor) and the equivalent "annual benefit" computed using five percent (5%) interest rate assumption and the "Applicable Mortality Table." if the "annual benefit" is paid in a form other than a non-decreasing life annuity payable for a period not less than the life of a Participant or, in the case of a Pre-Retirement Survivor Annuity, the life of the surviving spouse, the "Applicable Interest Rate" shall be substituted for five percent (5%) in the preceding sentence.

(d)    For purposes of Sections 6.1, 6.3(a) and 6.3(b), no adjustments under Code Section 415(d) shall be taken into account before the "limitation year" for which such adjustment first takes effect.

(e)    For purposes of Section 6.1, no actuarial adjustment to the benefit is required for (1) the value of a qualified joint and survivor annuity, (2) benefits that are not directly related to retirement benefits (such as a qualified disability benefit, pre-retirement death benefits, and post-retirement medical benefits), and (3) the value of post-retirement cost-of-living increases made in accordance with Code Section 415(d) and Regulation Section 1.415-3(c)(2)(iii). The "annual benefit" does not include any benefits attributable to Employee contributions or rollover contributions, or the assets transferred from a qualified plan that was not maintained by the Employer.

6.4.    ANNUAL BENEFIT NOT IN EXCESS OF $10,000

This Plan may pay an "annual benefit" to any Participant in excess of the Participant's maximum "annual benefit" if the "annual benefit" derived from Employer contributions under this Plan and all other defined benefit plans maintained by the Employer does not in the aggregate exceed $10,000 for the "limitation year" or for any prior "limitation year" and the Employer has not at any time maintained a defined contribution plan, a welfare benefit fund under which amounts attributable to post-retirement medical benefits are allocated

44

to separate accounts of key employees (as defined in Code Section 419(A)(d)(3)), or an individual medical account in which the Participant participated. For purposes of this paragraph, if this Plan provides for voluntary or mandatory Employee contributions, such contributions will not be considered a separate defined contribution plan maintained by the Employer.

### 6.5. PARTICIPATION OR SERVICE REDUCTIONS

If a Participant has less than ten (10) years of participation in the Plan at the time the Participant begins to receive benefits under the Plan, the limitations in Sections 6.2(a)(1) and 6.3 shall be reduced by multiplying such limitations by a fraction (a) the numerator of which is the number of years of participation (or part thereof) in the Plan and (b) the denominator of which is ten (10), provided, however, that said fraction shall in no event be less than 1/10th. The limitations of Sections 6.2(a)(2) and 6.4 shall be reduced in the same manner except the preceding sentence shall be applied with respect to years of service with the Employer rather than years of participation in the Plan.

### 6.6. ELIMINATION OF MULTIPLE PLAN REDUCTION

Effective as of the first day of the first "limitation year" beginning on or after January 1, 2000 (the "effective date"), and notwithstanding any other provision of the Plan, the Accrued Benefit for any Participant shall be determined without applying the limitations of Code Section 415(e) as in effect on the day immediately prior to the "effective date."

## ARTICLE VII
## TRUSTEE

### 7.1. BASIC RESPONSIBILITIES OF THE TRUSTEE

(a)    The Trustee shall have the following categories of responsibilities:

(1)    Consistent with the "funding policy and method" determined by the Employer, to invest, manage, and control the Plan assets subject, however, to the direction of the Employer or an Investment Manager appointed by the Employer or any agent of the Employer;

(2)    At the direction of the Administrator, to pay benefits required under the Plan to be paid to Participants, or, in the event of their death, to their Beneficiaries; and

(3)    To maintain records of receipts and disbursements and furnish to the Employer and/or Administrator for each Plan Year a written annual report pursuant to Section 7.6.

(b)    In the event that the Trustee shall be directed by the Employer, or an Investment Manager or other agent appointed by the Employer with respect to the investment of any or all Plan assets, the Trustee shall have no liability with respect to the investment of such assets, but shall be responsible only to execute such investment instructions as so directed.

45

(1)    The Trustee shall be entitled to rely fully on the written (or other form acceptable to the Administrator and the Trustee, including, but not limited to, voice recorded) instructions of the Employer, or any Fiduciary or non-fiduciary agent of the Employer, in the discharge of such duties, and shall not be liable for any loss or other liability, resulting from such direction (or lack of direction) of the investment of any part of the Plan assets.

(2)    The Trustee may delegate the duty of executing such instructions to any non-fiduciary agent, which may be an affiliate of the Trustee or any Plan representative.

(c)    If there shall be more than one Trustee, they shall act by a majority of their number, but may authorize one or more of them to sign papers on their behalf.

7.2.    INVESTMENT POWERS AND DUTIES OF THE TRUSTEE

(a)    The Trustee shall invest and reinvest the Trust Fund to keep the Trust Fund invested without distinction between principal and income and in such securities or property, real or personal, wherever situated, as the Trustee shall deem advisable, including, but not limited to, stocks, common or preferred, open-end or closed-end mutual funds, bonds and other evidences of indebtedness or ownership, and real estate or any interest therein.  The Trustee shall at all times in making investments of the Trust Fund consider, among other factors, the short and long-term financial needs of the Plan on the basis of information furnished by the Employer.  In making such investments, the Trustee shall not be restricted to securities or other property of the character expressly authorized by the applicable law for trust investments; however, the Trustee shall give due regard to any limitations imposed by the Code so that at all times the Plan may qualify as a qualified Pension Plan and Trust.

(b)    The Trustee may employ a bank or trust company pursuant to the terms of its usual and customary bank agency agreement, under which the duties of such bank or trust company shall be of a custodial, clerical and record-keeping nature.

(c)    The Trustee may transfer to a common, collective, pooled trust fund or money market fund maintained by any corporate Trustee or affiliate thereof hereunder, all or such part of the Trust Fund as the Trustee may deem advisable, and such part or all of the Trust Fund so transferred shall be subject to all the terms and provisions of the common, collective, pooled trust fund or money market fund which contemplate the commingling for investment purposes of such trust assets with trust assets of other trusts.  The Trustee may transfer any part of the Trust Fund intended for temporary investment of cash balances to a money market fund.  The Trustee may withdraw from such common, collective, pooled trust fund or money market fund all or such part of the Trust Fund as the Trustee may deem advisable.

7.3.    OTHER POWERS OF THE TRUSTEE

The Trustee, in addition to all powers and authorities under common law, statutory authority, and other provisions of the Plan, shall have the following powers and authorities, to be exercised in the Trustee's sole discretion:

(a)     To purchase, or subscribe for, any securities or other property and to retain the same. In conjunction with the purchase of securities, margin accounts may be opened and maintained;

(b)     To sell, exchange, convey, transfer, grant options to purchase, or otherwise dispose of any securities or other property held, by the Trustee, by private contract or at public auction. No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition, with or without advertisement;

(c)     To vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other property. However, the Trustee shall not vote proxies relating to securities for which it has not been assigned full investment management responsibilities. In those cases where another party has such investment authority or discretion, the Trustee will deliver all proxies to said party who will then. have full responsibility for voting those proxies;

(d)     To cause any securities or other property to be registered in the Trustee's own name, in the name of one or more of the Trustee's nominees, in a clearing corporation, in a depository, or in book entry form or in bearer form, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust Fund;

(e)     To borrow or raise money for the purposes of the Plan in such amount, and upon such terms and conditions, as the Trustee shall deem advisable; and for any sum so borrowed, to issue a promissory note as Trustee, and to secure the repayment thereof by pledging all, or any part, of the Trust Fund; and no person lending money to the Trustee shall be bound to see to the application of the money lent or to inquire into the validity, expediency, or propriety of any borrowing;

(f)     To keep such portion of the Trust Fund in cash or cash balances as the Trustee may, from time to time, deem to be in the best interests of the Plan, without liability for interest thereon;

(g)     To accept and retain for such time as the Trustee may deem advisable any securities or other property received or acquired as Trustee hereunder, whether or not such securities or other property would normally be purchased as investments hereunder;

(h)     To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(i)     To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Plan, to commence or defend suits or legal or

administrative proceedings, and to represent the Plan in all suits and legal and administrative proceedings;

(j)    To employ suitable agents and counsel and to pay their reasonable expenses and compensation, and such agent or counsel may or may not be agent or counsel for the Employer;

(k)    To apply for and procure from responsible insurance companies, to be selected by the Administrator, as an investment of the Trust Fund such annuity, or other Contracts (on the life of any Participant) as the Administrator shall deem proper; to exercise, at any time or from time to time, whatever rights and privileges may be granted under such annuity, or other Contracts; to collect, receive, and settle for the proceeds of all such annuity or other Contracts as and when entitled to do so under the provisions thereof;

(l)    To invest funds of the Trust in time deposits or savings accounts bearing a reasonable rate of interest or in cash or cash balances without liability for interest thereon, including the specific authority to invest in any type of deposit of the Trustee (or of a financial institution related to a Trustee);

(m)    To invest in Treasury Bills and other forms of United States government obligations;

(n)    To invest in shares of investment companies registered under the Investment Company Act of 1940, including any money market fund advised, by or offered through Mellon Bank, NA, or the financial institution to which it is entrusted by the Trustee;

(o)    To sell, purchase and acquire put or call options if the options are traded on and purchased through a national securities exchange registered under the Securities Exchange Act of 1934, as amended, or, if the options axe not traded on a national securities exchange, are guaranteed by a member fum of the New York Stock Exchange regardless of whether such options are covered;

(p)    To deposit monies in federally insured savings accounts or certificates of deposit in banks or savings and loan associations including the specific authority to make deposit into any savings accounts or certificates of deposit of the Trustee (or a financial institution related to the Trustee);

(q)    To pool all or any of the Trust Fund, from time to time, with assets belonging to any other qualified employee pension benefit trust created by the Employer or any Affiliated Employer, and to commingle such assets and make joint or common investments and carry joint accounts on behalf of this Plan and Trust and such other trust or trusts, allocating undivided shares or interests in such investments or accounts or any pooled assets of the two or more trusts in accordance with their respective interests;

(r)    To do all such acts and exercise all such rights and privileges, although not specifically mentioned herein, as the Trustee may deem necessary to carry out the purposes of the Plan.

7.4.    DUTIES OF THE TRUSTEE REGARDING PAYMENTS

At the direction of the Administrator, the Trustee shall, from time to time, in accordance with the terms of the Plan, make payments out of the Trust Fund. The Trustee shall not be responsible in any way for the application of such payments.

7.5.    TRUSTEE'S COMPENSATION AND EXPENSES AND TAXES

The Trustee shall be paid such reasonable compensation as set forth in the Trustee's fee schedule (if the Trustee has such a schedule) or as agreed upon in writing by the Employer and the Trustee. However, an individual serving as Trustee who already receives full-time pay from the Employer shall not receive compensation from the Plan. In addition, the Trustee shall be reimbursed for any reasonable expenses, including reasonable counsel fees incurred by it as Trustee. Such compensation and. expenses shall be paid from the Trust Fund unless paid or advanced by the Employer. All taxes of any kind whatsoever that may be levied or assessed under existing or future laws upon, or in respect ot the Trust Fund or the income thereof, shall be paid from the Trust Fund.

7.6.    ANNUAL REPORT OF THE TRUSTEE

(a)    Within a reasonable period of time after the later of the Anniversary Date or receipt of the Employer contribution for each Plan Year, the Trustee, or its agent, shall furnish to the Employer and Administrator a written statement of account with respect to the Plan Year for which such contribution was made setting forth:

(1)    the net income, or loss, of the Trust Fund;

(2)    the gains, or losses, realized by the Trust Fund upon sales or other disposition of the assets;

(3)    the increase, or decrease, in the value of the Trust Fund;

(4)    all payments and distributions made from the Trust Fund; and

(5)    such further information as the Trustee and/or Administrator deems appropriate.

(b)    The Employer, promptly upon its receipt of each such statement of account, shall acknowledge receipt thereof in writing and advise the Trustee and/or Administrator of its approval or disapproval thereof. Failure by the Employer to disapprove any such statement of account within thirty (30) days after its receipt thereof shall be deemed an approval thereof. The approval by the Employer of any statement of account shall be binding on the Employer and the Trustee as to all matters contained in the statement to the same extent as if the account of the Trustee had been settled by judgment or decree in an action for a judicial settlement of its account in a court of competent jurisdiction in which the Trustee, the Employer and all persons having or claiming an interest in the Plan were parties. However, nothing

49

contained in this Section shall deprive the Trustee of its right to have its accounts judicially settled if the Trustee so desires.

### 7.7. AUDIT

All auditing and accounting fees shall be an expense of and may, at the election of the Employer, be paid from the Trust Fund.

### 7.8. RESIGNATION, REMOVAL AND SUCCESSION OF TRUSTEE

(a)     Unless otherwise agreed to by both the Trustee and the Employer, a Trustee may resign at any time by delivering to the Employer, at least thirty (30) days before its effective date, a written notice of resignation.

(b)     Unless otherwise agreed to by both the Trustee and the Employer, the Employer may remove a Trustee at any time by delivering to the Trustee, at least thirty (30) days before its effective date, a written notice of such Trustee's removal.

(c)     Upon the death, resignation, incapacity, or removal of any Trustee, a successor may be appointed by the Employer; and such successor, upon accepting such appointment in writing and delivering same to the Employer, shall, without further act, become vested with all the powers and responsibilities of the predecessor as if such successor had been originally named as a Trustee herein. Until such a successor is appointed, the remaining Trustee or Trustees shall have full authority to act under the terms of the Plan.

(d)     The Employer may designate one or more successors prior to the death, resignation, incapacity, or removal of a Trustee. In the event a successor is so designated by the Employer and accepts such designation, the successor shall, without further act, become vested with all the powers and responsibilities of the predecessor as if such successor had been originally named as Trustee herein immediately upon the death, resignation, incapacity, or removal of the predecessor.

(e)     Whenever any Trustee hereunder ceases to serve as such, the Trustee shall furnish to the Employer and Administrator a written statement of account with respect to the portion of the Plan Year during which the individual or entity served as Trustee. This statement shall be either (i) included as part of the annual statement of account for the Plan Year required under Section 7.6 or (ii) set forth in a special statement. Any such special statement of account should be rendered to the Employer no later than the due date of the annual statement of account for the Plan Year. The procedures set forth in Section 7.6 for the approval by the Employer of annual statements of account shall apply to any special statement of account rendered hereunder and approval by the Employer of any such special statement in the manner provided in Section 7.6 shall have the same effect upon the statement as the Employer's approval of an annual statement of account. No successor to the Trustee shall have any duty or responsibility to investigate the acts or transactions of any predecessor who has rendered all statements of account required by Section 7.6 and this subparagraph.

7.9.    TRANSFER OF INTEREST

Notwithstanding any other provision contained in this Plan, the Trustee at the direction of the Administrator shall transfer the Vested interest, if any, of a Participant to another trust forming part of a pension, profit sharing or stock bonus plan maintained by such Participant's new employer and represented by said employer in writing as meeting the requirements of Code Section 401(a), provided that the trust to which such transfers are made permits the transfer to be made.

7.10.    TRUSTEE INDEMNIFICATION

The Employer agrees to indemnify and hold harmless the Trustee against any and all claims, losses, damages, expenses and liabilities the Trustee may incur in the exercise and performance of the Trustee's power and duties hereunder, unless the same are determined to be due to gross negligence or willful misconduct,

7.11.    DIRECT ROLLOVER

(a)    Notwithstanding any provision of the Plan to the contrary that would otherwise limit a "distributee's" election under this Section, a "distributee" may elect, at the time and in the manner prescribed by the Administrator, to have any portion of an "eligible rollover distribution" that is equal to at least $500 paid directly to an "eligible retirement plan" specified by the "distributee" in a "direct rollover."

(b)    For purposes of this Section the following definitions shall apply:

(1)    An "eligible rollover distribution" is any distribution of all or any portion of the balance to the credit of the "distributee," except that an "eligible rollover distribution" does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the "distributee" or the joint lives (or joint life expectancies) of the "distributee" and the "distributee's" designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Code Section 401(a)(9); the portion of any other distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); any hardship distribution described in Code Section 401(k)(2)(B)(i)(IV) made after December 31, 1999; and any other distribution that is reasonably expected to total less than $200 during a year.

(2)    An "eligible retirement plan" is an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), or a qualified trust described in Code Section 401(a), that accepts the "distributee's" "eligible rollover distribution." However, in the case of an "eligible rollover distribution" to the surviving spouse, an "eligible retirement plan" is an individual retirement account or individual retirement annuity.

(3)    A "distributee" includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a qualified

51

domestic relations order, as defined in Code Section 414(p), are distributed with regard to the interest of the spouse or former spouse.

      (4)    A "direct rollover" is a payment by the Plan to the "eligible retirement plan" specified by the "distributee."

## ARTICLE VIII
## PLAN AMENDMENT

### 8.1.   AMENDMENT

      (a)    The Employer shall have the right at any time to amend this Plan, subject to the limitations of this Section. However, any amendment which affects the rights, duties or responsibilities of the Trustee or Administrator may only be made with the Trustee's or Administrator's written consent. Any such amendment shall become effective as provided therein upon its execution. The Trustee shall not be required to execute any such amendment unless the amendment affects the duties of the Trustee hereunder.

      (b)    No amendment to the Plan shall be effective if it authorizes or permits any part of the Trust Fund (other than such part as is required to pay taxes and administration expenses) to be used for or diverted to any purpose other than for the exclusive benefit of the Participants or their Beneficiaries or estates; or causes any reduction in the Accrued Benefit of any Participant (except to the extent permitted under Code Section 412(c)(8)); or causes or permits any portion of the Trust Fund to revert to or become property of the Employer.

      (c)    Except as permitted by Regulations, no Plan amendment or transaction having the effect of a Plan amendment (such as a merger, plan transfer or similar transaction) shall be effective to the extent it eliminates or reduces any Participant's Accrued Benefit or Vested percentage calculated as of the later of the adoption date or the effective date of the amendment.

## ARTICLE IX
## PLAN TERMINATION

### 9.1.   TERMINATION

      (1)    If the Plan is fully funded on a termination basis, the Employer shall have the right to terminate the Plan by delivering to the Trustee and Administrator written notice of such termination. Upon termination the Accrued Benefit of each affected Participant shall become fully Vested and shall not thereafter be subject to forfeiture. However, Participants who were not fully Vested at the time they received a complete distribution of their benefits prior to the date of termination, shall not become entitled to any additional benefits on account of Plan termination. Upon full termination of the Plan, the Employer shall direct the distribution of the assets in the Trust Fund to the Participants in a manner which is consistent with Section 5.7. In such case, the Trustee shall distribute the assets to the remaining Participants in the Plan and to retired Participants in cash or through the purchase of irrevocable deferred commitments from an insurer, subject to provision for expenses

of administration or liquidation. The balance, if any, of the assets held by the Trust Fund after such allocation shall be returned to the Employer, but only after the satisfaction of all liabilities with respect to Participants, Beneficiaries and pensions under the Plan.

9.2.    LIMITATION OF BENEFITS ON PLAN TERMINATION

In the event of Plan termination, the benefit of any Highly Compensated Participant or any highly compensated former employee shall be limited to a benefit that is nondiscriminatory under Code Section 401(a)(4).

## ARTICLE X
## MERGER, CONSOLIDATION OR TRANSFER OF ASSETS

10.1.    REQUIREMENTS

Before this Plan can be merged or consolidated with any other qualified plan or its assets or liabilities transferred to any other qualified, plan, the Administrator must secure (and file with the Secretary of Treasury at least thirty (30) days beforehand) a certification from a government-enrolled actuary that the benefits which would be received by a Participant of this Plan, in the event of a termination of the Plan immediately after such transfer, merger or consolidation, are at least equal to the benefits the Participant would have received if the Plan had terminated immediately before the transfer, merger or consolidation, and such transfer, merger or consolidation does not otherwise result in the elimination or reduction of any Participant's Accrued Benefit.

## ARTICLE XI
## TOP HEAVY

11.1.    TOP HEAVY PLAN REQUIREMENTS

For any Top Heavy Plan Year, the Plan shall provide the special vesting requirements of Code Section 416(b) pursuant to Section 5.6 of the Plan and the special minimum benefit requirements of Code Section 416(c) pursuant to Section 5.2 of the Plan.

11.2.    DETERMINATION OF TOP HEAVY STATUS

(a)    This Plan shall be a Top Heavy Plan for any Plan Year in which, as of the Determination Date, (1) the Present Value of Accrued Benefits of Key Employees and (2) the sum of the Aggregate Accounts of Key Employees under this Plan and all plans of an. Aggregation Group, exceeds sixty percent (60%) of the Present Value of Accrued Benefits and the Aggregate Accounts of all Key and Non-Key Employees under this Plan and all plans of an Aggregation Group.

If any Participant is a Non-Key Employee for any Plan Year, but such Participant was a Key Employee for any prior Plan Year, such Participant's Present Value of Accrued Benefit and/or Aggregate Account balance shall not be taken into account for purposes of determining whether this Plan is a Top Heavy Plan (or whether any Aggregation Group which includes this Plan is a Top Heavy Group). In addition, if a Participant or Former Participant has

53

not performed any services for any Employer maintaining the Plan at any time during the five year period ending on the Determination Date, any accrued benefit for such Participant or Former Participant shall not be taken into account for the purposes of determining whether this Plan is a Top Heavy Plan.

(b)    Aggregate Account: A Participant's Aggregate Account as of the Determination Date shall be determined under applicable provisions of the defined contribution plan used in determining Top Heavy Plan status.

(c)    "Aggregation Group" means either a Required Aggregation Group or a Permissive Aggregation Group as hereinafter determined.

(1)    Required Aggregation Group: In determining a Required Aggregation Group hereunder, each plan of the Employer in which a Key Employee is a participant in the Plan Year containing the Determination Date or any of the four preceding Plan Years, and each other plan of the Employer which enables any plan in which a Key Employee participates to meet the requirements of Code Sections 401(a)(4) or 410, will be required to be aggregated. Such group shall be known as a Required Aggregation Group.

In the case of a Required Aggregation Group, each plan in the group will be considered a Top Heavy Plan if the Required Aggregation Group is a Top Heavy Group. No plan in the Required Aggregation Group will be considered a Top Heavy Plan if the Required Aggregation Group is not a Top Heavy Group.

(2)    Permissive Aggregation Group: The Employer may also include any other plan not required to be included in the Required Aggregation Group, provided the resulting group, taken as a whole, would continue to satisfy the provisions of Code Sections 401(a)(4) and 410. Such group shall be known as a Permissive Aggregation Group.

In the case of a Permissive Aggregation Group, only a plan that is part of the Required Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is a Top Heavy Group. No plan in the Permissive Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is not a Top Heavy Group.

(3)    Only those plans of the Employer in which the Determination Dates fall within the same calendar year shall be aggregated in order to determine whether such plans are Top Heavy Plans.

(4)    An Aggregation Group shall include any terminated plan of the Employer if it was maintained within the last five (5) years ending on the Determination Date.

(d)    "Determination Date" means (a) the last day of the preceding Plan Year, or (b) in the case of the first Plan Year, the last day of such Plan Year.

(e)    Present Value of Accrued Benefit: In the case of a defined benefit plan, a Participant's Present Value of Accrued Benefit shall be determined:

54

(1)     in the case of a Participant other than a Key Employee, using the single accrual method used for all plans of the Employer and Affiliated Employers, or if no such single method exists, using a method which results in benefits accruing not more rapidly than the slowest accrual rate permitted under Code Section 411(b)(1)(C).

(2)     as of the most recent "actuarial valuation date," which is the most recent valuation date within a twelve (12) month period ending on the Determination Date.

(3)     for the first Plan Year, as if (a) the Participant terminated service as of the Determination Date; or (b) the Participant terminated service as of the actuarial valuation date, but taking into account the estimated Accrued Benefits as of the Determination Date.

(4)     for the second Plan Year, the Accrued Benefit taken into account for a current Participant must not be less than the Accrued Benefit taken into account for the first Plan Year unless the difference is attributable to using an estimate of the Accrued Benefit as of the Determination Date for the first Plan Year and using the actual Accrued Benefit for the second Plan Year.

(5)     for any other Plan Year, as if the Participant terminated service as of the actuarial valuation date.

(6)     the actuarial valuation date must be the same date used for computing the defined benefit plan minimum funding costs, regardless of whether a valuation is performed that Plan Year.

(7)     by not taking into account proportional subsidies.

(8)     by taking into account non-proportional subsidies.

(f)     The calculation of a Participant's Present Value of Accrued Benefit as of a Determination Date shall be the sum of:

(1)     the Present Value of Accrued Benefit using the actuarial assumptions of Section 1.2, which assumptions shall be identical for all defined benefit plans being tested for Top Heavy Plan status.

(2)     any Plan distributions made within the Plan Year that includes the Determination Date or within the four (4) preceding Plan Years. However, in the case of distributions made after the valuation date and prior to the Determination Date, such distributions are not included as distributions for top heavy purposes to the extent that such distributions are already included in the Participant's Present Value of Accrued Benefit as of the valuation date. Notwithstanding anything herein to the contrary, all distributions, including distributions made prior to January 1, 1984, and distributions under a terminated plan which if it had not been terminated would have been required to be included in. an Aggregation Group, will be counted. Further, benefits paid on account of death, to the extent such benefits do not exceed

the Present Value of Accrued Benefits existing immediately prior to death, shall be treated as distributions for the purposes of this paragraph.

(3)    any Employee contributions, whether voluntary or mandatory. However, amounts attributable to tax deductible Qualified Voluntary Employee Contributions shall not be considered to be a part of the Participant's Present Value of Accrued Benefit.

(4)    with respect to unrelated rollovers and plan-to-plan transfers (ones which are both initiated by the Employee and made from a plan maintained by one employer to a plan maintained by another employer), if this Plan provides the rollovers or plan-to-plan transfers, it shall always consider such rollovers or plan-to-plan transfers as a distribution for the purposes of this Section. If this Plan is the plan accepting such rollover or plan-to-plan transfers, it shall not consider such rollovers or plan-to-plan transfers accepted after December 31, 1983, as part of the Participant's Present Value of Accrued Benefit. However, rollovers or plan-to-plan transfers accepted prior to January 1, 1984 shall be considered as part of the Participant's Present Value of Accrued Benefit.

(5)    with respect to related rollovers and plan-to-plan transfers (ones either not initiated by the Employee or made to a plan maintained by the same employer), if this Plan provides the rollovers or plan-to-plan transfers, it shall not be counted as a distribution for purposes of this Section. If this Plan is the plan accepting such rollovers or plan-to-plan transfers, it shall consider such rollovers or plan-to-plan transfers as part of the Participant's Present Value of Accrued Benefit, irrespective of the date on which such rollovers or plan-to-plan transfers are accepted.

(6)    for the purposes of determining whether two employers are to be treated as the same employer in (4) and (5) above, all employers aggregated under Code Section 414(b), (c), (m) or (o) are treated as the same employer.

(g)    "Top Heavy Group" means an Aggregation Group in which, as of the Determination Date, the sum of:

(1)    the Present Value of Accrued Benefits of Key Employees under all defined benefit plans included in the group, and

(2)    the Aggregate Accounts of Key Employees under all defined contribution plans included in the group, exceeds sixty percent (60%) of a similar sum determined for all Participants.

## ARTICLE XII
## MISCELLANEOUS

### 12.1.    PARTICIPANT'S RIGHTS

This Plan shall not be deemed to constitute a contract between the Employer and any Participant or to be a consideration or an inducement for the employment of any Participant or Employee; however, Participants are intended beneficiaries of this Plan. Nothing contained in

this Plan shall be deemed to give any Participant or Employee the right to be retained in the service of the Employer or to interfere with the right of the Employer to discharge any Participant or Employee at any time regardless of the effect which such discharge shall have upon the Employee as a Participant of this Plan.

### 12.2.    ALIENATION

(a)    Subject to the exceptions provided below, and as otherwise permitted by the Code, no benefit which shall be payable out of the Trust Fund to any person (including a Participant or the Participant's Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as may be required by law.

(b)    Subsection (a) shall not apply to a "qualified domestic relations order" defined in Code Section 414(p), and those other domestic relations orders permitted to be so treated by the Administrator under the provisions of the Retirement Equity Act of 1984.  The Administrator shall establish a written procedure to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders.  Further, to the extent provided under a "qualified domestic relations order," a former spouse of a Participant shall be treated as the spouse or surviving spouse for all purposes under the Plan.

(c)    Subsection (a) shall not apply to an offset to a Participant's accrued benefit against an amount that the Participant is ordered or required to pay the Plan with respect to a judgment, order, or decree issued, or a settlement entered into, on or after August 5, 1997, in accordance with Code Sections 401(a)(13)(C) and (D).  In a case in which the survivor annuity requirements of Code Section 401(a)(11) apply with respect to distributions from the Plan to the Participant, if the Participant has a spouse at the time at which the offset is to be made:

(1)    either such spouse has consented in writing to such offset and such consent is witnessed by a notary public or representative of the Plan (or it is established to the satisfaction of a Plan representative that such consent may not be obtained by reason of circumstances described in Code Section 417(a)(2)(3)), or an election to waive the right of the spouse to either a qualified joint and survivor annuity or a qualified pre-retirement survivor annuity is in effect in accordance with the requirements of Code Section 417(a),

(2)    such spouse is ordered or required in such judgment, order, decree or settlement to pay an amount to the Plan in connection with a violation of fiduciary duties, or

(3)    in such judgment, order, decree or settlement, such spouse retains the right to receive the survivor annuity under a qualified joint and survivor annuity

57

provided pursuant to Code Section 401(a)(11)(A)(i) and under a qualified pre-retirement survivor annuity provided pursuant to Code Section 401(a)(11)(A)(ii).

### 12.3.    CONSTRUCTION OF PLAN

This Plan and Trust shall be construed and enforced according to the Code and the laws of the State of Delaware, other than its laws respecting choice of law.

### 12.4.    GENDER AND NUMBER

Wherever any words are used herein in the masculine, feminine or neuter gender, they shall be construed as though they were also used in another gender in all cases where they would so apply, and whenever any words are used herein in the singular or plural form, they shall be construed as though they were also used in the other form in all cases where they would so apply.

### 12.5.    LEGAL ACTION

In the event any claim, suit, or proceeding is brought regarding the Trust and/or Plan established hereunder to which the Trustee, the Employer or the Administrator may be a party, and such claim, suit, or proceeding is resolved in favor of the Trustee, the Employer or the Administrator, they shall be entitled to be reimbursed from the Trust Fund for any and all costs, attorney's fees, and other expenses pertaining thereto incurred by them for which they shall have become liable.

### 12.6.    PROHIBITION AGAINST DIVERSION OF FUNDS

Except in the case of an excessive contribution made under a mistake of fact and as otherwise specifically permitted by law, it shall be impossible by operation of the Plan or of the Trust, by termination of either, by power of revocation or amendment, by the happening of any contingency, by collateral assignment or by any other means, for any part of the corpus or income of any Trust Fund maintained pursuant to the Plan or any funds contributed thereto to be used for, or diverted to, purposes other than the exclusive benefit of Participants, Former Participants, or their Beneficiaries.

### 12.7.    EMPLOYER'S AND TRUSTEE'S PROTECTIVE CLAUSE

The Employer, Administrator and Trustee, and their successors, shall not be responsible for the validity of any Contract issued hereunder or for the failure on the part of the insurer to make payments provided by any such Contract, or for the action of any person which may delay payment or render a Contract null and void or unenforceable in whole or in part.

### 12.8.    INSURER'S PROTECTIVE CLAUSE

Except as otherwise agreed upon in writing between the Employer and the insurer, an insurer which issues any Contracts hereunder shall not have any responsibility for the validity of this Plan or for the tax or legal aspects of this Plan. The insurer shall be protected and held harmless in acting in accordance with any written direction of the Trustee, and shall have no

068902.1001

duty to see to the application of any funds paid to the Trustee, nor be required to question any actions directed by the Trustee. Regardless of any provision of this Plan, the insurer shall not be required to take or permit any action or allow any benefit or privilege contrary to the terms of any Contract which it issues hereunder, or the rules of the insurer.

## 12.9.   RECEIPT AND RELEASE FOR PAYMENTS

Any payment to any Participant, the Participant's legal representative, Beneficiary, or to any guardian or committee appointed for such Participant or Beneficiary in accordance with the provisions of the Plan, shall, to the extent thereof, be in full satisfaction of all claims hereunder against the Trustee and the Employer, either of whom may require such Participant, legal representative, Beneficiary, guardian or committee, as a condition precedent to such payment, to execute a receipt and release thereof in such form as shall be determined by the Trustee or Employer.

## 12.10.  ACTION BY THE EMPLOYER

Whenever the Employer under the terms of the Plan is permitted or required to do or perform any act or matter or thing, it shall be done and performed by a person duly authorized by its legally constituted authority.

## 12.11.  NAMED FIDUCIARIES AND ALLOCATION OF RESPONSIBILITY

The "named Fiduciaries" of this Plan are (1) the Employer, (2) the Administrator, (3) the Trustee, and (4) any Investment Manager appointed hereunder. The named Fiduciaries shall have only those specific powers, duties, responsibilities, and obligations as are specifically given them under the Plan, including, but not limited to, any agreement allocating or delegating their responsibilities, the terms of which are incorporated herein by reference. In general, the Employer shall have the sole responsibility for making the contributions provided for under Section 4.1; and shall have the authority to appoint and remove the Trustee and the Administrator; to formulate the Plan's "funding policy and method"; and to amend or terminate, in whole or in part, the Plan. The Administrator shall have the sole responsibility for the administration of the Plan, including, but not limited to, the items specified at Article II of the Plan, as the same maybe allocated or delegated thereunder. The Trustee shall have the sole responsibility of management of the assets held under the Trust, except to the extent directed pursuant to Article II or with respect to those assets, the management of which has been assigned to an Investment Manager, who shall be solely responsible for the management of the assets assigned to it, all as specifically provided in the Plan. Each named Fiduciary warrants that any directions given, information furnished, or action taken. by it shall be in accordance with the provisions of the Plan, authorizing or providing for such direction, information or action. Furthermore, each named Fiduciary may rely upon any such direction, information or action of another named Fiduciary as being proper under the Plan, and is not required under the Plan to inquire into the propriety of any such direction, information or action. It is intended under the Plan that each named Fiduciary shall be responsible for the proper exercise of its own powers, duties, responsibilities and obligations under the Plan as specified or allocated herein. No named Fiduciary shall guarantee the Trust Fund in any manner against investment loss or depreciation in asset value. Any person or group may serve in more than one Fiduciary capacity.

## 12.12. HEADINGS

The headings Find subheadings of this Plan have been inserted for convenience of reference and are to be ignored in any construction of the provisions hereof.

## 12.13. APPROVAL BY INTERNAL REVENUE SERVICE

Notwithstanding anything herein to the contrary, if, pursuant to an application for qualification filed by or on behalf of the Plan by the time prescribed by law for filing the Employer's return for the taxable year in which the Plan is adopted, or such later date that the Secretary of the Treasury may prescribe, the Commissioner of Internal Revenue Service or the Commissioner's delegate should determine that the Plan does not initially qualify as a tax-exempt plan under Code Sections 401 and 501, and such determination is not contested, or if contested, is finally upheld, then if the Plan is a new plan, it shall be void ab initio and all amounts contributed to the Plan by the Employer, less expenses paid, shall be returned within one (1) year and the Plan shall terminate, and the Trustee shall be discharged from all further obligations. If the disqualification relates to an amended plan, then the Plan shall operate as if it had not been amended.

## 12.14. UNIFORMITY

All provisions of this Plan shall be interpreted and applied in a uniform, nondiscriminatory manner. In the event of any conflict between the terms of this Plan and any Contract purchased hereunder, the Plan provisions shall control.

## ARTICLE XIII
## PARTICTAT1NG EMPLOYERS

## 13.1. ADOPTION BY OTHER EMPLOYERS

Notwithstanding anything herein to the contrary, with the consent of the Employer and Trustee, any other corporation or entity, whether an affiliate or subsidiary or not, may adopt this Plan and all of the provisions hereof, and participate herein and be known as a Participating Employer, by a properly executed document evidencing said intent and will of such Participating Employer.

## 13.2. REQUIREMENTS OF PARTICIPATING EMPLOYERS

(a)    Each such Participating Employer shall be required to use the same Trustee as provided in this Plan.

(b)    The Trustee may, but shall not be required to, commingle, hold and invest as one Trust Fund all contributions made by Participating Employers, as well as all increments thereof. However, the assets of the Plan shall, on an ongoing basis, be available to pay benefits to all Participants and Beneficiaries under the Plan without regard to the Employer or Participating Employer who contributed such assets.

(c)    The transfer of any Participant from or to an Employer participating in this Plan, whether he be an Employee of the Employer or a Participating Employer, shall not affect such Participant's rights under the Plan, and the Participant's Present Value of Accrued Benefit as well as his accumulated service time with the transferor or predecessor and his length of participation in the Plan, shall continue to his credit.

(d)    On the basis of information furnished by the Administrator, the Trustee shall keep separate books and records concerning the affairs of each Participating Employer hereunder and as to the Accrued Benefits of the Participants of each Participating Employer. The Trustee may, but need not, register Contracts so as to evidence that a particular Participating Employer is the interested Employer hereunder, but in any event of Employee transfer from one Participating Employer to another, the employing Employer shall immediately notify the Trustee thereof.

(e)    In the event of termination of employment of any transferred Employee, any portion of the Accrued Benefit of such Employee which has not been Vested under the provisions of this Plan shall be allocated by the Trustee at the direction of the Administrator to the respective equities of the Participating Employers for whom such Employee has rendered service in the proportion that each Participating Employer has contributed toward the benefits of such Employee. The amount so allocated shall be retained by the Trustee and shall be used to reduce the contribution by the respective Participating Employer, for the next succeeding year or years.

(f)    Any expenses of the Trust which are to be paid by the Employer or borne by the Trust Fund shall be paid by each Participating Employer in the same proportion that the total amount standing to the credit of all Participants employed by such Employer bears to the total standing to the credit of all Participants.

## 13.3.   DESIGNATION OF AGENT

Each Participating Employer shall be deemed to be a party to this Plan; provided, however, that with respect to all of its relations with the Trustee and Administrator for the purpose of this Plan, each Participating Employer shall be deemed to have designated irrevocably the Employer as its agent. Unless the context of the Plan clearly indicates the contrary, the word "Employer" shall be deemed to include each Participating Employer as related to its adoption of the Plan.

## 13.4.   EMPLOYEE TRANSFERS

It is anticipated that an Employee may be transferred between Participating Employers, and in the event of any such transfer, the Employee involved shall carry with him his accumulated service and eligibility. No such transfer shall effect a termination of employment hereunder, and. the Participating Employer to which the Employee is transferred shall thereupon become obligated hereunder with respect to such Employee in the same manner as was the Participating Employer from whom the Employee was transferred.

61

### 13.5.    AMENDMENT

Amendment of this Plan by the Employer at any time when there shall be a Participating Employer hereunder shall only be by the written action of each and every Participating Employer and with the consent of the Trustee where such consent is necessary in accordance with the terms of this Plan.

### 13.6.    DISCONTINUANCE OF PARTICIPATION

Any Participating Employer shall be permitted to discontinue or revoke its participation in the Plan.  At the time of any such discontinuance or revocation, satisfactory evidence thereof and of any applicable conditions imposed shall be delivered to the Trustee.  The Trustee shall thereafter transfer, deliver and assign Contracts and other Trust Fund assets allocable to the Participants of such Participating Employer to such new Trustee as shall have been designated by such Participating Employer, in the event that it has established a separate pension plan for its Employees, provided however, that no such transfer shall be made if the result is the elimination or reduction of any "Section 411(d)(6) protected benefits" in accordance with Section 8.1(c).  If no successor is designated, the Trustee shall retain such assets for the Employees of said Participating Employer pursuant to the provisions of Article VII hereof.  In no such event shall any part of the corpus or income of the Trust as it relates to such Participating Employer be used for or diverted to purposes other than for the exclusive benefit of the Employees of such Participating Employer.

### 13.7.    ADMINISTRATOR'S AUTHORITY

The Administrator shall have authority to make any and all necessary rules or regulations, binding upon all Participating Employers and all Participants, to effectuate the purpose of this Article.

IN WITNESS WHEREOF, this Plan has been executed the day and year first above written.

Signed, sealed, and delivered in
the presence of:

Catholic Diocese of Wilmington, Inc.

_____

_____

Signed, sealed, and delivered in
the presence of:

Bank of New York Mellon

_____

_____

068902.1001

# EXHIBIT 2

**Blackline**

# DIOCESE OF WILMINGTON
# LAY EMPLOYEES PENSION PLAN

### Amended and Restated
### Effective _____, 2011

TABLE OF CONTENTS

## ARTICLE I
## DEFINITIONS

ARTICLE I DEFINITIONS ....................................................................................... 1

1.1.    "Accrued Benefit" ......................................................................................... 1
1.2.    "Act" ............................................................................................................. 3
1.3.    "Actuarial Equivalent" ................................................................................. 3
1.4.1.3. "Administrator" ..................................................................................... 3
1.5.1.4. "Affiliated Employer" ........................................................................... 3
1.6.1.5. "Aggregate Account" ............................................................................ 34
1.7.1.6. "Anniversary Date" .............................................................................. 34
1.8.1.7. "Annuity Starting Date" ....................................................................... 34
1.9.1.8. "Average Monthly Compensation" ....................................................... 4
1.9.    "Baseline Funding Amount" ......................................................................... 4
1.10.   "Beneficiary" ................................................................................................ 4
1.11.   "Code" ........................................................................................................... 4
1.12.   "Compensation" ............................................................................................ 4
1.13.   "Contract" or "Policy" ................................................................................... 5
1.14.   "Earliest Retirement Age" ............................................................................. 5
1.15.   "Early Retirement Date" ............................................................................... 5
1.16.   "Eligible Employee" ...................................................................................... 56
1.17.   "Employee" .................................................................................................... 6
1.18.   "Employer" .................................................................................................... 6
1.19.   "Fiduciary" .................................................................................................... 6
1.20.   "Fiscal Year" ................................................................................................. 6
1.21.   "Former Participant" ...................................................................................... 67
1.22.   "415 Compensation" ...................................................................................... 67
1.23.   "Fresh-Start Date" ......................................................................................... 7
1.24.   "Fresh-Start Group" ...................................................................................... 7
1.25.   "Frozen Accrued Benefit" ............................................................................. 7
1.26.   "Highly Compensated Employee" ................................................................. 8
1.27.   "Highly Compensated Participant" ............................................................... 9
1.28.   "Hour of Service" .......................................................................................... 9
1.29.   "Investment Manager" ................................................................................... 10
1.30.   "Key Employee" ............................................................................................ 10
1.31.   "Late Retirement Date" ................................................................................. 11
1.32.   "Leased Employee" ....................................................................................... 11
1.33.   "Minimum Funding Amount" ........................................................................ 12
1.34.1.35. "Non-Highly Compensated Participant" ............................................. 1112
1.34.1.35.                                                                "Non-Key Employee"
1112

1.35.    "Normal Retirement Age" ................................................................ 11
1.36.    "Normal Retirement DateAge" .......................................................... 12
1.37.    "Normal Retirement Date" ................................................................ 12
1.38.    "1-Year Break in Service" ................................................................ 12
1.38.1.39.    "Participant"
1213
1.39.    "Plan" ............................................................................................... 12
1.40.    "Plan Year" ...................................................................................... 13
1.41.    "Plan Year of Service" ..................................................................... 13
1.42.    "Plan Year of Service" ..................................................................... 13
1.43.    "Pre-Retirement Survivor Annuity" ................................................. 13
1.43.1.44.    "Present Value of Accrued Benefit"
13
1.44.1.45.    "Regulation"
1314
1.45.1.46.    "Retired Participant"
1314
1.46.1.47.    "Retirement Date"
1314
1.47.1.48.    "Social Security Retirement Age"
1314
1.48.1.49.    "Terminated Participant"
1314
1.49.    "Top Heavy Plan" ............................................................................ 13
1.50.    "Top Heavy Plan Year" .................................................................. 1314
1.51.    "Top Heavy Plan Year" .................................................................... 14
1.52.    "Top-Paid Group" ............................................................................ 14
1.52.1.53.    "Total and Permanent Disability"
1415
1.53.1.54.    "Trustee"
1415
1.54.1.55.    "Trust Fund"
1415
1.55.1.56.    "Vested"
1415
1.56.1.57.    "Year of Service"
15

ARTICLE II ADMINISTRATION ........................................................................ 1516

2.1.    POWERS AND RESPONSIBILITIES OF THE EMPLOYER ................. 1516
2.2.    DESIGNATION OF ADMINISTRATIVE AUTHORITY ....................... 1617
2.3.    POWERS AND DUTIES OF THE ADMINISTRATOR ......................... 1617
2.4.    RECORDS AND REPORTS .................................................................... 1718
2.5.    APPOINTMENT OF ADVISERS ............................................................ 18

2.6.    PAYMENT OF EXPENSES.................................................................18
2.7.    CLAIMS PROCEDURE..................................................................~~18~~19
2.8.    CLAIMS REVIEW PROCEDURE...................................................~~18~~19

**ARTICLE III ELIGIBILITY**.........................................................................**19**

3.1.    CONDITIONS OF ELIGIBILITY................................................19
3.2.    EFFECTIVE DATE OF PARTICIPATION...................................~~19~~20
3.3.    DETERMINATION OF ELIGIBILITY........................................~~19~~20
3.4.    TERMINATION OF ELIGIBILITY.............................................20
3.5.    REHIRED EMPLOYEES AND BREAKS IN SERVICE................20
3.6.    ELECTION NOT TO PARTICIPATE...........................................21

<u>3.7.    FROZEN BENEFIT ACCRUALS</u>...............................................22

**ARTICLE IV CONTRIBUTION AND VALUATION**..............................~~21~~**22**

4.1.    PAYMENT OF CONTRIBUTIONS...........................................~~21~~22
4.2.    ACTUARIAL METHODS...........................................................~~21~~22
4.3.    QUALIFIED MILITARY SERVICE............................................~~21~~23

**ARTICLE V BENEFITS**.......................................................................~~22~~**23**

5.1.    RETIREMENT BENEFITS.........................................................~~22~~23
5.2.    MINIMUM BENEFIT REQUIREMENT FOR TOP HEAVY PLAN...........~~24~~25
5.3.    PAYMENT OF RETIREMENT BENEFITS..................................~~25~~26
5.4.    DISABILITY RETIREMENT BENEFITS.....................................~~25~~26
5.5.    DEATH BENEFITS....................................................................~~25~~27
5.6.    TERMINATION OF EMPLOYMENT BEFORE RETIREMENT...........~~27~~28
5.7.    DISTRIBUTION OF BENEFITS..................................................~~30~~31
5.8.    DISTRIBUTION OF BENEFITS UPON DEATH..........................~~35~~36
5.9.    TIME OF SEGREGATION OR DISTRIBUTION.........................~~37~~39
5.10.   DISTRIBUTION FOR MINOR OR INCOMPETENT BENEFICIARY...........~~38~~39
5.11.   LOCATION OF PARTICIPANT OR BENEFICIARY UNKNOWN...........~~38~~39
5.12.   EFFECT OF SOCIAL SECURITY ACT.......................................~~39~~40
5.13.   QUALIFIED DOMESTIC RELATIONS ORDER DISTRIBUTION...........~~39~~40
5.14.   LIMITATION OF BENEFITS ON TERMINATION......................~~39~~40

**ARTICLE VI CODE SECTION 415 LIMITATIONS**..............................~~40~~**42**

6.1.   ANNUAL BENEFIT .......................................................... 4042
6.2.   MAXIMUM ANNUAL BENEFIT ........................................ 4142
6.3.   ADJUSTMENTS TO ANNUAL BENEFIT AND LIMITATIONS .... 4243
6.4.   ANNUAL BENEFIT NOT IN EXCESS OF $10,000 ............. 4344
6.5.   PARI1CIPATIONPARTICIPATION OR SERVICE REDUCTIONS .... 4345
6.6.   ELIMINATION OF MULTIPLE PLAN REDUCTION ............. 4445

**ARTICLE VII TRUSTEE** ........................................................ 4445

7.1.   BASIC RESPONSIBILITIES OF THE TRUSTEE ................. 4445
7.2.   INVESTMENT POWERS AND DUTIES OF THE TRUSTEE .... 4546
7.3.   OTHER POWERS OF THE TRUSTEE .............................. 4546
7.4.   DUTIES OF THE TRUSTEE REGARDING PAYMENTS ........ 4749
7.5.   TRUSTEE'S COMPENSATION AND EXPENSES AND TAXES .... 4749
7.6.   ANNUAL REPORT OF THE TRUSTEE ............................ 4849
7.7.   AUDIT ...................................................................... 4850
7.8.   RESIGNATION, REMOVAL AND SUCCESSION OF TRUSTEE .... 4950
7.9.   TRANSFER OF INTEREST ............................................ 5051
7.10.  TRUSTEE INDEMNIFICATION ...................................... 5051
7.11.  DIRECT ROLLOVER ................................................... 5051

**ARTICLE VIII PLAN AMENDMENT** ...................................... 5152

8.1.   AMENDMENT ............................................................ 5152

**ARTICLE IX PLAN TERMINATION** ...................................... 52

9.1.   TERMINATION ........................................................... 52
9.2.   LIMITATION OF BENEFITS ON PLAN TERMINATION ...... 5253

**ARTICLE X MERGER, CONSOLIDATION OR TRANSFER OF ASSETS** .... 53

10.1.  REQUIREMENTS ........................................................ 53

**ARTICLE XI TOP HEAVY** .................................................. 53

11.1.  TOP HEAVY PLAN REQUIREMENTS ............................. 53

11.2.  DETERMINATION OF TOP HEAVY STATUS..................................................53

**ARTICLE XII MISCELLANEOUS**.................................................................................**56**

12.1.  PARTICIPANT'S RIGHTS.....................................................................................56
12.2.  ALIENATION........................................................................................................5657
12.3.  CONSTRUCTION OF PLAN..................................................................................5758
12.4.  GENDER AND NUMBER........................................................................................5758
12.5.  LEGAL ACTION.....................................................................................................58
12.6.  PROHIBITION AGAINST DIVERSION OF FUNDS.............................................58
12.7.  EMPLOYER'S AND TRUSTEE'S PROTECTIVE CLAUSE...................................58
12.8.  INSURER'S PROTECTIVE CLAUSE....................................................................58
12.9.  RECEIPT AND RELEASE FOR PAYMENTS.......................................................59
12.10.  ACTION BY THE EMPLOYER.............................................................................59
12.11.  NAMED FIDUCIARIES AND ALLOCATION OF RESPONSIBILITY...................59
12.12.  HEADINGS...........................................................................................................5960
12.13.  APPROVAL BY INTERNAL REVENUE SERVICE..............................................60
12.14.  UNIFORMITY......................................................................................................60

**ARTICLE XIII PARTICTATING EMPLOYERS**...............................................................**60**

13.1.  ADOPTION BY OTHER EMPLOYERS.................................................................60
13.2.  REQUIREMENTS OF PARTICIPATING EMPLOYERS......................................60
13.3.  DESIGNATION OF AGENT................................................................................61
13.4.  EMPLOYEE TRANSFERS..................................................................................61
13.5.  AMENDMENT.....................................................................................................6162
13.6.  DISCONTINUANCE OF PARTICIPATION........................................................62
13.7.  ADMINISTRATOR'S AUTHORITY.....................................................................62

## DIOCESE OF WILMINGTON LAY EMPLOYEES PENSION PLAN

THIS AGREEMENT, hereby made and entered into this ___ day of ____ ___ _____ by and between Catholic Diocese of Wilmington, Inc. (herein referred to as the "Employer") and ~~the Lay Pension Plan Advisory Committee~~Bank of New York Mellon (herein referred to as the "Trustee").

### WITNESSETH

WHEREAS, the Employer heretofore established a Pension Plan and Trust effective October 1, 1966, (hereinafter called the "Effective Date") known as Diocese of Wilmington Lay Employees Pension Plan (herein referred to as the "Plan") in recognition of the contribution made to its successful operation by ~~its~~lay employees and for the exclusive benefit of ~~its~~ eligible lay employees; and

WHEREAS, Catholic Charities, Inc., an Affiliated Employer, established a similar retirement plan for ~~its~~lay employees effective July 1, 1980, known as the Catholic Charities, Inc. Pension Plan, ~~and the Employer now wishes to merge these two retirement plans~~which was merged with the Plan effective January 1, 2006 ~~to be known as Diocese of Wilmington Lay Employees Pension Plan~~; and

WHEREAS, ~~under the terms of the Plan, the Employer has the ability to amend the Plan, provided the Trustee joins in such amendment if the provisions of the Plan affecting the Trustee are amended;~~on October 18, 2009, Employer filed a petition with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); and

WHEREAS, on May 23, 2011, Employer filed the *Second Amended Plan of Reorganization of Catholic Diocese of Wilmington, Inc.* (as may be amended, the "Chapter 11 Plan"), which by its terms contemplates confirmation either as a "Settlement Plan" or a "CDOW – Only Plan"); and

WHEREAS, the Bankruptcy Court has scheduled a hearing to consider confirmation of the Chapter 11 Plan as a "Settlement Plan" on July 8, 2011; and

WHEREAS, confirmation of the Chapter 11 Plan would result in the discharge of Employer's liability under the Plan, pursuant to §1141(d) of the Bankruptcy Code; and

WHEREAS, in the event the Chapter 11 Plan is confirmed as a "Settlement Plan", Employer wishes to reaffirm its obligations to Beneficiaries under the Plan to the extent set forth in this agreement;

NOW, THEREFORE, effective ~~January 1, 2006, except as otherwise provided, the Employer and the Trustee in accordance with the provisions of the Plan pertaining to amendments thereof, hereby amend the Plan in~~ its entirety and restate the Plan _____.

1

2011, and subject to confirmation and consummation of the Chapter 11 Plan as a "Settlement Plan", the Plan is hereby amended and restated in its entirety to provide as follows:

# ARTICLE I
# DEFINITIONS

1.1.    "Accrued Benefit" means with respect to Group A Participants the retirement benefit a Participant would receive at his Normal Retirement Date based on the retirement benefit formula set forth in Section 5.1 of the Plan, multiplied by a fraction, not greater than one (1), the numerator of which is the Participant's total number of Years of Service and the denominator of which is the aggregate number of Years of Service the Participant would have accumulated if he continued his employment until his Normal Retirement Age.  With respect to Group B Participants "Accrued Benefit" means the retirement benefit a Participant would receive at Normal Retirement Date based on the retirement benefit formula set forth in Section 5.1 of the Plan, multiplied by a fraction, not greater than one (1), the numerator of which is the Participant's total number of Plan Years of Service (calculated on a fractional basis computed to the nearest month) commencing with the Effective Date of the Plan and the denominator of which is the aggregate number of Plan Years of Service (calculated on a fractional basis computed to the nearest month) the Participant would have accumulated commencing with the Effective Date of the Plan if the Participant continued employment until Normal Retirement Age.

When determining a Participant's Accrued Benefit, the retirement benefit projected to be provided pursuant to the retirement benefit formula in Section 5.1 is the monthly benefit to which the Participant would be entitled if the Participant continued to earn until Normal Retirement Age the same rate of Average Monthly Compensation upon which the Participant's retirement benefit formula is based.  This rate of Average Monthly Compensation is computed on the basis of Average Monthly Compensation taken into account under the Plan (but not to exceed the ten years of service immediately preceding the determination).

The Accrued Benefit of each Participant in the Fresh-Start Group, shall be equal to the greater of (a) or (b):

(a)    the Participant's Accrued Benefit determined with respect to the Normal Retirement Benefit formula provided in Section 5.1(a).

(b)    the sum of (1) the Participant's Frozen Accrued Benefit, if any, and (2) the Participant's Accrued Benefit determined with respect to years beginning after the Fresh-Start Date.

Notwithstanding anything herein to the contrary, a Participant's Accrued Benefit attributable to the retirement benefit formula at the close of any Plan Year coinciding with or next following the Participant's attainment of Normal Retirement Age shall be equal to the monthly retirement benefit formula determined pursuant to Section 5.1(d) based upon service and Average Monthly Compensation determined at the close of my such Plan Year.

2

068902.1001

Notwithstanding the above, a Participant's Accrued Benefit derived from Employer contributions shall not be less than the minimum Accrued Benefit, if any, provided pursuant to Section 5.2.

Notwithstanding anything to the contrary, if this is a Plan that would otherwise fail to meet the requirements of Code ~~Sections~~Section 401(a)(26) ~~or 410(b)(1)~~ and the Regulations thereunder because a sufficient number or percentage of Participants for a Plan Year have not accrued a benefit, then the following rules shall apply:

(a)    The group of Participants eligible to accrue a benefit for the ~~Pim~~Plan Year shall be expanded to include the minimum number of Participants who would not otherwise be eligible as are necessary to satisfy the applicable test specified above. The specific Participants who shall become eligible under the terms of this paragraph shall be those who are actively employed on the last day of the Plan Year and who have completed the greatest number of Hours of Service in the Plan Year.

(b)    If after application of paragraph (a) above, the applicable test is still not satisfied, then the group of Participants eligible to accrue a benefit for the Plan Year shall be further expanded to include the minimum number of Participants who are not actively employed on the last day of the Plan Year as are necessary to satisfy the applicable test. The specific Participants who shall become eligible to accrue a benefit shall be those Participants who have completed the greatest number of Hours of Service in the Plan Year before terminating employment.

(c)    In the event a Participant who is not a member of the group of Participants eligible to accrue a benefit becomes a member of such group, such Participant shall receive an accrual for such year which bears the same ratio to a full accrual as the number of Hours of Service the Participant actually completes bears to ~~1300~~1,300. Such Participant's benefit for such partial year shall be based upon the Compensation the Participant would have earned if the Participant had completed ~~1300~~1,300 Hours of Service.

(d)    Nothing in this Section shall permit the reduction of a Participant's Accrued Benefit. Therefore any amounts that have previously been accrued by Participants may not be reduced. Any adjustment to Accrued Benefits pursuant to this paragraph shall be considered a retroactive amendment adopted by the last day of the Plan Year.

~~1.2.    "Act" means the Employee Retirement Income Security Act of 1974, as it may be amended from time to time.~~

1.2.    ~~1.3.~~ "Actuarial Equivalent" means with respect to Group A Participants, effective with the first day of the first Plan Year beginning after December 31, 1994, a form of benefit differing in time, period, or manner of payment from a specific benefit provided under the Plan but having the same value when computed using the Pre-Retirement Table: 1984 Uniform Premium Table; Post-Retirement Table: 1984 Uniform Premium Table and Pre-Retirement Interest: 6.5%; Post-Retirement Interest: 6.5%. With respect to Group B Participants, "Actuarial Equivalent" means, effective with the fast day of the first Plan Year beginning after December 31, 1994, a form of benefit differing in time, period, or manner of payment from a specific

3

benefit provided under the Plan but having the same value when computed using Pre-Retirement Table: 1983 Group Annuity Table (Blended); Post-Retirement Table: 1983 Group Annuity Table (Blended) and Pre-Retirement Interest 7%; Post-Retirement Interest: 7%.

1.4. "Administrator"

means the ~~Employer unless another person or entity has been designated by the Employer pursuant to Section 2.2 to administer the Plan on behalf of the Employer.~~Lay Pension Plan Administrative Committee.

1.4.    ~~1.5.~~ "Affiliated Employer" means any corporation which is a member of a controlled group of corporations (as defined in Code Section 414(b)) which includes the Employer; any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with the Employer; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Code Section 414(m)) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to Regulations under Code Section 414(o).

1.5.    ~~1.6.~~ "Aggregate Account" means, with respect to each Participant, the value of all accounts maintained on behalf of a Participant, whether attributable to Employer or Employee contributions, used to determine Top Heavy Plan status under the provisions of a defined contribution plan included in any Aggregation Group (as defined in Section 11.2).

1.6.    ~~1.7.~~ "Anniversary Date" means January 1.

1.7.    ~~1.8.~~ "Annuity Starting Date" means, with respect to any Participant, the first day of the first period for which an amount is paid as an annuity, or, in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitles the Participant to such benefit.

1.8.    ~~1.9.~~ "Average Monthly Compensation" means the monthly Compensation of a Participant averaged over the five consecutive Plan Years which produce the highest monthly average within the last ten (10) completed years of participation.  If a Participant has less than five consecutive Plan Years of service from date of participation to date of termination, the Participant's Average Monthly Compensation will be based on the Participant's monthly Compensation ~~dining~~during the Participant's months of service from date of participation to date of termination.  Compensation subsequent to termination of participation pursuant to Section 3.4 shall not be recognized.

1.9.    "Baseline Funding Amount" means (i) for the Fiscal Year 2016, $2,200,000, and (ii) for each successive Fiscal Year until 2060, 102.5% of the Baseline Funding Amount for the preceding Fiscal Year.

1.10.    "Beneficiary" means the person (or entity) designated as provided in Section 5.5 to receive the benefits which are payable under the Plan upon or after the death of a Participant.

4

1.11.   "Code" means the ~~internal~~Internal Revenue Code of 1986, as amended or replaced from time to time.

1.12.   "Compensation" with respect to any Participant means such Participant's wages as defined~~.~~ in Code Section 3401(a) and all other payments of compensation by the Employer (in the course of the Employer's trade or business) for a Plan Year for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(~~0~~a)(3) and 6052. Compensation must be determined without regard to any rules under Code Section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment ~~er~~ the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)). Notwithstanding the foregoing, if compensation for any prior determination period is taken into account in determining a Participant's benefits for the current Plan Year, Compensation. means compensation determined pursuant to the terms of the Plan then in effect.

For purposes of this Section, the determination of Compensation shall be made by:

(a)      including amounts which are contributed by the Employer pursuant to a salary redaction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 132(f)(4) for Plan Years beginning after December 31, 2000, 402(e)(3), 402(h)(1)(13), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions.

Compensation in excess of $150,000 (or such other amount provided in. the Code) shall be disregarded. Such amount shall be adjusted for increases in the cost of living in accordance with Code Section 401(a)(17)(B), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Years beginning with or within such calendar year. If Compensation for any prior determination period is taken into account in determining a Participant's benefits for the current Plan Year, the compensation for such prior determination period is subject to the applicable annual compensation limit in effect for that prior period. For this purpose, in determining benefits in Plan Years beginning on or after January 1, 1989, the annual compensation limit in effect for determination periods beginning before that date is $200,000 (or such other amount as adjusted for increases in the cost of living in accordance with Code Section 415(d) for determination periods beginning on or after January 1, 1989 and in accordance with Code Section 401(a)(17)(B) for determination periods beginning on or after January 1, 1994). For determination periods beginning prior to January 1, 1989, the $200,000 limit shall apply only to Top Heavy Plan Years and shall not be adjusted. For any short Plan Year the Compensation limit shall be an amount equal to the Compensation limit for the calendar year in which the Plan Year begins multiplied by the ratio obtained by dividing the number of full months in the short Plan Year by twelve (12).

For Plan Years beginning after December 31, 1996, for purposes of determining Compensation, the family member aggregation rules of Code Section 401(a)(17) and Code Section 414(q)(6) (as in effect prior to the Small Business Job Protection Act of 1996) are eliminated. In determining Average Monthly Compensation, the elimination of the family member aggregation rules are treated as having been in effect for earlier years.

5

1.13.    "Contract" or "Policy" means any life insurance policy, retirement income policy or annuity contract (group or individual) issued pursuant to the terms of the Plan.  In the event of any conflict between the terms of this Plan and the terms of any contract purchased hereunder, the Plan provisions shall control.

1.14.    "Earliest Retirement Age" means the earliest date on which, under the Plan, the Participant could elect to receive retirement benefits.

1.15.    "Early Retirement Date" for:

(a)    Group A means the first day of the month (prior to the Normal Retirement Date) coinciding with or following on which a Participant or Former Participant attains age 55, and has completed at least 10 Years of Service with the Employer (Early Retirement Age).

(b)    Group B means the first day of the month (prior to the Normal Retirement Date) coinciding with or following the date on which a fully vested Participant or Former Participant attains age 55.

A fully vested Former Participant who separates from service and who thereafter reaches the age requirement contained herein shall be entitled to receive benefits under this Plan.

1.16.    "Eligible Employee" means any Employee who has satisfied the provisions of Section 3.1.

Employees who are Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall not be eligible to participate in this Plan.

Employees whose employment is governed by the terms of a collective bargaining agreement between Employee representatives (within the meaning of Code Section 7701(a)(46)) and the Employer under which retirement benefits were the subject of good faith bargaining between the parties will not be eligible to participate in this Plan unless such agreement expressly provides for coverage in this Plan.

Employees who are nonresident aliens (within the meaning of Code Section 7701(b)(1)(B)) and who receive no earned income (within the meaning of Code Section 911(d)(2)) from the Employer which constitutes income from sources within the United States (within the meaning of Code Section 861(a)(3)) shall not be eligible to participate in this Plan.

Employees of Affiliated Employers shall not be eligible to participate in this Plan unless such Affiliated Employers have specifically adopted this Plan in writing.

Employees classified by the Employer as independent contractors who are subsequently determined by the Internal Revenue Service to be Employees shall not be Eligible Employees.

1.17.    "Employee" means any person who is employed by the Employer or Affiliated Employer, and excludes any person who is employedprovides services to the Employer

6

as an independent contractor.  Employee shall include Leased Employees within the meaning of Code Sections 414(~~11~~n)(2) and 414(o)(2) unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and such Leased Employees do not constitute more than 20% of the recipient's non-highly compensated work force.

1.18.   "Employer" means Catholic Diocese of Wilmington, Inc. and any successor which shall maintain this Plan; and any predecessor which has maintained this Plan. The Employer is a non-stock, non-profit corporation, with principal offices in the State of Delaware.  In addition, where appropriate, the term Employer shall include any Participating Employer (as defined in Section 13.1) which shall adopt this Plan.

1.19.   "Fiduciary" means any person who (a) exercises any discretionary authority or discretionary control respecting management of the Plan or exercises any authority or control respecting management or disposition of its assets, (b) renders investment advice far a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan or has any authority or responsibility to do so, or (c) has any discretionary authority or discretionary responsibility in the administration of the Plan.

1.20.   "Fiscal Year" means the Employer's accounting year of 12 months commencing on July 1 of each year and ending the following June 30.  For example, Fiscal Year 2012 would mean July 1, 2011 to June 30, 2012.

1.21.   "Former Participant" means a person who has been a Participant, but who has ceased to be a Participant for any reason.

1.22.   "415 Compensation" with respect to any Participant means such Participant's wages as defined in Code Section 3401(a) and all other payments of compensation by the Employer (in the course of the Employer's trade or business) for a Plan Year for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3) and 6052. "415 Compensation" must be determined without regard to any rules under Code Section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)).

For "Limitation years" beginning after December 31, 1997, for purposes of this Section, the determination of "415 Compensation" shall include any elective deferral (as defined in Code Section 402(g)(3)), and any amount which is contributed or deferred by the Employer at the election of the Participant and which is not includible in the gross income of the Participant by reason of Code Sections 125, 132(f)(4) for "limitation years" beginning after December 31, 2000 or 457.

1.23.   "Fresh-Start Date" generally means the last day of the Plan Year preceding a Plan Year for which any amendment of the Plan that directly or indirectly affects the amount of a Participant's benefit determined under the current benefit formula (such as an amendment to the definition of Compensation used in the current benefit formula or a change in the Normal Retirement Age of the Plan) is made effective.  If this Plan has had a fresh-start for all Participants, and in a subsequent Plan Year is aggregated for purposes of Code Section 401(a)(4)

7

068902.1001

with another plan that did not make the same fresh-start, then this Plan will have a fresh-start on the last day of the Plan Year preceding the Plan Year during which the plans are first aggregated.

1.24. "Fresh-Start Group" means all Participants who have Accrued Benefits as of the Fresh-Start Date and have at least one Hour of Service with the Employer after that date.

1.25. "Frozen Accrued Benefit" means a Participant's Accrued Benefit under the Plan determined as of the latest Fresh-Start Date as if the Participant terminated employment with the Employer as of the latest Fresh-Start Date, or the date the Participant actually terminated employment with the Employer, if earlier, without regard to any amendment made to the Plan after that date other than amendments recognized as effective as of or before the date under Code Section 401(b) or Regulation Section 1.401(a)(4)-11(g). If the Participant has not had a Fresh-Start Date, the Participant's Frozen Accrued Benefit will be zero.

If, as of the Participant's latest Fresh-Start date, the amount of a Participant's Frozen Accrued Benefit was limited by the application of Code Section 415, then the Participant's Frozen Accrued Benefit will be increased for years after the latest Fresh-Start Date to the extent permitted under Code Section 415(d)(1). In addition, the Frozen Accrued Benefit of a Participant whose Frozen Accrued Benefit includes the top-heavy minimum benefits provided in Section 5.2, will be increased to the extent necessary to comply with the average compensation requirement of Code Section 416(c)(1)(D)(i).

If: (a) the Plan's normal form of benefit in effect on the Participant's latest Fresh-Start Date is not the same as the normal form under the Plan after such Fresh-Start Date and/or (b) the Normal Retirement Age for any Participant on that date was greater than the Normal Retirement Age for that Participant under the Plan, after such Fresh-Start Date, the Frozen Accrued Benefit will be expressed as an actuarially equivalent benefit in the normal form under the Plan after the Participant's latest Fresh-Start Date, commencing at the Participant's Normal Retirement Age under the Plan in effect after such latest Fresh-Start Date.

With respect to any Participant in the Fresh-Start Group, the Participant's Frozen Accrued Benefit (as adjusted above, if applicable) will be multiplied by a fraction, not less than one, the numerator of which is the Participants Average Monthly Compensation for the current Plan Year, and the denominator is the Participant's Average Monthly Compensation as of the Fresh-Start Date, determined in the same manner as the numerator.

1.26. "Highly Compensated Employee" means, for Plan Years beginning after December 31, 1996, an. Employee described in Code Section 414(q) and the Regulations thereunder, and generally means any Employee who:

(a)    was a "five percent owner" as defined in Section 1.30(c) at any time during the "determination year" or "look-back year"; or

(b)    for the "look-back year" had "415 Compensation" from the Employer in excess of $80,000 and was in the Top-Paid Group for the "look-back year", The $80,000 amount is adjusted at the same time and in the same manner as under Code Section 415(d), except that the base period is the calendar quarter ending September 30, 1996.

8

The "determination year" means the Plan Year for which testing is being performed, and the "look-back year" means the immediately preceding twelve (12) month period. However, for purposes of (b) above, the "look-back year" shall be the calendar year beginning within the twelve-month period immediately preceding the "determination year."

Notwithstanding the above, for the first Plan Year beginning after December 31, 1996, the "look-back year" shall be the calendar year ending with or within the Plan Year for which testing is being performed, and the "determination year" (if applicable) shall be the period of time, if any, which extends beyond the "look-back year" and ends on. the last day of the Plan Year for which testing is being performed (the "lag period"),

A highly compensated former Employee is based on the rules applicable to determining Highly Compensated Employee status as in effect for the "determination year," in accordance with Regulation Section 1.414(q)-1T, A-4 and IRS Notice 97-45 (or any superseding guidance).

In determining whether an Employee is a Highly Compensated Employee for a Plan Year beginning in 1997, the amendments to Code Section 414(q) stated above are treated as having been in effect for years beginning in 1996.

For purposes of this Section, for Plan Years beginning prior to January 1, 1998, the determination of "415 Compensation" shall be made by including amounts that would otherwise be excluded from a Participant's gross income by reason of the application of Code Sections 125, 402(e)(3), 402(h)(1)(B), and, in the case of Employer contributions made pursuant to a salary reduction agreement, Code Section 403(b).

In determining who is a Highly Compensated Employee, Employees who are non-resident aliens and who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Additionally, all Affiliated Employers shall be taken into account as a single Employer and Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and are not covered in any qualified plan maintained by the Employer. The exclusion of Leased Employees for this purpose shall be applied on a uniform and consistent basis for all of the Employer's retirement plans Highly Compensated Former Employees shall be treated as Highly Compensated Employees without regard to whether they performed services during the "determination year."

1.27.    "Highly Compensated Participant" means any Highly Compensated Employee who is eligible to participate in the component of the Plan being tested.

1.28.    "Hour of Service" means, for purposes of eligibility for participation, vesting and benefit accrual, (1) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer for the performance of duties (these hours will be credited to the Employee for the computation period in which the duties are performed); (2) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer (irrespective of whether the employment relationship has

9

terminated) for reasons other than performance of duties (such as vacation, holidays, sickness, jury duty, disability, lay-off, military duty or leave of absence) during the applicable computation period (these hours will be calculated and credited pursuant to Department of Labor regulation 2530.200b-2 which is incorporated here-in by reference); (3) each hour for which back pay is awarded or agreed to by the Employer without regard to mitigation of damages (these hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made). The same Hours of Service shall not be credited both under (1) or (2), as the case may be, and under (3).

Notwithstanding (2) above, (i) no more than 501 Hours of Service are required to be credited to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period); (ii) an hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, or unemployment compensation or disability insurance laws; and (iii) Hours of Service are not required to be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

For purposes of (2) above, a payment shall be deemed to be made by or due from the Employer regardless of whether such payment is made by or due from the Employer directly, or indirectly through, among others, a trust fund, or insurer, to which the Employer contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurer, or other entity are for the benefit of particular Employees or are on behalf of a group of Employees in the aggregate.

For purposes of this Section, Hours of Service will be credited for employment with other Affiliated Employers. The provisions of Department of Labor regulations 2530.200b-2(b) and (c) are incorporated herein by reference.

1.29.  "Investment Manager" means an entity that (a) has the power to manage, acquire, or dispose of Plan assets and (b) acknowledges fiduciary responsibility to the Plan in, writing. Such entity must be a person, firm, or corporation registered as an investment adviser under the Investment Advisers Act of 1940, a bank, or an insurance company.

1.30.  "Key Employee" means an Employee as defined in Code Section 416(i) and the Regulations thereunder. Generally, any Employee or former Employee (as well as each of the Employee's or former Employee's Beneficiaries) is considered a Key Employee if the Employee, at any time during the Plan Year that contains the "Determination Date" or any of the preceding four (4) Plan Years, has been included in one of the following categories:

(a)    an officer of the Employer (as that term is defined within the meaning of the Regulations under Code Section 416) having annual "415 Compensation" greater than 50 percent of the amount in effect under Code Section 415(b)(1)(A) for any such Plan Year.

068902.1001

(b)     one of the ten employees having annual "415 Compensation" from the Employer for a Plan Year greater than the dollar limitation in effect under Code Section 415(c)(1)(A) for the calendar year in which such Plan Year ends and owning (or considered as owning within the meaning of Code Section 318) both more than one-half percent interest and the largest interests in the Employer.

(c)     a "five percent owner" of the Employer. "Five percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than five percent (5%) of the outstanding stock of the Employer or stock possessing more than five percent (5%) of the total combined voting power of all stock of the Employer or, in the case of an unincorporated business, any person who owns more than five percent (5%) of the capital or profits interest in the Employer. In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c), (m) and (o) shall be treated as separate employers.

(d)     a "one percent owner" of the Employer having an annual "415 Compensation" from the Employer of more than $150,000. "One percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than one percent (1%) of the outstanding stock of the Employer or stock possessing more than one percent (1%) of the total combined voting power of all stock of the Employer or, in the case of an unincorporated business, any person who owns more than one percent (1%) of the capital or profits interest in the Employer. In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c), (m) and (o) shall be treated as separate employers. However, in determining whether an individual has "415 Compensation" of more than $150,000, "415 Compensation" from each employer required to be aggregated under Code Sections 414(b), (c), (m) and (o) shall be taken into account.

For purposes of this Section, the determination of "415 Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 132(f)(4) for Plan Years beginning after December 31, 2000, 402(e)(3), 402(h)(1)(3), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions.

1.31.    "Late Retirement Date" means the first day of the month coinciding with or next following a Participant's actual Retirement Date after having reached Normal Retirement Date.

1.32.    "Leased Employee" means, for Plan Years beginning after December 31, 1996, any person (other than an Employee of the recipient Employer) who pursuant to an agreement between the recipient Employer and any other person or entity ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Code Section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient Employer. Contributions or benefits provided a Leased Employee by the leasing organization whichthat are attributable to services performed for the recipient Employer shall be

11

treated as provided by the recipient Employer.  Furthermore, Compensation for a Leased Employee shall only include Compensation from the leasing organization that is attributable to services performed for the recipient Employer.  A Leased Employee shall not be considered an Employee of the recipient Employer:

(a)    if such employee is covered by a money purchase pension plan providing:

(1)    a nonintegrated employer contribution rate of at least 10% of compensation, as defined in Code Section 415(c)(3), but, for Plan Years beginning prior to January 1, 1998, including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which axe not includible in. the gross income of the Participant under Code Sections 125, 402(e)(3), 402(h)(1)(B), 403(b) or 457(h), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions, and, for Plan Years beginning prior to January 1, 2001, excluding amounts that axe not includible in gross income under Code Section 132(f)(4);

(2)    immediate participation;

(3)    full and immediate vesting; and

(b)    if Leased Employees do not constitute more than 20% of the recipient Employer's nonhighly compensated work force.

1.33.    "Minimum Funding Amount" means:

(a)    for the Fiscal Year 2013, $2,000,000;

(b)    for the Fiscal Year 2014, $2,100,000;

(c)    for the Fiscal Year 2015, $2,200,000;

(d)    for the Fiscal Year 2016 and each successive Fiscal Year until 2060, the lesser of (i) the Baseline Funding Amount and (ii) the amount recommended by the Administrator based on an amortization schedule that assumes full funding of the Plan on an actuarial basis as of June 30, 2060, which schedule shall be subject to annual adjustment based on actual experience.

1.34.    1.33. "Non-Highly Compensated Participant" means, for Plan Years beginning after December 31, 1996, any Participant who is not a Highly Compensated Employee.

1.35.    1.34. "Non-Key Employee" means any Employee or former Employee (and such Employee's or former Employee's Beneficiaries) who is not, and has never been a Key Employee.

12

068902.1001

1.36.   1.35. "Normal Retirement Age" means the Participant's 65th birthday, or his 5th anniversary of joining the Plan, if later.  A Participant shall become fully Vested in the Participant's Normal Retirement Benefit upon attaining Normal Retirement Age.

1.37.   1.36. "Normal Retirement Date" means the first day of the month coinciding with or next following the Participant's Normal Retirement Age.

1.38.   1.37. "1-Year Break in Service" means the applicable computation period during which an Employee has not completed more than 500 Hours of Service with the Employer.  Further, solely for the purpose of determining whether a Participant has incurred a 1-Year Break in Service, Hours of Service shall be recognized for "authorized leaves of absence" and "maternity and paternity leaves of absence."  Years of Service and 1-Year Breaks in Service shall be measured on the same computation period.

"Authorized leave of absence" means an unpaid, temporary cessation from active employment with the Employer pursuant to an established nondiscriminatory policy, whether occasioned by illness, military service, or any other reason.

A "maternity or paternity leave of absence" means, for Plan Years beginning after December 31, 1984, an absence from work for any period by reason of the Employee's pregnancy, birth of the Employee's child, placement of a child with the Employee in connection with the adoption of such child, or any absence for the purpose of caring for such child for a period immediately following such birth or placement.  For this purpose, Hours of Service shall be credited for the computation period in which the absence from work begins, only if credit therefore is necessary to prevent the Employee from incurring a 1-Year Break in Service, or, in any other case, in the immediately following computation period.  The Hours of Service credited for a "maternity or paternity leave of absence" shall be those which would normally have been credited but for such absence, or, in any case in which the Administrator is unable to determine such hours normally credited, eight (8) Hours of Service per day.  The total Hours of Service required to be credited for a "maternity or paternity leave of absence" shall not exceed the number of Hours of Service needed to prevent the Employee from incurring a 1-Year Break in Service.

1.39.   1.38. "Participant" means any Eligible Employee who participates in the Plan and has not for any mason become ineligible to participate further in the Plan.  Participants will be categorized into the following groups:

(a)     Group A Participants includes (1) all lay teachers of Diocesan or Parish Schools, including all full-time related personnel (secretaries, aides and directors, coordinators and administrators of religious education and their fulltime secretaries), (2) any lay person employed by the Employer and (3) Diocesan Employees except (a) Employees of Catholic Charities, Inc. hired prior to January 1, 2002, (b) substitute teachers and school nurses, and (ec) Employees included in any other pension plan and trust of the Employer.  Effective August 28, 2006, school nurses who have satisfied the plan's eligibility requirements are eligible to participate in this plan.

068902.1001

(b)    Group B Participants includes Eligible Employees of Catholic Charities, Inc. hired prior to January 1, 2002.

1.40.    1.39. "Plan" means this instrument, including all amendments thereto.

1.41.    1.40. "Plan Year" means the Plan's accounting year of twelve (12) months commencing on January 1 of each year and ending the following December 31.

1.42.    1.41. "Plan Year of Service" means a Plan Year during which an Employee is a Participant and completes 1,000 Hours of Service.  For Plan Years commencing after December 31, 2006, "Plan Year of Service" means a Plan Year during which an Employee is a Participant and completes 1,300 Hours of Service.  However, in determining whether a Participant has completed a Plan Year of Service in a short Plan Year, the number of the Hours of Service required shall be proportionately reduced based on the number of full months in the short Plan Year.  For purposes of determining a Participant's benefit service under the Plan, plan years of service will be calculated on a fractional basis computed to the nearest month for Group B Participants only.

1.43.    1.42. "Pre-Retirement Survivor Annuity" means an immediate annuity for the life of the surviving spouse of a Participant who dies prior to the Participant's Annuity Starting Date.

1.44.    1.43. "Present Value of Accrued Benefit" means the Actuarial Equivalent lump-sum amount of a Participant's Accrued Benefit at date of valuation.  Notwithstanding the foregoing, the Present Value of Accrued Benefit for the determination of Top Heavy Plan status shall be made exclusively pursuant to the provisions of Section 11.2.

1.45.    1.44. "Regulation" means the Income Tax Regulations as promulgated by the Secretary of the Treasury or a delegate of the Secretary of the Treasury, and as amended from time to time.

1.46.    1.45. "Retired Participant" means a person who has been a Participant, but who has become entitled to retirement benefits under the Plan.

1.47.    1.46. "Retirement Date" means the date as of which a Participant retires for reasons other than Total and Permanent Disability, whether such retirement occurs on a Participant's Normal Retirement Date, Early or Late Retirement Date (see Section 5.1).

1.48.    1.47. "Social Security Retirement Age" means the age used as the retirement age under Section 216(1) of the Social Security Act, except that such section shall be applied without regard to the age increase factor and as if the early retirement age under Section 216(1)(2) of such Act were 62.

1.49.    1.48. "Terminated Participant" means a person who has been a Participant, but whose employment has been terminated other than by death, Total and Permanent Disability or retirement.

14

1.50.    1.49. "Top Heavy Plan" means a plan described in Section 11.2(a).

1.51.    1.50. "Top Heavy Plan Year" means a Plan Year during which the Plan is a Top Heavy Plan.

1.52.    1.51. "Top-Paid Group" means the top 20 percent of Employees who performed services for the Employer during the applicable year, ranked according to the amount of "415 Compensation" received from the Employer during such year. All Affiliated Employers shall be taken into account as a single employer, and Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and are not covered in any qualified plan maintained by the Employer. Employees who are non-resident aliens who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Furthermore, for the purpose of determining the number of active Employees in any year, the following additional Employees shall also be excluded, however, such Employees shall still be considered for the purpose of identifying the particular Employees in the Top-Paid Group:

(a)    Employees with less than six (6) months of service;

(b)    Employees who normally work less than 17 1/2 hours per week;

(c)    Employees who normally work less than six (6) months during a year; and

(d)    Employees who have not yet attained age twenty-one (21).

In addition, if 90 percent or more of the Employees of the Employer are covered under agreements the Secretary of Labor finds to be collective bargaining agreements between Employee representatives and the Employer, and the Plan covers only Employees who are not covered under such agreements, then Employees covered by such agreements shall be excluded from both the total number of active Employees as well as from the identification of particular Employees in the Top-Paid Group.

The foregoing exclusions set forth in this Section shall be applied on a uniform and consistent basis for all purposes for which the Code Section 414(q) definition is applicable.

1.53.    1.52. "Total and Permanent Disability" means a physical. or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which renders such Participant incapable of continuing usual and customary employment with the Employer. The disability of a Participant shall be determined by a licensed physician chosen by the Administrator. The determination shall be applied uniformly to all Participants.

1.54.    1.53. "Trustee" means the Bank of New York Mellon, or any successor person or entity named as trustee herein or in any separate trust forming a part of this Plan, and any successors.

15

1.55.  1.54. "Trust Fund" means the assets of the Plan and Trust as the same shall exist from time to time.

1.56.  1.55. "Vested" means the portion of a Participant's benefits under the Plan that are nonforfeitable. is nonforfeitable.  Commencing with the Effective Date of this Amendment and Restatement, the Employer shall have an obligation to pay all Vested Accrued Benefits, even if such Vested Accrued Benefits are unfunded.

1.57.  1.56. "Year of Service" means the computation period of twelve (12) consecutive months, herein set forth, during which an Employee has at least 1,000 Hours of Service.  For plan years commencing after December 31, 2006, "Year of Service" means the computation period of twelve (12) consecutive months, herein set forth, during which an Employee has at least 1,300 Hours of Service.  Periods of service corn ed prior to August 28, 2006, by school nurses will not be considered for purposes of determining any such Participant's Accrued Benefit; however; service completed prior to August 28, 2006, by school nurses will be considered for purposes of determining such participant's eligibility and vesting percentage.

For purposes of eligibility for participation, the initial computation period shall begin with the date on which the Employee first performs an Hour of Service.  The participation computation period beginning after a 1-Year Break in Service shall be measured from the date on which an Employee again performs an Hour of Service.  The participation computation period shall shift to the Plan Year which includes the anniversary of the date on which the Employee first performed an Hour of Service.  An Employee who is credited with the required Hours of Service in both the initial computation period (or the computation period beginning after a 1-Year Break in Service) and the Plan Year which includes the anniversary of the date on which the Employee first performed an Hour of Service, shall be credited with two (2) Years of Service for purposes of eligibility to participate.

For vesting purposes, the computation periods shall be the Plan Year, including periods prior to the Effective Date of the Plan.

The computation period shall be the Plan Year if not otherwise set forth herein.

Notwithstanding the foregoing, for any short Plan Year, the determination of whether an Employee has completed a Year of Service shall be made in accordance with Department of Labor regulation 2530.203-2(c).

Years of Service with any Affiliated Employer shall be recognized.

## ARTICLE II
## ADMINISTRATION

2.1.  POWERS AND RESPONSIBILITIES OF THE EMPLOYER

(a)  In addition to the general powers and responsibilities otherwise provided for in this Plan, the Employer shall be empowered to appoint and remove the Trustee and the Administrator from time to time as it deems necessary for the proper administration of

16

the Plan to ensure that the Plan is being operated for the exclusive benefit of the Participants and their Beneficiaries in accordance with the terms of the Plan, and the Code, and the Act. The Employer may appoint counsel, specialists, advisers, agents (including any non-fiduciary agent) and other persons as the Employer deems necessary or desirable in connection with the exercise of its fiduciary duties under this Plan. The Employer may compensate such agents or advisers from the assets of the Plan as fiduciary expenses (but not including any business (settlor) expenses of the Employer), to the extent not paid by the Employer.

(b)     The Employer may, by written agreement or designation, appoint at its option an Investment Manager (qualified wider the Investment Company Act of 1940 as amended), investment adviser, or other agent to provide direction to the Trustee with respect to any or all of the Plan assets. Such appointment shall be given by the Employer in writing in a form acceptable to the Trustee and shall specifically identify the Plan assets with respect to which the Investment Manager or other agent shall have authority to direct the investment

(c)     The Employer shall establish a "funding policy and method," i.e., it shall determine whether the Plan has a short rimrun need for liquidity (e.g., to pay benefits) or whether liquidity is a long rimrun goal and investment growth (and stability of same) is a more current need, or shall appoint a qualified person to do so. The Employer or its delegate shall communicate such needs and goals to the Trustee, who shall coordinate such Plan needs with its investment policy. The communication of such a "funding policy and method" shall not, however, constitute a directive to the Trustee as to the investment of the Trust Funds. Such "funding policy and method" shall be consistent with the objectives of this Plan and with the requirements of Title I of the Act.

(d)     The Employer shall periodically review the performance of any Fiduciary or other person to whom duties have been delegated or allocated by it under the provisions of this Plan or pursuant to procedures established hereunder. This requirement may be satisfied by formal periodic review by the Employer or by a qualified person specifically designated by the Employer, through day-to-day conduct and. evaluation, or through other appropriate ways.

2.2.    DESIGNATION OF ADMINISTRATIVE AUTHORITY

The Employer shall appoint the members of the Lay Pension Plan Administrative Committee (the "Committee") that shall be the Administrator. The Employer may appoint any person, including, but not limited to, the Employees of the Employer, to perform the duties of the Administrator. Any person so of the Plan. The Committee shall consist of seven (7) members, two (2) of whom shall be designees of the Employer, two (2) of whom shall be parishioners of any of the parishes in the Diocese of Wilmington, and three (3) of whom shall be Participants in the Plan. Any person appointed to the Committee shall signify acceptance by filing written acceptance with the Employer. Upon the resignation or removal of any individual performing the duties of the Administrator, the Employer may designate a successor.

## 2.3.    POWERS AND DUTIES OF THE ADMINISTRATOR

The primary responsibility of the Administrator is to administer the Plan for the exclusive benefit of the Participants and their Beneficiaries, subject to the specific terms of the Plan. The Administrator shall administer the Plan in accordance with its terms and shall have the power and discretion to construe the terms of the Plan and to determine all questions arising in connection with the administration, interpretation, and application of the Plan. Any such determination by the Administrator shall be conclusive and binding upon all persons. The Administrator may establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such manner and to such extent as shall be deemed necessary or advisable to carry out the purpose of the Plan; provided, however, that any procedure, discretionary act, interpretation or construction shall be done in a nondiscriminatory manner based upon uniform principles consistently applied and shall be consistent with the intent that the Plan shall continue to be deemed a qualified plan under the terms of Code Section 401(a), and shall comply with the terms of the Act and all regulations issued pursuant thereto. The Administrator shall have all powers necessary or appropriate to accomplish the Administrator's duties under the Plan.

The Administrator shall be charged with the duties of the general administration of the Plan as set forth under the terms of the Plan, including, but not limited to, the following:

(a)    the discretion to determine all questions relating to the eligibility of Employees to participate or remain a Participant hereunder and to receive benefits under the Plan;

(b)    to compute, certify, and direct the Trustee with respect to the amount and the kind of benefits to which any Participant shall be entitled hereunder;

(c)    to authorize and direct the Trustee with respect to all discretionary or otherwise directed disbursements from the Trust;

(d)    to maintain all necessary records for the administration of the Plan;

(e)    to interpret the provisions of the Plan and to make and publish such rules for regulation of the Plan as are consistent with the terms hereof;

(f)    to determine the size and type of any Contract to be purchased from any insurer and to designate the insurer from which such Contract shall be purchased. All Policies shall be issued on a uniform basis as of each Anniversary Date with respect to all Participants under similar circumstances;

(g)    to compute and certify to the Employer and to the Trustee from time to time the sums of money necessary or desirable to be contributed to the Plan;

(h)    to consult with the Employer and the Trustee regarding the short and long-term liquidity needs of the Plan in order that the Trustee can exercise any investment discretion in a manner designed to accomplish specific objectives;

068902.1001

(i)    to prepare and implement a procedure for notifying Participants and Beneficiaries of their rights to elect joint and survivor annuities and Pre-Retirement Survivor Annuities ~~as required by the Act and regulations thereunder~~;

(j)    to determine the validity of, and take appropriate action with respect to, any qualified domestic relations order received by it; and

(k)    to assist any Participant regarding the Participant's rights, benefits, or elections available under the Plan.

### 2.4.    RECORDS AND REPORTS

The Administrator shall keep a record of all actions taken and shall keep all other books of account, records, policies, and other data that may be necessary for proper administration of the Plan and shall be responsible for supplying all information and reports to the Internal Revenue Service, Department of Labor, Participants, Beneficiaries and others as required by law.

### 2.5.    APPOINTMENT OF ADVISERS

The Administrator, or the Trustee with the consent of the Administrator, may appoint counsel specialists, advisers, agents (including non-fiduciary agents) and other persons as the Administrator or the Trustee deems necessary or desirable in connection with the administration of this Plan, including but not limited to agents and advisers to assist with the administration and management of the Plan, and thereby to provide, among such other duties as the Administrator may appoint, assistance with maintaining Plan records and the providing of investment information to the Plan's investment fiduciaries.

### 2.6.    PAYMENT OF EXPENSES

All expenses of administration may be paid out of the Trust Fund unless paid by the Employer. Such expenses shall include any expenses incident to the functioning of the Administrator, or any person or persons retained or appointed by any named Fiduciary incident to the exercise of their duties under the Plan, including, but not limited to, fees of accountants, counsel, Investment Managers, and other specialists and their agents, ~~the costs of any bonds required pursuant to Act Section 412,~~ and other costs of administering the Plan. Until paid, the expenses shall constitute a liability of the Trust Fund~~;~~.

19

2.7.    CLAIMS PROCEDURE

Claims for benefits under the Plan maybe filed in writing with the Administrator. Written notice of the disposition of a claim shall be furnished to the claimant within ninety (90) days after the application is filed, or such period as is required by applicable law or Department of Labor regulation. In the event the claim is denied, the reasons for the denial shall be specifically set forth in the notice in language calculated to be understood by the claimant, pertinent provisions of the Plan shall be cited, and, where appropriate, an explanation as to how the claimant can perfect the claim will be provided. In addition, the claimant shall be furnished with an explanation of the Plan's claims review procedure.

2.8.    CLAIMS REVIEW PROCEDURE

Any Employee, former Employee, or Beneficiary of either, who has been denied a benefit by a decision of the Administrator pursuant to Section 2.7 shall be entitled to request the Administrator to give further consideration to a claim by filing with the Administrator a written request for a hearing. Such request, together with a written statement of the reasons why the claimant believes the claim should be allowed, shall be filed with the Administrator no later than sixty (60) days after receipt of the written notification provided for in Section 2.7. The Administrator shall then conduct a hearing within the next sixty (60) days, at which the claimant maybe represented by an attorney or any other representative of such claimant's choosing and expense and at which the claimant shall have an opportunity to submit written and oral evidence and arguments in support of the claim. At the hearing (or prior thereto upon five (5) business days written notice to the Administrator) the claimant or the claimant's representative shall have an opportunity to review all documents in the possession of the Administrator which are pertinent to the claim at issue and its disallowance. Either the claimant or the Administrator may cause a court reporter to attend the hearing and record the proceedings. In such event, a complete written transcript of the proceedings shall be furnished to both parties by the court reporter. The full expense of any such court reporter and such transcripts shall be borne by the party causing the court reporter to attend the hearing. A final decision as to the allowance of the claim shall be made by the Administrator within sixty (60) days of receipt of the appeal (unless there has been an extension of sixty (60) days due to special circumstances, provided the delay and the special circumstances occasioning it are communicated to the claimant within the sixty (60) day period). Such communication shall be written in a manner calculated to be understood by the claimant and shall include specific reasons for the decision and specific references to the pertinent Plan provisions on which the decision is based.

**ARTICLE III**
**ELIGIBILITY**

3.1.    CONDITIONS OF ELIGIBILITY

Any~~Prior to December 31, 2011, any~~ Eligible Employee who has completed one (1) Year of Service and has attained age 21 shall be eligible to participate hereunder as of the date he has satisfied such requirements. ~~However, any~~Any Employee who was a Participant in the Plan prior to ~~the effective date of this amendment and restatement~~December 31, 2011 shall

continue to participate in the Plan. Participation in the Plan shall be frozen as of December 31, 2011 and no new Eligible Employees shall enter the Plan after that date.

### 3.2.  EFFECTIVE DATE OF PARTICIPATION

An Eligible Employee shall become a Participant effective as of the first day of the Plan Year coinciding with or next following the date on which the Employee met the eligibility requirements of Section 3.1, provided said Employee was still employed as of such date (or if not employed on such date, as of the date of rehire if a 1-Year Break in Service has not occurred or, if later, the date that the Employee would have otherwise entered the Plan had the Employee not terminated employment).

If an Employee, who has satisfied the Plan's eligibility requirements and would otherwise have become a Participant, shall go from a classification of a non-eligible Employee to an Eligible Employee, such Employee shall become a Participant on the date such Employee becomes an Eligible Employee or, if later, the date that the Employee would have otherwise entered the Plan bad the Employee always been an Eligible Employee.

If an Employee, who has satisfied the Plan's eligibility requirements and would otherwise become a Participant, shall go from a classification of an Eligible Employee to a non-eligible class of Employees, such Employee shall become a Participant in the Plan on the date such Employee again becomes an Eligible Employee; or, if later, the date that the Employee would have otherwise entered the Plan had the Employee always been an Eligible Employee,. However, if such Employee incurs a 1-Year Break in Service, eligibility will be determined under the Break in Service rules set forth in Section 3.5.

Notwithstanding the foregoing, Participation in the Plan shall be frozen as of December 31, 2011.

### 3.3.  DETERMINATION OF ELIGIBILITY

The Administrator shall determine awlthe eligibility of each Employee for participation in the Plan based upon information furnished by the Employer. Such determination shall be conclusive and binding upon ailall persons, as long as the same is made pursuant to the Plan and the Act. Such determination shall be subject to review pursuant to Section 2.8.

### 3.4.  TERMINATION OF ELIGIBILITY

In the event a Participant shall go from a classification of an Eligible Employee to an ineligible Employee, such Former Participant shall continue to vest in the Plan for each Year of Service completed while a non-eligible Employee, until such time as the Former Participant's Accrued Benefit shall be forfeited or distributed pursuant to the terms of the Plan.

### 3.5.  REHIRED EMPLOYEES AND BREAKS IN SERVICE

(a)    If any Participant becomes a Former Participant due to severance from employment with the Employer and is reemployed by the Employer before a 1-Year Break in Service occurs, the Former Participant shall become a Participant as of the reemployment date.

21

(b)    If any Participant becomes a Former Participant due to severance from employment with the Employer and is reemployed after a 1-Year Break in Service has occurred, Years of Service shall include Years of Service prior to the 1-Year Break in Service subject to the following rules:

(1)    In the case of a Former Participant who under the Plan does not have a nonforfeitable right to any interest in the Plan resulting from Employer contributions, Years of Service before a period of 1-Year Break in Service will not be taken into account if the number of consecutive 1-Year Breaks in Service equal or exceed the greater of (A) five (5) or (B) the aggregate number of pre-break Years of Service.  Such aggregate number of Years of Service will not include any Years of Service disregarded under the preceding sentence by reason of prior 1 -Year Breaks in Service.

(2)    A Former Participant who has not had Years of Service before a 1-Year Break in Service disregarded pursuant to (1) above, and completes a Year of Service for eligibility purposes, shall participate in the Plan as of the date immediately following completion of a Year of Service.

(c)    If any Participant becomes a Former Participant due to severance of employment with the Employer and again becomes a Participant, such renewed participation shall not result in duplication of benefits.  Accordingly, if such Participant has received a distribution of a Vested Accrued Benefit under the Plan by reason of prior participation (and such distribution has not been repaid: to the Plan with interest within a period of the earlier of five (5) years after the first date on which the Participant is subsequently reemployed by the Employer or the close of the first period of five (5) consecutive 1-Year Breaks in Service commencing after the distribution), the Participant's Accrued Benefit shall be reduced by the Actuarial Equivalent (at the date of distribution) of the Present Value of the Accrued Benefit as of the date of distribution.  Any repayment by a Participant shall be equal to the total of:

(1)    the amount of the distribution,

(2)    interest on such distribution compounded annually at the rate of five percent (5%) per annum from the date of distribution to the date of repayment or to the last day of the first Plan Year ending on or after December 31, 1987, if earlier, and

(3)    interest on the sum of (1) and (2) above compounded annually at the rate of one-hundred twenty percent (120%) of the federal mid-term rate (as in effect under Code Section 1274 for the first month of a Plan Year) from the beginning of the first Plan Year beginning after December 31, 1987 or the date of distribution, whichever is later, to the date of repayment.

3.6.    ELECTION NOT TO PARTICIPATE

An Employee, for Plan years beginning on or after the later of the adoption date or effective date of this amendment and restatement, may, subject to the approval of the Employer, elect voluntarily not to participate in the Plan. The election not to participate must be irrevocable and communicated to the Employer, in writing, within a reasonable period of time before the

22

068902.1001

beginning of the first Plan Year in which the Employee will become eligible to participate in the Plan.

### 3.7.    FROZEN BENEFIT ACCRUALS

Notwithstanding any other provision of the Plan to the contrary:

(a)    Effective December 31, 2011, accruals under the Plan shall cease.

(b)    Employees who are not Participants under the Plan as of December 31, 2011 shall not be entitled to enter the Plan thereafter.

(c)    Participants who are not 100% Vested as of December 31, 2011 shall continue to accrue Years of Service solely for purposes of vesting in accordance with the provisions of the Plan.

(d)    A Participant's Accrued Benefit shall not increase or decrease after December 31, 2011 due to changes in the Participant's Compensation or Years of Service after that date.

## ARTICLE IV
## CONTRIBUTION AND VALUATION

### 4.1.    PAYMENT OF CONTRIBUTIONS

(a)    No contribution shall be required under the Plan from any Participant.  The Subject to subsection (b), the Employer shall pay to the Trustee from time time to time such amounts in cash as the Administrator and Employer shall determine to be necessary to provide the benefits under the Plan determined by the application of accepted actuarial methods and assumptions and also taking into account the budget limitations of the Employer.

(b)    Each Fiscal Year, the Employer shall make contributions at least equal to the Minimum Funding Amount.  In addition to the Minimum Funding Amount contributions, the Employer shall make the following contributions:

(1)    No later than December 31, 2011, Employer shall contribute $5,000,000.

(2)    Upon the conclusion of the next capital campaign of Employer to be conducted no later than December 31, 2015, Employer shall contribute to the Plan $5,000,000 than December 31, 2016 and $5,000,000 no later than December 31, 2017.

### 4.2.    ACTUARIAL METHODS

In establishing the liabilities under the Plan, and contributions thereto, the enrolled actuary will use such methods and assumptions as will reasonably reflect the cost of the benefits.  The Plan assets are to be valued on the last day of the Plan Year (or on any other date

23

determined by the Administrator) using any reasonable method of valuation that takes into account fair market value.

4.3.    QUALIFIED MILITARY SERVICE

Notwithstanding any provision of this Plan to the contrary, effective December 12, 1994, contributions, benefits and service will be provided in accordance with Code Section 414(u).

## ARTICLE V
## BENEFITS

5.1.    RETIREMENT BENEFITS

(a)    For Group A Participants, the amount of monthly retirement benefit to be provided for each Participant who retires on his Normal Retirement Date shall be equal to his Accrued Benefit (herein called his Normal Retirement Benefit).  A Participant's Accrued Benefit is based on a retirement benefit formula equal to 1% of such Participant's Average Monthly Compensation multiplied by the Participant's total number of Years of Service, computed to the nearest dollar.  Notwithstanding the above, each Participant who terminates employment and retires on or after his Normal Retirement Date shall be provided with a monthly retirement benefit of not less than $50.

For Group B Participants, the amount of monthly retirement benefit to be provided for each Participant who retires on the Participant's Normal Retirement Date shall be equal to the Participant's Accrued Benefit (herein called the Participant's Normal Retirement Benefit).  A Participant's Accrued Benefit is based on the Participant's Frozen Accrued Benefit and a retirement benefit formula equal to 1.25% of such Participant's Average Monthly Compensation multiplied by the Participant's total number of Plan Years of Service (or fraction thereof calculated to the nearest month), computed to the nearest dollar.

The "Normal Retirement Benefit" of each Participant shall not be less than the largest periodic benefit that would have been payable to the Participant upon separation from service at or prior to Normal Retirement Age under the Plan exclusive of social security supplements, premiums on disability or term insurance, and the value of disability benefits not in excess of the "Normal Retirement Benefit."  For purposes of comparing periodic benefits in the same form, commencing prior to and at Normal Retirement Age, the greater benefit is determined by converting the benefit payable prior to Normal Retirement Age into the same form of annuity benefit payable at Normal Retirement Age and comparing the amount of such annuity payments.  In the case of a Top Heavy Plan, the "Normal Retirement Benefit" shall not be smaller than the minimum benefit to which the Employee is entitled under Section 5.2.

(b)    A Participant may elect to retire on an Early Retirement Date.  In the event that a Participant makes such an election, he shall be entitled to receive an Early Retirement Benefit as follows:

(1)    Group A Participants shall be entitled to receive an Early Retirement Benefit commencing on the first day of the month coinciding with or next following

the Participant's Early Retirement Date, equal to his Accrued Benefit reduced 5% per year, calculated to the nearest month, for each year that the Participant's Early Retirement Benefit commences prior to his Normal Retirement Date.

(2)     Group B Participants shall be entitled to receive an Early Retirement Benefit commencing on the first day of the month coinciding with or next following the Participant's Early Retirement Date, which Early Retirement Benefit shall equal the greater of (1) the Participant's Accrued Benefit reduced by 1/15th for each of the first five (5) years and 1/30th for each of the next five (5) years and. reduced actuarially for each additional year thereafter that the first day of the month on which the Participant's Early Retirement Benefit commences precedes the Participant's Normal Retirement Date, or (2) the Actuarial Equivalent of the Participant's Accrued Benefit if such benefit is distributed in a form other than a non-decreasing life annuity payable for a period not less than the life of such Participant.

The Plan will provide a subsidized Early Retirement Benefit for any Group B Participant who had completed 10-Years of Service as of July 1, 2002.  In the event such Participant who has completed 25 Years of Service elects to commence payments after having attained age 62, the amount of his Early Retirement Benefit will be equal to the Participant's full Accrued Benefit without further reduction.  If a Participant who has completed 25 Years of Service elects to commence payments after age 55 but before age 62, the Early Retirement Benefit shall equal the greater of (1) the Participant's Accrued Benefit reduced by 1/15th for each of the first five (5) years and 1/30th for each of the next five (5) years and reduced actuarially for each additional year thereafter that the first day of the month on which the Participant's Early Retirement Benefit commences precedes big 62nd birthday.

(c)     The Normal Retirement Benefit payable to a Participant pursuant to this Section 5.1 shall be a monthly pension commencing on the Participant's Retirement Date and continuing for life.  If a Retired Group B Participant dies prior to the completion of 36 monthly payments, such monthly payments shall be continued to the Retired Participant's Beneficiary until the monthly payments made to the Retired Participant and to the Beneficiary shall total 36.  However, the form of distribution of such benefit shall be determined pursuant to the provisions of Section 5.7.

(d)     At the request of a Participant, the Participant may be continued in employment beyond Normal Retirement Date.  In such event, no retirement benefit will be paid to the Participant until the Participant actually retires, subject, however to ~~amy~~any required minimum distributions pursuant to Section 5.7(e).  At the close of each Plan Year prior to the Participant's actual Retirement Date, a Participant shall be entitled to a retirement benefit equal to the greater of (1) the Actuarial Equivalent of the monthly retirement benefit such Participant was entitled to at the close of the prior Plan Year, or (2) the Participant's Accrued Benefit determined at the close of the Plan Year.  The monthly retirement benefit calculated pursuant to this Section 5.1(d) shall be offset by the actuarial value (determined pursuant to Section ~~1.31~~.2) of the total benefit distributions (pursuant to Section 5.7(e)) made by the close of the Plan Year.

Except with respect to a "five (5) percent owner," a Participant's Accrued Benefit is actuarially increased to take into account the period after age 70 1/2 in which the Participant does not receive any benefits under the Plan.  The actuarial increase begins on the April 1

25

following the calendar year in which the Participant attains age 70 1/2 (January 1, 1997 in the case of a. Participant who attained age 70 1/2 prior to 1996), and ends on the date on which benefits commence after retirement in an amount sufficient to satisfy Code Section 401(a)(9).

The amount of actuarial increase payable as of the end of the period for actuarial increases must be no less than the Actuarial Equivalent of the Participant's retirement benefits that would have been: payable as of the date the actuarial increase must commence plus the Actuarial Equivalent of additional benefits accrued after that date, reduced by the Actuarial Equivalent of any distributions made after that date. The actuarial increase is generally the same as, and not in addition to, the actuarial increase required for that same period under Code Section 411 to reflect the delay in payments after normal retirement, except that the actuarial increase required under Code Section 401(a)(9)(C) must be provided even during the period during which a Participant is in Act Section 203(a)(3)(B) service.

5.2.    MINIMUM BENEFIT REQUIREMENT FOR TOP HEAVY PLAN

(a)    The minimum Accrued Benefit derived from Employer contributions to be provided under this Section for each Employee who is a Participant during a Top Heavy Plan Year shall equal the product of (1) one-twelfth (1/12th) of "415 Compensation" averaged over the five (5) consecutive "limitation years" (or actual number of "limitation years," if less) which produce the highest average, and (2) the lesser of (i) two percent (2%) multiplied by Years of Service with respect to Group A and Plan Years of Service with respect to Group B , or (ii) twenty percent (20%), expressed as a single life annuity.

(b)    For purposes of providing the minimum benefit under Code Section 416, an Employee who is not a Participant solely because (1) such Employee's Compensation is below a stated amount or (2) such Employee declined to make mandatory contributions (if required) to the Plan will be considered to be a Participant. Furthermore, such minimum benefit shall be provided regardless of whether such Employee is employed on a specified date.

(c)    For purposes of this Section, Plan Years of Service for any Plan Year beginning before January 1, 1984, or for any Plan Year during which the Plan was not a Top Heavy Plan shall be disregarded.

(d)    For purposes of this Section, "415 Compensation" for any "limitation year" ending in a Plan Year which began prior to January 1, 1984, subsequent to the last "limitation year" during which the Plan is a Top Heavy Plan, or in which the Participant failed to complete a Year of Service with respect to Group A and Plan Years of Service with respect to Group B, shall be disregarded.

(e)    For the purposes of this Section, "415 Compensation" in excess of $150,000 (or such other amount provided in. the Code) shall be disregarded. Such amount shall be adjusted for increases in the cost of living in accordance with Code Section 401(a)(17)(B), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Year beginning with or within such calendar year. If "415 Compensation" for any prior determination period is taken into account in determining a Participant's minimum benefit for the

current Plan Year, the "415 Compensation" for such determination period is subject to the applicable annual "415 Compensation" limit in effect for that prior period. For this purpose, in determining the minimum benefit in Plan Years beginning on or after January 1, 1989, the annual "415 Compensation" limit in effect for determination periods beginning before that date is $200,000 (or such other amount as adjusted for increases in the cost of living in accordance with Code Section 415(d) for determination periods beginning on or after January 1, 1989, and in accordance with Code Section 401(a)(17)(B) for determination periods beginning on or after January 1, 1994). For determination periods beginning prior to January 1, 1989, the $200,000 limit shall apply only for Top Heavy Plan Years and shall not be adjusted. For any short Plan Year the "415 Compensation" limit shall be an amount equal to the "415 Compensation" limit for the calendar year in which the Plan Year begins multiplied by the ratio obtained by dividing the number of full months in the short Plan Year by twelve (12).

(f)     If Section 5.1(c) provides for the Normal Retirement Benefit to be paid in a form other than a single life annuity, the Accrued Benefit under this Section shall be the Actuarial Equivalent of the minimum Accrued Benefit under (a) above pursuant to Section 1.3.1.2.

(g)     If payment of the minimum Accrued Benefit commences at a date other than Normal Retirement Date, the minimum Accrued Benefit shall be the Actuarial Equivalent of the minimum Accrued Benefit commencing at Normal Retirement Date pursuant to Section 1.3.1.2.

(h)     To the extent required to be nonforfeitable under Section 5.6, the minimum Accrued Benefit under this Section may not be forfeited under Code Section 411(a)(3)(B) or Code Section 411(a)(3)(D).

5.3.    PAYMENT OF RETIREMENT BENEFITS

When a Participant retires, the Administrator shall immediately take pursuant to the Plan all necessary steps and execute all required documents to cause the payment of the Participant's Accrued Benefit pursuant to the Plan.

5.4.    DISABILITY RETIREMENT BENEFITS

(a)     If a Participant becomes Totally and Permanently Disabled pursuant towithin the meaning of Section 1.521.54 prior to retirement or separation from service, and such condition continues for a period of six (6) consecutive months and by reason thereof such Participant's status as an Employee ceases, then said disabled Participant shall be entitled to receive the Actuarial Equivalent of the Participant's Accrued Benefit. In the event of a Participant's Total and Permanent Disability, the Administrator shall direct the Trustee to commence payment of the benefits payable hereunder pursuant to the provisions of Sections 5.35.7 and 5.9 as though the Participant had retired.

(b)     The benefit payable pursuant to (a) above shall be computed as of the Anniversary Date subsequent to termination of employment.

27

(c)     In the event of the Terminated Participant's Total and Permanent Disability subsequent to termination of employment, the Terminated Participant (or the Terminated Participant's Beneficiary) shall receive the Actuarial Equivalent of such Terminated Participant's Vested Accrued Benefit pursuant to the provisions of Sections 5.7 and 5.9 as though the Terminated. Participant had retired.

5.5.     DEATH BENEFITS

(a)     If a Participant dies prior to the Participant's Retirement Date, such Participant's Beneficiary shall receive a death benefit equal to the Actuarial Equivalent of the Accrued Benefit determined as of the Anniversary Date subsequent to or coinciding with the date of death.

(b)     Death benefits payable by reason of the death of a Participant or a Retired Participant shall be paid. to such Participant's Beneficiary in accordance with the following provisions:

(1)     Upon the death of a Participant subsequent to the Participant's Retirement Date, but prior to the Annuity Starting Date, the Participant's Beneficiary shall be entitled to a death benefit in an amount equal to the Actuarial Equivalent of the benefit the Participant would have received at the Participant's Retirement Date.

(2)     Upon the death of a Participant subsequent to the Annuity Starting Date, the Participant's Beneficiary shall be entitled to whatever death benefit maybe available under the settlement arrangements pursuant to which the Participant's benefit is made payable.

(3)     In the event of a Terminated Participant's death subsequent to the Participant's termination of employment, the Participant's Beneficiary shall receive the Present Value of such Participants Vested Accrued Benefit as of the Anniversary Date coinciding with or next following the date of the Participant's death.

(c)     The Administrator may require such proper proof of death and such evidence of the right of any person to receive the death benefit payable as a result of the death of a Participant as the Administrator may deem desirable.  The Administrator's determination of death and the right of any person to receive payment shall be conclusive.

(d)     Unless otherwise elected in the manner prescribed in Section 5.8, the Beneficiary of the death benefit shall be the Participant's surviving spouse, who shall receive such benefit in the form of a Pre-Retirement Survivor Annuity pursuant to Section 5.8.  Except, however, the Participant may designate a Beneficiary other than the spouse if:

(1)     the Participant and the Participants spouse have validly waived the Pre-Retirement Survivor Annuity in the manner prescribed in Section 5.8, and the spouse has waived the right to be the Participant's Beneficiary, or

28

(2)    the Participant is legally separated or has been abandoned (within the meaning of local law) and the Participant has a court order to such effect (and there is no qualified domestic relations order which provides otherwise), or

(3)    the Participant has no spouse, or

(4)    the spouse cannot be located.

In such event, the designation of a Beneficiary shall be made on a form satisfactory to the Administrator.  A Participant may at any time revoke a designation of a Beneficiary or change a Beneficiary by filing written (or in such other form as permitted by the Internal Revenue Service) notice of such revocation or change with the Administrator.  However, the Participant's spouse must again consent in writing (or in such other form as permitted by the Internal Revenue Service) to any change in Beneficiary unless the original consent acknowledged that the spouse had the right to limit consent only to a specific Beneficiary and that the spouse voluntarily elected to relinquish such right.  In the event no valid designation of Beneficiary exists, or if the Beneficiary is not alive, at the time of the Participant's death, the death benefit shall be payable to the Participant's estate.  Additionally, if the Beneficiary does not predecease the Participant, but dies prior to the distribution of the death benefit, the death benefit will be paid to the Beneficiary's estate.

(e)    The benefit payable under this Section shall be paid pursuant to the provisions of Sections 5.8 and 5.9.

(f)    In no event shall the death benefit payable to a surviving spouse be less than the Actuarial Equivalent of the "minimum spouse's death benefit."

(g)    For the purposes of this Section, the "minimum spouse's death benefit" means a death benefit for a Vested married Participant payable in the form of a Pre-Retirement Survivor Annuity.  Such annuity payments shall be equal to the amount which would be payable as a survivor annuity under the joint and survivor annuity provisions of the Plan if:

(1)    in the case of a Participant who dies after the Earliest Retirement Age, such Participant had retired with an immediate joint and survivor annuity on the day before the Participant's date of death, or

(2)    in the case of a Participant who dies on or before the Earliest Retirement Age, such Participant had:

i.    separated from service on the earlier of the actual time of separation or the date of death,

ii.    survived to the Earliest Retirement Age,

iii.    retired with an immediate joint and survivor annuity at the Earliest Retirement Age based on the Participant's Vested Accrued Benefit on date of death, and

29

iv.    died on the day after the day on which said Participant would have attained the Earliest Retirement Age.

5.6.    TERMINATION OF EMPLOYMENT BEFORE RETIREMENT

(a)    Payment to a Former Participant of the Vested portion of such Former Participant's Accrued Benefit, unless such Former Participant otherwise elects, shall begin not later than the 60th day after the close of the Plan Year in which the latest of the following events occurs: (1) the date on which the Participant attains the earlier of age 65 or the Normal Retirement Age specified herein; (2) the 10th anniversary of the year in which the Participant commenced participation in the Plan; or (3) the date the Participant terminates service with the Employer.

However, the Administrator shall, at the election of the Participant, direct earlier payment of the Vested portion of the Participant's Accrued Benefit after the Participant has incurred a 1-Year Break in Service. Any distribution under this paragraph shall be made in a manner which is consistent with and satisfies the provisions of Section 5.7, including, but not limited to, notice and consent requirements of Code Sections 417 and 411(a)(11) and the Regulations thereunder.

However, for Plan Years beginning after August 5, 1997, the Administrator shall direct the earlier payment of the entire Vested portion of the Present Value of Accrued Benefit, but only if it does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) and, if the distribution is made prior to October 17, 2000, has never exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution.

That portion of a Terminated Participant's Accrued Benefit that is forfeited shall be used only to reduce future costs of the Plan at such time as it becomes a forfeiture.

That portion of a Terminated Participant's Accrued Benefit that is not Vested shall become a forfeiture on the last day of the Plan Year in which the Participant incurs five (5) consecutive 1-Year Breaks in Service.

(b)    The Vested portion of any Participant's Accrued Benefit shall be a percentage of the Participant's Accrued Benefit determined on the basis of the Participant's number of Years of Service according to the following schedule:

Vesting Schedule

| Years of Service | Percentage |
| --- | --- |
| Less than 5 | 0 % |
| 5 | 100 % |

(c)    Notwithstanding the vesting provided for in paragraph (b) above, for any Top Heavy Plan Year, the Vested portion of the Accrued Benefit of any Participant who has an Hour of Service after the Plan becomes top heavy shall be a percentage of the Participant's

Accrued Benefit determined on the basis of the Participant's number of Years of Service according to the following schedule:

Vesting Schedule

| Years of Service | Percentage |
| --- | --- |
| Less than 3 | 0 % |
| 3 | 100 % |

If in any subsequent Plan Year, the Plan ceases to be a Top Heavy Plan, the Administrator shall continue to apply the Top Heavy Vesting,

(d)    Notwithstanding the vesting schedule above, the Vested percentage of a Participant's Accrued Benefit shall not be less than the Vested percentage attained as of the later of the effective date or adoption date of this amendment and restatement

(e)    A Participant with at least three (3) Years of Service as of the expiration date of the election period may elect to have the nonforfeitable percentage computed under the Plan without regard to such amendment and restatement.  If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule.  The Participant's election period shall commence on the adoption date of the amendment and shall end sixty (60) days after the latest of:

(1)    the adoption date of the amendment,

(2)    the effective date of the amendment, or

(3)    the date the Participant receives written notice of the amendment from the Employer or Administrator.

(f)    The computation of a Participant's nonforfeitable percentage of such Participant's interest in the Plan shall not be reduced as the result of any direct or indirect amendment to this Plan.  In the event that the Plan is amended to change or modify any vesting schedule, or if the Plan is amended in any way that directly or indirectly affects the computation of the Participant's nonforfeitable percentage, or if the Plan is deemed amended by an automatic change to a top heavy vesting schedule, then each Participant with at least three (3) Years of Service as of the expiration date of the election period may elect to have such Participant's nonforfeitable percentage computed under the Plan without regard to such amendment or change.  If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule.  The Participant's election period shall commence on the adoption date of the amendment and shall end sixty (60) days after the latest of:

(1)    the adoption date of the amendment,

(2)    the effective date of the amendment, or

(3)    the date the Participant receives written notice of the amendment from the Employer or Administrator.

(g)    In the event any Former Participant is re-employed after a 1-Year Break in Service has occurred, and his pre-break service is disallowed under the terms of the Section, the Employer reserves the right to waive these rules in order to allow credit for the Participant's pre-break service. The right will be exercised at the sole discretion of the Employer and may not be applied in a manner that discriminates in favor of Highly Compensated Employees.

(h)    In determining Years of Service for purposes of vesting under the Plan, Years of Service prior to the vesting computation period in which an Employee attained age eighteen shall be excluded.

5.7.    DISTRIBUTION OF BENEFITS

(a)    (1)    Unless otherwise elected as provided below, a Participant who is married on the Annuity Starting Date and who does not die before the Annuity Starting Date shall receive the value of all of such Participant's benefits in the form of a joint and survivor annuity. The joint and survivor annuity is an annuity payable by the Plan that commences immediately and shall be the Actuarial Equivalent of a single life annuity; provided, however, that (i) nothing in the foregoing should be construed as requiring the purchase of a third-party annuity contract and (ii) the annuity may be a "pay as you go" annuity. Such joint and survivor benefits following the Participant's death shall continue to the spouse during the spouse's lifetime at a rate equal to fifty percent (50%) of the rate at which such benefits were payable to the Participant. This joint and fifty percent (50%) survivor annuity shall be considered the designated qualified joint and survivor annuity and automatic form of payment for the purposes of this Plan. However, the Participant may, without spousal consent, elect to receive a smaller annuity benefit with continuation of payments to the spouse at a rate of seventy-five percent (75%) or one hundred percent (100%) of the rate payable to a Participant during the Participant's lifetime, which alternative joint and survivor annuity shall be the Actuarial Equivalent of the automatic joint and fifty percent (50%) survivor annuity. An unmarried Participant shall receive the value of such Participant's benefit in the form of a life annuity; provided, however, that (i) nothing in the foregoing should be construed as requiring the purchase of a third-party annuity contract and (ii) the annuity may be a "pay as you go" annuity. Such unmarried Participant, however, may elect in writing to waive the annuity. The election must comply with the provisions of this Section as if it were an election to waive the joint and survivor annuity by a married Participant, but without the spousal consent requirement. The joint and survivor annuity and the life annuity form of distribution shall be the Actuarial Equivalent of the benefits due the Participant.

(2)    Any election to waive the joint and survivor annuity must be made by the Participant in writing (or in such other form as permitted by the Internal Revenue Service) during the election period and be consented to in writing (or in such other form as permitted by the Internal Revenue Service) by the Participant's spouse. If the spouse is legally incompetent to give consent, the spouse's legal guardian, even if such guardian is the Participant, may give consent. Such election shall designate a Beneficiary (or a form of benefits) that may not be changed without spousal consent (unless the consent of the spouse expressly permits designations by the Participant without the requirement of further consent by the spouse). Such

32

spouse's consent shall be irrevocable and must acknowledge the effect of such election and be witnessed by a Plan representative or a notary public. Such consent shall not be required if it is established to the satisfaction of the Administrator that the required consent cannot be obtained because there is no spouse, the spouse cannot be located, or other circumstances that maybe prescribed by Regulations. The election made by the Participant ~~end~~and consented to by such Participant's spouse may be revoked by the Participant in writing (or in such other form as permitted by the Internal Revenue Service) without the consent of the spouse at any time during the election period. A revocation of a prior election shall cause the Participant's benefits to be distributed as a joint and survivor annuity. The number of revocations shall not be limited. Any new election must comply with the requirements of this paragraph. A former spouse's waiver shall not be binding on a new spouse.

(3)     The election period to waive the joint and survivor annuity shall be the ninety (90) day period ending on the Annuity Starting Date.

(4)     For purposes of this Section, spouse or surviving spouse means the spouse or surviving spouse of the Participant, provided that a former spouse will be treated as the spouse or surviving spouse and a current spouse will not be treated as the spouse or surviving spouse to the extent provided under a qualified domestic relations order as described in Code Section 414(p).

(5)     With regard to the election, the Administrator shall provide to the Participant no less than thirty (30) days and no more than ninety (90) days before the Annuity Starting Date a written (or in such other form as permitted by the Internal Revenue Service) explanation of:

i.     the terms and conditions of the joint and survivor annuity,

ii.     the Participants right to make, and the effect of an election to waive the joint and survivor annuity,

iii.     the right of the Participants spouse to consent to any election to waive the joint and survivor annuity, and

iv.     the right of the Participant to revoke such election, and the effect of such revocation.

(6)     Notwithstanding the above, with respect to distributions made after December 31, 1996, if the Participant elects (with spousal consent, if applicable) to waive the requirement that the explanation be provided at least thirty (30) days before the Annuity Starting Date, the election period shall be extended to the thirtieth (30th) day after the date on which such explanation is provided to the Participant, unless the thirty (30) day period is waived pursuant to the following provisions.

Any distribution provided for in this Section 5.7 may commence less than thirty (30) days after the notice required by Code Section 417(a)(3) is given provided the following requirements are satisfied:

i.    the Administrator clearly informs the Participant that the Participant has a right to a period of thirty (30) days after receiving the notice to consider whether to waive the joint and survivor annuity and to elect (with spousal consent) to a form of distribution other than a joint and survivor annuity;

ii.    the Participant is permitted to revoke an affirmative distribution election at least until the Annuity Starting Date, or, if later, at any time prior to the expiration of the seven (7) day period that begins the day after the explanation of the joint and survivor annuity is provided to the Participant;

iii.    the Annuity Starting Date is after the date that the explanation of the joint and survivor annuity is provided to the Participant.  However, the Annuity Starting Date may be before the date that any affirmative distribution election is made by the Participant and before the date that the distribution is permitted to commence under (iv) below; and

iv.    distribution in accordance with the affirmative election does not commence before the expiration of the seven (7) day period that begins the day after the explanation of the joint and survivor annuity is provided to the Participant.

(b)    In the event a married Participant duly elects pursuant to paragraph (a)(2) above not to receive benefits in the form of a joint and survivor annuity, or if such Participant is not married, in the form of a life annuity, the Administrator, pursuant to the election of the Participant, shall direct the Trustee to distribute to a Participant or such Participant's Beneficiary an amount which is the Actuarial Equivalent of the monthly retirement benefit provided in Section 5.1(e̶c̶) in a̶ṉa̶ṉ annuity.

However, any such annuity may not be in any f̶o̶w̶l̶form that will provide for payments over a period extending beyond either the life of the Participant (or the lives of the Participant and the Participant's designated Beneficiary) or the life expectancy of the Participant (or the life expectancy of the Participant and the Participant's designated Beneficiary).

(c)    The present value of a Participant's joint and survivor annuity derived from Employer and Employee contributions may not, for Plan Years beginning after August 5, 1997, be paid without the Participant's and the Participant's spouse's written (or in

34

such form as permitted by the Internal Revenue Service) consent if the value exceeds $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) or, if the distribution is made prior to October 17, 2000, has ever exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution and the benefit is "immediately distributable." However, spousal consent is not required if the distribution will be made in the form of a joint and survivor annuity and the benefit is "immediately distributable." A benefit is "immediately distributable" if any part of the benefit could be distributed to the Participant (or surviving spouse) before the Participant attains (or would have attained if not deceased) the later of the Participant's Normal Retirement Age or age 62. Any consent required by this Section 5.7(c) must be obtained not more than ninety (90) days before commencement of the distribution and shall be made in a manner consistent with Section 5.7(a)(2).

If, for Plan Years beginning after August 5, 1997, the value of the Participant's benefit derived from Employer and Employee contributions does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) and, if the distribution is made prior to October 17, 2000, has never exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution, then the Administrator shall direct the Trustee to immediately distribute such benefit in a lump sum without the Participant's and the Participant's spouse's written consent. No distribution may be made under the preceding sentence after the Annuity Starting Date unless the Participant and the Participant's spouse consent in writing (or in such form as permitted by the Internal Revenue Service) to such distribution.

(d)    The following rules will apply to the consent requirements set forth in subsection (c):

(1)    No consent shall be valid unless the Participant has received a general description of the material features and an explanation of the relative values of the optional forms of benefit available under the Plan that would satisfy the notice requirements of Code Section 417.

(2)    The Participant must be informed of the right to defer receipt of the distribution. If a Participant fails to consent, it shall be deemed an election to defer the commencement of payment of any benefit. However, any election to defer the receipt of benefits shall not apply with respect to distributions which are required under Section 5.7(e).

(3)    Notice of the rights specified under this paragraph shall be provided no less than thirty (30) days and no more than ninety (90) days before the Annuity Starting Date.

Notwithstanding the above, the Annuity Starting Date may be a date prior to the date the explanation is provided to the Participant if the distribution does not commence until at least thirty (30) days after such explanation is provided, subject to the waiver of the thirty (30) day period as provided for in Section 5.7(a)(6).

(4)    Written (or such other form as permitted by the Internal Revenue Service) consent of the Participant to the distribution must not be made before the

35

Participant receives the notice and must not be made more than ninety (90) days before the Annuity Starting Date.

(5)　　No consent shall be valid if a significant detriment is imposed under the Plan on any Participant who does not consent to the distribution.

Any such distribution may commence less than thirty (30) days, subject to Section 5.7(a)(5), after the notice required under Regulation 1.411(a)-11(c) is given, provided that: (1) the Administrator clearly informs the Participant that the Participant has a right to a period of at least thirty (30) days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and (2) the Participant, after receiving the notice, affirmatively elects a distribution.

(e)　　Notwithstanding any provision in the Plan to the contrary, the distribution of a Participant's benefits made on or after January 1, 1997, whether under the Plan or through the purchase of an annuity contract, shall be made in accordance with the following requirements and shall otherwise comply with Code Section 401(a)(9) and the Regulations thereunder (including Regulation Section 1.401(a)(9)-2), the provisions of which are incorporated herein by reference:

(1)　　A Participant's benefits shall be distributed or must begin to be distributed not later than the April 1st of the calendar year following the calendar year in which the Participant attains age 70 1/2. Such distribution shall be equal to or greater than any required distribution. However, a Participant who is not a "five (5) percent owner" and who attains age 70 1/2 in or after a calendar year that begins after the later of (i) December 31, 1998, or (ii) the adoption date of an amendment eliminating the required distribution provided in the first sentence of this paragraph, provided that the adoption date is no later than the last day of any remedial amendment period that applies to the Plan. for changes under the Small Business JobJob Protection Act of 1996, shall have such benefits distributed or must begin to be distributed not later than the April 1st of the calendar year following the later of (i) the calendar year in which the Participant attains age 70 1/2, or (ii) the calendar year in which the Participant retires.

Alternatively, if the distribution is to be in the form of a joint and survivor annuity or single life annuity, then distributions must begin no later than the applicable April 1st as determined under the preceding paragraph and must be made over the life of the Participant (or the lives of the Participant and the Participant's designated Beneficiary) in accordance with Regulations.

(2)　　Distributions to a Participant and the Participant's Beneficiaries shall only be made in accordance with the incidental death benefit requirements of Code Section 401(a)(9)(G) and the Regulations thereunder.

With respect to distributions under the Plan made for calendar years beginning on or after January 1, 2001, the Plan will apply the minimum distribution requirements of Code Section 401(a)(9) in accordance with the Regulations under Code Section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. This

36

amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final Regulations under Code Section 401(a)(9) or such other date specified in guidance published by the internal Revenue Service.

(f)  ̄For purposes of this Section, the life expectancy of a Participant and a Participant's spouse (other than in the case of a life annuity) may, at the election of the Participant or the Participant's spouse, be redetermined in accordance with Regulations. The election, once made, shall be irrevocable. If no election is made by the time distributions must commence, then the life expectancy of the Participant and the Participant's spouse shall not be subject to recalculation. Life expectancy and joint and last survivor expectancy shall be computed using the return multiples in Tables V and VI of Regulation Section 1.72-9.

(g)  Subject to the spouse's right of consent afforded under the Plan, the restrictions imposed by this Section shall not apply if a Participant has, prior to January 1, 1984, made a written designation to have retirement benefits paid in an alternative method acceptable under Code Section 401(a)(9) as in effect prior to the enactment of the Tax Equity and Fiscal Responsibility Act of 1982.

(h)  All annuity Contracts under this Plan shall be non-transferable when distributed. Furthermore, the terms of any annuity Contract purchased and distributed to a Participant or spouse shall comply with all of the requirements of the Plan.

## 5.8.  DISTRIBUTION OF BENEFITS UPON DEATH

(a)  Unless otherwise elected as provided below, a Vested Participant who dies before the Annuity Starting Date and who has a surviving spouse shall have the death benefit paid to the surviving spouse in the form of a Pre-Retirement Survivor Annuity. The Participant's spouse may direct that payment of the Pre-Retirement Survivor Annuity commence within a reasonable period after the Participant's death (but not later than the month in which the Participant would have attained the Earliest Retirement Age under the Plan if the Participant dies on or before the Earliest Retirement Age). If the spouse does not so direct, payment of such benefit will commence at the time the Participant would have attained the later of Normal Retirement Age or age 62. However, the spouse may elect a later commencement date, subject to the rules specified in Section 5.8(g).

(b)  Any election to waive the Pre-Retirement Survivor Annuity before the Participant's death must be made by the Participant in writing (or in such other form as permitted by the Internal Revenue Service) during the election period and shall require the spouse's irrevocable consent in the same manner provided for in Section 5.7(a)(2). Further, the spouse's consent must acknowledge the specific nonspouse Beneficiary. Notwithstanding the foregoing, the nonspouse Beneficiary need not be acknowledged, provided the consent of the spouse acknowledges that the spouse has the right to limit consent only to a specific Beneficiary and that the spouse voluntarily elects to relinquish such right.

(c)  The election period to waive the Pre-Retirement Survivor Annuity shall begin on the first day of the Plan Year in which the Participant attains age thirty-five (35) and end on the date of the Participant's death. An earlier waiver (with spousal consent) may be

068902.1001

made provided a written (or in such other form as permitted by the Internal Revenue Service) explanation of the Pre-Retirement Survivor Annuity is given to the Participant and such waiver becomes invalid at the beginning of the Plan Year in which the Participant turns age thirty-five (35). In the event a Vested Participant separates from service prior to the beginning of the election period, the election period shall begin on the date of such separation from service.

      (d)      With regard to the election, the Administrator shall provide each Participant within the applicable period, with respect to such Participant (and consistent with Regulations), a written (or in such other form as permitted by the Internal Revenue Service) explanation of the Pre-Retirement Survivor Annuity containing comparable information to that required pursuant to Section 5.7(a)(5). For the purposes of this paragraph, the term "applicable period" means, with respect to a Participant, whichever of the following periods ends last:

      (1)      The period beginning with the first day of the Plan Year in which the Participant attains age thirty-two (32) and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age thirty-five (35);

      (2)      A reasonable period after the individual becomes a Participant;

      (3)      A reasonable period ending after the Plan no longer fully subsidizes the cost of the Pre-Retirement Survivor Annuity with respect to the Participant;

      (4)      A reasonable period ending after Code Section 401(a)(11) applies to the Participant; or

      (5)      A reasonable period after separation from service in the case of a Participant who separates before attaining age thirty-five (35). For this purpose, the Administrator must provide the explanation beginning one (1) year before the separation from service and ending one (1) year after such separation. If such a Participant thereafter returns to employment with the Employer, the applicable period for such Participant shall be redetermined.

      For purposes of applying this Section 5.8(d), a reasonable period ending after the enumerated events described in paragraphs (2), (3) and (4) is the end of the two (2) year period beginning one (1) year prior to the date the applicable event occurs, and ending one (1) year after that date.

      (e)      If the present value of the Pre-Retirement Survivor Annuity derived from Employer and Employee contributions does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) and, if the distribution is made prior to October 17, 2000, has never exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution, then the Administrator shall direct the immediate distribution of the present value of the Pre-Retirement Survivor Annuity to the Participant's spouse. No distribution may be made under the preceding sentence after the Annuity Starting Date unless the spouse consents in writing (or in such other form as permitted by the Internal Revenue Service) to sach distribution. If the value exceeds $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) or, if the distribution is made prior to October 17, 2000, has ever exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior

38

           

distribution, then an immediate distribution of the entire amount of the Pre-Retirement Survivor Annuity may be made to the surviving spouse, provided such surviving spouse consents in writing (or in such other form as permitted by the Internal Revenue Service) to such distribution. Any consent required under this paragraph must be obtained not more than ninety (90) days before commencement of the distribution and shall be made in a manner consistent with Section 5.7(a)(2).

The present value in this regard shall be determined as provided in Section 1.43.1.44. Notwithstanding the foregoing, the present value of the Pre-Retirement Survivor Annuity shall be determined as provided in Section 1.43.1.44.

(f)    To the extent the death benefit is not paid in the form of a Pre-Retirement Survivor Annuity, it shall be paid to the Participant's Beneficiary in one lump sum in cash.

(g)    Notwithstanding any provision in the Plan to the contrary, distributions upon the death of a Participant shall be made in accordance with the following requirements and shall otherwise comply with Code Section 401(a)(9) and the Regulations thereunder. If the death benefit is paid in the form of a Pre-Retirement Survivor Annuity, then distributions to the Participant's surviving spouse must commence on or before the later of: (1) December 31st of the calendar year immediately following the calendar year in which the Participant died; or (2) December 31st of the calendar year in which the Participant would have attained age 70 1/2. If it is determined, pursuant to Regulations, that the distribution of a Participant's interest has begun and the Participant dies before the entire interest has been distributed, the remaining portion of such interest shall be distributed at least as rapidly as under the method of distribution selected pursuant to Section 5.7 as of the date of death. If a Participant dies before receiving any distributions of the interest hain the Plan or before distributions are deemed to have begun pursuant to Regulations (and distributions are not to be made in the form of a Pre-Retirement Survivor Annuity), then the death benefit shall be distributed to the Participant's Beneficiaries by December 1st of the calendar year in which the fifth anniversary of the Participant's date of death occurs.

However, the 5-year distribution requirement of the preceding paragraph shall not apply to any portion of the deceased Participant's interest which is payable to or for the benefit of a designated Beneficiary. In such event, such portion may, at the election of the Participant (or the Participant's designated Beneficiary) be distributed over the life of such designated Beneficiary (or over a period not extending beyond the life expectancy of such designated Beneficiary) provided such distribution begins not later than December 31st of the calendar year immediately following the calendar year in which the Participant died. However, in the event the Participant's spouse (determined as of the date of the Participant's death) is the designated Beneficiary, the requirement that distributions commence within one year of a Participant's death shall not apply. In lieu thereof, distributions must commence on or before the later of: (1) December 31st of the calendar year immediately following the calendar year in which the Participant died; or (2) December 31st of the calendar year in which the Participant would have attained age 70 1/2. If the surviving spouse dies before distributions to such spouse begin, then the 5-year distribution requirement of this Section shall apply as if the spouse was the Participant.

068902.1001

(h)    For purposes of this Section, the life expectancy of a Participant and a Participant's spouse (other than in the case of a life annuity) may, at the election of the Participant or the Participant's spouse, be redetermined in accordance with Regulations. The election, once made, shall be irrevocable. If no election is made by the time distributions must commence, then the life expectancy of the Participant and the Participant's spouse shall not be subject to recalculation. Life expectancy and joint and last survivor expectancy shall be computed using the return multiples in Tables V and VI of Regulation Section 1.72-9.

(i)    For purposes of this Section, any amount paid to a child of the Participant will be treated as if it had been paid to the surviving spouse if the amount becomes payable to the surviving spouse when the child reaches the age of majority.

(j)    Subject to the spouse's right of consent afforded under the Plan, the restrictions imposed by this Section shall not apply if a Participant has, prior to January 1, 1984, made a written designation to have death benefits paid in an alternative method acceptable under Code Section 401(a)(9) as in effect prior to the enactment of the Tax Equity and Fiscal Responsibility Act of 1982.

5.9.    TIME OF SEGREGATION OR DISTRIBUTION

Except as limited by Sections 5.7 and 5.8, whenever the Trustee is to make a distribution or to commence a series of payments the distribution or series of payments maybe made or begun on such date or as soon thereafter as is practicable. However, unless a Former Participant elects in writing to defer the receipt of benefits (such election may not result in a death benefit that is more than incidental), the payment of benefits shall begin not later than the sixtieth (60th) day after the close of the Plan Year in which the latest of the following events occurs: (a) the date on which the Participant attains the earlier of age 65 or the Normal Retirement Age specified herein; (b) the tenth (10th) anniversary of the year in which the Participant commenced participation in the Plan; or (c) the date the Participant terminates service with the Employer.

Notwithstanding the foregoing, the failure of a Participant and, if applicable, the Participant's spouse, to consent to a distribution that is "immediately distributable" (within the meaning of Section 5.7), shall be deemed to be an. election to defer commencement of payment of any benefit sufficient to satisfy this Section.

5.10.    DISTRIBUTION FOR MINOR OR INCOMPETENT BENEFICIARY

In the event a distribution is to be made to a minor or incompetent Beneficiary, then the Administrator may direct that such distribution be paid to the legal guardian, or if none in the case of a minor Beneficiary, to a parent of such Beneficiary or a responsible adult with whom the Beneficiary maintains residence, or to the custodian for such Beneficiary sunderunder the Uniform Gift to Minors Act or Gift to Minors Act, if such is permitted by the laws of the state in which said Beneficiary resides. Such a payment to the legal guardian, custodian or parent of a minor Beneficiary shall fully discharge the Trustee, Employer, and Plan from further liability on account thereof.

40

5.11.    LOCATION OF PARTICIPANT OR BENEFICIARY UNKNOWN

In the event that all, or any portion, of the distribution payable to a Participant or Beneficiary hereunder shall, at the later of the Participant's attainment of age 62 or Normal Retirement Age, remain unpaid solely by reason of the inability of the Administrator, after sending a registered letter, return receipt requested, to the last known address, and after further diligent effort, to ascertain the whereabouts of such Participant or Beneficiary, the amount so distributable shall be forfeited and shall be used to reduce the cost of the Plan. Notwithstanding the foregoing, effective July 1, 2001, or if later, the adoption date of this amendment and restatement, if the value of a Participant's Vested benefit derived from Employer and Employee contributions does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997), then the amount distributable may, in the sole discretion of the Administrator, either be treated as a forfeiture, or be paid directly to an. individual retirement account described in Code Section 408(a) or an individual retirement annuity described in Code Section 408(b) at the time it is determined that the whereabouts of the Participant or the Participant's Beneficiary cannot be ascertained. In the event a Participant or Beneficiary is located subsequent to the benefit being forfeited, such benefit shall be restored unadjusted for earnings or losses. However, regardless of the preceding, a benefit which is lost by reason of escheat under applicable state law is ~~net~~not treated as a forfeiture for purposes of this Section ~~nor~~or as an impermissible forfeiture under the Code.

5.12.    EFFECT OF SOCIAL SECURITY ACT

Benefits being paid to a Participant or Beneficiary under the terms of the Plan may not be decreased by reason of any post-separation Social Security benefit increases or by the increase of the Social Security wage base under Title II of the Social Security Act. Benefits to which a Former Participant has a Vested interest may not be decreased by reason of an increase in a benefit level or wage base under Title ~~III~~II of the Social Security Act.

5.13.    QUALIFIED DOMESTIC RELATIONS ORDER DISTRIBUTION

All rights and benefits, including elections, provided to a Participant in this Plan shall be subject to the rights afforded to any "alternate payee" under a "qualified domestic relations order." Furthermore, a distribution to an "alternate payee" shall be permitted if such distribution is authorized by a "qualified domestic relations order," even if the affected Participant has not separated from service mid has not reached the Earliest Retirement Age. For the purposes of this Section, "alternate payee" and "qualified domestic relations order" shall have the meaning set forth under Code Section 414(p).

5.14.    LIMITATION OF BENEFITS ON TERMINATION

(a)        Benefits distributed. to any of the twenty-five (25) Highly Compensated Participants with the greatest compensation in the current or prior year are restricted such that the monthly payments are no greater than an amount equal to the monthly payment that would be made on behalf of such individual under a straight life annuity that is the Actuarial Equivalent of the sum of the individual's Accrued Benefit the individual's other benefits under the Plan (other than a social security supplement within the meaning of Regulation

41

068902.1001

Section 1.411(a)-7(c)(4)(ii)), and the amount the individual is entitled to receive under a Social Security supplement.  However, the limitation of this Section 5,145.14 shall not apply if:

> (1)    after payment of the benefit to an individual described above, the value of Plan assets equals or exceeds one-hundred-ten percent (110%) of the value of current liabilities, as defined in Code Section 412(1)(7);

> (2)    the value of the benefits for an individual described above is less than 1 percent of the value of current liabilities before distribution; or

> (3)    the value of the benefits payable under the Plan to an individual described above does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997).

> (b)    For purposes of this Section, benefit includes any periodic income, any withdrawal values payable to a living Participant, and any death benefits not provided for by insurance on the individual's life.

> (c)    An individual's otherwise restricted benefit may be distributed, in full to the affected individual it prior to receipt of the restricted amount, the individual enters into a written agreement with the Administrator to secure repayment to the Plan of the restricted amount.  The restricted amount is the excess of the amounts distributed to the individual (accumulated with reasonable interest) over the amounts that could have been distributed to the individual under the straight life annuity described above (accumulated with reasonable interest).  The individual may secure repayment of the restricted amount upon distribution by:

> (1)    entering into an agreement for promptly depositing in escrow with an acceptable depositary, property having a fair market value equal to at least one-hundred-twenty-five percent (125%) of the restricted amount;

> (2)    providing a bank letter of credit in an amount equal to at least one-hundred percent (100%) of the restricted amount; or

> (3)    posting a bond equal to at least one-hundred percent (100%) of the restricted amount.  The bond must be furnished by an insurance company, bonding company or other surety for federal bonds.

> (d)    The escrow arrangement may permit an individual to withdraw from escrow amounts in excess of one-hundred-twenty-five percent (125%) of the restricted amount.  If the market value of the property in an escrow account falls below one-hundred-ten percent (110%) of the remaining restricted amount, the individual must deposit additional property to bring the value of the property held by the depositary up to one-hundred-twenty-five percent (125%) of the restricted amount.  The escrow arrangement may provide that the individual has the right to receive any income from the property placed in escrow, subject to the individual's obligation to deposit additional property, as set forth in the preceding sentence.

> (e)    A surety or bank may release any liability on a bond or letter of credit in excess of one-hundred percent (100%) of the restricted amount.

YCST01:11002514.111002514.5    068902.1001

(f)    If the Administrator certifies to the depositary, surety or bank that the individual (or the individual's estate) is no longer obligated to repay any restricted amount, a depositary may deliver to the individual any property held under an escrow arrangement, and a surety or bank may release any liability on an individual's bond or letter of credit.

## ARTICLE VI
## CODE SECTION 415 LIMITATIONS

### 6.1.    ANNUAL BENEFIT

For purposes of this Article, effective with the first day of the first "limitation year" beginning after December 31, 1994, "annual benefit" means the benefit payable annually under the terms of the Plan (exclusive of any benefit not required to be considered for purposes of applying the limitations of Code Section 415 to the Plan) payable in the form of a straight life annuity with no ancillary benefits.  If the benefit under the Plan is payable in any other form, the "annual benefit" shall be adjusted to the equivalent of a straight life annuity pursuant to Section 6.3(c).  Notwithstanding the foregoing, with respect to the Code Section 415 limitations prior to the effective date of this Article VI, the Old Law Benefit shall be determined on the basis of Code Section 415(b)(2)(E) as in effect on December 7, 1994.

### 6.2.    MAXIMUM ANNUAL BENEFIT

(a)    Notwithstanding the foregoing and subject to the exceptions below, the maximum "annual benefit" payable to a Participant under this Plan in any "limitation year" shall equal the lesser of. (1) $90,000 payable as a straight life annuity, or (2) one hundred percent (100%) of the Participant's "415 Compensation" averaged over the three consecutive "limitation years" (or actual number of "limitation years" for Employees who have been employed for less than three consecutive "limitation years") during which the Employee had the greatest aggregate "415 Compensation" from the Employer.

(b)    For purposes of applying the limitations of Code Section 415, the "limitation year" shall be the Plan Year, all qualified plans maintained by the Employer must use the same "limitation year".  If the "limitation year" is amended to a different twelve (12) consecutive month period, the new "limitation year" must begin on a date within the "limitation year" in which the amendment is made.

(c)    Notwithstanding anything in this Article to the contrary, if the Plan was in existence on May 6, 1986, and had complied at all times with the requirements of Code Section 415, the maximum "annual benefit" for any individual who is a Participant as of the first day of the "limitation year" beginning after December 31, 1986, shall not be less than the "current accrued benefit."  "Current accrued benefit" shall mean a Participant's Accrued Benefit under the Plan, determined as if the Participant had separated from service as of the close of the last "limitation year" beginning before January 1, 1987, when expressed as an annual benefit within the meaning of Code Section 415(b)(2).  In determining the amount of a Participant's "current accrued benefit," the following shall be disregarded (1) any change in the terms and conditions of the Plan after May 5, 1986; and (2) any cost of living adjustment occurring after May 5, 1986.

068902.1001

(d)     The dollar limitation under Code Section 415(b)(1)(A) stated in paragraph (a)(1) above shall be adjusted annually as provided in Code Section 415(d) pursuant to the Regulations.  The adjusted limitation is effective as of January 1st of each calendar year and is applicable to "limitation years" ending with or within that calendar year.

(e)     The limitation stated in paragraph (a)(2) above for Participants who have separated from service with a non-forfeitable right to an Accrued Benefit shall be automatically adjusted by multiplying such limitation by the cost-of-living adjustment factor prescribed by the Secretary of the Treasury under Code Section 415(d) in such manner as the Secretary shall prescribe.  The adjusted limitation shall apply to "limitation years" ending with or within the calendar year of the date of the adjustment.

(f)     For the purpose of this Article, all qualified defined benefit plans (whether terminated or not) ever maintained by the Employer shall be treated as one defined benefit plan.

If a Participant is, or has ever been, a participant ha more than one defined benefit plan maintained by the Employer, the sum of the Participant's "annual benefits" from all such plans may not exceed the maximum "annual benefit" of this Section 6.2.  Where the Participant's Employer-provided benefits wider all defined benefit plans ever maintained by the Employer (determined as of the same age) would exceed the maximum "annual benefit" applicable at that age, the Employer will reduce the rate of accrual in this Plan to the extent necessary so that the total "annual benefit" payable at any time under such plans will not exceed the maximum "annual benefit".

(g)     For the purpose of this Article, if the Employer is a member of a controlled group of corporations, trades or businesses under common control (as defined by Code Section 1563(a) or Code Section 414(b) and (c) as modified by Code Section 415(h)) or is a member of an affiliated service group (as defined by Code Section 414(m)), all Employees of such Employers shall be considered to be employed by a single Employer.

(h)     For the purpose of this Article, if this Plan is a Code Section 413(c) plan, each Employer who maintains this Plan will be considered to be a single Employer.

(i)     Notwithstanding anything contained in this Article to the contrary, the limitations, adjustments and other requirements prescribed in this Article shall at all times comply with the provisions of Code Section 415 and the Regulations thereunder.

6.3.     ADJUSTMENTS TO ANNUAL BENEFIT AND LIMITATIONS

(a)     If the "annual benefit" begins before the Participant's Social Security Retirement Age, but on or after age 62, the $90,000 limitation shall be reduced by: (1) in the case of a Participant whose Social Security Retirement Age is 65, 5/9 of 1% for each month by which benefits commence before the month in which the Participant attains age 65, or (2) in the case of a Participant whose Social Security Retirement Age is greater than 65, 5/9 of 1% for each of the first 36 months and 5/12 of 1% for each additional month (up to 24) by which benefits commence before the month in which the Participant attains Social Security Retirement

068902.1001

Age. If the "annual benefit" begins before age 62, the $90,000 limitation shall be the actuarial equivalent of the Participant's limitation for benefits commencing at age 62, reduced for each month by which benefits commence before the month in which the Participant attains age 62.

In order to determine actuarial equivalence for this purpose, the lesser of the equivalent amount computed using the Plan interest rate and Plan mortality table (or other tabular factor) and the amount computed using five percent (5%) interest and the "Applicable Mortality Table" shall be used. For purposes of this Article, "Applicable Mortality Table" means the table prescribed by the Secretary of the Treasury. Such table shall be based on the prevailing commissioner's standard table (described in Code Section 807(d)(5)(A)) used to determine reserves for group annuity contracts issued on the date as of which the present value is being determined (without regard to any other subparagraph of Code Section 807(d)(5)). The mortality decrement shall be ignored to the extent that a forfeiture does not occur at death.

(b)     If the "annual benefit" begins after the Participant's Social Security Retirement Age the $90,000 limitation shall be increased so that it is the actuarial equivalent of the $90,000 limitation at the Participant's Social Security Retirement Age. In order to determine actuarial equivalence for this purpose, the lesser of the equivalent amount computed using the Plan interest rate and Plan mortality table (or other tabular factor) used for actuarial equivalence for late retirement benefits under the Plan and the equivalent annual amount computed using five percent (5%) and the "Applicable Mortality Table" shall be used. The mortality decrement shall be ignored to the extent that a forfeiture does not occur at death.

(c)     For purposes of adjusting the "annual benefit" to a straight life annuity, the equivalent "annual benefit" shall be the greater of the equivalent "annual benefit" computed using the Plan interest rate and Plan mortality table (or other tabular factor) and the equivalent "annual benefit" computed using five percent (5%) interest rate assumption and the "Applicable Mortality Table." if the "annual benefit" is paid in a form other than a non-decreasing life annuity payable for a period not less than the life of a Participant or, in the case of a Pre-Retirement Survivor Annuity, the life of the surviving spouse, the "Applicable Interest Rate" shall be substituted for five percent (5%) in the preceding sentence.

(d)     For purposes of Sections 6.1, 6.3(a) and 6.3(b), no adjustments under Code Section 415(d) shall be taken into account before the "limitation year" for which such adjustment first takes effect.

(e)     For purposes of Section 6.1, no actuarial adjustment to the benefit is required for (1) the value of a qualified joint and survivor annuity, (2) benefits that are not directly related to retirement benefits (such as a qualified disability benefit, pre-retirement death benefits, and post-retirement medical benefits), and (3) the value of post-retirement cost-of-living increases made in accordance with Code Section 415(d) and Regulation Section 1.415-3(c)(2)(iii). The "annual benefit" does not include any benefits attributable to Employee contributions or rollover contributions, or the assets transferred from a qualified plan that was not maintained by the Employer.

068902.1001

6.4.    ANNUAL BENEFIT NOT IN EXCESS OF $10,000

This Plan may pay an "annual benefit" to any Participant in excess of the Participant's maximum "annual benefit" if the "annual benefit" derived from Employer contributions under this Plan and all other defined benefit plans maintained by the Employer does not in the aggregate exceed $10,000 for the "limitation year" or for any prior "limitation year" and the Employer has not at any time maintained a defined contribution plan, a welfare benefit fund under which amounts attributable to post-retirement medical benefits are allocated to separate accounts of key employees (as defined in Code Section 419(A)(d)(3)), or an individual medical account in which the Participant participated.  For purposes of this paragraph, if this Plan provides for voluntary or mandatory Employee contributions, such contributions will not be considered a separate defined contribution plan maintained by the Employer.

6.5.    ~~PARHCIPATION~~PARTICIPATION OR SERVICE REDUCTIONS

If a Participant has less than ten (10) years of participation in the Plan at the time the Participant begins to receive benefits under the Plan, the limitations in~~:~~ Sections 6.2(a)(1) and 6.3 shall be reduced by multiplying such limitations by a fraction (a) the numerator of which is the number of years of participation (or part thereof) in the Plan and (b) the denominator of which is ten (10), provided, however, that said fraction shall in no event be less than 1/10th.  The limitations of Sections 6.2(a)(2) and 6.4 shall be reduced in the same manner except the preceding sentence shall be applied with respect to years of service with the Employer rather than years of participation in~~:~~ the Plan.

6.6.    ELIMINATION OF MULTIPLE PLAN REDUCTION

Effective as of the first day of the first "limitation year" beginning on or after January 1, 2000 (the "effective date"), and notwithstanding any other provision of the Plan, the Accrued Benefit for any Participant shall be determined without applying the limitations of Code Section 415(e) as in effect on the day immediately prior to the "effective date."

**ARTICLE VII**
**TRUSTEE**

7.1.    BASIC RESPONSIBILITIES OF THE TRUSTEE

(a)    The Trustee shall have the following categories of responsibilities:

(1)    Consistent with the "funding policy and method" determined by the Employer, to invest, manage, and control the Plan assets subject, however, to the direction of the Employer or an Investment Manager appointed by the Employer or any agent of the Employer;

(2)    At the direction of the Administrator, to pay benefits required under the Plan to be paid to Participants, or, in the event of their death, to their Beneficiaries; and

(3)　　To maintain records of receipts and disbursements and furnish to the Employer and/or Administrator for each Plan Year a written annual report pursuant to Section 7.6.

(b)　　In the event that the Trustee shall be directed by the Employer, or an Investment Manager or other agent appointed by the Employer with respect to the investment of any or all Plan assets, the Trustee shall have no liability with respect to the investment of such assets, but shall be responsible only to execute such investment instructions as so directed.

(1)　　The Trustee shall be entitled to rely fully on the written (or other form acceptable to the Administrator and the Trustee, including, but not limited to, voice recorded) instructions of the Employer, or any Fiduciary or non-fiduciary agent of the Employer, in the discharge of such duties, and shall not be liable for any loss or other liability, resulting from such direction (or lack of direction) of the investment of any part of the Plan assets.

(2)　　The Trustee may delegate the duty of executing such instructions to any non-fiduciary agent, which may be an affiliate of the Trustee or ~~any~~any Plan representative.

(c)　　If there shall be more than one Trustee, they shall act by a majority of their number, but may authorize one or more of them to sign papers on their behalf.

7.2.　　INVESTMENT POWERS AND DUTIES OF THE TRUSTEE

(a)　　The Trustee shall invest and reinvest the Trust Fund to keep the Trust Fund invested without distinction between principal and income and in such securities or property, real or personal, wherever situated, as the Trustee shall deem advisable, including, but not limited to, stocks, common or preferred, open-end or closed-end mutual funds, bonds and other evidences of indebtedness or ownership, and real estate or any interest therein. The Trustee shall at all times in making investments of the ~~trust~~Trust Fund consider, among other factors, the short and long-term financial needs of the Plan on the basis of information furnished by the Employer. In making such investments, the Trustee shall not be restricted to securities or other property of the character expressly authorized by the applicable law for trust investments; however, the Trustee shall give due regard to any limitations imposed by the Code ~~or the Act~~ so that at all times the Plan may qualify as a qualified Pension Plan and Trust.

(b)　　The Trustee may employ a bank or trust company pursuant to the terms of its usual and customary bank agency agreement, under which the duties of such bank or trust company shall be of a custodial, clerical and record-keeping nature.

(c)　　The Trustee may transfer to a common, collective, pooled trust fund or money market fund maintained by any corporate Trustee or affiliate thereof hereunder, all or such part of the Trust Fund as the Trustee may deem advisable, and such part or all of the Trust Fund so transferred shall be subject to all the terms and provisions of the common, collective, pooled trust fund or money market fund which contemplate the commingling for investment purposes of such trust assets with trust assets of other trusts. The Trustee may transfer any part of the Trust Fund intended for temporary investment of cash balances to a money market fund ~~maintained by Mellon Bank, NA. or the financial institution to which it is~~

47

068902.1001

entrusted by the Trustee. The Trustee may withdraw from such common, collective, pooled trust fund or money market fund all or such part of the Trust Fund as the Trustee may deem advisable.

### 7.3.    OTHER POWERS OF THE TRUSTEE

The Trustee, in addition to all powers and authorities under common law, statutory authority, including the Act, and other provisions of the Plan, shall have the following powers and authorities, to be exercised in the Trustee's sole discretion:

(a)    To purchase, or subscribe for, any securities or other property and to retain the same. In conjunction with the purchase of securities, margin accounts may be opened and maintained;

(b)    To sell, exchange, convey, transfer, grant options to purchase, or otherwise dispose of any securities or other property held, by the Trustee, by private contract or at public auction. No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition, with or without advertisement;

(c)    To vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other property. However, the Trustee shall not vote proxies relating to securities for which it has not been assigned full investment management responsibilities. In those cases where another party has such investment authority or discretion, the Trustee will deliver all proxies to said party who will then have full responsibility for voting those proxies;

(d)    To cause any securities or other property to be registered in the Trustee's own name, in the name of one or more of the Trustee's nominees, in a clearing corporation, in a depository, or in book entry form or in bearer form, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust Fund;

(e)    To borrow or raise money for the purposes of the Plan in such amount, and upon such terms and conditions, as the Trustee shall deem advisable; and for any sum so borrowed, to issue a promissory note as Trustee, and to secure the repayment thereof by pledging all, or any part, of the Trust Fund; and no person lending money to the Trustee shall be bound to see to the application of the money lent or to inquire into the validity, expediency, or propriety of any borrowing;

(f)    To keep such portion of the Trust Fund in cash or cash balances as the Trustee may, from time to time, deem to be in the best interests of the Plan, without liability for interest thereon;

48

(g)     To accept and retain for such time as the Trustee may deem advisable any securities or other property received or acquired as Trustee hereunder, whether or not such securities or other property would normally be purchased as investments hereunder;

(h)     To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(i)     To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Plan, to commence or defend suits or legal or administrative proceedings, and to represent the Plan in all suits and legal and administrative proceedings;

(j)     To employ suitable agents and counsel and to pay their reasonable expenses and compensation, and such agent or counsel may or may not be agent or counsel for the Employer;

(k)     To apply for and procure from responsible insurance companies, to be selected by the Administrator, as an investment of the Trust Fund such annuity, or other Contracts (on the life of any Participant) as the Administrator shall deem proper; to exercise, at any time or from time to time, whatever rights and privileges may be granted under such annuity, or other Contracts; to collect, receive, and settle for the proceeds of all such annuity or other Contracts as and when entitled to do so under the provisions thereof;

(l)     To invest funds of the Trust in time deposits or savings accounts bearing a reasonable rate of interest or in cash or cash balances without liability for interest thereon, including the specific authority to invest in any type of deposit of the Trustee (or of a financial institution related to a Trustee);

(m)     To invest in Treasury Bills and other forms of United States government obligations;

(n)     To invest in shares of investment companies registered under the Investment Company Act of 1940, including any money market fund advised, by or offered through Mellon Bank, NA, or the financial institution to which it is entrusted by the Trustee;

(o)     To sell, purchase and acquire put or call options if the options are traded on and purchased through a national securities exchange registered under the Securities Exchange Act of 1934, as amended, or, if the options axe not traded on a national securities exchange, are guaranteed by a member fum of the New York Stock Exchange regardless of whether such options are covered;

(p)     To deposit monies in federally insured savings accounts or certificates of deposit in banks or savings and loan associations including the specific authority to make deposit into any savings accounts or certificates of deposit of the Trustee (or a financial institution related to the Trustee);

(q)     To pool all or any of the Trust Fund, from time to time, with assets belonging to any other qualified employee pension benefit trust created by the Employer or any Affiliated Employer, and to commingle such assets and make joint or common investments and carry joint accounts on behalf of this Plan and Trust and such other trust or trusts, allocating undivided shares or interests in such investments or accounts or any pooled assets of the two or more trusts in accordance with their respective interests;

(r)     To do all such acts and exercise all such rights and privileges, although not specifically mentioned herein, as the Trustee may deem necessary to carry out the purposes of the Plan.

## 7.4.    DUTIES OF THE TRUSTEE REGARDING PAYMENTS

At the direction of the Administrator, the Trustee shall, from time to time, in accordance with the terms of the Plan, make payments out of the Trust Fund. The Trustee shall not be responsible in any way for the application of such payments.

## 7.5.    TRUSTEE'S COMPENSATION AND EXPENSES AND TAXES

The Trustee shall be paid such reasonable compensation as set forth in the Trustee's fee schedule (if the Trustee has such a schedule) or as agreed upon in writing by the Employer and the Trustee. However, an individual serving as Trustee who already receives full-time pay from the Employer shall not receive compensation from the Plan. In addition, the Trustee shall be reimbursed for any reasonable expenses, including reasonable counsel fees incurred by it as Trustee. Such compensation and expenses shall be paid from the Trust Fund unless paid or advanced by the Employer. All taxes of any kind whatsoever that may be levied or assessed under existing or future laws upon, or in respect of the Trust Fund or the income thereof, shall be paid from the Trust Fund.

## 7.6.    ANNUAL REPORT OF THE TRUSTEE

(a)     Within a reasonable period of time after the later of the Anniversary Date or receipt of the Employer contribution for each Plan Year, the Trustee, or its agent, shall furnish to the Employer and Administrator a written statement of account with respect to the Plan Year for which such contribution was made setting forth:

(1)     the net income, or loss, of the Trust Fund;

(2)     the gains, or losses, realized by the Trust Fund upon sales or other disposition of the assets;

(3)     the increase, or decrease, in the value of the Trust Fund;

(4)     all payments and distributions made from the Trust Fund; and

50

(5)    such further information as the Trustee and/or Administrator deems appropriate.

(b)    The Employer, promptly upon its receipt of each such statement of account, shall acknowledge receipt thereof in writing and advise the Trustee and/or Administrator of its approval or disapproval thereof.  Failure by the Employer to disapprove any such statement of account within thirty (30) days after its receipt thereof shall be deemed an approval thereof.  The approval by the Employer of any statement of account shall be binding on the Employer and the Trustee as to all matters contained in the statement to the same extent as if the account of the Trustee had been settled by judgment or decree in an action for a judicial settlement of its account in a court of competent jurisdiction in which the Trustee, the Employer and all persons having or claiming an interest in the Plan were parties.  However, nothing contained in this Section shall deprive the Trustee of its right to have its accounts judicially settled if the Trustee so desires.

## 7.7.    AUDIT

(a)    If an audit of the Plan's records shall be required by the Act and the regulations thereunder for any Plan Year, the Administrator shall direct the Trustee to engage on behalf of all Participants an independent qualified public accountant for that purpose.  Such accountant shall, after an audit of the books and records of the Plan in accordance with generally accepted auditing standards, within a reasonable period after the close of the Plan Year, furnish to the Administrator and the Trustee a report of the audit setting forth the accountant's opinion as to whether any statements, schedules or lists that are required by Act Section 103 or the Secretary of Labor to be filed with the Plan's annual report, are presented fairly in conformity with generally accepted accounting principles applied consistently.

(b)    All auditing and accounting fees shall be an expense of and may, at the election of the Employer, be paid from the Trust Fund.

(c)    If some or all of the information necessary to enable the Administrator to comply with Act Section 103 is maintained by a bank, insurance company, or similar institution, regulated, supervised, and subject to periodic examination by a state or federal agency, then it shall transmit and certify the accuracy of that information to the Administrator as provided in Act Section 103(b) within one hundred twenty (120) days after the end of the Plan Year or such other date as may be prescribed under regulations of the Secretary of Labor.

## 7.8.    RESIGNATION, REMOVAL AND SUCCESSION OF TRUSTEE

(a)    Unless otherwise agreed to by both the Trustee and the Employer, a Trustee may resign at any time by delivering to the Employer, at least thirty (30) days before its effective date, a written notice of resignation.

(b)    Unless otherwise agreed to by both the Trustee and the Employer, the Employer may remove a Trustee at any time by delivering to the Trustee, at least thirty (30) days before its effective date, a written notice of such Trustee's removal.

51

(c)     Upon the death, resignation, incapacity, or removal of any Trustee, a successor may be appointed by the Employer; and such successor, upon accepting such appointment in writing and delivering same to the Employer, shall, without further act, become vested with all the powers and responsibilities of the predecessor as if such successor had been originally named as a Trustee herein.  Until such a successor is appointed, the remaining Trustee or Trustees shall have full authority to act under the terms of the Plan.

(d)     The Employer may designate one or more successors prior to the death, resignation, incapacity, or removal of a Trustee.  In the event a successor is so designated by the Employer and accepts such designation, the successor shall, without further act, become vested with all the powers and responsibilities of the predecessor as if such successor had been originally named as Trustee herein immediately upon the death, resignation, incapacity, or removal of the predecessor.

(e)     Whenever any Trustee hereunder ceases to serve as such, the Trustee shall furnish to the Employer and Administrator a written statement of account with respect to the portion of the Plan Year during which the individual or entity served as Trustee. This statement shall be either (i) included as part of the annual statement of account for the Plan Year required under Section 7.6 or (ii) set forth in a special statement.  Any such special statement of account should be rendered to the Employer no later than the due date of the annual statement of account for the Plan Year.  The procedures set forth in Section 7.6 for the approval by the Employer of annual statements of account shall apply to any special statement of account rendered hereunder and approval by the Employer of any such special statement in the manner provided in Section 7.6 shall have the same effect upon the statement as the Employer's approval of an annual statement of account.  No successor to the Trustee shall have any duty or responsibility to investigate the acts or transactions of any predecessor who has rendered all statements of account required by Section 7.6 and this subparagraph.

7.9.    TRANSFER OF INTEREST

Notwithstanding any other provision contained in this Plan, the Trustee at the direction of the Administrator shall transfer the Vested interest, if any, of a Participant to another trust forming part of a pension, profit sharing or stock bonus plan maintained by such Participant's new employer and represented by said employer in writing as meeting the requirements of Code Section 401(a), provided that the trust to which such transfers are made permits the transfer to be made.

7.10.    TRUSTEE INDEMNIFICATION

The Employer agrees to indemnify and hold harmless the Trustee against any and all claims, losses, damages, expenses and liabilities the Trustee may incur in the exercise and performance of the Trustee's power and duties hereunder, unless the same are determined to be due to gross negligence or willful misconduct,

7.11.  DIRECT ROLLOVER

(a)      Notwithstanding any provision of the Plan to the contrary that would otherwise limit a "distributee's" election under this Section, a "distributee" may elect, at the time and in the manner prescribed by the Administrator, to have any portion of an "eligible rollover distribution" that is equal to at least $500 paid directly to an "eligible retirement plan" specified by the "distributee" in a "direct rollover."

(b)      For purposes of this Section the following definitions shall apply:

(1)      An "eligible rollover distribution" is any distribution of all or any portion of the balance to the credit of the "distributee," except that an "eligible rollover distribution" does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the "distributee" or the joint lives (or joint life expectancies) of the "distributee" and the "distributee's" designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Code Section 401(a)(9); the portion of any other distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); any hardship distribution described in Code Section 401(k)(2)(B)(i)(IV) made after December 31, 1999; and any other distribution that is reasonably expected to total less than $200 during a year.

(2)      An "eligible retirement plan" is an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Code Section 403(a), or a qualified trust described in Code Section 401(a), that accepts the "distributee's" "eligible rollover distribution." However, in the case of an "eligible rollover distribution" to the surviving spouse, an "eligible retirement plan" is an individual retirement account or individual retirement annuity.

(3)      A "distributee" includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p), are distributed with regard to the interest of the spouse or former spouse.

(4)      A "direct rollover" is a payment by the Plan to the "eligible retirement plan" specified by the "distributee."

**ARTICLE VIII**
**PLAN AMENDMENT**

8.1.  AMENDMENT

(a)      The Employer shall have the right at any time to amend this Plan, subject to the limitations of this Section.  However, any amendment which affects the rights, duties or responsibilities of the Trustee or Administrator may only be made with the Trustee's or Administrator's written consent .  Any such amendment shall become effective as provided

068902.1001

therein upon its execution. The Trustee shall not be required to execute any such amendment unless the amendment affects the duties of the Trustee hereunder.

(b)    No amendment to the Plan shall be effective if it authorizes or permits any part of the Trust Fund (other than such part as is required to pay taxes and administration expenses) to be used for or diverted to any purpose other than for the exclusive benefit of the Participants or their Beneficiaries or estates; or causes any reduction in the Accrued Benefit of any Participant (except to the extent permitted under Code Section 412(c)(8)); or causes or permits any portion of the Trust Fund to revert to or become property of the Employer.

(c)    Except as permitted by Regulations, no Plan, amendment or transaction having the effect of a Plan amendment (such as a merger, plan transfer or similar transaction) shall be effective to the extent it eliminates or reduces any Participant's Accrued Benefit or Vested percentage calculated as of the later of the adoption date or the effective date of the amendment.

(d)    ~~If this Plan is amended and an effect of such amendment is to increase current liability (as defined in Code Section 401(a)(29)(E)) under the Plan for a Plan Year, and. the funded current liability percentage of the Plan for the Plan Year in which the amendment takes effect is less than sixty percent (60%), including the amount of the unfunded current liability under the Plan attributable to the amendment, the amendment shall not take effect until the Employer (or any member of a controlled group which includes the Employer) provides security to the Plan. The form and amount of such security shall satisfy the requirements of Code Section 401(a)(29)(B) and (C). Such security may be released provided the requirements of Code Section 401(a)(29)(D) are satisfied.~~

## ARTICLE IX
## PLAN TERMINATION

### 9.1.    TERMINATION

(1)    ~~(a) The~~If the Plan is fully funded on a termination basis, the Employer shall have the right to terminate the Plan by delivering to the Trustee and Administrator written notice of such termination. Upon ~~any termination (full or partial), all amounts shall be allocated in accordance with the provisions hereof and~~ the Accrued Benefit, ~~to the extent funded as of such date,~~ of each affected Participant shall become fully Vested and shall not thereafter be subject to forfeiture. However, Participants who were not fully Vested at the time they received a complete distribution of their benefits prior to the date of termination, shall not become entitled to any additional benefits on account of Plan termination. ~~The preceding sentence does not apply to Participants affected by a partial termination by operation of law.~~ Upon full termination~~.~~ of the Plan, the Employer shall direct the distribution of the assets in the Trust Fund to the Participants in a manner which is consistent with Section 5.7. In such case, the Trustee shall distribute the assets to the remaining Participants in the Plan and to retired Participants in cash or through the purchase of irrevocable deferred commitments from an insurer, subject to provision for expenses of administration or liquidation. ~~Such distributions shall be allocated in the following order to the extent of the sufficiency of such assets, basing~~

~~such allocation on the Accrued Benefit for each such Participant at the date of termination of the Plan;~~

~~(1)      to provide pensions to retired Participants who have retired under the Plan prior to its termination without reference to the order of retirement;~~

~~(2)      to provide Normal Retirement Benefits to Participants who have reached their Normal Retirement Dates but have not retired on the date of termination, without reference to the order in which they shall have reached their Normal Retirement Date;~~

~~(3)      to provide Normal Retirement Benefits to Participants who have not yet reached their Normal Retirement Date on the date of termination, without reference to the order in which they will reach their Normal Retirement Date. Such benefits will be based upon Accrued Benefits as of the date of termination.~~ The balance, if any, of the assets ~~due to erroneous actuarial computation~~ held by the Trust Fund after such allocation shall be returned to the Employer, but only after the satisfaction of all liabilities with respect to Participants, Beneficiaries and pensions under the Plan.

### 9.2.    LIMITATION OF BENEFITS ON PLAN TERMINATION

In the event of Plan termination, the benefit of any Highly Compensated Participant or any highly compensated former employee shall be limited to a benefit that is nondiscriminatory under Code Section 401(a)(4).

### ARTICLE X
### MERGER, CONSOLIDATION OR TRANSFER OF ASSETS

### 10.1.    REQUIREMENTS

Before this Plan can be merged or consolidated with any other qualified plan or its assets or liabilities transferred to any other qualified, plan, the Administrator must secure (and file with the Secretary of Treasury at least thirty (30) days beforehand) a certification from a government-enrolled actuary that the benefits which would be received by a Participant of this Plan, in the event of a termination of the Plan immediately after such transfer, merger or consolidation, are at least equal to the benefits the Participant would have received if the Plan had terminated immediately before the transfer, merger or consolidation, and such transfer, merger or consolidation does not otherwise result in the elimination or reduction of any Participant's Accrued Benefit.

### ARTICLE XI
### TOP HEAVY

### 11.1.    TOP HEAVY PLAN REQUIREMENTS

For any Top Heavy Plan Year, the Plan shall provide the special vesting requirements of Code Section 416(b) pursuant to Section 5.6 of the Plan and the special minimum benefit requirements of Code Section 416(c) pursuant to Section 5.2 of the Plan.

## 11.2.    DETERMINATION OF TOP HEAVY STATUS

(a)    This Plan shall be a Top Heavy Plan for any Plan Year in which, as of the Determination Date, (1) the Present Value of Accrued Benefits of Key Employees and (2) the sum of the Aggregate Accounts of Key Employees under this Plan and all plans of an. Aggregation Group, exceeds sixty percent (60%) of the Present Value of Accrued Benefits and the Aggregate Accounts of all Key and Non-Key Employees under this Plan and all plans of an Aggregation Group.

If any Participant is a Non-Key Employee for any Plan Year, but such Participant was a Key Employee for any prior Plan Year, such Participant's Present Value of Accrued Benefit and/or Aggregate Account balance shall not be taken into account for purposes of determining whether this Plan is a Top Heavy Plan (or whether any Aggregation Group which includes this Plan is a Top Heavy Group).  In addition, if a Participant or Former Participant has not performed any services for any Employer maintaining the Plan at any time during the five year period ending on the Determination Date, any accrued benefit for such Participant or Former Participant shall not be taken into account for the purposes of determining whether this Plan is a Top Heavy Plan.

(b)    Aggregate Account: A Participant's Aggregate Account as of the Determination Date shall be determined under applicable provisions of the defined contribution plan used in determining Top Heavy Plan status.

(c)    "Aggregation Group" means either a Required Aggregation Group or a Permissive Aggregation Group as hereinafter determined.

(1)    Required Aggregation Group:  In determining a Required Aggregation Group hereunder, each plan of the Employer in which a Key Employee is a participant in the Plan Year containing the Determination Date or any of the four preceding Plan Years, and each other plan of the Employer which enables any plan in which a Key Employee participates to meet the requirements of Code Sections 401(a)(4) or 410, will be required to be aggregated.  Such group shall be known as a Required Aggregation Group.

In the case of a Required Aggregation Group, each plan in the group will be considered a Top Heavy Plan if the Required Aggregation Group is a Top Heavy Group.  No plan in the Required Aggregation Group will be considered a Top Heavy Plan if the Required Aggregation Group is not a Top Heavy Group.

(2)    Permissive Aggregation Group: The Employer may also include any other plan not required to be included in the Required Aggregation Group, provided the resulting group, taken as a whole, would continue to satisfy the provisions of Code Sections 401(a)(4) and 410.  Such group shall be known as a Permissive Aggregation Group.

In the case of a Permissive Aggregation Group, only a plan that is part of the Required Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is a Top Heavy Group. No plan in the Permissive Aggregation Group will be considered a Top Heavy Plan if the Permissive Aggregation Group is not a Top Heavy Group.

YCST01:11002514.11002514.5                                                                                            068902.1001

(3)    Only those plans of the Employer in which the Determination Dates fall within the same calendar year shall be aggregated in order to determine whether such plans are Top Heavy Plans.

(4)    An Aggregation Group shall include any terminated plan of the Employer if it was maintained within the last five (5) years ending on the Determination Date.

(d)    "Determination Date" means (a) the last day of the preceding Plan Year, or (b) in the case of the first Plan Year, the last day of such Plan Year.

(e)    Present Value of Accrued Benefit:  In the case of a defined benefit plan, a Participant's Present Value of Accrued Benefit shall be determined:

(1)    in the case of a Participant other than a Key Employee, using the single accrual method used for all plans of the Employer and Affiliated Employers, or if no such single method exists, using a method which results in benefits accruing not more rapidly than the slowest accrual rate permitted under Code Section 411(b)(1)(C).

(2)    as of the most recent "actuarial valuation date," which is the most recent valuation date within a twelve (12) month period ending on the Determination Date.

(3)    for the first Plan Year, as if (a) the Participant terminated service as of the Determination Date; or (b) the Participant terminated service as of the actuarial valuation date, but taking into account the estimated Accrued Benefits as of the Determination Date.

(4)    for the second Plan Year, the Accrued Benefit taken into account for a current Participant must not be less than the Accrued Benefit taken into account for the first Plan Year unless the difference is attributable to using an estimate of the Accrued Benefit as of the Determination Date for the first Plan Year and using the actual Accrued Benefit for the second Plan Year.

(5)    for any other Plan Year, as if the Participant terminated service as of the actuarial valuation date.

(6)    the actuarial valuation date must be the same date used for computing the defined benefit plan minimum funding costs, regardless of whether a valuation is performed that Plan Year.

(7)    by not taking into account proportional subsidies.

(8)    by taking into account non-proportional subsidies.

(f)    (f)    The calculation of a Participant's Present Value of Accrued Benefit as of a Determination Date shall be the sum of:

57

(1)    the Present Value of Accrued Benefit using the actuarial assumptions of Section 1.3;1.2, which assumptions shall be identical for all defined benefit plans being tested for Top Heavy Plan status.

(2)    any Plan distributions made within the Plan Year that includes the Determination Date or within the four (4) preceding Plan Years. However, in the case of distributions made after the valuation date and prior to the Determination Date, such distributions are not included as distributions for top heavy purposes to the extent that such distributions are already included in the Participant's Present Value of Accrued Benefit as of the valuation date. Notwithstanding anything herein to the contrary, all distributions, including distributions made prior to January 1, 1984, and distributions under a terminated plan which if it had not been terminated would have been required to be included in. an Aggregation Group, will be counted. Further, benefits paid on account of death, to the extent such benefits do not exceed the Present Value of Accrued Benefits existing immediately prior to death, shall be treated as distributions for the purposes of this paragraph.

(3)    any Employee contributions, whether voluntary or mandatory. However, amounts attributable to tax deductible Qualified Voluntary Employee Contributions shall not be considered to be a part of the Participant's Present Value of Accrued Benefit.

(4)    with respect to unrelated rollovers and plan-to-plan transfers (ones which are both initiated by the Employee and made from a plan maintained by one employer to a plan maintained by another employer), if this Plan provides the rollovers or plan-to-plan transfers, it shall always consider such rollovers or plan-to-plan transfers as a distribution for the purposes of this Section. If this Plan is the plan accepting such rollover or plan-to-plan transfers, it shall not consider such rollovers or plan-to-plan transfers accepted after December 31, 1983, as part of the Participant's Present Value of Accrued Benefit. However, rollovers or plan-to-plan transfers accepted prior to January 1, 1984 shall be considered as part of the Participant's Present Value of Accrued Benefit.

(5)    with respect to related rollovers and plan-to-plan transfers (ones either not initiated by the Employee or made to a plan maintained by the same employer), if this Plan provides the rollovers or plan-to-plan transfers, it shall not be counted as a distribution for purposes of this Section. If this Plan is the plan accepting such rollovers or plan-to-plan transfers, it shall consider such rollovers or plan-to-plan transfers as part of the Participant's Present Value of Accrued Benefit, irrespective of the date on which such rollovers or plan-to-plan transfers are accepted.

(6)    for the purposes of determining whether two employers are to be treated as the same employer in (4) and (5) above, all employers aggregated under Code Section 414(b), (c), (m) or (o) are treated as the same employer.

(g)    "Top Heavy Group" means an Aggregation Group in which, as of the Determination Date, the sum of:

YCST01:11002514.111002514.5                                                                                            068902.1001

(1)     the Present Value of Accrued Benefits of Key Employees under all defined benefit plans included in the group, and

(2)     the Aggregate Accounts of Key Employees under all defined contribution plans included in the group, exceeds sixty percent (60%) of a similar sum determined for all Participants.

~~exceeds sixty percent (60%) of a similar sum determined for all Participants.~~

## ARTICLE XII
## MISCELLANEOUS

### 12.1.   PARTICIPANT'S RIGHTS

This Plan shall not be deemed to constitute a contract between the Employer and any Participant or to be a consideration or an inducement for the employment of any Participant or Employee; however, Participants are intended beneficiaries of this Plan. Nothing contained in this Plan shall be deemed to give any Participant or Employee the right to be retained in the service of the Employer or to interfere with the right of the Employer to discharge any Participant or Employee at any time regardless of the effect which such discharge shall have upon the Employee as a Participant of this Plan.

### 12.2.   ALIENATION

(a)     Subject to the exceptions provided below, and as otherwise permitted by the Code ~~and the Act~~, no benefit which shall be payable out of the Trust Fund to any person (including a Participant or the Participant's Beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as may be required by law.

(b)     Subsection (a) shall not apply to a "qualified domestic relations order" defined in Code Section 414(p), and those other domestic relations orders permitted to be so treated by the Administrator under the provisions of the Retirement Equity Act of 1984. The Administrator shall establish a written procedure to determine the qualified status of domestic relations orders and to administer distributions under ~~such.~~ qualified orders. Further, to the extent provided under a "qualified domestic relations order," a former spouse of a Participant shall be treated as the spouse or surviving spouse for all purposes under the Plan.

(c)     Subsection (a) shall not apply to an offset to a Participant's accrued benefit against an amount that the Participant is ordered or required to pay the Plan with respect to a judgment, order, or decree issued, or a settlement entered into, on or after August 5, 1997, in accordance with Code Sections 401(a)(13)(C) and (D). In a case in which the survivor annuity

requirements of Code Section 401(a)(11) apply with respect to distributions from the Plan to the Participant, if the Participant has a spouse at the time at which the offset is to be made:

(1)    either such spouse has consented in writing to such offset and such consent is witnessed by a notary public or representative of the Plan (or it is established to the satisfaction of a Plan representative that such consent may not be obtained by reason of circumstances described in Code Section 417(a)(2)(3)), or an election to waive the right of the spouse to either a qualified joint and survivor annuity or a qualified pre-retirement survivor annuity is in effect in accordance with the requirements of Code Section 417(a),

(2)    such spouse is ordered or required in such judgment, order, decree or settlement to pay an amount to the Plan in connection with a violation of fiduciary duties, or

(3)    in such judgment, order, decree or settlement, such spouse retains the right to receive the survivor annuity under a qualified joint and survivor annuity provided pursuant to Code Section 401(a)(11)(A)(i) and under a qualified pre-retirement survivor annuity provided pursuant to Code Section 401(a)(11)(A)(ii).

## 12.3.    CONSTRUCTION OF PLAN

This Plan and Trust shall be construed and enforced according to the Code, the Act and the laws of the State of Delaware, other than its laws respecting choice of law, to the extent not pre-empted by the Act.

## 12.4.    GENDER AND NUMBER

Wherever any words are used herein in the masculine, feminine or neuter gender, they shall be construed as though they were also used in another gender in all cases where they would so apply, and whenever any words are used herein in the singular or plural form, they shall be construed as though they were also used in the other form in all cases where they would so apply.

## 12.5.    LEGAL ACTION

In the event any claim, suit, or proceeding is brought regarding the Trust and/or Plan established hereunder to which the Trustee, the Employer or the Administrator may be a party, and such claim, suit, or proceeding is resolved in favor of the Trustee, the Employer or the Administrator, they shall be entitled to be reimbursed from the Trust Fund for any and all costs, attorney's fees, and other expenses pertaining thereto incurred by them for which they shall have become liable.

## 12.6.    PROHIBITION AGAINST DIVERSION OF FUNDS

(a)    Except as provided below and in the case of an excessive contribution made under a mistake of fact and as otherwise specifically permitted by law, it shall be impossible by operation of the Plan or of the Trust, by termination of either, by power of revocation or amendment, by the happening of any contingency, by collateral assignment or by

60

any other means, for any part of the corpus or income of any Trust Fund maintained pursuant to the Plan or any funds contributed thereto to be used for, or diverted to, purposes other than the exclusive benefit of Participants, Former Participants, or their Beneficiaries.

~~(b)    In the event the Employer shall make an excessive contribution under a mistake of fact pursuant to Act Section 403(c)(2)(A), the Employer may demand repayment of such excessive contribution at any time within one (1) year following the time of payment and the Trustees shall return such amount to the Employer within, the one (1) year period.  Earnings of the Plan attributable to the contributions may not be returned to the Employer but any losses attributable thereto must reduce the amount so returned.~~

### 12.7.    EMPLOYER'S AND TRUSTEE'S PROTECTIVE CLAUSE

The Employer, Administrator and Trustee, and their successors, shall not be responsible for the validity of any Contract issued hereunder or for the failure on the part of the insurer to make payments provided by any such Contract, or for the action of any person which may delay payment or render a Contract null and void or unenforceable in whole or in part.

### 12.8.    INSURER'S PROTECTIVE CLAUSE

Except as otherwise agreed upon in writing between the Employer and the insurer, an insurer which issues any Contracts hereunder shall not have any responsibility for the validity of this Plan or for the tax or legal aspects of this Plan.  The insurer shall be protected and held harmless in acting in accordance with any written direction of the Trustee, and shall have no duty to see to the application of any funds paid to the Trustee, nor be required to question any actions directed by the Trustee.  Regardless of any provision of this Plan, the insurer shall not be required to take or permit any action or allow any benefit or privilege contrary to the terms of any Contract which it issues hereunder, or the rules of the insurer.

### 12.9.    RECEIPT AND RELEASE FOR PAYMENTS

Any payment to any Participant, the Participant's legal representative, Beneficiary, or to any guardian or committee appointed for such Participant or Beneficiary in accordance with the provisions of the Plan, shall, to the extent thereof, be in full satisfaction of all claims hereunder against the Trustee and the Employer, either of whom may require such Participant, legal representative, Beneficiary, guardian or committee, as a condition precedent to such payment, to execute a receipt and release thereof in such form as shall be determined by the Trustee or Employer.

### 12.10. ACTION BY THE EMPLOYER

Whenever the Employer under the terms of the Plan is permitted or required to do or perform any act or matter or thing, it shall be done and performed by a person duly authorized by its legally constituted authority.

## 12.11.  NAMED FIDUCIARIES AND ALLOCATION OF RESPONSIBILITY

The "named Fiduciaries" of this Plan are (1) the Employer, (2) the Administrator, (3) the Trustee, and (4) any Investment Manager appointed hereunder.  The named Fiduciaries shall have only those specific powers, duties, responsibilities, and obligations as are specifically given them under the Plan, including, but not limited to, any agreement allocating or delegating their responsibilities, the terms of which are incorporated herein by reference.  In general, the Employer shall have the sole responsibility for making the contributions provided for under Section 4.1; and shall have the authority to appoint and remove the Trustee and the Administrator; to formulate the Plan's "funding policy and method"; and to amend or terminate, in whole or in part, the Plan.  The Administrator shall have the sole responsibility for the administration of the Plan, including, but not limited to, the items specified at Article II of the Plan, as the same maybe allocated or delegated thereunder.  The Trustee shall have the sole responsibility of management of the assets held under the Trust, except to the extent directed pursuant to Article II or with respect to those assets, the management of which has been assigned to an Investment Manager, who shall be solely responsible for the management of the assets assigned to it, all as specifically provided in the Plan.  Each named Fiduciary warrants that any directions given, information furnished, or action taken. by it shall be in accordance with the provisions of the Plan, authorizing or providing for such direction, information or action.  Furthermore, each named Fiduciary may rely upon any such direction, information or action of another named Fiduciary as being proper under the Plan, and is not required under the Plan to inquire into the propriety of any such direction, information or action.  It is intended under the Plan that each named Fiduciary shall be responsible for the proper exercise of its own powers, duties, responsibilities and obligations under the Plan as specified or allocated herein.  No named Fiduciary shall guarantee the Trust Fund in any manner against investment loss or depreciation in asset value.  Any person or group may serve in more than one Fiduciary capacity.

## 12.12.  HEADINGS

The headings Find subheadings of this Plan have been inserted for convenience of reference and are to be ignored in any construction of the provisions hereof.

## 12.13.  APPROVAL BY INTERNAL REVENUE SERVICE

Notwithstanding anything herein to the contrary, if, pursuant to an application for qualification filed by or on behalf of the Plan by the time prescribed by law for filing the Employer's return for the taxable year in which the Plan is adopted, or such later date that the Secretary of the Treasury may prescribe, the Commissioner of Internal Revenue Service or the Commissioner's delegate should determine that the Plan does not initially qualify as a tax-exempt plan under Code Sections 401 and 501, and such determination is not contested, or if contested, is finally upheld, then if the Plan is a new plan, it shall be void ab initio and all amounts contributed to the Plan by the Employer, less expenses paid, shall be returned within one (1) year and the Plan shall terminate, and the Trustee shall be discharged from all further obligations.  If the disqualification relates to an amended plan, then the Plan shall operate as if it had not been amended.

068902.1001

12.14.  UNIFORMITY

All provisions of this Plan shall be interpreted and applied in a uniform, nondiscriminatory manner.  In the event of any conflict between the terms of this Plan and any Contract purchased hereunder, the Plan provisions shall control.

**ARTICLE XIII**
**PARTICTATING EMPLOYERS**

13.1.  ADOPTION BY OTHER EMPLOYERS

Notwithstanding anything herein to the contrary, with the consent of the Employer and Trustee, any other corporation or entity, whether an affiliate or subsidiary or not, may adopt this Plan and all of the provisions hereof, and participate herein and be known as a Participating Employer, by a properly executed document evidencing said intent and will of such Participating Employer.

13.2.  REQUIREMENTS OF PARTICIPATING EMPLOYERS

(a)  Each such Participating Employer shall be required to use the same Trustee as provided in this Plan.

(b)  The Trustee may, but shall not be required to, commingle, hold and invest as one Trust Fund all contributions made by Participating Employers, as well as all increments thereof.  However, the assets of the Plan shall, on an ongoing basis, be available to pay benefits to all Participants and Beneficiaries under the Plan without regard to the Employer or Participating Employer who contributed such assets.

(c)  The transfer of any Participant from or to an Employer participating in this Plan, whether he be an Employee of the Employer or a Participating Employer, shall not affect such Participant's rights under the Plan, and the Participant's Present Value of Accrued Benefit as well as his accumulated service time with the transferor or predecessor and his length of participation in the Plan, shall continue to his credit.

(d)  On the basis of information furnished by the Administrator, the Trustee shall keep separate books and records concerning the affairs of each Participating Employer hereunder and as to the Accrued Benefits of the Participants of each Participating Employer.  The Trustee may, but need not, register Contracts so as to evidence that a particular Participating Employer is the interested Employer hereunder, but in any event of Employee transfer from one Participating Employer to another, the employing Employer shall immediately notify the Trustee thereof.

(e)  In the event of termination of employment of any transferred Employee, any portion of the Accrued Benefit of such Employee which has not been Vested under the provisions of this Plan shall be allocated by the Trustee at the direction of the Administrator to the respective equities of the Participating Employers for whom such Employee has rendered service in the proportion that each Participating Employer has contributed toward the benefits of such Employee.  The amount so allocated shall be retained by the Trustee and

63

shall be used to reduce the contribution by the respective Participating Employer, for the next succeeding year or years.

(f)     Any expenses of the Trust which are to be paid by the Employer or borne by the Trust Fund shall be paid by each Participating Employer in the same proportion that the total amount standing to the credit of all Participants employed by such Employer bears to the total standing to the credit of all Participants.

### 13.3.   DESIGNATION OF AGENT

Each Participating Employer shall be deemed to be a party to this Plan; provided, however, that with respect to all of its relations with the Trustee and Administrator for the purpose of this Plan, each Participating Employer shall be deemed to have designated irrevocably the Employer as its agent.  Unless the context of the Plan clearly indicates the contrary, the word "Employer" shall be deemed to include each Participating Employer as related to its adoption of the Plan.

### 13.4.   EMPLOYEE TRANSFERS

It is anticipated that an Employee may be transferred between Participating Employers, and in the event of any such transfer, the Employee involved shall carry with him his accumulated service and eligibility.  No such transfer shall effect a termination of employment hereunder, and. the Participating Employer to which the Employee is transferred shall thereupon become obligated hereunder with respect to such Employee in the same manner as was the Participating Employer from whom the Employee was transferred.

### 13.5.   AMENDMENT

Amendment of this Plan by the Employer at any time when there shall be a Participating Employer hereunder shall only be by the written action of each and every Participating Employer and with the consent of the Trustee where such consent is necessary in accordance with the terms of this Plan.

### 13.6.   DISCONTINUANCE OF PARTICIPATION

Any Participating Employer shall be permitted to discontinue or revoke its participation in the Plan.  At the time of any such discontinuance or revocation, satisfactory evidence thereof and of any applicable conditions imposed shall be delivered to the Trustee.  The Trustee shall thereafter transfer, deliver and assign Contracts and other Trust Fund assets allocable to the Participants of such Participating Employer to such new Trustee as shall have been designated by such Participating Employer, in the event that it has established a separate pension plan for its Employees, provided however, that no such transfer shall be made if the result is the elimination or reduction of any "Section 411(d)(6) protected benefits" in accordance with Section 8.1(c).  If no successor is designated, the Trustee shall retain such assets for the Employees of said Participating Employer pursuant to the provisions of Article VII hereof.  In no such event shall any part of the corpus or income of the Trust as it relates to such Participating

Employer be used for or diverted to purposes other than for the exclusive benefit of the Employees of such Participating Employer.

### 13.7.    ADMINISTRATOR'S AUTHORITY

The Administrator shall have authority to make any and all necessary rules or regulations, binding upon all Participating Employers and all Participants, to effectuate the purpose of this Article.

IN WITNESS WHEREOF, this Plan has been executed the day and year first above written.


Signed, sealed, and delivered in ~~the presence of:~~                        Catholic Diocese of Wilmington, Inc.
the presence of:


_____                        _____


Signed, sealed, and delivered in                        Bank of New York Mellon
the presence of:


_____                        _____

Document comparison by Workshare Professional on Thursday, June 23, 2011 7:28:41 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE01/YCST01/11002514/1 |
| Description | #11002514v1<YCST01> - CDOW Lay Employees Plan.doc |
| Document 2 ID | interwovenSite://WORKSITE01/YCST01/11002514/5 |
| Description | #11002514v5<YCST01> - CDOW Lay Employees Plan.doc |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 238 |
| Deletions | 257 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 499 |