IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CATHOLIC DIOCESE OF WILMINGTON, INC., a Delaware Corporation,[1] | Case No. 09-13560 (CSS) |
| Debtor. | Objection Deadline: August 4, 2011 at 4:00 p.m. (ET)<br>Hearing Date: September 13, 2011 at 2:00 p.m. (ET) |

**DEBTOR'S RENEWED MOTION (CORRECTED)[2] FOR AN ORDER UNDER SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE EXTENDING THE AUTOMATIC STAY TO THE PARISHES TO PREVENT THE CONTINUATION OF THE PARISH CO-DEFENDANT CASES PENDING PLAN CONFIRMATION**

The above-captioned debtor and debtor in possession ("CDOW" or the "Debtor"), hereby moves (the "Motion") the Court for entry of an order, pursuant to §§ 105(a) and 362(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), renewing the existing extension of the automatic stay to certain parishes (each a "Parish" and collectively, the "Parishes") to prevent the continued prosecution of certain pending actions arising under the Delaware Child Victim's Act of 2007, 10 *Del. C.* § 8145 (the "CVA"), in which the Debtor and a Parish are co-defendants (collectively, the "Parish Co-Defendant Cases").[3] In support of the Motion, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 5439. The Debtor's mailing address is 1925 Delaware Avenue, P.O. Box 2030, Wilmington, Delaware 19899-2030.

[2] The motion was corrected to remove a scrivener's error.

[3] The Debtor does not seek to extend the automatic stay to those cases in which the Court has previously ordered [Docket No. 731] (the "Stay Renewal Order") that the stay no longer applies as to the non-debtor defendants.

## PRELIMINARY STATEMENT[4]

1. The Debtor has submitted a Plan for confirmation that embodies a global settlement of Survivor Claims as well as a comprehensive settlement with the Lay Employees Committee regarding the future of the Lay Pension Plan. At the hearing on July 14, 2011, the Court conditionally denied confirmation of this Plan, but continued the Confirmation Hearing to July 28, 2011, which is seven days after the expiration of the existing extension of the automatic stay to the Parish Corporations. The Debtor is actively engaged in discussions with parties in interest regarding a possible solution, consistent with the Court's rulings, that would salvage the Settlement Plan for the benefit of all parties.

2. With that purpose in mind, the Debtor seeks entry of an order renewing the existing extension of the automatic stay to the Parish Corporations, which, pursuant to the Court's January 21, 2011, Order [D.I. 1077] ("Current Stay Order"), is currently set to expire today, July 21, 2011 (the "Existing Stay Period"), to further stay the Parish Co-Defendant Cases in their entirety until the earlier of (i) two business days following denial of confirmation of the Plan as a Settlement Plan or (ii) sixty days after confirmation of the Plan as a Settlement Plan (the "New Stay Period").

3. The extension of the stay will preserve the status quo while the Debtor and the other parties in interest work toward confirming and consummating the Settlement Plan. Absent a renewal of the existing extension of the stay, the Parish Corporations (and necessarily the Debtor) could find themselves embroiled once again in the more than 70 pending Parish Co-Defendant Cases. Allowing the Parish Co-Defendant Cases to move forward at this time, in

---

[4] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meaning ascribed to such terms in the main body of the Motion or the *Second Amended Chapter 11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc.* [Docket No. 1321] (as may be amended or supplemented, the "Plan"). The summary of the Plan contained herein is qualified in its entirety by the Plan. If there are inconsistencies between the summary and the Plan, the Plan shall control.

different courts and in a piecemeal manner will severely hinder the Debtor's ability to focus on Plan confirmation and may upset the delicate balance of settlements (e.g., with the Settling Insurers and the Non-Debtor Catholic Entities) upon which the Settlement Plan is premised.

4. Thus, absent the renewed extension of the stay to the Parish Corporations for the duration of the New Stay Period, the Debtor, its estate, and creditors would suffer real and substantial harm.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction over this matter. Venue of this proceeding in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## GENERAL BACKGROUND

6. On October 18, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"). The Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

7. The Official Committee of Unsecured Creditors (the "Creditors' Committee") was appointed on November 4, 2009. The Official Committee of Lay Employees (the "Lay Employees' Committee") was appointed on April 30, 2010. No trustee or examiner has been appointed or requested.

8. Information regarding the Debtor's history and business operations, its capital structure, and the events leading up to the commencement of the Bankruptcy Case can be found in the *Declaration of the Reverend Monsignor J. Thomas Cini in Support of Chapter 11 Petition and First-Day Relief* [Docket No. 9], which is incorporated herein by reference.

## RELEVANT BACKGROUND

9. An extensive recitation of the facts and circumstances leading to the extension of the automatic stay to the Parish Corporations is set forth more fully in the Debtor's motions to renew the then-existing extensions of the stay [Docket Nos. 604, 766 & 1029] (each, a "Renewed Stay Extension Motion"). Rather than burden the Court with a further, extensive recitation of such facts and circumstances, the Debtor incorporates the Renewed Stay Extension Motions herein by reference, by way of background.

### A. The Second Amended Plan

10. On February 2, 2011, the Debtor and State Court Counsel reached an agreement, embodied in a Settlement Term Sheet of even date, regarding a global settlement of Survivor Claims against the Debtor and the Non-Debtor Catholic Entities.

11. On April 19, 2011, the Debtor filed the Plan [D.I. 1239] in order to implement the settlement reached with State Court Counsel. This Plan was modified on May 23, 2011 [D.I. 1321]. On June 21, 2011, while the solicitation process for the Plan was underway, the Debtor and the Lay Employees Committee reached an agreement, embodied in a term sheet of even date, regarding the treatment of Lay Pension Claims and the terms of the Lay Pension Plan Reaffirmation Agreement.

12. Subsequently, the Debtor reached an agreement with the Creditors Committee regarding open issues that may otherwise have prevented the Creditors Committee from supporting the Plan.

### B. The Confirmation Hearing

13. On July 8, 2011, the Court held a hearing to consider confirmation of the Plan as a Settlement Plan. The Debtor and certain objecting parties adduced evidence at this hearing. The

4
YCST01:11286045.3                                                                           068902.1001

hearing was continued to July 14, 2011, to permit the Debtor to supplement the evidentiary record regarding feasibility, and for oral argument on unresolved objections.

14. At the July 14, 2011, hearing, the Debtor supplemented the record regarding feasibility and the Court heard oral argument. At the conclusion of oral argument, the Court conditionally denied confirmation of the Plan as a Settlement Plan and continued the hearing to July 28, 2011, to provide the Debtor and parties in interest an opportunity to consider the Court's rulings and, if possible, to alter the Plan so as to permit confirmation as a Settlement Plan.

C.  **Events Following the July 14, 2011 Hearing**

15. Since the July 14, 2011, hearing the Debtor has worked diligently and conferred with a number of constituencies to address the import of the Court's rulings and explore possible solutions that would permit confirmation of the Plan as a Settlement Plan. Key to this process is the preservation of the status quo with respect to the litigation against Parish Corporations, because the Settlement Plan is itself dependent upon a number of interrelated, delicately balanced compromises by and among the Debtor, the Settling Insurers and the Non-Debtor Catholic Entities. Were the balance of these compromises to be upset, it may not be possible to salvage the Settlement Plan, to the detriment of the Debtor and its creditors.

## RELIEF REQUESTED

16. The Debtor requests that this Court utilize its powers under §§ 105 and 362(a) of the Bankruptcy Code to renew the existing extension of the automatic stay to the Parishes to stay the Parish Co-Defendant Cases in their entirety for the duration of the New Stay Period – the earlier of two business days following the denial of confirmation of the Plan as a Settlement Plan, or sixty days following confirmation of the Plan as a Settlement Plan.

YCST01:11286045.3    068902.1001

# BASIS FOR THE RELIEF REQUESTED

I. **THE CONTINUED PROSECUTION OF THE PARISH CO-DEFENDANT CASES SHOULD BE FURTHER STAYED PURSUANT TO SECTIONS 105(a) AND 362(a) OF THE BANKRUPTCY CODE**

   A. **The Broad Powers Of The Automatic Stay**

   17. The automatic stay contained in § 362(a) of the Bankruptcy Code is one of the fundamental debtor and creditor protections provided by the Bankruptcy Code. *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac Oldsmobile GMC Truck, Inc.)*, 142 F.3d 631, 637 (3d Cir. 1998) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296). It gives the debtor a breathing spell from its creditors by stopping all collection efforts, harassment, and foreclosure actions, thus relieving the debtor of the financial pressures that drove it into bankruptcy and facilitating the debtor's attempts to reorganize. *Id.* For creditors, the automatic stay prevents the state-law "race of the diligent," whereby creditors who act first to pursue their remedies against the debtor's property obtain payment of their claims in preference to and to the detriment of other creditors. *See id.*

   18. Similarly, as the Court remarked in *Gillman v. Continental Airlines, Inc. (In re Continental Airlines)*, 177 B.R. 475, 479 (D. Del. 1993):

   > The automatic stay is designed to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.

   *Id.* To that end, the automatic stay operates automatically to stay all judicial actions against a debtor that were or could have been brought prior to the commencement of a bankruptcy case. *See Maritime Electric Inc. v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir. 1991).

19. Consistent with the broad reach Congress intended for the automatic stay, courts have utilized §§ 105 and 362 of the Bankruptcy Code to extend the automatic stay to non-debtors to enjoin litigation, whereas here, the litigation will directly affect the debtor's assets or its ability to pursue a successful plan of reorganization. *In re Continental Airlines*, 177 B.R. 475, 479. *See also, McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3rd Cir. 1997) ("[c]ourts have also extended the stay to non-debtor third parties where stay protection is essential to the debtor's efforts of reorganization"); s*ee also In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 n. 3 (5th Cir. 1987) ("We recognize that beyond the automatic stay provisions of section 362 (a)(1) and (3), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105."). Thus, consistent with the policies of the Bankruptcy Code and prevailing case law, the Court is empowered to renew the existing extension of the automatic stay for the duration of the New Stay Period in order to allow the Debtor to implement the Plan and effectuate a successful restructuring of the Debtor for the benefit of all creditors.

  **B.**  **Consistent With The Policies And Considerations Embodied In The Debtor's Exclusive Right To File The Plan, The Debtor Should Have A Meaningful Opportunity To Effectuate The Plan Which Provides For A Global Resolution Of All Personal Injury Tort Claims And Other Claims For The Benefit Of All Creditors**

20. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after commencement of a chapter 11 case during which a debtor has the exclusive right to file and amend a plan of reorganization. Pursuant to 11 U.S.C. § 1121(b), the Debtor's exclusivity period for filing a chapter 11 plan would have expired on February 15, 2010. However, upon Debtor's request, this Court extended the exclusive period within which to file a plan until April 19, 2011. The Debtor filed the present Plan was filed embodying the settlement with State Court

Counsel prior to expiration of this exclusivity period, and then solicited acceptances and rejections of this Plan within its exclusive solicitation period, which was extended by the Court to June 20, 2011.

21. Congress developed the exclusivity period with the intent to promote an environment in which a debtor's business may be rehabilitated and a consensual plan may be negotiated. *See In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990). Thus, fundamentally, the exclusivity period was designed to foster an environment of negotiation rather than competition, and it is one of the most important protections afforded a chapter 11 debtor. *See* H.R. Rep. No. 95-595, at 231-32 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *see also In re Texaco Inc.*, 81 B.R. 806, 809 (Bankr. S.D.N.Y. 1988) ("It was intended that at the onset of a Chapter 11 case a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.").

22. Consistent with the policies and considerations involved in §§ 1121(b) and (d) of the Bankruptcy Code, the extension of the automatic stay should be renewed with respect to the Parish Co-Defendant Cases in order to provide the Debtor a meaningful opportunity to confirm the Plan without the significant interference that would result if such cases were allowed to proceed at this critical juncture. As noted above, and as set forth more fully in the Plan and Disclosure Statement, the Debtor began the bankruptcy process with two primary goals in mind – namely, to have an open, fair, and effective bankruptcy process and to effectuate a reorganization as quickly as possible to minimize the accrual of bankruptcy administrative

expenses (which erode recoveries to all creditors) and to provide distributions to abuse survivors (including the plaintiffs in the Parish Co-Defendant Cases) and other creditors as quickly as possible.

23. In furtherance of these goals, the Plan implements settlements with State Court Counsel, the Lay Employees Committee, the Settling Insurers, and the Non-Debtor Catholic Entities, which will provide for the establishment of a $77.425 million trust for the benefit of Survivors, additional funding for the Lay Pension Plan Trust, and a clear plan for the funding of future obligations under the Lay Pension Plan.

24. The Plan also contains certain non-monetary undertakings on the part of the Reorganized Debtor, including (i) establishment of a charitable trust to provide assistance to abuse survivors and their families, (ii) public access to abuse-related documents, (iii) written apologies to abuse survivors, (iv) continuation of existing child protection programs, and (v) continuation of the current policy of releasing abuse survivors from confidentiality provisions in prior settlement agreements and of forbidding such provisions in any future settlement agreements.

25. In sum, the Plan is the best vehicle by which the Debtor can provide a fair and equitable distribution of its assets to all of its creditors, while at the same time continuing the work of the Church within the Diocese in the form of the Reorganized Debtor. The alternative to the Plan with respect to resolving the claims of all abuse survivors and other creditors is piecemeal litigation in various courts spanning the course of several years, which may result in, among other things, inconsistent rulings and improper disparate treatment of creditors. The Plan, therefore, provides all parties in interest with the best opportunity for a fair and just resolution of the Bankruptcy Case, which is and always has been the ultimate goal of the Debtor.

### C. Unusual Circumstances Exist That Warrant The Renewed Extension Of The Automatic Stay With Respect To The Parish Co-Defendant Cases

26. An extensive recitation of the facts, circumstances, and case law supporting the extension of the automatic stay to the non-debtors in the Parish Co-Defendant Cases on the grounds that "unusual circumstances" exist is set forth more fully in paragraphs 38 through 45 of the Renewed Stay Extension Motion [Docket No. 604]. Rather than burden the Court with a further, extensive recitation of such facts and argument set forth in the referenced motion, the Debtor incorporates such facts and argument herein by reference and provides a brief summary of the arguments contained therein.

27. The Debtor respectfully submits that the facts and circumstances favoring the renewed extension of the automatic stay as of the filing of the Renewed Stay Extension Motion on the grounds that "unusual circumstances" exist are even more persuasive as of this date. In particular, the existing extension of the automatic stay should be renewed to prevent the continued prosecution of the Parish Co-Defendant Cases for the duration of the New Stay Period because, among other reasons: (i) the Debtor is the real party in interest to the Parish Co-Defendant Cases and a judgment against the Parishes will be in effect a judgment against the Debtor; (ii) continuation of the Parish Co-Defendant Cases will adversely affect the Debtor's estate and unduly interfere with the Debtor's ability to actively pursue reorganization including, without limitation, its ability to implement the Plan; and (iii) the possibility that the doctrines of collateral estoppel or vicarious liability might affect the Debtor's rights leaves it with little choice but to actively participate in the Parish Co-Defendant Cases in order to effectively protect its own interests.

### D. Continued Prosecution of the Parish Co-Defendant Cases Will Dissipate Property of the Debtor's Estate to the Detriment of All Creditors

28. An extensive recitation of the facts, circumstances and case law supporting the extension of the automatic stay to the non-debtors in the Parish Co-Defendant Cases on the grounds that the continuation of such actions will dissipate property of the Debtor's estate is set forth more fully in paragraphs 46 through 51 of the Renewed Stay Extension Motion [Docket No. 604]. Rather than burden the Court with a further, extensive recitation of such facts and argument set forth in the referenced motion, the Debtor incorporates such facts and argument herein by reference and provides a brief summary of the arguments contained therein.

29. The Debtor respectfully submits that the facts and circumstances favoring the renewed extension of the automatic stay as of the filing of the Renewed Stay Extension Motion on the grounds that grounds that the continuation of such actions will dissipate property of the Debtor's estate are even more persuasive as of this date. In particular, the existing extension of the automatic stay should be renewed to prevent the continued prosecution of the Parish Co-Defendant Cases for the duration of the New Stay Period because, among other reasons, insurance proceeds from policies shared by the Parishes and the Debtor will be dissipated for both defense costs and possible judgments or settlement, which may upset the delicate balance of settlements with the Settling Insurers upon which the Settlement Plan is predicated.. In addition, the Debtor would have to expend funds to participate in and/or monitor the Parish Co-Defendant Cases in which the Debtor and the applicable Parish Corporation share an insurance policy, which would further undermine the Debtor's ability to meet its financial obligations under a Settlement Plan. In this connection, it is noted that, in order for the Debtor to pay the existing professionals' fees it will have to resort to exit financing of some kind.

## NOTICE

30. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Creditors' Committee; (iii) counsel to the Lay Employees' Committee; (iv) State Court Counsel; (v) the respective courts in which the Parish Co-Defendant Cases are pending; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

WHEREFORE, based on the foregoing, the Debtor respectfully requests entry of the proposed form of order annexed hereto as <u>Exhibit A</u> and for such other and further relief as this Court deems just and proper.

Dated: July 25, 2011
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Mary F. Dugan (No. 4704)
✱ Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtor and Debtor in Possession