c.       **Blackline of Scottsdale Insurance Company**

# SETTLEMENT, MUTUAL RELEASE AND POLICY BUYBACK AGREEMENT

## BETWEEN THE CATHOLIC DIOCESE OF WILMINGTON, INC.

## AND

## SCOTTSDALE INSURANCE COMPANY

**Parties to Agreement.** This Settlement, Mutual Release and Policy Buyback Agreement (the "*Agreement*") is made and entered into by and between the Roman Catholic Bishop of Wilmington, and successors, d/b/a the Catholic Diocese of Wilmington, Inc. (the "*Seller*"), on its own behalf and on behalf of the **Seller Releasing Parties** (defined in paragraph I.A.5,) who are or were insureds under those seven (7) individual policies of insurance issued by **National Casualty Company** ("~~"~~National Casualty~~"~~") and **Scottsdale Insurance Company** ("~~"~~Scottsdale~~"~~"), with effective dates July 1, 1990 through July 1, 1997 (defined particularly in paragraphs ~~I.A.~~I.A.2.a. and I.A.2.b.), (collectively the "*Buyer*"), on their own behalf and on behalf of the **Buyer Releasing Parties** (defined in paragraph ~~I.A.~~I.A.6.). Seller and Buyer shall be referred to herein as the "*Parties*" or singularly as a "*Party*."

**I.**     **BACKGROUND**

    **A.**     **BACKGROUND AND CERTAIN DEFINITIONS**

        **1.**     **General Description of Claims.**

            ~~a.~~a. **Claims** (defined in paragraph ~~I.A.I.~~I.A.1.b.) and/or lawsuits have been made or filed against Seller and/or others and Claims and/or lawsuits may be made and filed against Seller and/or others by entities or individuals in the future, alleging various acts or omissions, including, without limitation, those related to sexual and/or physical abuse committed by priests and other personnel for which entities or individuals seek or may seek to hold Seller and/or others liable, or for which other entities or individuals may seek to impose liabilities on Seller and/or others.

            ~~b.~~b. "*Claim*" shall have the meaning set out in Section 101(5) of the Bankruptcy Code (11 U.S.CA. § 101(5)), as follows:

            "The term 'claim' means~~--~~

                **(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

**(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

"*Claim*" also includes all present or future claims alleging various acts or omissions, including, but without limitation, those related to sexual and/or physical abuse committed by priests and other personnel, whether or not brought pursuant to the Delaware Child Victim's Act of 2007, 10 *Del. C.* § 8145, and **Contribution and Related Claims** (defined in paragraph ~~I.A~~I.A.9.) by any person or entity.

2.    **The National Casualty Company and Scottsdale Insurance Company Policies.**

~~a.~~a. National Casualty Company entered into the following contracts of insurance with Seller and certain other insureds: Policy No. UM011250 (a/k/a ~~UM00011250~~UMO0011250) in effect from 07/01/1990 through 07/01/1991; Policy No. UM009866 (a/k/a ~~UM00009866~~UMO0009866) in effect from 07/01/1991 through 07/01/1992; Policy No. UM008674 (a/k/a ~~UM00008674~~UMO0008674) in effect from 07/01/1992 through 07/01/1993; and Policy No. UM0020811 (a/k/a ~~UM00020811~~UMO0020811) in effect from 07/01/1993 through 07/01/1994.

~~b.~~b. Scottsdale Insurance Company entered into the following contracts of insurance with Seller and certain other insureds: Policy No. UMB056467 (a/k/a UMB0056467) in effect from 07/01/1994 through 07/01/1995; Policy No. UMB057458 (a/k/a UMB0057458) in effect from 07/01/1995 through 07/01/1996; and Policy No. UMB0028449 in effect from 07/01/1996 through 07/01/1997.

~~c.~~c. Hereinafter, the "*Scottsdale Policies*" shall refer collectively to any and all insurance contracts or policies of any kind ever actually or allegedly entered into between Seller and other insureds, on the one hand, and **National Casualty Company** or **Scottsdale Insurance Company**, on the other hand, for the period July 1, 1990 to July 1, 1997, whether or not listed herein, identified in prior correspondence or pleadings, and whether known or unknown.

~~d.~~d. By referencing the "Scottsdale Policies" Buyer does not concede that Seller or anyone else has established entitlement to coverage under any policy ~~Page 2 of 20~~ issued by any

Buyer-affiliated insurer for any Tort Claims (defined in paragraph I.A.3.). Buyer's position regarding coverage is disputed by Seller.

~~in paragraph I.A.3.). Buyer's position regarding coverage is disputed by Seller.~~

e.   As noted above, disputes have arisen between Seller and Buyer concerning the existence and terms of the Scottsdale Policies, including: (i) the existence, nature, and limits of coverage under the Scottsdale Policies; (ii) the Buyer's obligations, if any, to Seller and others allegedly insured under the Scottsdale Policies; and (iii) the potential coverage under the Scottsdale Policies, if any, for the Tort Claims.

~~3.~~ **3.  Tort Claims Definition.** "Tort Claims" shall refer to any and all Claims or interests, past, present or future, direct or indirect, presently known or unknown, including allegations or Claims for damages, indemnity, contribution, or otherwise, against Seller or other insureds under the Scottsdale Policies, by anyone who alleges injury or damage during the July 1, 1990 to July 1, 1997 Scottsdale Policy periods that is allegedly compensable or potentially compensable under the Scottsdale Policies, including, without limitation, those related to sexual or physical abuse committed by priests or other personnel.

~~4.~~ **4.  The Bankruptcy Case.** On October 18, 2009, Seller filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"), which case is currently pending as Case No. 09-13560 (CSS) (the "***Bankruptcy Case***").

~~5.~~ **5. The Seller Releasing Parties.** "Seller Releasing Parties" means all persons or entities that are or were insured or claim to be insured under the Scottsdale Policies for the period between July 1, 1990 and July 1, 1997, whether or not listed as an insured thereunder or alleged by Seller to be an insured thereunder, and includes, without limitation: (i) all persons, entities, offices, agencies, parishes, missions, churches, cemeteries, schools, or other institutions who participated in Seller's insurance program during the period of the Scottsdale Policies and who were, are or claim to be insured under the Scottsdale Policies; (ii) all predecessors, successors and assigns of any of the above in subsection (i); and (iii) Seller's Bishop and his predecessors, successors and assigns.

~~6.~~ **6. The Buyer Releasing Parties.** "Buyer Releasing Parties" means: (i) all predecessors, successors, and assigns of Buyer; and (ii) Buyer's directors and their predecessors, successors and assigns.

~~7.~~ **7. The Buyer Released Parties.** "Buyer Released Parties" is defined in paragraph II.C.~~1~~.a.

~~8.~~ **8.  The Seller Released Parties.** "Seller Released Parties" is defined in paragraph II.C.4.a.

~~9.~~ **9.  Contribution and Related Claims.** "Contribution and Related Claims" means any Claim by any person or entity, including without limitation any insurers for Seller and the Selling Releasing Parties, or Buyer and the Buyer Releasing Parties, based on contribution, indemnity,

subrogation or any similar legal theories (including attorney fees and costs) related, directly or indirectly, to the Scottsdale Policies.

~~indemnity, subrogation or any similar legal theories (including attorney fees and costs) related, directly or indirectly, to the Scottsdale Policies.~~

~~10.~~ **10. Settlement of Claims.** Seller and Buyer desire to effect a full and final settlement, compromise, mutual release, and resolution of the Claims, defenses, rights, disputes and disagreements specifically accomplished elsewhere in this Agreement.

~~11.~~ **11. The Effective Date of This Agreement.** The "Effective Date" of this Agreement is set out in paragraph II.A.~~1~~.

~~12.~~ **12. Sale and Buyback of Scottsdale Policies.** As part of the settlement, compromise, mutual release, and resolution of the matters resolved herein (see paragraph II.D.1.), the Parties, the Seller Releasing Parties, and the Buyer Releasing Parties wish to effect a sale and buyback to Buyer of Seller's and the Seller Releasing Parties' interests in the Scottsdale Policies free and clear of all liens, Claims. encumbrances and other interests pursuant to section 363 of the Bankruptcy Code.

~~13.~~ **13. Arm's Length Negotiations.** This Agreement has been negotiated at arm's length and in good faith by the Parties hereto, and each Party has received the advice of counsel in the negotiation, preparation, drafting and execution of this Agreement.

NOW, THEREFORE, in consideration of the above premises and the mutual promises and agreements contained herein,

IT IS AGREED AS FOLLOWS:~~II.~~

## II.    AGREEMENT

A.    **CONDITIONS TO THE EFFECTIVE DATE**~~1    Effective Date~~. This Agreement, which includes all prior written paragraphs, including the Background Section I., shall become effective on the date (the "Effective Date") that all the following conditions have been satisfied or, as to each condition other than II.A.1.~~a~~, II.A.~~1.11.~~2, and II.A.~~1.d.~~4, are waived by Buyer:

> ~~a.~~ 1. Both Parties have executed this Agreement.

> ~~b.~~ 2. Buyer has ~~deposited~~paid the Settlement Amount ~~in the Account~~, and Seller has deposited it in the Settlement Trust as defined in the Settlement Plan referred to in paragraph II.A.1.e. (as such terms are hereinafter defined in paragraphs II.B.1. and 2.).

> ~~c.~~ 3. Seller has returned to Buyer the Scottsdale Policies (to the extent such original contracts are found to exist), or has otherwise complied with paragraph II.C.3. below.

> ~~d.~~ 4. The Bankruptcy Court, or any court sitting in review of that court, has entered an **Approval Order** (as such term is defined in paragraph II.E.4]

herein) and such order has become a Final Order. As used herein, the term
"***Final Order***" shall mean an order that has not been reversed, withdrawn,
vacated or stayed, and as to which the time to appeal or seek review,
rehearing or writ of certiorari has expired and as to which no appeal or
petition for review, reconsideration or certiorari has been taken, or, if such
appeal has been taken, it has been resolved by a Final Order).

e. 5. The Bankruptcy Court has entered a Final Order confirming (the
"**Confirmation Order**") the Settlement Plan set forth in the Second
Amended ~~Chapter 11~~ Plan of Reorganization of Catholic Diocese of
Wilmington, Inc., dated May 23, 2011, D.I. 1321 and all Exhibits thereto
(the "**Plan**") which Plan contains releases, channeling and other
injunctions, and exculpations in favor of the Buyer Released Parties and in
form and substance acceptable to the Buyer Released Parties in their sole
discretion.

f. ~~[RESERVED]~~

~~2    Approval Deadline. If the Effective Date does not occur on or before~~
~~September 1, 2011 (or such later date to which Buyer and Seller agree in writing) (the "Approval Deadline"), then~~
~~this Agreement shall be null and void ab initio and be deemed of no force and effect, with no liability on the part~~
~~of any Party hereto (including the Seller Releasing Parties and the Buyer Releasing Parties), and no Party shall~~
~~have any obligations to any other Party arising out of this Agreement other than with respect to the return of~~
~~the Settlement Amount to Buyer under paragraphs II.B.1. and 2. Upon such termination, this Agreement shall~~
~~not be an admission by any Party, and, except as provided in paragraphs II.B.1. and 2. with respect to the return~~
~~to Buyer of the Settlement Amount from the Account, no Party shall seek to admit this Agreement into evidence~~
~~against any other Party hereto, including the Seller Releasing Parties and the Buyer Releasing Parties.~~

~~B. THE SETTLEMENT AMOUNT~~

~~1    Deposit of Settlement Amount. [RESERVED]~~
~~2.    Transfer of Ownership of Settlement Amount and the Scottsdale~~
~~Policies Upon Occurrence of Effective Date.~~
**B.    THE SETTLEMENT AMOUNT**

**1.    Deposit of Settlement Amount.** The Parties intend to promptly execute
this Agreement.  Upon notification by Seller that the Conditions Precedent to Effectiveness have
been fulfilled and Seller's providing Buyer with instructions on how payment should be made,
Buyer shall cause to be deposited into the Settlement Trust the sum of two hundred twenty-five
thousand dollars ($225,000.00) (the "***Settlement
Amount***" or the "**Settlement Funds**").  Payment
may be made by check or wire transfer.

~~Page 5 of 20~~

**[The remainder of this page is intentionally left blank]**

a.

YCST01:11306878.1                                                                                    068902.1001

**2.        Transfer of Ownership of Settlement Amount and the Scottsdale Policies Upon Occurrence of Effective Date.**  Until the occurrence of the Effective Date, all right, title, and interest in and to the Settlement Funds and the Account shall remain with Buyer, and all right, title, and interest in the Scottsdale Policies, if any, shall remain with Seller and any other insureds, if any, under the Scottsdale Policies. The Parties agree that unless and until the Effective Date occurs, the Account and its proceeds are the property of Buyer and not the property of Seller or of Seller's estate. Upon the occurrence of the Effective Date, all right, title, and interest in and to the Settlement Funds and the Account shall vest in Seller and Seller's estate, and the right, title, and interest of Seller and the Seller Releasing Parties in the Scottsdale Insurance Policies shall vest in Buyer.

~~b.        In the event that the Effective Date does not occur on or before the Approval Deadline and this Agreement is terminated, the Settlement Funds and all amounts in the Account shall remit entirely to Buyer, and Seller shall take such steps and execute such documents reasonably necessaty to effectuate the release of the funds to Buyer from the Account. Similarly, in the event that the Effective Date does not occur on or before the Approval Deadline and this Agreement is terminated, the Scottsdale Insurance Policies remain in force, and the Parties' respective rights, obligations and defenses under the Scottsdale Insurance Company Policies, if any, shall remain in force and effect.~~

**3.        Use of Settlement Amount.**  The Parties agree that after the Effective Date occurs, the Account and its proceeds are the property of Seller or of Seller's estate, and Buyer shall take such steps and execute such documents reasonably necessary to effectuate the transfer the funds and/or the Account to Seller. Except as otherwise ordered by the Bankruptcy Court after notice and a hearing, Seller agrees that it shall use any and all sums received hereunder solely toward the resolution of Tort Claims.

## C.    RELEASES AND CONTRIBUTION CLAIMS

### 1.    Release of Buyer.

a.        In addition to, and not in substitution for, those Releases provided to the Buyer Released Parties (as defined herein) provided under the Plan, upon the occurrence of the Effective Date, Seller and the "***Seller Releasing Parties***" hereby completely release and forever discharge: (i) Buyer and the Buyer Releasing Parties, and all of their employees, directors, officers, shareholders, agents, representatives and attorneys (including the law firms of Deasey, Mahoney, Valentini & North, Ltd. and Morris James, LLP, including any attorney, partner, counsel, associate, or employee of any type of said law firms); (ii) predecessors, successors and assigns (hereinafter, collectively, the "**Buyer Released Parties**"); and (iii) all other persons and entities who acted on behalf of such Buyer Released Parties (who are also included as part of the Buyer Released Parties); from: any and all actions, causes of action, suits, charges, complaints, Claims, liabilities, damages (including those for bad faith, punitive damages, extra-contractual liability,

Contribution and Related Claims, tort damages, or statutory damages), obligations, promises, contracts, acts, agreements, controversies, demands, fees, costs, losses, debts and expenses (including attorneys fees and costs) of any nature whatsoever, whether legal or equitable, known or unknown, past, present, or future, suspected or unsuspected, fixed or contingent, that are related, directly or indirectly, to the Scottsdale Policies.

b. ~~b.~~ It is further understood and agreed that the releases in paragraph II.C.l. do not affect the right of Seller or the Seller Releasing Parties to assert future claims on: (i) lost policies, if any, other than the Scottsdale Policies; or (ii) excess, reinsurance, or other insurance, if any, on policies other than the Scottsdale Policies.

c. ~~c.~~ Seller acknowledges, represents and warrants that it is the owner of the Scottsdale Policies, that it is the owner of the Claims it released herein, and that it has not assigned and will not assign or otherwise transfer any such Claims to any person or entity.

d. ~~d.~~ Seller and all of the Seller Releasing Parties further agree that if, contrary to the Parties' specific intent, any Claims released pursuant to this paragraph II.C.1. are deemed to survive this Agreement, even though they are encompassed by the terms of the release set forth in this paragraph II.C.1, Seller and all the Seller Releasing Parties hereby forever, expressly and irrevocably, waive entitlement to and agree not to assert any and all such Claims.

~~e.         In the event the Effective Date does not occur on or before the Approval Deadline and this Agreement is terminated, then the releases contained in paragraph II.C.1. shall be null and void.~~

2.    **Release of the Scottsdale Policies.**

a.        Upon the occurrence of the Effective Date, Seller and the Seller Releasing Parties agree that Buyer will have bought back the Scottsdale Policies free and clear of all liens, Claims, encumbrances and other interests (including but not limited to Contribution and Related Claims by any person or entity), and all rights of Seller, any of the Seller Releasing Parties, or any party claiming by, through, on behalf of, or under Seller or the Seller Releasing Parties, of any nature whatsoever under the Scottsdale Policies.

b. ~~b.~~ Seller and the Seller Releasing Parties, and Buyer and the Buyer Releasing Parties, agree that upon Buyer's payment of the Settlement Amount, then: (i) Buyer will have fully and completely performed any and all obligations, if any, under the Scottsdale Policies owed to Seller or to any of the Seller Releasing Parties, including payment of all Claims under the Scottsdale Policies with respect to Seller and the Seller Releasing Parties, whether past. present or future, known or unknown; and (ii) Buyer's payment of the Settlement Amount effects a ~~comp)ete~~complete sale and buyback, outright, of Seller's and the Seller Releasing Parties' interest in and to the Scottsdale Policies to Buyer, free and clear of all liens, Claims, encumbrances and other interests and rights (including but not limited to Contribution and Related Claims of any person or entity).

c. ~~c.~~ Upon the occurrence of the Effective Date, the Parties intend that all rights, title or interest which Seller or the Seller Releasing Parties may have had, may presently have, or in the future may have in relation to the Scottsdale Policies arc hereby completely released. In this connection, the Parties intend, and Seller and the Seller Releasing Parties

agree that Seller accepts the Settlement Amount in full and complete satisfaction of any and all of Buyer's past. present and future obligations to Seller and the Seller Releasing Parties under the Scottsdale Policies or arising therefrom.

d.    ~~In the event the Effective Date does not occur on or before the Approval Deadline and this Agreement is terminated, then the releases and other provision contained in paragraph II.C.2. concerning the sale and purchase of the Scottsdale Policies shall be null and void.~~

### 3.    Return of the Scottsdale Policies.

a.    Upon the occurrence of the Effective Date, Seller shall promptly physically return the Scottsdale Policies to Buyer by sending to counsel for Buyer: (i) the ~~origina)~~original of any such contract, if located; (ii) if no original can be located, a copy of such contract, if one is found, and a certification that no original could be found. in which case the copy delivered to Buyer shall be treated for all purposes as if it were an original; or (iii) if no original or copy can be located, a certification to that effect, which shall have the same force and effect as if the Original of that contract were returned to Buyer.

b.    In the event that any of the original Scottsdale Policies are subsequently discovered by Seller, such original(s) shall promptly be sent to Buyer. In the event that any new evidence or indicia of the Scottsdale Policies are found, Seller shall promptly provide a certification concerning that policy or policies per subparagraph a.(iii) above and deliver such new evidence to Buyer.

### 4.    Release of Seller.

~~a.~~ a. Upon the occurrence of the Effective Date, Buyer and the "**Buyer Releasing Parties**" hereby completely release and forever discharge: (i) Seller and the Seller Releasing Parties, and all of their employees, directors, officers, shareholders, agents, representatives, and attorneys (including the law firm of Young Conaway Stargatt & Taylor, LLP, including any attorney, partner, counsel, associate, or employee of any type of said law firm); (ii) predecessors, successors, and assigns (hereinafter, collectively, the "**Seller Released Parties**"); and (iii) all other persons and entities who acted on behalf of such Seller Released Parties (who are also included as part of the Seller Released Parties); ~~ftom~~from: any and all actions, causes of action, suits, charges, complaints, Claims, liabilities, damages (including those for bad faith, punitive damages, ~~extracontractual~~extra-contractual liability, Contribution and Related Claims, tort damages, or statutory damages), obligations, promises, contracts, acts, agreements, controversies, demands, fees, costs, losses, debts, and expenses (including attorneys fees and costs) of any nature whatsoever, whether legal or equitable, known or unknown, past, present, or future, suspected or unsuspected, fixed or contingent, that are related, directly or indirectly, to the Scottsdale Policies.

YCST01:11306878.1                                                                                      068902.1001

b. ~~b.~~ It is further understood and agreed that the releases in paragraph II.C.2. do not affect the right of Seller or the Seller Releasing Parties to assert future claims on: (i) lost policies, if any, other than the Scottsdale Policies; or (ii) excess, reinsurance, or other insurance, if any, on policies other than the Scottsdale Policies.

c. ~~c.~~ Buyer acknowledges, represents and warrants that it is the owner of the Claims released herein, and that it has not assigned and will not assign or otherwise transfer such Claims to any person or entity.

d. ~~d.~~ Buyer and all of the Buyer Releasing Parties agree that if, contrary to the Parties' specific intent, any Claims released pursuant to this paragraph II.C.4. are deemed to survive this Agreement, even though they are encompassed by the terms of this release set forth in this paragraph II.C.4., Buyer and all of the Buyer Releasing Parties hereby forever, expressly and irrevocably, waive entitlement to and agree not to assert any and all such Claims.

~~e.    In the event the Effective Date does not occur on or before the Approval Deadline or any mutually agreed upon extension thereto and this Agreement is terminated, then the releases contained in paragraph II.C.4. shall be null and void.~~

5.    **Contribution and Related Claims.**

a. ~~a.~~ Upon the occurrence of the Effective Date, Buyer will not make any Contribution and Related Claims against any insurer of Seller or the Seller Released Parties who are insureds under the Scottsdale Policies (including claims for contribution or reimbursement of any part or all of the Settlement Amount paid to Seller hereunder or other payments or costs and attorney fees associated with the Scottsdale Policies; provided, however, that if any other insurers for Seller or for any Seller Released Party attempts (despite the complete releases contained herein and the "free and clear" sale and buyback of the Scottsdale Policies pursuant to this Agreement) to assert any Contribution and Related Claims against Buyer with respect to the Scottsdale Policies, then Buyer shall retain all of its rights, claims, Contribution and Related Claims, Claims, or defenses against such other insurers who are making Contribution and Related Claims against Buyer.

b. ~~b.~~ Upon the occurrence of the Effective Date, other insurance companies will be barred from asserting cross-claims or initiating proceedings against Buyer for Contribution and Related Claims related directly or indirectly to the Scottsdale Policies.

~~e.~~ c. Upon the occurrence of the Effective Date and the payment by Buyer of the Settlement Amount: (i) the Buyer's obligations with respect to the Scottsdale Policies shall completely terminate. To the greatest extent allowed by law, no other insurer for Seller or the Seller Released Parties, upon the Effective Date, shall be entitled to recover any Contribution and Related Claims from Buyer with regard to the Scottsdale Policies.

d. In an effort to minimize the possibility of attempted assertion of Contribution and Related Claims against Buyer by any other insurer for Seller or the Seller Releasing Parties, Seller agrees to use reasonable best efforts (not including monetary concessions) to obtain a release or waiver from any such other insurer of any and all Contribution and Related Claims against Buyer whenever Seller negotiates a settlement with any such other insurer with respect to such other insurer's obligations to the Seller or the Seller Releasing Parties who are insureds under the Scottsdale Policies. If requested, Buyer agrees that it will provide releases and waivers to any other insurer commensurate with the releases and waivers with respect to Contribution and Related Claims that any other insurer provides to Buyer.

### D.      SALE FREE AND CLEAR

~~1.~~  **1.  Sale and Buyback of Interests in the Scottsdale Policies.** Upon the occurrence of the Effective Date, this Agreement effects a sale and buyback of the Scottsdale Policies to Buyer. Seller and the Seller Releasing Parties hereby sell their interests in the Scottsdale Policies to Buyer, and Buyer hereby buys back all of their interests in the Scottsdale Policies from Seller and the Seller Releasing Parties, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, free and clear of liens, Claims, Contribution and Related Claims, encumbrances, and other interests.

~~2.~~  **2.  Good Faith Purchase; Fair and Reasonable Settlement: Reasonable Equivalent Value; Compliance with Law.** The Parties acknowledge and agree that: (i) Buyer is a good faith purchaser of Seller's and the Seller Releasing Parties' interests in the Scottsdale Policies, within the meaning of section 363(m) of the Bankruptcy Code; (ii) the consideration exchanged by the Parties pursuant to this Agreement constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Scottsdale Policies, and satisfy, to the extent necessary, the provisions for approval of such settlements pursuant to Fed. R. Bankr. P. 9019; (iii) the releases contained in this Agreement and this policy buyback comply with the Bankruptcy Code; and (iv) this Agreement in no way voids, annuls or attempts to void or annul the Scottsdale Policies, and, which, with respect to Seller and the Seller Releasing Parties, has been fully performed.

~~3.        Good Faith Efforts re: Sale and Buyback. In furtherance of the sale and buyback free and clear under section 363 of the Bankruptcy Code to Buyer by Seller and the Seller Releasing Parties of their interests in the Scottsdale Policies, the Parties agree that Seller will use its best efforts in the Bankruptcy Court and/or the District Court to include, in any plan and any order confirming~~

~~such plan, an injunction that protects Buyer, its predecessors, successors, and assigns, and their~~
~~respective officers and directors, against the assertion of Claims that in any way relate to the~~
~~Scottsdale Policies. Such efforts shall include, without~~

        **3.**     **Good Faith Efforts re: Sale and Buyback.** <u>In furtherance of the sale and</u>
<u>buyback free and clear under section 363 of the Bankruptcy Code to Buyer by Seller and the</u>
<u>Seller Releasing Parties of their interests in the Scottsdale Policies, the Parties agree that Seller</u>
<u>will use its best efforts in the Bankruptcy Court and/or the District Court to include, in any plan</u>
<u>and any order confirming such plan, an injunction that protects Buyer, its predecessors,</u>
<u>successors, and assigns, and their respective officers and directors, against the assertion of</u>
<u>Claims that in any way relate to the Scottsdale Policies. Such efforts shall include, without</u>
limitation, urging the Bankruptcy Court and/or the District Court to overrule any objections to
an injunction and/or to a plan that contains an injunction, and defending against any motion,
objection, or other challenge to the Bankruptcy Court's and/or District Court's entry of an order
approving an injunction and/or confirming a plan that contains an injunction. If an appeal of any
order confirming a plan is filed and the appeal raises the issue of the injunction described in this
paragraph, Seller shall, at Buyer's expense (meaning only that Buyer will draft all briefs,
motions, memoranda, affidavits, or other documents, subject to Seller's reasonable approval
thereof), take steps to pursue or defend against such appeal, provided that Seller can do so
without the issue of the injunction as it relates solely to Buyer and described in this paragraph
being the sole source of delay in the effective date of such plan. Seller will use its best efforts to
oppose entry of any stay pending appeal relating to the issue of the injunction described in this
paragraph, and to vacate such stay if entered. Seller's best efforts do not include making
monetary concessions.

~~4.~~ **4. No Collusion in Connection with Sale and Buyback.**  In furtherance of the sale and
buyback free and clear under section 363 of the Bankruptcy Code to Buyer by Seller, the Parties
acknowledge and agree that there are no grounds or bases to avoid such sale under 363(n) of the
Bankruptcy Code.

     **E.**     **THE APPROVAL ORDER**

          ~~1.~~ **1.** This Agreement is subject to and conditioned on the Bankruptcy Court
entering an order approving this Agreement, a form of which is attached
hereto as Exhibit A (the "***Approval Order***").

          ~~2.~~ **2.** After all Parties have executed this Agreement, Seller shall file a motion: (i)
seeking an Approval Order pursuant to Rule 9019 of the Federal Rules of
Bankruptcy Procedure and sections 105(a) and 363 of the Bankruptcy
Code; and (ii) requesting a hearing for the next available Court date after
allowing adequate time for publication notice. The Sellers shall support
approval of the motion, file responses to any objections, and take all
reasonable steps to defend against any appeal from the Approval Order.

          ~~3.~~ **3.** Seller shall provide written notice of the Parties' intent to seek approval of
the Agreement to: (i) all known claimants or counsel for claimants who

have filed a proof of claim in the Bankruptcy Case, who were scheduled by Seller (whether or not scheduled as non-contingent, liquidated and/or undisputed), or whose claims are pending and were tendered under the Scottsdale Policies as of the commencement of the Bankruptcy case, including all holders of Tort Claims or Contribution and Related Claims, and any other known creditors or claimants, at the address provided for notice in the proof of claim filed by each such claimant or the address <u>listed for such claimant in Seller's schedules, or the address of such claimant last known to Seller, as applicable; (ii) all persons or entities who have filed a notice of appearance in the Bankruptcy Case; (iii) all entities known or alleged by Seller to have provided general liability insurance to Seller; (iv) counsel for the Official Committee of Unsecured Creditors; (v) counsel for the Official Committee of Lay Employees; and (vi) counsel for the Unofficial Committee of Abuse Survivors; via service on each such attorney of record in the Bankruptcy Case (if known), its registered agent for service of process in Delaware (if known), or at its address last known to Seller. Such notice shall be published one time in *USA Today* and *The Delaware News Journal* or in such other newspaper(s) as the Bankruptcy Court may order.</u>

~~listed for such claimant in Seller's schedules, or the address of such claimant last known to Seller, as applicable; (ii) all persons or entities who have filed a notice of appearance in the Bankruptcy Case; (iii) all entities known or alleged by Seller to have provided general liability insurance to Seller; (iv) counsel for the Official Committee of Unsecured Creditors; (v) counsel for the Official Committee of Lay Employees; and (vi) counsel for the Unofficial Committee of Abuse Survivors; via service on each such attorney of record in the Bankruptcy Case (if known), its registered agent for service of process in Delaware (if known), or at its address last known to Seller. Such notice shall be published one time in *USA Today* and *The Delaware News Journal* or in such other newspaper(s) as the Bankruptcy Court may order.~~

## F.   REPRESENTATIONS AND WARRANTIES OF THE PARTIES

**1.   Corporations.**  To the extent a Party is a corporation or other legal entity, each of the Parties separately represent and warrant that it has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to approval of the courts, as provided herein.

**2.   Individuals Signing Agreement.**  Each of the Parties represents and warrants that the individual who executes this Agreement on its behalf is duly authorized to do so.

3.    **Seller Releasing Parties and Buyer Releasing Parties.**

a. a. Seller represents and warrants that it executed this Agreement on
behalf of each and every one of the Seller Releasing Parties that is
or was an insured under the Scottsdale Policies, and that it is
authorized to do so.

b. b. Seller represents and warrants that it has not executed this Agreement
on behalf of any Seller Releasing Party who was not an insured
under the Scottsdale Policies, and states that it is not authorized to
do so.

c. c. Buyer represents and warrants that it executed this Agreement on
behalf of each and everyone of the Buyer Releasing Parties, and
states that it is authorized to do so.

4.    **Advice of Counsel.** In executing this Agreement, the Parties
acknowledge that they have consulted with and have obtained the advice and counsel of their
attorneys, and that they have voluntarily executed this Agreement: (i) after independent
investigation and arm's length negotiations; (ii) without fraud, duress or undue influence;
(iii) in good faith; and (iv) for good and valuable consideration.

5.    5.    **No Assignments by Seller.** Seller represents and warrants that it
has
not assigned or otherwise transferred or subrogated any interest in the Scottsdale Policies. Seller
also represents and warrants that it has not assigned or otherwise transferred or subrogated any
interests in any Claims against Buyer that are the subject matter hereof.

6. 6. **Potential Mistaken Facts.** With respect to the matters released herein,
the Parties specifically acknowledge that they may hereafter discover facts in addition to or
different from those which they now believe to be true with respect to the released matters, but
agree that they have taken that possibility into account in reaching this Agreement and that the
mutual releases shall be and remain in effect notwithstanding the discovery or existence of any
such additional or different facts, as to which each Party expressly assumes the risk.

G.    **MISCELLANEOUS**

1.    **Resolution of Disputes.**

a. a. The Bankruptcy Court shall retain exclusive jurisdiction to enforce this
Agreement and to interpret and resolve any disputes relating to this
Agreement.

b. b. If the Bankruptcy Court refuses or declines to exercise jurisdiction over any
such dispute, the Parties agree to promptly meet and attempt to mutually

resolve the dispute. If agreeable to both sides, the Parties may submit the dispute to a nonbinding ; alternative dispute resolution process, such as a mediation and/or settlement conference. Unless otherwise agreed to by the Parties, such meeting, mediation and/or settlement conference shall take place promptly in Wilmington, Delaware, or any other mutually agreed upon location. Each Party shall pay its own attorney fees and costs for the meeting, mediation and/or settlement conference and shall share equally the costs of the mediator or the person conducting the settlement conference.

e. c. In the event the meeting, mediation and/or settlement conference does not resolve the dispute, then either or both Parties may submit such dispute to the United States District Court for the District of Delaware. But, if such federal court lacks jurisdiction over the dispute, then either Party may submit such dispute to the Court of the State of Delaware, Wilmington. Appropriate appeal rights from either or both courts are reserved to the Parties. Either party may also remove the Case from state to federal court if federal jurisdiction is present. The Parties agree to submit to the jurisdiction of the aforesaid courts and consent to service of process by facsimile or e-mail, followed by certified mail, addressed in accordance with the notice provisions set forth herein.

facsimile or e-mail, followed by certified mail, addressed in accordance with the notice provisions set forth herein.

**2. 2. Applicable Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Delaware, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Agreement and any other agreements, documents, and instruments executed in connection with this Agreement, except as otherwise expressly provided in the Agreement, the documents, or instruments.

**3. 3. Limited Use of Agreement.** This Agreement shall not be construed as precedent nor as an admission by any Party as to the truth or merit of any contention made in connection with any Tort Claims, the Bankruptcy Case, or in any other litigation of any type, or with any other alleged liability, culpability, wrongdoing or insurance coverage. Settlement negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall within the protection afforded to compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence or Rule 408 of the Delaware Uniform Rules of Evidence. Any evidence of the terms of this Agreement or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties or obligations of the Parties, except in: (i) a proceeding to obtain the Approval Order; or (ii) an action or proceeding to enforce the terms of this Agreement. This Agreement shall not be used as

evidence or in any other manner in any court or dispute resolution proceeding to prove the terms of any of the Scottsdale Policies, or to create, prove or interpret the Parties' right and obligations, if any, under the Scottsdale Policies, or as to any other person or any claims of any party against the Parties. This Agreement is executed to avoid costs and risks of litigation and as a compromise of disputed liabilities in light of the facts and circumstances of this particular matter.

4.  **4.  No Admissions.**  The Parties agree that nothing contained in this Agreement shall be deemed or construed to constitute: (i) an admission by Seller or Buyer that Seller, the Seller Releasing Parties, or any other person was or is entitled to any insurance coverage under the Scottsdale Policies; (ii) an admission by Seller or Buyer as to the validity or non-validity of any of the positions or defenses to coverage that have been or could have been asserted by Seller or Buyer; or (iii) an admission by Seller or Buyer of any liability whatsoever with respect to any of the Tort Claims.

5.  **5.  Binding Agreement.**  This Agreement shall be binding upon the Parties, the Seller Releasing Parties and the Buyer Releasing Parties, and upon their respective representatives, successors, and assigns, and shall inure to the benefit of the Parties, the Seller Released Parties and the Buyer Released Parties, as well as to their administrators, representatives, executors, successors and assigns. The releases set forth in this Agreement do not release any Party, the Seller Releasing Parties, or the Buyer Releasing Parties from the <u>obligations contained in this Agreement. Obligations arising under this Agreement shall not be discharged in the Bankruptcy Case or any plan confirmed therein.</u>

~~obligations contained in this Agreement. Obligations arising under this Agreement shall not be discharged in the Bankruptcy Case or any plan confirmed therein.~~

6.  **6.  No Third-Party Beneficiaries.**  The Parties agree that, except as set forth in this Agreement, there are no third-party beneficiaries of this Agreement, including but not limited to individuals and/or entities holding or asserting Tort Claims and other insurers of Seller or the Seller Releasing Parties.

7.  **7. Prompt Execution of Documents.**  The Parties agree to promptly execute all documents and do all things necessary to effectuate fully the terms of this Agreement.

8.  **8. The Agreement.**  This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties. Except as otherwise expressly provided, this Agreement supersedes all prior communications, settlements, and understandings between the Parties and their representatives regarding the matters addressed by this Agreement. Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements, promises, or inducements, whether made by any Party or any agents of any Party, that are not contained in this Agreement shall not be valid or binding. No amendment, modification, addendum or revision of this Agreement shall be valid unless it is in writing and

<u>Page 16 of 21</u>

signed by the Party or Parties to be bound, in which event there is no need for legal consideration.

9. **9. No Waiver of Breaches.** No waiver or indulgence of any breach or series of breaches of this Agreement shall be deemed or construed as a waiver of any other breach of the same or any other provision hereof or affect the enforceability of any part or all of this Agreement, and no waiver shall be valid unless executed in writing by the waiving party.

10. **10. No Waiver by Parties.** By entering into this Agreement, none of the Parties has waived, or shall be deemed to have waived, any rights, obligations, or positions it or they have asserted or may in the future assert in connection with any matter or person outside the scope of this Agreement.

11. **11. No Benefit to Other Insurers.** This Agreement is not intended to benefit any insurer not a party hereto. Any insurer who is not a party to this Agreement is not a ~~thirdparty~~third-party beneficiary of this Agreement, and is not entitled to assert any benefit from this Agreement as against any of the Parties to this Agreement (including the Seller, the Seller Releasing Parties, the Buyer, and the Buyer Releasing Parties).

12. **12. Without Prejudice.** No part of this Agreement, its negotiation or performance may be used in any manner in any action, suit or proceeding by any person not a party hereto as evidence of the rights, duties or obligations of any of the Parties with respect to matters or persons outside the scope of this Agreement. All action taken and statements made by the Parties or by their representatives, relating to this Agreement or ~~respect to matters or persons outside the scope of this Agreement. All action taken and statements made by the Parties or by their representatives, relating to this Agreement or~~ participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent, and shall not be used as a standard by which other matters may be judged.

13. **13. Validity of Agreement.** In the event that any substantive provision of this Agreement is found by a court of competent jurisdiction to be invalid or unenforceable, the Parties may jointly elect to: (i) rescind the Agreement, voiding it *ab initio,* with each Party returned to its original rights and positions as if the Agreement had never existed; (ii) enforce and be bound by the remainder of the Agreement; (iii) modify the Agreement by such substituted provisions as the Parties may reasonably agree; or (iv) resolve the issue pursuant to the dispute provisions of paragraph II.G.l.

14. **14. Challenge to Agreement.** In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, challenge, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such challenge, action or proceeding.

15. **15. Interpretation of Agreement.** As noted above, this Agreement is the

result of arm's length negotiations, and shall be construed in all respects as if it were jointly drafted by the Parties, regardless of who drafted any particular provision. The language of all parts of this Agreement shall in all cases be construed as a whole according to its meaning and not strictly for or against any of the Parties.

16. **16.  No Attorney Fees or Costs.**  Except as otherwise provided in this Agreement, each Party shall be responsible for its own attorney fees and costs incurred in conjunction with the Bankruptcy Case and the preparation of this Agreement.

17.  **17. Notices.**  All notices, demands or other communications to be provided pursuant to this Agreement shall be in writing and sent by facsimile, email, Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from~~from~~ time to time:

**To Buyer:**

Ms. Suzan Shughart
Scottsdale Insurance Company
PO Box 4021
Scottsdale, AZ 85258

With a copy to:

John P. Morgenstern
Deasey, Mahoney, Valentini & North, LTD.
    1601 Market Street, Suite
3400
    Philadelphia, PA 19102


**To Seller:**

Rev. Msgr. J. Thomas Cini
Vicar General for Administration
Catholic Diocese of Wilmington
P.O. Box 2030
Wilmington, DE 19899-2030

~~NAME/ADDRESS OF DIOCESE REPRESENTATIVE~~ With a copy to:

Anthony G. Flynn, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

~~18.~~ **18. Titles and Headings.** Paragraph titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

~~19.~~ **19. Execution in Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

~~20.~~ **20. Signing.** Each of the undersigned Parties agrees to be bound by the terms of this Agreement and executes it under seal as of its own free will.

Roman Catholic Bishop of Wilmington, and successors, d/b/a the Catholic Diocese of Wilmington, Inc., **(on behalf of Seller and the Seller Releasing Parties who are or were insureds under those seven (7) individual policies of insurance issued by National Casualty Company and/or Scottsdale Insurance Company, with effective dates July 1, 1990 through July 1, 1997)**

By:_____ (SEAL)

Its:_____

Dated:_____

National Casualty Company and Scottsdale Insurance Company **(on behalf of Buyer and Buyer Releasing Parties)**

By:_____ (SEAL)

Their: _____

Dated:_____

## Approved as to Form

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Anthony G. ~~Flym~~Flynn

    Counsel for Roman Catholic Bishop of Wilmington, and successors, d/b/a the Catholic Diocese of Wilmington, Inc. ("~~"~~**Seller**~~"~~")

DEASEY, MAHONEY, VALENTINI & NORTH, ~~LP~~LTD.

_____

John P. Morgenstern

    Counsel for National Casualty Company and Scottsdale Insurance Company ("~~"~~**Buyer**~~"~~")

Document comparison by Workshare Professional on Thursday, July 28, 2011 2:28:04 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE01/YCST01/11306878/1 |
| Description | #11306878v1<YCST01> - CDOW - Scottsdale Insurance Co  Buyback Agreement (reserved) |
| Document 2 ID | interwovenSite://WORKSITE01/YCST01/11244094/1 |
| Description | #11244094v1<YCST01> - CDOW - Scottsdale/Nat'l Cas. Buy-back Agreement |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| ~~Deletion~~ |
| ~~Moved from~~ |
| Moved to |
| Style change |
| Format change |
| ~~Moved deletion~~ |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 138 |
| Deletions | 153 |
| Moved from | 12 |
| Moved to | 12 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 315 |

**d.**     **Blackline of Lloyd's Underwriters (pre-1994)**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (hereinafter the "Agreement") is made this ___ day of _____, 2011, by and between the Catholic Diocese of Wilmington, Inc. (hereinafter referred to as "Diocese"), the "Parishes", and the "Related Entities" (each as defined below) (collectively, the "Catholic Entities"), and Lloyd's Underwriters (as defined below) (the aforementioned parties being referred to hereinafter individually as a "Party" and collectively as the "Parties").

### WITNESSETH THAT:

WHEREAS, Lloyd's Underwriters severally subscribed to certain policies providing insurance to the Catholic Entities (the "Subject Insurance Policies", as defined below); and,

WHEREAS, certain of the Catholic Entities have incurred and may incur in the future certain liabilities, expenses and losses arising out of certain claims; and,

WHEREAS, some of those certain Catholic Entities tendered demands to Lloyd's Underwriters for coverage under the Subject Insurance Policies for such claims, and Lloyd's Underwriters dispute whether, and to what extent, coverage may attach with respect to any such claims under the Subject Insurance Policies ("Dispute"); and,

WHEREAS, on October 18, 2009, the Diocese filed a petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), Case No. 09-13560-CSS ("Bankruptcy Case"); and,

WHEREAS, upon confirmation of the "Settlement Plan" (as defined below) the Catholic Entities will enter into a settlement of all Survivor Claims in the Bankruptcy Case; and,

WHEREAS, whether or not they were subject to claims and whether or not they tendered demands to Underwriters, all Catholic Entities are settling with and releasing Lloyd's Underwriters pursuant to this Agreement; and,

WHEREAS, it is the intention of the Parties that the Subject Insurance Policies be sold, assigned and transferred to Lloyd's

1

Underwriters and that Lloyd's Underwriters shall buy back the Subject Insurance Policies, by payment of the "Settlement Amount" (as defined below); and,

WHEREAS, it is the intention of the Parties that any and all interests of the Catholic Entities in the Subject Insurance Policies shall be extinguished, ended, and forever terminated; and,

WHEREAS, it is the intention of the Parties that the Catholic Entities shall (i) not retain any right, title or interest in or to the Subject Insurance Policies, and (ii) release Lloyd's Underwriters, and that no Lloyd's Underwriter shall have any remaining duties or obligations of any nature whatsoever to any Catholic Entity; and,

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without Lloyd's Underwriters' admission of liability or responsibility under the Subject Insurance Policies, a full and final settlement that releases and terminates all rights, obligations and liabilities of Lloyd's Underwriters and the Catholic Entities with respect to the Subject Insurance Policies, including, without limitation, all rights, obligations and liabilities relating to the aforesaid claims, without prejudice to their respective positions on policy wordings or any other issues, or in any action.

AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, the Parties agree as follows:

1.   **Definitions**

The following definitions will apply to the listed terms wherever those terms appear throughout this Agreement as well as in any exhibits or attachments thereto. Where the listed terms are also further defined elsewhere in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Moreover, each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the

2

singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. Capitalized terms not defined herein shall take the meaning ascribed to them in the Settlement Plan.

## A.  <u>Diocese</u>

The term "Diocese" means:

(i)      the Catholic Diocese of Wilmington, Inc.; its predecessors; all its past and present subsidiaries and the predecessors and successors of such subsidiaries; its past and present affiliates and joint ventures and their predecessors and successors; and all its past, present and future assigns; and,

(ii)     any other entity that was in the past or is now affiliated with, related to or associated with the Diocese including, without limitation, any corporations that have been acquired by, merged into or combined with the Diocese or its predecessors, or the Diocese's past and present subsidiaries, affiliates, successors and assigns; and,

(iii)    any and all entities named as insureds, other insureds, or otherwise insured or claimed to be insured under the Subject Insurance Policies and those entities', subsidiaries', affiliates', successors' and assigns' directors, officers, agents and employees; *provided, however*, those Persons included within the definition of "Parishes" or "Related Entities" are not within the definition of "Diocese".

## B.  <u>Lloyd's Underwriters</u>

The term "Lloyd's Underwriters" means:

(i)      All Underwriters, members, or Names at Lloyds, London (including, without limitation, former underwriters, members or Names) who through their participation in syndicates, severally subscribed, each in his own proportionate share, to one or more of the Subject Insurance Policies. Lloyd's Underwriters shall also include all Underwriters, members or Names at Lloyd's, London, (including, without limitation, former underwriters, members and Names), who, through their

3

participation in syndicates severally subscribed to any of the Subject Insurance Policies in favor of the Catholic Entities: (a) the existence of which has not presently been established; or (b) the existence of which has been established but as to which identities of names, members, or syndicates are not presently known;

(ii)     All the past, present and future employees (if any), representatives, attorneys, and agents of the persons set forth in subsection 1 above, and their respective predecessors and successors, if any, solely in such capacity;

(iii)    All the respective heirs, executors, successors, including, without limitation, Equitas Insurance Limited ("EIL") to the extent EIL is a successor to any of the Persons identified in subsection (i) above with respect to the subject matter of this Agreement, assigns (including, without limitation, any administrator, receiver, trustee, personal representative or equivalent appointee/s under relevant insolvency law), reinsurers and retrocessionaires (as such) of any of the Persons identified in subsection (i) above.

(iv)     For the avoidance of doubt, the Underwriter Third Party Beneficiaries, who receive certain specified benefits under this Agreement, are not Lloyd's Underwriters for these purposes.

## C.  Underwriter Third Party Beneficiaries

The term "Underwriter Third Party Beneficiaries" means:

(i)      Resolute and the Equitas Entities;

(ii)     EIL to the extent it is not a successor to the persons identified in Section B.(i) above with respect to the subject matter of this Agreement.

(iii)    Any Person from time to time retained by or on behalf of Lloyd's Underwriters to act as their claims handling agent and/or service provider, solely in such capacity;

(iv)     The past, present and future reinsurers and retrocessionaires of the Equitas Entities or any of them, including, without limitation, National Indemnity Company and any other entity from time to time

4

controlled (whether directly or indirectly), by Berkshire Hathaway, Inc., that provides retrocessional reinsurance to any one or more of the Equitas Entities, solely in such capacity;

(v)     All past, present and future trustees, officers, directors, employees, subsidiaries, affiliates, representatives, attorneys and agents of the entities set forth in sub-paragraphs (i) to (iv) (inclusive), if any, solely in such capacity; and

(vi)    The respective heirs, executors, successors and assigns (including, without limitation, any administrator, receiver, trustee, personal representative, liquidator (provisional or otherwise) or equivalent appointee/s under relevant insolvency law), of any of the Persons identified in sub-paragraphs (i) to (v) (inclusive) above.

## D.  **Resolute**

The term "Resolute" means:

Resolute Management Inc. – New England Division and Resolute Management Services Limited (formerly known as Equitas Management Services Limited).

## E.  **Equitas Entities**

The term "Equitas Entities" means:

Equitas Limited, Equitas Reinsurance Limited, Equitas Holdings Limited, Equitas Policyholders Trustee Limited and any other company from time to time in the Equitas Group.

## F.  **Parishes**

The term "Parishes" means:

(i)     Cathedral of St. Peter Roman Catholic Church; Christ Our King Roman Catholic Church; Corpus Christi Roman Catholic Church; Good Shepherd Roman Catholic Church; Holy Child Roman Catholic Church; Holy Cross Roman Catholic Church; Holy Family Roman Catholic Church; Holy Name of Jesus Roman Catholic Church; Holy Rosary Roman Catholic Church; Holy Spirit Roman Catholic Church; Immaculate Conception Roman Catholic Church (Elkton);

5

Immaculate Conception Roman Catholic Church (Marydel); Immaculate Heart of Mary Roman Catholic Church; Our Lady of Fatima Roman Catholic Church; Our Lady of Good Counsel Roman Catholic Church; Our Lady of Lourdes Roman Catholic Church; Our Mother of Sorrows Roman Catholic Church; Parish of The Resurrection Roman Catholic Church; Sacred Heart Roman Catholic Church; St. Andrew Roman Catholic Church; St. Ann Roman Catholic Church (Bethany Beach); St. Ann Roman Catholic Church (Wilmington); St. Anthony of Padua Roman Catholic Church; St. Benedict Roman Catholic Church; St. Catherine of Siena Roman Catholic Church; St. Christopher Roman Catholic Church; St. Dennis Roman Catholic Church; St. Elizabeth Roman Catholic Church; St. Elizabeth Ann Seton Roman Catholic Church; St. Francis de Sales Roman Catholic Church; St. Hedwig Roman Catholic Church; St. Helena Roman Catholic Church; St. John Neumann Roman Catholic Church; St. John the Apostle Roman Catholic Church; St. John the Baptist — Holy Angels Roman Catholic Church; St. John the Beloved Roman Catholic Church; St. Joseph Roman Catholic Church (Middletown); St. Joseph Roman Catholic Church (Wilmington); St. Joseph on the Brandywine Roman Catholic Church; St. Jude the Apostle Roman Catholic Church; St. Luke Roman Catholic Church; St. Margaret of Scotland Roman Catholic Church; St. Mary of the Assumption Roman Catholic Church; St. Mary of the Immaculate Conception Roman Catholic Church; St. Mary Magdalen Roman Catholic Church; St. Mary Refuge of Sinners Roman Catholic Church; St. Mary Star of the Sea Roman Catholic Church; St. Matthew Roman Catholic Church; St. Michael the Archangel Roman Catholic Church; St. Patrick Roman Catholic Church; St. Paul Roman Catholic Church (Delaware City); St. Paul Roman Catholic Church (Wilmington); Ss. Peter and Paul Roman Catholic Church; St. Peter the Apostle Roman Catholic Church; St. Polycarp Roman Catholic Church; and St. Thomas the Apostle Roman Catholic Church, their predecessors; all their past and present subsidiaries and the predecessors and successors of such subsidiaries; their past and present affiliates and joint ventures and their predecessors and successors; and all their past, present and future assigns; and,

(ii)    any other entity that was in the past or is now affiliated with, related to or associated with the Parishes including, without limitation, any corporations

6

that have been acquired by, merged into or combined with a Parish or its predecessors, or the Parishes' past and present subsidiaries, affiliates, successors and assigns; *provided, however*, Persons included within the definition of "Parishes" shall not be included in the definition of "Diocese" or "Related Entities" under this Agreement.

## G.   Related Entities

The term "Related Entities" means:

(i)       Diocese of Wilmington Schools, Inc., DOW Schools, Inc.; Catholic Cemeteries, Inc.; Catholic Charities, Inc.; Siena Hall, Inc.; Seton Villa, Inc.; Children's Home, Inc.; Catholic Youth Organization, Inc. d/b/a Catholic Youth Ministry; Catholic Ministry to the Elderly, Inc.; Catholic Press of Wilmington, Inc.; and Catholic Diocese Foundation, their predecessors; all their past and present subsidiaries and the predecessors and successors of such subsidiaries; their past and present affiliates and joint ventures and their predecessors and successors; and all their past, present and future assigns; and,

(ii)      any other entity that was in the past or is now affiliated with, related to or associated with the Related Entities including, without limitation, any corporations that have been acquired by, merged into or combined with a Related Entity or its predecessors, or the Related Entities' past and present subsidiaries, affiliates, successors and assigns; *provided, however*, Persons included within the definition of "Diocese" or "Parishes" are not within the definition of "Related Entities".

## H.   Contribution Claim

The term "Contribution Claim" means any claim, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, by one insurer against another insurer for the reimbursement of money paid by the first insurer for having paid a debt, expense, or liability of its insured in a situation where two or more policies by different insurers cover the same insured for the same loss, and the first insurer contends it has paid more than its proper or proportionate share.

7

### I.   Person

The term "Person" means an individual, a corporation, a partnership, an association, a trust, any committee or other group established by the Bankruptcy Court, any other entity or organization, and any federal, state or local government or any governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality thereof.

### J.   Subject Insurance Policies

The term "Subject Insurance Policies" means: (i) all insurance policies listed in Attachment A hereto; and (ii) all known and unknown insurance policies subscribed by a Lloyd's Underwriter prior to July 1, 1994, and providing insurance to a Catholic Entity whether or not listed in Attachment A hereto.

### K.   Settlement Plan

The term "Settlement Plan" means (i) the Settlement Plan set forth in the Second Amended Chapter 11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc., dated May 23, 2011, Docket Number 1321 and all Exhibits thereto; and (ii) any alterations, amendments and modifications to the Settlement Plan made after May 23, 2011, but only with the express written consent of Lloyd's Underwriters.

### L.   Confirmation Order

The term "Confirmation Order" means the order of the Bankruptcy Court confirming the Settlement Plan pursuant to § 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

### 2.   Settlement Amount

In the Confirmation Order, the Bankruptcy Court shall approve this Agreement and the sale, assignment and transfer of the Subject Insurance Policies by the Catholic Entities to Lloyd's Underwriters pursuant to § 363(b), (f) and (m) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019. Should the Bankruptcy Court not so approve this Agreement, this Agreement shall be void ab initio.

8

Except as provided below, on the date that is the first business day after the date that is the later of 30 days after (i) the date the Bankruptcy Court has entered the Confirmation Order, which Confirmation Order is accompanied by the findings set forth in Paragraph 5 of this Agreement and such Confirmation Order has become final and non-appealable; and (ii) the date all Parties have executed this Agreement, Lloyd's Underwriters shall pay to the Settlement Trust the total settlement amount of Eight Million Three Hundred and Sixty Thousand and Twenty-six United States Dollars ($8,360,026.00)("Settlement Amount").

On the date that Lloyd's Underwriters pay the Settlement Amount to the Settlement Trust, the sale, assignment and transfer of the Subject Insurance Policies by the Catholic Entities to Lloyd's Underwriters free and clear of all interests of all Persons, including, without limitation, the Catholic Entities, shall be effective and binding, with the intent that no Person shall retain anything whatsoever with respect to the Subject Insurance Policies.

If, before the Settlement Amount has been paid, a Parish or a Related Entity becomes a debtor in a bankruptcy case or insolvency proceeding, under the Bankruptcy Code or otherwise, and Lloyd's Underwriters have not satisfied their payment obligations, then Lloyd's Underwriters shall be excused from performance under this Agreement until such time as such Parish or Related Entity obtains, subject to the limitations imposed by the Bankruptcy Code and subject to the equitable powers of the bankruptcy court, an order from the bankruptcy court approving this Agreement under § 363(b), (f) and (m) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 and authorizing the assumption by such Parish or Related Entity (or any successor thereto) of this Agreement under Bankruptcy Code Section 365 (the "Assumption"), or in the event the insolvency case is proceeding under other law, shall obtain a similar order from the court overseeing the insolvency case approving this Agreement and confirming the binding effect thereof. Each Parish or Related Entity agrees that in the event of a bankruptcy or other insolvency proceeding, it will not present any claim for payment to any Lloyd's Underwriter, until such time as such Parish or Related Entity has made such Assumption and such Assumption has been approved by a bankruptcy court or other applicable court.

3. <u>Release</u>

A. <u>By the Catholic Entities</u>

Upon the Settlement Trust's receipt of the Settlement Amount, each Catholic Entity, and any subsequently appointed trustee or representative acting for a Catholic Entity, shall be deemed to remise, release, covenant not to sue and forever discharge the following: (i) each Lloyd's Underwriter; (ii) each of that Lloyd's Underwriter's present and former officers, directors, employees, partners, limited partners, shareholders, members, subsidiaries, affiliates, representatives, attorneys and agents (a) in such capacity and (b) in their individual capacity; and (iii) the respective heirs, executors, administrators, successors, assigns and reinsurers (as such) of any of the Persons identified in subparagraphs (i) and (ii) hereof as follows: from and against all manner of action, causes of action, suits, debts, accounts, promises, warranties, damages (consequential or punitive), agreements, costs, expenses, claims or demands whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, whether sounding in tort or contract, or arising under the statutes or administrative regulations of any jurisdiction, with respect to any and all past, present or future claims, of any type whatsoever, that such Catholic Entity ever had, now has, or hereafter may have: (1) for insurance coverage, including, without limitation, both defense costs and indemnification claims, with respect to the Subject Insurance Policies; and (2) arising out of or relating to any act, omission, representation, or conduct of any sort in connection with the Subject Insurance Policies.

Those Lloyd's Underwriters entitled to this Release that are described in the definition of Lloyd's Underwriters as entities which subscribed a Subject Insurance Policy either not presently known, or known but to which the identity of the subscribers is not presently known, shall be entitled to all of the terms of this Release (and to the Indemnity set forth in Paragraph 4 below), one-hundred twenty (120) days after the Settlement Trust's receipt of the Settlement Amount.

It is the intention of each Catholic Entity to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies with respect to any past, present or future claims and to assure each Lloyd's Underwriter its peace and freedom from such claims and from all assertions of rights in connection with such claims.

10

Upon the Settlement Trust's receipt of the Settlement Amount, any and all rights, duties, responsibilities and obligations of any Lloyd's Underwriter created by or in connection with the Subject Insurance Policies are hereby terminated.  As of the date of such payment the Catholic Entities have no insurance coverage under the Subject Insurance Policies.  This Release is intended to operate as though Lloyd's Underwriters had never subscribed to the Subject Insurance Policies.

This Release extends to all those Lloyd's Underwriters that subscribed to any of the Subject Insurance Policies which include both known and unknown policies.

This Release also extends to the Underwriter Third Party Beneficiaries.  These entities are third-party beneficiaries of the terms of this Release.

Each Catholic Entity acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all rights under California Civil Code Section 1542 and under any other federal or state statute or law of similar effect.

Each Catholic Entity expressly assumes the risk that acts, omissions, matters, causes or things may have occurred which it does not know or does not suspect to exist.  Each Catholic Entity hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (i) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or, (ii) which restricts or prohibits the releasing of such claims.

## B.   **By Lloyd's Underwriters**

At the same time the Releases described in Paragraph 3.A immediately above become effective, each Lloyd's Underwriter so released, and any subsequently appointed trustee or representative acting for such Lloyd's Underwriter shall be deemed to remise, release, covenant not to sue and forever discharge:  (i) each Catholic Entity; (ii) each of the Catholic Entities' present and former officers, directors, employees, partners, limited partners, shareholders, members, subsidiaries, affiliates, representatives, attorneys and agents (a) in such capacity and (b) in their individual capacity; and (iii) the respective heirs, executors, administrators, successors, and assigns of any of the Persons identified in subparagraphs (i) and (ii) hereof as follows: from

11

and against all manner of action, causes of action, suits, debts, accounts, promises, warranties, damages (consequential or punitive), agreements, costs, expenses, claims or demands whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, whether sounding in tort or in contract, or arising under the statutes or administrative regulations of any jurisdiction, with respect to any and all past, present or future claims, of any type whatsoever, that each such Lloyd's Underwriter ever had, now has or hereinafter may have with respect to the Subject Insurance Policies.

It is the intention of each Lloyd's Underwriter released under the terms of Paragraph 3.A above to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies.

4.    **Indemnification**

    A.    In the event that any claim or suit is brought against Lloyd's Underwriters under, arising out of, relating to, or in connection with the Subject Insurance Policies, which claim is subject to the Channeling Injunction provided in the Plan, the Diocese and Lloyd's Underwriters will cooperate in establishing that Lloyd's Underwriters are Protected Parties under the Plan entitled to the protections afforded to such Protected Parties under the Plan; provided, however, that the foregoing shall not in any way affect or limit the Catholic Entities' obligations set forth in Paragraphs 4.B, 4.D and 4.E below

    B.    The Catholic Entities shall indemnify and hold harmless Lloyd's Underwriters in respect of any and all claims arising under or relating in any way to the Subject Insurance Policies, including, without limitation, all claims, whether by way of direct action or otherwise, made by: (i) other insurers of the Catholic Entities; (ii) any Person claiming to be insured under the Subject Insurance Policies; (iii) any Person who has made, will or can make a claim; (iv) any Person who has acquired or been assigned the right to make a claim under the Subject Insurance Policies; or (v) any federal, state or local government or any political subdivision, agency, department, board or instrumentality thereof, including, without limitation, the State of Minnesota pursuant to the Minnesota Landfill Cleanup Act, Minn. Stat. § 115B.39 et seq. or the Minnesota Insurance Recovery Act of 1996, Minn. Stat. § 115B.441 et seq. The Parties acknowledge that this indemnification includes, without limitation, claims made by any Person over whom the Catholic Entities do not have control,

12

including, without limitation, former subsidiaries, predecessors in interest, sellers or purchasers of assets, or any other Person who asserts rights to coverage under the Subject Insurance Policies. For purposes of the indemnification obligation of the Catholic Entities, the term "claim" also includes, without limitation, amounts paid in respect of any judgment, order, decree, settlement, contract or otherwise.

C. Lloyd's Underwriters shall have the right to defend, with counsel of their choice, all claims identified under Paragraph 4.B immediately above. Lloyd's Underwriters may begin the defense of any claim upon receipt of such a claim. Lloyd's Underwriters agree to notify the Catholic Entities as soon as practicable of claims identified under Paragraph 4.B immediately above and of their choice of counsel.

~~[RESERVED]~~
D. The Catholic Entities shall reimburse all reasonable and necessary attorneys' fees, expenses and amounts incurred by Lloyd's Underwriters in defending such claims. Lloyd's Underwriters shall defend any such claim in good faith. In defense of any such claim, Lloyd's Underwriters may settle or otherwise resolve a claim without the prior consent of the Catholic Entities.

E. This indemnification and hold harmless undertaking (Paragraphs 4.A, 4.B, 4.C, 4.D and 4.E immediately above) shall also extend to the benefit of the Underwriter Third Party Beneficiaries. These entities are third-party beneficiaries of the terms of this indemnification and hold harmless undertaking.

## 5. **Bankruptcy Obligations**

The Confirmation Order shall:

A. approve (i) this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019, and sections 363(b), (f) and (m) of the Bankruptcy Code; and (ii) the sale of the Subject Insurance Policies to Lloyd's Underwriters;

B. authorize the Parties to undertake the settlement and the transactions contemplated by this Agreement; and,

C. authorize the sale of the Subject Insurance Policies to Lloyd's Underwriters free and clear of any and all claims or interests on the ground that such interests are in *bona fide* dispute.

13

In the event that the Confirmation Order does not include the approval and authorizations set forth in the above sub-paragraphs, this Agreement shall be void ab initio.   The Diocese shall obtain the entry of the following factual findings and legal conclusions:

A.   the Agreement is fair and equitable and in the best interest of the estate and its creditors after consideration of (i) the probability of success in litigating the Dispute, should it be litigated; (ii) the likely difficulties in collection; (iii) the probable complexity of any litigation of the Dispute, the expense, inconvenience and delay necessarily attending such litigation, and the cost savings to the Diocese of avoiding such litigation; and (iv) the paramount interest of creditors;

B.   Lloyd's Underwriters are good faith purchasers of the Subject Insurance Policies and, as such, are entitled to all protections provided to good faith purchasers under section 363(m) of the Bankruptcy Code; and,

C.   notice of the sale free and clear of claims and interests was sufficient, and the requirements of Fed. R. Bankr. P. 6004(c) were satisfied, because notice of the motion seeking approval of the Agreement and the motion itself were served upon (i) all known claimants or counsel for claimants who filed a proof of claim in the Bankruptcy Case, who were scheduled by the Diocese, or whose claims are pending and tendered under the Subject Insurance Policies, at the address provided for notice in the proof of claim or the address listed for such claimant in the Diocese's schedules, or the address of such claimant last known to the Diocese, as applicable, (ii) all Persons who filed a notice of appearance in the Bankruptcy Case, and (iii) all Persons known or alleged by the Catholic Entities to have provided general liability insurance to the Catholic Entities.

In the event that the above factual findings and legal conclusions are not entered by the Bankruptcy Court, this Agreement shall be void ab initio.

## 6.   Reasonably Equivalent Value

The Parties acknowledge and agree that: (i) this Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations; (ii) based on their respective independent assessments, with the assistance and advice of

14

counsel, of the probability of success, the complexity, the delay in obtaining relief, and the expense of resolving their disputes, the payment of the Settlement Amount pursuant to this Agreement constitute a fair and reasonable settlement of the Catholic Entities' claims; (iii) the payments and other benefits received under this Agreement by the Catholic Entities constitute reasonably equivalent value for the release, indemnity, and other benefits received by Lloyd's Underwriters under this Agreement; and (iv) this Agreement constitutes a full and final resolution of all issues between the Parties, including, without limitation, the Dispute.

7.     **Representations and Warranties**

A.    Each Parish and Related Entity acknowledges and warrants that as of the date of this Agreement it is solvent, in that at fair value its assets exceed its liabilities and it has the liquidity to pay its debts.

B.    Each Catholic Entity acknowledges and warrants that no Person other than a Catholic Entity has legal title or rights as an insured, other insured, or otherwise insured or claims to be insured under the Subject Insurance Policies.

C.    Each Catholic Entity represents and warrants that it has the authority to execute this Agreement as its binding and legal obligation.

D.    The Diocese represents and warrants that each Catholic Entity has the authority to execute this Agreement as a binding and legal obligation.

E.    Each Party represents and warrants that the Persons signing this Agreement on its behalf are authorized to execute this Agreement.

F.    Each individual signing this Agreement on behalf of a Party represents and warrants that he or she has the right, power, legal capacity and authority to enter into this Agreement on behalf of such Party and bind such Party to perform each of the obligations specified herein.

8.     **Judgment Reduction**

A.    In any proceeding, suit or action between (i) a Catholic Entity; or (ii) the Settlement Trust and any insurer that is not a Lloyd's Underwriter ("Other Insurer"), where the Other Insurer

15

has asserted, asserts, or could assert that it has or may have a Contribution Claim against any Lloyd's Underwriter relating to claims against such Catholic Entity or the Settlement Trust, as applicable, any judgment obtained by such Catholic Entity or the Settlement Trust against such Other Insurer shall be reduced by the amount, if any, that such Lloyd's Underwriter would have been liable to pay the Other Insurer as a result of such Other Insurer's Contribution Claim, so that the Contribution Claim by the Other Insurer against such Lloyd's Underwriter is thereby satisfied and extinguished.

B.   In order to effectuate the preceding paragraph, such Catholic Entity or the Settlement Trust, as applicable, shall obtain a determination, from the court issuing the judgment against the Other Insurer, of the amount, if any, which such Lloyd's Underwriter would be required to pay the Other Insurer for its Contribution Claim and shall hold any money paid by such Other Insurer in escrow until these judgment reduction provisions can be applied.

C.   All settlements between a Catholic Entity and/or the Settlement Trust and any Other Insurer where the Other Insurer has asserted, asserts, or could assert that it has or may have a Contribution Claim against any Lloyd's Underwriter relating to such Catholic Entity or the Settlement Trust, as applicable, shall bar Contribution Claims by the Other Insurer against Lloyd's Underwriters, relating to the Catholic Entities or the Settlement Trust, as applicable, and identify Lloyd's Underwriters as intended third-party beneficiaries of that provision.

## 9.   Confidentiality

The Parties agree that all matters relating to the terms, negotiation and implementation of this Agreement shall be confidential and are not to be disclosed except by order of court or agreement, in writing, of the Parties, or as necessary to obtain approval by the Bankruptcy Court of the Agreement, except that, provided recipients agree to keep such information confidential, this Agreement may be disclosed to: (i) reinsurers of any Lloyd's Underwriter directly or through intermediaries; (ii) outside auditors or accountants of any Party; (iii) representatives of a non-party insurer subscribing or allegedly subscribing to one or more of the Subject Insurance Policies, which insurer is, has been or may become insolvent in the future including, without limitation, any liquidators, provisional

16

liquidators, scheme administrators, trustees, or similarly empowered Persons or entities acting for such insurer. This Agreement may also be disclosed, as required, to the Inland Revenue, the Internal Revenue Service or other U.S. or U.K. governmental authority that properly requires disclosure, or as otherwise required by law.

In the event a private litigant, by way of document request, interrogatory, subpoena, or questioning at deposition or trial, attempts to compel disclosure of anything protected by this Paragraph, the Party from whom disclosure is sought shall decline to provide the requested information on the ground that this Confidential Settlement Agreement and Release prevents such disclosure. In the event such private litigant seeks an Order from any court or governmental body to compel such disclosure, or in the event that a court, government official, or governmental body (other than the Inland Revenue or Internal Revenue Service) requests or requires disclosure of anything protected by this paragraph, the Party from whom disclosure is sought shall immediately give written notice by facsimile or hand-delivery to the other Parties, and shall immediately provide copies of all notice papers, orders, requests or other documents in order to allow each Party to take such protective steps as may be appropriate. Notice shall be made under this paragraph to the persons identified in Paragraph 15 of this Agreement.

Material protected by this paragraph shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## 10. <u>Co-operation</u>

The Catholic Entities will undertake all reasonable actions to co-operate with Lloyd's Underwriters in connection with its respective reinsurers, including, without limitation, responding to reasonable requests for information and meeting with representatives of reinsurers.

## 11.   Non-Prejudice and Construction of Agreement

This Agreement is intended to be and is a compromise between the Parties and shall not be construed as an admission of coverage under the Subject Insurance Policies nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Insurance Policies.

This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement. This Agreement is without prejudice to positions taken by any Lloyd's Underwriter with regard to other insureds, and without prejudice with regard to positions taken by any Catholic Entity with regard to other insurers. Except for the express references to Underwriter Third Party Beneficiaries in Paragraphs 3 and 4 above, the Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement.

This Agreement is the jointly drafted product of arms-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will claim that any ambiguity in this agreement shall be construed against another Party.

If any provision of the Settlement Plan or the Plan Trust Agreement conflicts with or is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence. Neither the Settlement Plan nor the Plan Trust Agreement shall be construed or interpreted to modify or affect any rights or obligations of Lloyd's Underwriters under this Agreement.

## 12.   No Modification

No change or modification of this Agreement shall be valid unless (i) it is made in writing and signed by the Parties, even upon the receipt of additional consideration; and (ii) approved by the Bankruptcy Court.

18

## 13.  Execution

There will be two signed originals of this Agreement.

## 14.  Governing Law

This Agreement shall be governed by and shall be construed in accordance with the laws of Delaware.

## 15.  Notices

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the following person:

[RESERVED]

| | |
|---|---|
| For Diocese, Related Entities and Parishes: | Rev. Msgr. J. Thomas Cini Vicar General for Administration Catholic Diocese of Wilmington P.O. Box 2030 Wilmington, DE 19899-2030 |
| With a copy to: | Anthony G. Flynn, Esq. Young Conaway Stargatt & Taylor LLP The Brandywine Building 1000 West St., 17th Floor P.O. Box 391 Wilmington, DE 19899-0391 aflynn@ycst.com |
| For Resolute Management Services Ltd.: | Equitas Limited Claims Division 33 St. Mary Axe London EC3A 8LL ENGLAND |
| With a copy to: | Catalina J. Sugayan Sedgwick, Detert, Moran & Arnold LLP, One North Wacker Drive Suite 4200 Chicago, IL 60606-2841 |

19

|                        | Russell W. Roten |
|------------------------|------------------|
| and a copy to:         | Duane Morris LLP, |
|                        | 865 South Figueroa Street |
|                        | Suite 3100 |
|                        | Los Angeles, CA 90017-5450 |

## 16.    Integration

This Agreement, including the attachments, constitutes the entire Agreement between Lloyd's Underwriters and the Catholic Entities with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect thereto.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement under seal by their duly authorized representatives.

Lloyd's Underwriters have respectively designated Sedgwick, Detert, Moran & Arnold LLP as their attorneys-in-fact for the limited purpose of executing this Agreement on their behalf with express authority to do so.

[RESERVED]

| Catholic Diocese of Wilmington | Cathedral of St. Peter Roman Catholic Church |
|---|---|
| By:                     (SEAL) | |
|     (Name) | By: |
| | (Name), as its Trustee |
| Title: | |
| Date:  July    , 2011 | Date:  July    , 2011 |
| Christ Our King Roman Catholic Church | Corpus Christi Roman Catholic Church |
| By: | By: |
|     (Name), as its Trustee |     (Name), as its Trustee |
| Date:  July    , 2011 | Date:  July    , 2011 |
| Good Shepherd Roman Catholic Church | Holy Child Roman Catholic Church |
| | By: |
| By: |     (Name), as its Trustee |
|     (Name), as its Trustee | |
| | Date:  July    , 2011 |
| Date:  July    , 2011 | |

20

Holy Cross Roman Catholic Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Holy Name of Jesus Roman Catholic
Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Holy Spirit Roman Catholic Church

By: _____
        (Name), as its Trustee


Date:  July    , 2011

Immaculate Conception Roman
Catholic Church (Marydel)

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Our Lady of Fatima Roman Catholic
Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Our Lady of Lourdes Roman
Catholic Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Holy Family Roman Catholic Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Holy Rosary Roman Catholic Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Immaculate Conception Roman
Catholic Church (Elkton)

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Immaculate Heart of Mary Roman
Catholic Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Our Lady of Good Counsel Roman
Catholic Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

Our Mother of Sorrows Roman
Catholic Church

By: _____
        (Name), as its Trustee

Date:  July    , 2011

21

Parish of The Resurrection Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Andrew Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Ann Roman Catholic Church (Wilmington)

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Benedict Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Christopher Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Elizabeth Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

Sacred Heart Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Ann Roman Catholic Church (Bethany Beach)

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Anthony of Padua Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Catherine of Siena Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Dennis Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Elizabeth Ann Seton Roman Catholic Church

By: _____
_____(Name), as its Trustee

Date: July___, 2011

St. Francis de Sales Roman
Catholic Church

By:
_____
      (Name), as its Trustee

Date: July    , 2011

St. Helena Roman Catholic Church

By:
_____
      (Name), as its Trustee


Date: July    , 2011


St. John the Apostle Roman
Catholic Church

By:
_____
      (Name), as its Trustee

Date: July    , 2011

St. John the Beloved Roman
Catholic Church

By:
_____
      (Name), as its Trustee

Date: July    , 2011

St. Joseph Roman Catholic Church
(Wilmington)

By:
_____
      (Name), as its Trustee

Date: July    , 2011

St. Hedwig Roman Catholic Church

By:
_____
      (Name), as its Trustee


Date: July    , 2011

St. John Neumann Roman Catholic
Church

By:
_____
      (Name), as its Trustee


Date: July    , 2011

St. John the Baptist – Holy
Angels Roman Catholic Church

By:
_____
      (Name), as its Trustee

Date: July    , 2011

St. Joseph Roman Catholic Church
(Middletown)

By:
_____
      (Name), as its Trustee

Date: July    , 2011

St. Joseph on the Brandywine
Roman Catholic Church

By:
_____
      (Name), as its Trustee

Date: July    , 2011

23

St. Jude the Apostle Roman
Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Margaret of Scotland Roman
Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Mary of the Immaculate
Conception Roman Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Mary Refuge of Sinners Roman
Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Matthew Roman Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Luke Roman Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Mary of the Assumption Roman
Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Mary Magdalen Roman Catholic
Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Mary Star of the Sea Roman
Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Michael the Archangel Roman
Catholic Church

By: _____
      (Name), as its Trustee

Date:  July   , 2011

St. Patrick Roman Catholic Church

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011


St. Paul Roman Catholic Church
(Wilmington)

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011


St. Peter the Apostle Roman
Catholic Church

By: _____
_____ (Name), as its Trustee


Date:  July ___ , 2011


St. Thomas the Apostle Roman
Catholic Church

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011


Catholic Cemeteries, Inc.

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011


St. Paul Roman Catholic Church
(Delaware City)

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011


Ss. Peter and Paul Roman Catholic
Church

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011


St. Polycarp Roman Catholic
Church

By: _____
_____ (Name), as its Trustee


Date:  July ___ , 2011


DOW Schools, Inc.

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011


Catholic Charities, Inc.

By: _____
_____ (Name), as its Trustee

Date:  July ___ , 2011

068902.1C

Siena Hall, Inc.

By: _____
    (Name), as its Trustee

Date: July    , 2011

Children's Home, Inc.

By: _____
    (Name), as its Trustee

Date: July    , 2011

Catholic Ministry to the Elderly,
Inc.

By: _____
    (Name), as its Trustee

Date: July    , 2011

Catholic Diocese Foundation

By: _____
    (Name), as its Trustee

Date: July    , 2011

Seton Villa, Inc.

By: _____
    (Name), as its Trustee

Date: July    , 2011

Catholic Youth Organization, Inc.
d/b/a Catholic Youth Ministry

By: _____
    (Name), as its Trustee

Date: July    , 2011

Catholic Press of Wilmington,
Inc.

By: _____
    (Name), as its Trustee

Date: July    , 2011

Diocese of Wilmington Schools,
Inc.

By: _____
    (Name), as its Trustee

Date: July    , 2011

Signed: _____

    _____
       (name)

(For Lloyd's Underwriters)

Date: July    , 2011

068902.10

YCST01:11209155.1                                                                                              068902.10

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 124 | CH | 423458 | Church of Christ Our King | 12 @ 9/4/62 | Public Liability | BI 10,000/20,000 PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 423459 | Church of Christ Our King | 12 @ 9/4/62 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 424662 | Church of Christ our King | 12 @ 9/4/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 423 458 |
| WRI/SLIP | 124 | CH | 424663 | Church of Christ our King | 12 @ 9/4/63 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 423 459 |
| WRI/SLIP | 88 | CH | 429560 | Church of Christ our King | 36 @ 3/1/66 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 428 688 |
| WRI/SLIP | 101 | CH | 436294 | Church of Christ Our King | 36 @ 3/1/69 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 429 560 |
| WRI/SLIP | 170 | WA | 510092 | Church of Christ our King | 36 @ 3/1/75 | CGL | PI 100,000/300,000/300000 PD 5,000/25,000/25,000/25,000 | CH | 601 180 |
| MIS/EXC H | 67 | CH | 601180 | Church of Christ Our King | 36 @ 3/1/72 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 436 294 |
| WRI/SLIP | 60 | NM | 420456 | Church of Our Lady of Fatima | 12 @ 4/2/61 | Xs Public liability | PI 25,000/50,000/50,000 Xs 10,000/20,000/20,000 | NM | 418 719 |
| WRI/SLIP | 124 | CH | 422689 | Church of Our Lady of Fatima | 12 @ 4/2/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422690 | Church of Our Lady of Fatima | 12 @ 4/2/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 420 456 |
| WRI/SLIP | 124 | CH | 424387 | Church of Our Lady of Fatima | 12 @ 24/4/62 | Public Liability | BI 10,000/20,000 PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 424388 | Church of Our Lady of Fatima | 12 @ 24/4/62 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 424428 | Church of Our Lady of Fatima | 12 @ 4/2/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 689 |
| WRI/SLIP | 124 | CH | 424429 | Church of Our Lady of Fatima | 12 @ 4/2/63 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 422 690 |
| WRI/SLIP | 90 | CH | 430514 | Church of Our Lady of Fatima | 36 @ 14/4/66 | CGL | PI 100,000/300,000/300,000 PD 25,000/50,000/50,000 | CH | 428 434 |

28

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 100 | CH | 436509 | Church of Our Lady of Fatima | 36 @ 14/4/69 | CGL | PI 100,000/300,000/300,000 PD 25,000/50,000/50,000 | CH | 430 514 |
| WRI/SLIP | 163 | WA | 510198 | Church of Our Lady of Fatima | 36 @ 14/4/75 | CGL | PI 100,000/300,000 PD 25,000/50,000/50,000 | CH | 601 499 |
| WRI/SLIP | 53 | CH | 601499 | Church of Our Lady of Fatima | 36 @ 14/4/72 | CGL | PI 100,000/300,000/300,000 PD 25,000/50,000/50,000 | CH | 436 509 |
| WRI/SLIP | 97 | CH | 434430 | Church of St Catherine of Siena | 36 @ 30/4/68 | CGL | PI 25,000/50,000/50,000 Xs 5,000/25,000/25,000 | | |
| WRI/SLIP | 69 | CH | 424415 | Church of St. Catherine of Siena | 12 @ 2/3/63 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 163 | WA | 510934 | Church of St. Catherine of Siena | 36 @ 30/4/77 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 428 286 A |
| WRI/SLIP | 547 | CH | 603442 | Church of St. Catherine of Siena | 12 @ 30/4/73 | N/A | N/A | | |
| | 547 | | | | | | | | |
| WRI/SLIP | 82 | CH | 427354 | Church of the Holy Spirit | 12 @ 6/11/64 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 88 | CH | 429222 | Church of the Holy Spirit | 36 @ 8/9/65 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000/25,000 | CH | 427 354 |
| WRI/SLIP | 99 | CH | 434820 | Church of the Holy Spirit | 36 @ 8/9/68 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | CH | 429 222 |
| WRI/SLIP | 52 | CH | 600189 | Church of the Holy Spirit | 36 @ 8/9/71 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | CH | 434 820 |
| WRI/SLIP | 106 | CH | 440396 | Church of the Immaculate Conception | 36 @ 18/2/71 | CGL | PI 100,000/300,000/300,000 PD 25,000/50,000/50,000/50,000 | CH | 434 242 |
| WRI/SLIP | 163 | WA | 510819 | Church of the Immaculate Conception | 36 @ 25/1/77 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 604 383 |
| MIS/EXCH | 66 | CH | 604383 | Church of the Immaculate Conception | 36 @ 25/1/74 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 440 396 |

29

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese. The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 103 | CH | 438405 | Church of the Immaculate Heart of Mary | 36 @ 26/3/70 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 432 394 |
| WRI/SLIP | 166 | WA | 510542 | Church of the Immaculate Heart of Mary | 36 @ 26/3/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 50,000 a.o.acc/occ | CH | 603 383 |
| MIS/EXC H | 66 | CH | 603383 | Church of the Immaculate Heart of Mary | 36 @ 26/3/73 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 438 405 |
| WRI/SLIP | 93 | CH | 431234 | Church of the Sacred Heart | 36 @ 22/11/66 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000/25,000 | CH | 429 534 |
| WRI/SLIP | 103 | CH | 436981 | Church of the Sacred Heart | 36 @ 22/11/69 | CGL | PI 25,000/50,000/50,000 Xs 5,000/25,000/25,000 | CH | 431 234 |
| WRI/SLIP | 164 | WA | 510432 | Church of the Sacred Heart | 36 @ 22/11/75 | CGL | PI 250,000/500,000/500,000 PD 5,000/25,000/25,000 | CH | 601 965 |
| WRI/SLIP | 56 | CH | 601911 | Church of the Sacred Heart | 9 @ 1/9/72 | CGL | PI 25,000/50,000 PD 5,000/25,000 | NEW | |
| WRI/SLIP | 56 | CH | 601965 | Church of the Sacred Heart | 36 @ 22/11/72 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000/25,000 | CH | 436 981 |
| WRI/SLIP | 58 | CH | 420145 | Corpus Christi Church | 12 @ 8/11/60 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 418 552 |
| WRI/SLIP | 124 | CH | 422644 | Corpus Christi Church | 12 @ 8/11/61 | Public Liability | BI 10,000/20,000 PD 5,000 | NEW | |

30

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 124 | CH | 422645 | Corpus Christi Church | 12 @ 8/11/61 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 420 145 |
| WRI/SLIP | 124 | CH | 423686 | Corpus Christi Church | 12 @ 8/11/62 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 644 |
| WRI/SLIP | 124 | CH | 423687 | Corpus Christi Church | 12 @ 8/11/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 422 645 |
| WRI/SLIP | 124 | CH | 426739 | Corpus Christi Church | 12 @ 8/11/63 | Public Liability | BI 100,000/300,000 PD 10,000 | CH | 423 686 |
| WRI/SLIP | 87 | CH | 429364 | Corpus Christi Church | 36 @ 15/10/6 5 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | NM | 428 455 |
| WRI/SLIP | 58 | NM | 420135 | Holy Rosary Church | 12 @ 23/11/6 0 | Xs Public liability | BI 100,000/300,000 xs 10,000/20,000 PD 10,000 xs 5,000 | NM | 418 553 |
| WRI/SLIP | 124 | CH | 422629 | Holy Rosary Church | 12 @ 23/11/6 1 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422630 | Holy Rosary Church | 12 @ 23/11/6 1 | Xs Public liability | BI 50,000/100,000 xs 10,000/20,000    PD 10,000 xs 5,000 | NM | 420 135 |
| WRI/SLIP | 86 | NM | 428958 | Holy Rosary Church | 12 @ 24/8/65 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 92 | CH | 430953 | Holy Rosary Church | 36 @ 24/8/66 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000/25,000 | CH | 429 536 |
| WRI/SLIP | 102 | CH | 436804 | Holy Rosary Church | 36 @ 24/8/69 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | CH | 430 953 |
| WRI/SLIP | 164 | WA | 510322 | Holy Rosary Church | 36 @ 24/8/75 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 601 827 |
| WRI/SLIP | 163 | WA | 510253 | Immaculate Conception Church | 36 @ 9/6/75 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | | |
| WRI/SLIP | 124 | CH | 422713 | Mother of Sorrows Church | 12 @ 19/5/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422714 | Mother of Sorrows Church | 12 @ 19/5/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 420 729 |

31

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 91 | CH | 430859 | Our Lady of Good Counsel Church | 36 @ 26/7/66 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | CH | 430 585 |
| WRI/SLIP | 102 | CH | 436796 | Our Lady of Good Counsel Church | 36 @ 26/7/69 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000/25,000 | NM | 430 859 |
| WRI/SLIP | 164 | WA | 510291 | Our Lady of Good Counsel Church | 36 @ 26/7/75 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 601 756 |
| MIS/EXCH | 53 | CH | 601756 | Our Lady of Good Counsel Church | 36 @ 26/7/72 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000/25,000 | CH | 436 796 |
| WRI/SLIP | 124 | CH | 423470 | Our Lady of Lourdes | 12 @ 24/4/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 423471 | Our Lady of Lourdes | 12 @ 24/4/62 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 424656 | Our Lady of Lourdes | 12 @ 24/4/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 423 470 |
| WRI/SLIP | 124 | CH | 424657 | Our Lady of Lourdes | 12 @ 24/4/63 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 423 471 |
| WRI/SLIP | 166 | WA | 510666 | Our Mother of Sorrows Church | 36 @ 6/7/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 50,000 a.o.acc/occ | CH | 603 638 |
| WRI/SLIP | 124 | CH | 422660 | Sacred Heart Church | 12 @ 5/11/61 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422661 | Sacred Heart Church | 12 @ 5/11/61 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 420 144 |
| WRI/SLIP | 124 | CH | 423698 | Sacred Heart Church | 12 @ 5/11/62 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 660 |
| WRI/SLIP | 124 | CH | 423699 | Sacred Heart Church | 12 @ 5/11/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 422 661 |
| WRI/SLIP | 58 | NM | 420183 | St Anne's Church | 12 @ 2/11/60 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 418 560 |
| WRI/SLIP | 124 | CH | 422664 | St Anne's Church | 12 @ 2/11/61 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422665 | St Anne's Church | 12 @ 2/11/61 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 420 183 |

32

## ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 124 | CH 423674 | St Anne's Church | 12 @ 2/11/62 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 664 |
| WRI/SLIP | 124 | CH 423675 | St Anne's Church | 12 @ 2/11/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 422 665 |
| WRI/SLIP | 84 | CH 428438 | St Anne's Church | 12 @ 1/4/65 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 90 | CH 430510 | St Anne's Church | 36 @ 1/4/66 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 429 530 |
| WRI/SLIP | 93 | CH 431239 | St Anne's Church | 36 @ 2/11/66 | CGL | CSL 300,000 a.o.acc/occ | NEW | |
| WRI/SLIP | 100 | CH 436563 | St Anne's Church | 36 @ 1/4/69 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | NM | 430 510 |
| WRI/SLIP | 103 | CH 436982 | St Anne's Church | 36 @ 2/11/69 | CGL | CSL 300,000 a.o.acc/occ | CH | 431 239 |
| WRI/SLIP | 163 | WA 510196 | St Anne's Church | 36 @ 1/4/75 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000/30,000 | CH | 601 497 |
| MIS/EXCH | 66 | WA 510414 | St Anne's Church | 36 @ 2/11/75 | CGL | CSL 300,000 a.o.acc/occ | | |
| WRI/SLIP | 164 | WA 510430 | St Anne's Church | 36 @ 2/11/75 | CGL | PI 300,000 csl  PD 100,000 a.o.acc | CH | 601 998 |
| WRI/SLIP | 166 | WA 510635 | St Anne's Church | 36 @ 15/6/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 50,000 a.o.acc/occ | CH | 603 660 |
| WRI/SLIP | 53 | CH 601497 | St Anne's Church | 36 @ 1/4/72 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000/30,000 | CH | 436 563 |
| WRI/SLIP | 56 | CH 601998 | St Anne's Church | 36 @ 2/11/72 | CGL | CSL 300,000 a.o.acc/occ | CH | 436 982 |
| MIS/EXCH | 53 | CH 603660 | St Anne's Church | 36 @ 15/6/73 | CGL | PI 100,000/300,000/300,000 PD 100,000/100,000/100,000 | NEW | |
| WRI/SLIP | 93 | CH 431219 | St Anthony Church | 36 @ 5/11/66 | Physical Damage | Physical Damage only | CH | 429 350 |
| WRI/SLIP | 103 | CH 436972 | St Anthony Church | 36 @ 5/11/69 | Physical Damage | Physical Damage only | CH | 431 219 |

33

## ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese. The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 164 | WA | 510434 | St Anthony Church | 36 @ 5/11/75 | CGL | 300,000 CSL a.o.acc/occ | CH | 601 976 |
| WRI/SLIP | 56 | CH | 601976 | St Anthony Church | 36 @ 5/11/72 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000/100,000 | CH | 436 972 |
| WRI/SLIP | 124 | CH | 422712 | St Bernadettes & St. John Church | 12 @ 4/4/62 | Public Liability | BI 10,000/20,000 PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 424658 | St Bernadettes & St. John Church | 12 @ 4/4/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 712 |
| WRI/SLIP | 170 | WA | 510058 | St Bernadettes & St. John Church | 36 @ 25/12/74 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000/100,000 | NEW | |
| WRI/SLIP | 96 | CH | 432860 | St Denis Church | 36 @ 1/6/67 | CGL | PI 50,000/100,000/100,000 PD 10,000/30,000/30,000/30,000 | CH | 432 740 |
| MIS/EXCH | 67 | CH | 438789 | St Denis Church | 36 @ 1/9/70 | CGL | PI 50,000/100,000/100,000 PD 10,000/30,000/30,000 | | |
| WRI/SLIP | 166 | WA | 510715 | St Denis Church | 36 @ 1/9/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 50,000 a.o.acc/occ | CH | 603 794 |
| MIS/EXCH | 67 | CH | 603794 | St Denis Church | 36 @ 1/9/73 | CGL | PI 50,000/100,000/100,000 PD 10,000/30,000/30,000 | CH | 438 789 |
| WRI/SLIP | 124 | CH | 423275 | St Edmund's Church | 12 @ 16/3/62 | Public Liability | BI 10,000/20,000 PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 423276 | St Edmund's Church | 12 @ 16/3/62 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 424638 | St Edmund's Church | 12 @ 16/3/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 423 275 |
| WRI/SLIP | 124 | CH | 424639 | St Edmund's Church | 12 @ 16/3/63 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 423 276 |
| MIS/EXCH | 80 | CH | 428493 | St Edmund's Church | 12 @ 16/3/65 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000,25,000 | CH | 426 547 |

34

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 89 | CH | 430301 | St Edmund's Church | 12 @ 16/3/66 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 94 | CH | 432395 | St Edmund's Church | 36 @ 16/3/67 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 430 301 |
| WRI/SLIP | 103 | CH | 438369 | St Edmund's Church | 36 @ 16/3/70 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 432 395 |
| WRI/SLIP | 166 | WA | 510546 | St Edmund's Church | 36 @ 16/3/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 100,000 a.o.acc/occ | CH | 603 387 |
| WRI/SLIP | 57 | NM | 419074 | St Elizabeth's Church | 8/9/60 to 30/3/61 | Xs Public liability | PI 25,000/50,000/50,000 Xs 10,000/20,000/20,000 | NM | 416 384 |
| WRI/SLIP | 60 | NM | 420624 | St Elizabeth's Church | 12 @ 30/3/61 | Xs Public liability | PI 25,000/50,000/50,000 Xs 10,000/20,000/20,000 | NM | 419 074 |
| WRI/SLIP | 124 | CH | 422701 | St Elizabeth's Church | 12 @ 30/3/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422702 | St Elizabeth's Church | 12 @ 30/3/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 420 624 |
| WRI/SLIP | 124 | CH | 424637 | St Elizabeth's Church | 12 @ 30/3/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 701 |
| WRI/SLIP | 124 | CH | 424638 | St Elizabeth's Church | 12 @ 30/3/63 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 422 702 |
| WRI/SLIP | 86 | NM | 428969 | St Elizabeth's Church | 12 @ 20/8/65 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 92 | CH | 430950 | St Elizabeth's Church | 36 @ 20/8/66 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000/25,000 | NM | 428 969 |
| WRI/SLIP | 102 | CH | 436805 | St Elizabeth's Church | 36 @ 20/8/69 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | NM | 430 950 |
| WRI/SLIP | 164 | WA | 510332 | St Elizabeth's Church | 36 @ 20/8/75 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 601 829 |
| MIS/EXCH | 67 | CH | 432841 | St Francis de Sales Church | 36 @ 1/8/68 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | NEW | |

35

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 99 | CH | 434753 | | St Francis de Sales Church | 36 @ 1/8/68 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 432 841 |
| MIS/EXC H | 67 | CH | 600090 | | St Francis de Sales Church | 36 @ 1/8/71 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | | |
| MIS/EXC H | 67 | CH | 604566 | | St Francis de Sales Church | 36 @ 1/8/74 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 600 090 |
| WRI/SLIP | 58 | NM | 420132 | | St Francis Xavier Church | 12 @ 15/11/60 | Xs Public liability | PI 100,000/300,000/300,000 PD 10,000/20,000/20,000 | NM | 418 435 |
| WRI/SLIP | 124 | CH | 422646 | | St Francis Xavier Church | 12 @ 15/11/61 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422647 | | St Francis Xavier Church | 12 @ 15/11/61 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | NM | 420 132 |
| WRI/SLIP | 68 | CH | 423528 | | St Francis Xavier Church | 12 @ 9/10/62 | Xs CGL | B I 250,000/500,000 xs 100,000/300,000 | NEW | |
| WRI/SLIP | 124 | CH | 423713 | | St Francis Xavier Church | 12 @ 15/11/62 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | | |
| MIS/EXC H | 79 | CH | 425395 | | St Francis Xavier Church | 12 @ 9/11/63 | Xs CGL | BI 250,000/500,000 xs 100,000/300,000 | | |
| MIS/EXC H | 79 | CH | 428402 | | St Francis Xavier Church | 12 @ 10/1/65 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | | |
| WRI/SLIP | 84 | CH | 428568 | | St Francis Xavier Church | 12 @ 10/1/65 | Xs CGL | 250,000/500,000 Excess of 100,000/300/000 | CH | 425 395 |
| WRI/SLIP | 90 | CH | 430703 | | St Francis Xavier Church | 36 @ 20/1/66 | Xs CGL | BI 250,000/500,000 xs 100,000/300,000 | CH | 428 568 |
| MIS/EXC H | 69 | CH | 431246 | | St Francis Xavier Church | 12 @ 15/11/66 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 429 525 |
| WRI/SLIP | 73 | CH | 433112 | | St Francis Xavier Church | 12 @ 15/11/67 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 431 246 |

36

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 88 | CH | 429209 | St Hedwig's Church | 36 @ 21/9/65 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 427 432 |
| WRI/SLIP | 99 | CH | 434825 | St Hedwig's Church | 36 @ 21/9/68 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 429 209 |
| WRI/SLIP | 170 | WA | 510034 | St Hedwig's Church | 36 @ 21/9/74 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 600 178 |
| MIS/EXC H | 66 | CH | 600178 | St Hedwig's Church | 36 @ 21/9/71 | CGL | PI 100,000/300,000/300,000 PD 25,000/50,000/50,000 | CH | 434 825 |
| WRI/SLIP | 163 | WA | 510219 | St Helena's Church | 36 @ 14/5/75 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 601 463 |
| WRI/SLIP | 53 | CH | 601463 | St Helena's Church | 36 @ 14/5/72 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | NEW | |
| WRI/SLIP | 124 | CH | 423009 | St John's Church / St Patrick's Church | 12 @ 15/3/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 423010 | St John's Church / St Patrick's Church | 12 @ 15/3/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 424642 | St John's Church / St Patrick's Church | 12 @ 15/3/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 423 009 |
| WRI/SLIP | 124 | CH | 424643 | St John's Church / St Patrick's Church | 12 @ 15/3/63 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 423 010 |
| WRI/SLIP | 124 | CH | 423013 | St Joseph on the Brandywine | 12 @ 5/3/62 | Xs Public liability | BI 50,000/100,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 423014 | St Joseph on the Brandywine | 12 @ 5/3/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 424646 | St Joseph on the Brandywine | 12 @ 5/3/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 423 013 |
| WRI/SLIP | 124 | CH | 424647 | St Joseph on the Brandywine | 12 @ 5/3/63 | Xs Public liability | BI 50,000/100,000 excess of 10,000/20,000 | CH | 423 014 |
| WRI/SLIP | 89 | CH | 430318 | St Joseph on the Brandywine | 12 @ 15/3/66 | Physical Damage | Physical Damage only | N/A | |

37

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 94 | CH | 432397 | St Joseph on the Brandywine | 36 @ 15/5/67 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000/25,000 | CH | 430 499 |
| MIS/EXCH | 53 | CH | 438459 | St Joseph on the Brandywine | 36 @ 15/3/70 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 432 397 |
| WRI/SLIP | 166 | WA | 510544 | St Joseph on the Brandywine | 36 @ 15/3/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 50,000 a.o.acc/occ | CH | 603 595 |
| MIS/EXCH | 53 | CH | 603595 | St Joseph on the Brandywine | 36 @ 15/3/73 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 438 459 |
| WRI/SLIP | 57 | NM | 419180 | Old St. Joseph's Church | 12 @ 18/4/60 | Xs Public liability | 50,000/100,000/100,000    xs 10,000/20,000/20,000 | NM | 416 506 |
| WRI/SLIP | 124 | CH | 420626 | Old St. Joseph's Church | 12 @ 18/4/61 | Xs Public liability | 50,000/100,000/100,000    xs 10,000/20,000/20,000 | NM | 419 180 |
| WRI/SLIP | 124 | CH | 422710 | Old St. Joseph's Church | 18/4/62 - 1/5/62 | Public Liability | BI 10,000/20,000/20,000  PD 5,000/5,000 | NEW | |
| WRI/SLIP | 57 | CH | 600155 | St. Joseph's Church | 36 @ 15/9/71 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 434 977 |
| WRI/SLIP | 166 | WA | 510559 | St Mary Magdalen Church | 36 @ 19/3/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 50,000 a.o.acc/occ | NEW | |
| WRI/SLIP | 88 | CH | 429502 | St Mary of the Assumption | 36 @ 1/9/65 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000/25,000 | NEW | |
| WRI/SLIP | 99 | CH | 434822 | St Mary of the Assumption | 36 @ 1/9/68 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | CH | 429 502 |
| MIS/EXCH | 67 | CH | 600181 | St Mary of the Assumption | 36 @ 1/9/71 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | | |
| WRI/SLIP | 124 | CH | 423277 | St Mary's Church | 12 @ 12/3/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 423278 | St Mary's Church | 12 @ 12/3/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 424635 | St Mary's Church | 12 @ 12/3/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 423 277 |
| WRI/SLIP | 124 | CH | 424636 | St Mary's Church | 12 @ 12/3/63 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 423 278 |

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 91 | CH | 430858 | St Mary's Church | 36 @ 26/7/66 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | NM | 430 584 |
| WRI/SLIP | 170 | WA | 510156 | St Mary's Church | 36 @ 1/3/75 | CGL | PI 100,000/30,000/300,000  PD 50,000/100,000/100,000/100,000 | CH | 601 432 |
| WRI/SLIP | 53 | CH | 601432 | St Mary's Church | 36 @ 1/3/72 | CGL | PI 100,000/30,000/300,000  PD 50,000/100,000/100,000/100,000 | NEW | |
| WRI/SLIP | 58 | NM | 420137 | St Matthews Church | 12 @ 26/11/60 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 418 720 |
| WRI/SLIP | 124 | CH | 422628 | St Matthews Church | 12 @ 26/11/61 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 420 137 |
| WRI/SLIP | 124 | CH | 423693 | St Matthews Church | 12 @ 26/11/62 | Public Liability | BI 10,000/20,000  PD 5,000 | | |
| WRI/SLIP | 124 | CH | 423694 | St Matthews Church | 12 @ 26/11/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 422 628 |
| WRI/SLIP | 124 | CH | 422627 | St Matthew's Church | 12 @ 26/11/61 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 60 | NM | 420536 | St Michael's Church | 12 @ 18/2/61 | Xs Public liability | PI 100,000/300,000/300,000 Xs 10,000/20,000/20,000 | NM | 418 717 |
| WRI/SLIP | 124 | CH | 422675 | St Michael's Church | 12 @ 3/1/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422693 | St Michael's Church | 12 @ 18/2/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422694 | St Michael's Church | 12 @ 18/2/62 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 420 536 |
| WRI/SLIP | 124 | CH | 424385 | St Michael's Church | 12 @ 3/1/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 675 |
| WRI/SLIP | 124 | CH | 424386 | St Michael's Church | 12 @ 3/1/63 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 422 676 |

39

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 124 | CH | 424452 | St Michael's Church | 12 @ 18/2/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 693 |
| WRI/SLIP | 124 | CH | 424453 | St Michael's Church | 12 @ 18/2/63 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 422 694 |
| WRI/SLIP | 94 | CH | 432243 | St Michael's Church | 36 @ 18/2/67 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 430 503 |
| MIS/EXC H | 81 | CH | 432616 | St Michael's Church | 36 @ 28/4/67 | Umbrella | 1,000,000 xs primaries | | |
| MIS/EXC H | 81 | CH | 434165 | St Michael's Church | 12 @ 3/1/68 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | | |
| WRI/SLIP | 547 | WA | 710012 | St Michael's Church | 12 @ 17/9/74 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 603 712 |
| WRI/SLIP | 164 | WA | 510361 | St Michael's Church | 36 @ 17/9/75 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 710 012 |
| WRI/SLIP | 166 | WA | 510514 | St Michael's Church | 36 @ 18/2/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 100,000 a.o.acc/occ | CH | 603 277 |
| WRI/SLIP | 166 | WA | 510734 | St Michael's Church | 12 @ 17/9/76 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | WA | 510 361 |
| WRI/SLIP | 53 | CH | 601185 | St Michael's Church | 12 @ 3/1/72 | CGL | PI 100,000/300,000/300,000 PD 50,000/50,000/50,000 | CH | 440 259 |
| MIS/EXC H | 81 | CH | 603158 | St Michael's Church | 12 @ 3/1/73 | CGL | PI 100,000/300,000/300,000 PD 50,000/50,000/50,000 | CH | 601 885 |
| MIS/EXC H | 81 | CH | 604222 | St Michael's Church | 12 @ 3/1/74 | CGL | PI 100,000/300,000/300,000 PD 50,000/50,000/50,000 | CH | 603 158 |
| WRI/SLIP | 59 | NM | 420385 | St Paul's R C Church | 12 @ 15/1/61 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 418 558 |
| WRI/SLIP | 124 | CH | 422677 | St Paul's R C Church | 12 @ 16/1/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422678 | St Paul's R C Church | 12 @ 16/1/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | NM | 420 385 |
| WRI/SLIP | 124 | CH | 422735 | St Paul's R C Church | 12 @ 4/6/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |

40

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese. The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|--------|---|---------|---|---------|--------|----------|-----------|------------|---|
| WRI/SLIP | 124 | CH | 422736 | St Paul's R C Church | 12 @ 4/6/62 | Xs Public liability | BI 50,000/100,000 excess of 10,000/20,000 | NEW | |
| WRI/SLIP | 124 | CH | 424305 | St Paul's R C Church | 12 @ 16/1/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 677 |
| WRI/SLIP | 69 | CH | 424306 | St Paul's R C Church | 12 @ 16/1/63 | Xs Public liability | PI 25,000/50,000 Xs 10,000/20,000 | CH | 422 678 |
| WRI/SLIP | 87 | CH | 429441 | St Paul's R C Church | 36 @ 10/12/65 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 428 999 |
| WRI/SLIP | 101 | CH | 436178 | St Paul's R C Church | 36 @ 10/1/69 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 429 441 |
| WRI/SLIP | 170 | WA | 510094 | St Paul's R C Church | 36 @ 10/1/75 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000/30,000 | CH | 601 168 |
| WRI/SLIP | 163 | WA | 510176 | St Paul's R C Church | 36 @ 14/3/75 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 601 467 |
| MIS/EXCH | 66 | CH | 601168 | St Paul's R C Church | 36 @ 1/10/72 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 436 178 |
| MIS/EXCH | 65 | CH | 601467 | St Paul's R C Church | 36 @ 14/3/72 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | | |
| WRI/SLIP | 57 | NM | 419145 | St Peter's Cathedral | 12 @ 12/2/60 | Xs Public liability | PI 25,000/50,000/50,000 Xs 10,000/20,000/20,000 | NM | 416 233 |
| WRI/SLIP | 60 | NM | 420524 | St Peter's Cathedral | 12 @ 12/2/61 | Xs Public liability | PI 25,000/50,000/50,000 Xs 10,000/20,000/20,000 | NM | 419 145 |
| WRI/SLIP | 124 | CH | 422691 | St Peter's Cathedral | 12 @ 12/2/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422692 | St Peter's Cathedral | 12 @ 12/2/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 420 524 |
| WRI/SLIP | 124 | CH | 424430 | St Peter's Cathedral | 12 @ 12/2/63 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 691 |
| WRI/SLIP | 124 | CH | 424431 | St Peter's Cathedral | 12 @ 12/2/63 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | CH | 422 692 |
| MIS/EXCH | 67 | CH | 430187 | St Peter's Cathedral | 36 @ 12/2/66 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | | |

41

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 57 | CH | 430187 | St Peter's Cathedral | 36 @ 12/2/66 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | CH | 427 576 |
| MIS/EXC H | 67 | CH | 436323 | St Peter's Cathedral | 36 @ 12/2/69 | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | CH | |
| WRI/SLIP | 170 | WA | 510128 | St Peter's Cathedral | 36 @ 12/2/75 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000/100,000 | CH | 601 326 |
| MIS/EXC H | 67 | CH | 601326 | St Peter's Cathedral | | CGL | PI 25,000/50,000/50,000 PD 5,000/25,000/25,000 | CH | 436 323 |
| WRI/SLIP | 60 | NM | 420445 | St Peter's Church | 12 @ 22/11/60 | Xs Public liability | PI 100,000/300,000/300,000 Xs 10,000/20,000/20,000 | NM | 418 562 |
| WRI/SLIP | 124 | CH | 422631 | St Peter's Church | 12 @ 22/11/62 | Public Liability | BI 10,000/20,000  PD 5,000 | NEW | |
| WRI/SLIP | 124 | CH | 422632 | St Peter's Church | 12 @ 22/11/62 | Xs Public liability | BI 100,000/300,000 xs 10,000/20,000    PD 10,000 xs 5,000 | NM | 420 445 |
| WRI/SLIP | 67 | CH | 423383 | St Peter's Church | 3 @ 1/9/62 | Xs CGL | PI 100,000/500,000/500,000 Xs 10,000/300,000/300,000 | NEW | |
| WRI/SLIP | 124 | CH | 424272 | St Peter's Church | 12 @ 22/11/62 | Public Liability | BI 10,000/20,000 PD 5,000 | CH | 422 631 |
| WRI/SLIP | 124 | CH | 424273 | St Peter's Church | 12 @ 22/11/62 | Xs Public liability | BI 100,000/300,000 excess of 10,000/20,000 | CH | 422 632 |
| WRI/SLIP | 84 | CH | 428454 | St Peter's Church | 12 @ 22/11/64 | Xs CGL | PI 100,000/500,000/500,000 Xs 10,000/300,000/300,000 | CH | 426 682 |
| WRI/SLIP | 86 | CH | 428973 | St Peter's Church | 36 @ 15/8/65 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 427 208 |
| WRI/SLIP | 89 | CH | 430258 | St Peter's Church | 12 @ 22/11/65 | Xs CGL | 100,000/500,000 Excess of 100,000/300,000 | CH | 428 454 |

42

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese. The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 93 | CH | 431264 | St Peter's Church | 12 @ 22/11/66 | Xs CGL | 100,000/500,000 Excess of 100,000/300,000 | CH | 430 258 |
| WRI/SLIP | 94 | CH | 432237 | St Peter's Church | 36 @ 12/2/67 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | NM | 432 147 |
| WRI/SLIP | 94 | CH | 432442 | St Peter's Church | 36 @ 12/2/67 | CGL | 100,000/500,000 excess 100,000/300,000 | CH | 432 164 |
| WRI/SLIP | 75 | CH | 432980 | St Peter's Church | 36 @ 19/9/67 | Umbrella | 1,000,000 xs primaries | NEW | |
| WRI/SLIP | 99 | CH | 434766 | St Peter's Church | 36 @ 15/8/68 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 428 973 |
| WRI/SLIP | 104 | CH | 438370 | St Peter's Church | 36 @ 12/2/70 | CGL | PI 100,000/300,000/300,000 PD 25,000/50,000/50,000/50,000 | CH | 432 237 |
| WRI/SLIP | 166 | WA | 510510 | St Peter's Church | 36 @ 12/2/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 100,000 a.o.acc/occ | CH | 603 168 |
| WRI/SLIP | 57 | CH | 600086 | St Peter's Church | 36 @ 15/8/71 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 434 766 |
| MIS/EXCH | 65 | CH | 604570 | St Peter's Church | 36 @ 15/8/74 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 600 086 |
| WRI/SLIP | 93 | CH | 431233 | St Thomas Church | 36 @ 15/11/66 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 429 528 |

43

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| MIS/EXCH | 55 | CH | 436970 | St Thomas Church | 36 @ 15/11/69 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 431 233 |
| WRI/SLIP | 164 | WA | 510428 | St Thomas Church | 36 @ 15/11/75 | CGL | PI 300,000 csl  PD 100,000 a.o.acc | CH | 601 978 |
| MIS/EXCH | 55 | CH | 601978 | St Thomas Church | 36 @ 15/11/72 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 436 970 |
| WRI/SLIP | 61 | CH | 429065 | Catholic Diocese Foundation | 12 @ 2/7/65 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 91 | CH | 430874 | Catholic Diocese Foundation | 12 @ 2/7/66 | Physical Damage | Physical Damage only | CH | 429 065 |
| WRI/SLIP | 102 | CH | 436739 | Catholic Diocese Foundation | 12 @ 2/7/69 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 106 | CH | 440623 | Catholic Diocese Foundation | 12 @ 2/7/71 | Physical Damage | Physical Damage only | CH | 438 611 |
| WRI/SLIP | 164 | WA | 510295 | Catholic Diocese Foundation | 12 @ 2/7/75 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 604 534 |
| WRI/SLIP | 164 | WA | 510363 | Catholic Diocese Foundation | 36 @ 26/9/75 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 601 986 |
| WRI/SLIP | 166 | WA | 510653 | Catholic Diocese Foundation | 12 @ 2/7/76 | CGL | PI : CSL 300,000 a.o.acc/occ PD : 50,000 a.o.acc/occ | CH | 510 295 |
| MIS/EXCH | 67 | CH | 601986 | Catholic Diocese Foundation | 36 @ 26/9/72 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 440 623 |
| MIS/EXCH | 53 | CH | 603629 | Catholic Diocese Foundation | 12 @ 2/7/73 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 601 618 |
| MIS/EXCH | 53 | CH | 604534 | Catholic Diocese Foundation | 12 @ 2/7/74 | CGL | PI 100,000/300,000/300,000 PD 50,000/100,000/100,000 | CH | 603 629 |
| WRI/SLIP | 60 | NM | 420729 | The Bishop of Wilmington | 12 @ 19/5/61 | Xs Public liability | PI 25,000/50,000/50,000 Xs 10,000/20,000/20,000 | NM | 418 877 |
| WRI/SLIP | 124 | CH | 422628 | The Bishop of Wilmington | 12 @ 26/11/61 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | | |

44

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 124 | CH | 422629 | The Bishop of Wilmington | 12 @ 23/11/61 | Public Liability | BI 10,000/20,000  PD 5,000 | | |
| WRI/SLIP | 124 | CH | 422630 | The Bishop of Wilmington | 12 @ 23/11/61 | Xs Public liability | BI 50,000/100,000 xs 10,000/20,000    PD 10,000 xs 5,000 | | |
| WRI/SLIP | 124 | CH | 423693 | The Bishop of Wilmington | 12 @ 26/11/62 | Public Liability | BI 10,000/20,000  PD 5,000 | | |
| WRI/SLIP | 124 | CH | 423694 | The Bishop of Wilmington | 12 @ 26/11/62 | Xs Public liability | BI 25,000/50,000 excess of 10,000/20,000 | | |
| WRI/SLIP | 81 | CH | 427121 | The Bishop of Wilmington | 12 @ 26/9/64 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 82 | NM | 427221 | The Bishop of Wilmington | 12 @ 22/10/64 | Physical Damage | Physical Damage only | N/A | |
| WRI/SLIP | 88 | CH | 429170 | The Bishop of Wilmington | 36 @ 26/9/65 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 428 241 |
| WRI/SLIP | 87 | CH | 429365 | The Bishop of Wilmington | 36 @ 22/10/65 | CGL | PI 50,000/100,000/100,000 PD 10,000/30,000/30,000 | NM | 427 221 |
| WRI/SLIP | 87 | CH | 429366 | The Bishop of Wilmington | 36 @ 25/10/65 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | NM | 428 261 |
| WRI/SLIP | 90 | CH | 430595 | The Bishop of Wilmington | 36 @ 19/5/66 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 428 816 |
| WRI/SLIP | 90 | CH | 430600 | The Bishop of Wilmington | 36 @ 23/5/66 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | | |
| WRI/SLIP | 96 | CH | 432894 | The Bishop of Wilmington | 12 @ 5/8/67 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000/25,000 | CH | 432 943 |
| WRI/SLIP | 99 | CH | 434823 | The Bishop of Wilmington | 36 @ 26/9/68 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 429 170 |

45

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | | | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | 99 | CH | 434824 | | The Bishop of Wilmington | 12 @ 17/9/68 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | CH | 432 894 |
| WRI/SLIP | 101 | CH | 436180 | | The Bishop of Wilmington | 36 @ 25/1/69 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | CH | 429 366 |
| WRI/SLIP | 101 | CH | 436182 | | The Bishop of Wilmington | 36 @ 22/1/69 | CGL | PI 50,000/100,000/100,000 PD 10,000/30,000/30,000 | NM | 429 365 |
| MIS/EXC H | 65 | CH | 436565 | | The Bishop of Wilmington | 36 @ 23/5/69 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 430 600 |
| WRI/SLIP | 102 | CH | 436890 | | The Bishop of Wilmington | 12 @ 17/9/69 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | CH | 434 824 |
| WRI/SLIP | 104 | CH | 438762 | | The Bishop of Wilmington | 12 @ 17/9/70 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000/25,000 | CH | 436 890 |
| WRI/SLIP | 170 | WA | 510086 | | The Bishop of Wilmington | 36 @ 22/1/75 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000/30,000 | CH | 601 178 |
| WRI/SLIP | 163 | WA | 510217 | | The Bishop of Wilmington | 36 @ 23/5/75 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 601 659 |
| WRI/SLIP | 166 | WA | 510582 | | The Bishop of Wilmington | 36 @ 22/4/76 | CGL | PI/PD CSL 300,000 a.o.acc/occ | CH | 603 518 |
| WRI/SLIP | 52 | CH | 600153 | | The Bishop of Wilmington | 12 @ 17/9/71 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000 | CH | 438 762 |
| MIS/EXC H | 66 | CH | 600191 | | The Bishop of Wilmington | 36 @ 26/9/71 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000/25,000 | CH | 428 241 |
| MIS/EXC H | 66 | CH | 601168 | | The Bishop of Wilmington | 36 @ 10/1/72 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | | |
| WRI/SLIP | 53 | CH | 601178 | | The Bishop of Wilmington | 36 @ 22/1/72 | CGL | PI 100,000/300,000/300,000 PD 10,000/30,000/30,000 | CH | 436 182 |
| MIS/EXC H | 65 | CH | 601569 | | The Bishop of Wilmington | 36 @ 23/5/72 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 436 565 |
| WRI/SLIP | 56 | CH | 601882 | | The Bishop of Wilmington | 12 @ 17/9/72 | CGL | PI 50,000/100,000/100,000 PD 5,000/25,000/25,000/25,000 | CH | 600 153 |

46

# ATTACHMENT A identifies all found policies and all policies referenced on the Brokers' Ledgers provided by the Diocese.  The Inclusion of the policies referenced on the Brokers' Ledgers included herein is not an admission to the existence of these policies or evidence that these policies exist.

| BOX NO | SLIP NO | | ASSURED | PERIOD | COVERAGE | LIMIT US$ | RENEWAL OF | |
|---|---|---|---|---|---|---|---|---|
| WRI/SLIP | WA | 710028 | The Bishop of Wilmington | 36 @ 26/9/19 74 | CGL | PI 100,000/300,000/300,000 PD 5,000/25,000/25,000 | CH | 600 191 |
| WRI/SLIP | WA | 510984 | Diocese of Wilmington | 36 @ 7/1/197 7 | CGL | $500,000 per occurrence and in the annual aggregate | | |
| WRI/SLIP | WA | 511918 | Diocese of Wilmington | 36 @ 7/1/198 0 | CGL | $500,000 per occurrence and in the annual aggregate | | |
| WRI/SLIP | WA | 512892 | Diocese of Wilmington | 36 @ 7/1/198 3 | CGL | $500,000 per occurrence and in the annual aggregate | | |
| WRI/SLIP | WA | 513849 | Diocese of Wilmington | 36 @ 7/1/198 6 | CGL | $500,000 per occurrence and in the annual aggregate | | |
| WRI/SLIP | WA | 515347 | Diocese of Wilmington | 36 @ 7/1/198 9 | CGL | $500,000 per occurrence and in the annual aggregate | | |
| WRI/SLIP | WA | 517274 | Diocese of Wilmington | 36 @ 7/1/199 2 (ending 7/1/199 4) | CGL | $500,000 per occurrence and in the annual aggregate | | |

47

Document comparison by Workshare Professional on Thursday, July 28, 2011 1:19:51 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE01/YCST01/11209155/1 |
| Description | #11209155v1<YCST01> - Buyback - London Pre-94 -- Redaction 6/24/11 |
| Document 2 ID | interwovenSite://WORKSITE01/YCST01/11244096/1 |
| Description | #11244096v1<YCST01> - CDOW - Lloyd's Pre-94 Buy-back Agreement |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 195 |
| Deletions | 4 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 199 |