e.      **Blackline of Certain Underwriters at Lloyd's, London (post-1994)**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (hereinafter the "Agreement") is made this ___ day of ~~June~~July, 2011, by and between the Catholic Diocese of Wilmington, Inc. (hereinafter referred to as "Diocese"), the "Parishes", and the "Related Entities" (each as defined below) (collectively, the "Catholic Entities"), and Certain Underwriters at Lloyd's, London (hereinafter referred to as "Underwriters") (as defined below) (the aforementioned parties being referred to hereinafter individually as a "Party" and collectively as the "Parties").

## WITNESSETH THAT:

WHEREAS, Underwriters severally subscribed to policies issued to the Diocese of Wilmington which provided insurance to the Catholic Entities for the periods effective from July 1, 1994 to the present (the "Subject Insurance Policies", as defined below); and,

WHEREAS, certain of the Catholic Entities have incurred and may incur in the future certain liabilities, expenses and losses arising out of certain claims; and,

WHEREAS, certain Catholic Entities tendered demands to Underwriters for coverage under the Subject Insurance Policies for such claims, and Underwriters dispute whether, and to what extent, coverage may attach with respect to any such claims under the Subject Insurance Policies ("Dispute"); and,

WHEREAS, on October 18, 2009, the Diocese filed a petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), Case No. 09-13560-CSS ("Bankruptcy Case"); and,

WHEREAS, upon confirmation of the "Settlement Plan" (as defined below) the Catholic Entities will enter into a settlement of all Survivor Claims in the Bankruptcy Case; and

WHEREAS, whether or not they were subject to claims and whether or not they tendered demands to Underwriters, all Catholic Entities are settling with and releasing Underwriters pursuant to this Agreement; and,

WHEREAS, it is the intention of the Parties that the Subject Insurance Policies be sold, assigned and transferred to Underwriters and that Underwriters shall buy back the Subject Insurance Policies, free and clear of certain claims, specifically the Subject Claims (as defined below), by payment of the "Settlement Amount" (as defined below), to the extent provided herein; and,

WHEREAS, it is the intention of the Parties that the interests of the Catholic Entities in the Subject Insurance Policies shall be extinguished, ended, and forever terminated, to the extent provided herein; and,

WHEREAS, it is the intention of the Parties that the Catholic Entities shall (i) not retain any right, title or interest in or to the Subject Insurance Policies, and (ii) release Underwriters, and that no

Underwriters shall have any remaining duties or obligations of any nature whatsoever to any Catholic Entity, with regard to the Subject Claims; and,

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without Underwriters' admission of liability or responsibility under the Subject Insurance Policies, a full and final settlement that releases and terminates certain rights, obligations and liabilities of Underwriters and the Catholic Entities with respect to the Subject Insurance Policies, including, without limitation, certain rights, obligations and liabilities relating to the aforesaid claims, without prejudice to their respective positions on policy wordings or any other issues, or in any action.

WHEREAS, the Parties also intend by this Agreement to reach a global settlement in the Bankruptcy Case such that, in consideration for Underwriters' contribution to the global settlement, the Catholic Entities agree to release and indemnify Underwriters from any and all liability or actions in connection with certain claims.

<b>AGREEMENTS:</b>

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, the Parties agree as follows:

**1.**   **Definitions**

The following definitions will apply to the listed terms wherever those terms appear throughout this Agreement as well as in any exhibits or attachments thereto. Where the listed terms are also further defined elsewhere in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Moreover, each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. Capitalized terms not defined herein shall take the meaning ascribed to them in the Settlement Plan.

**A.**   Diocese

The term "Diocese" means:

(i)   the Catholic Diocese of Wilmington, Inc.; its predecessors; all its past and present subsidiaries and the predecessors and successors of such subsidiaries; its past and present affiliates and joint ventures and their predecessors and successors; and, all its past, present and future assigns; and,

(ii)   any other entity that was in the past or is now affiliated with, related to or associated with the Diocese including, without limitation, any corporations that have been acquired by, merged into or combined with the Diocese or its predecessors, or the Diocese's past and present subsidiaries, affiliates, successors and assigns; and,

2

(iii)    any and all entities named as insureds, other insureds, or otherwise insured or claimed to be insured under the Subject Insurance Policies and those entities', subsidiaries', affiliates', successors' and assigns' directors, officers, agents and employees; provided, however, those Persons included within the definition of "Parishes" or "Related Entities" are not within the definition of "Diocese."

B.    <u>Underwriters</u>

The term "Underwriters" means:

(i)    All Underwriters, members, or Names at Lloyd's, London (including, without limitation, former underwriters, members or Names), who through their participation in syndicates, severally subscribed, each in his or its own proportionate share, to one or more of the Subject Insurance Policies. Underwriters shall also include all Underwriters, members or Names at Lloyd's, London, (including, without limitation, former underwriters, members and Names), who, through their participation in syndicates severally subscribed to any of the Subject Insurance Policies in favor of the Catholic Entities:   (a) the existence of which has not presently been established; or (b) the existence of which has been established but as to which identities of names, members, or syndicates are not presently known; and

(ii)    All the past, present and future employees (if any), representatives, attorneys, and agents of the persons set forth in subsection (i) above, and their respective predecessors and successors, if any, solely in such capacity, and the respective heirs, executors, successors, assigns (including without limitation, any administrator, receiver, trustee, personal representative or equivalent appointees under relevant insolvency law), reinsurers and retrocessionaires (as such) of any of the Persons identified in sub-section (i) above.

C.    <u>Parishes</u>

The term "Parishes" means:

(i)    Cathedral of St. Peter Roman Catholic Church; Christ Our King Roman Catholic Church; Corpus Christi Roman Catholic Church; Good Shepherd Roman Catholic Church; Holy Child Roman Catholic Church; Holy Cross Roman Catholic Church; Holy Family Roman Catholic Church; Holy Name of Jesus Roman Catholic Church; Holy Rosary Roman Catholic Church; Holy Spirit Roman Catholic Church; Immaculate Conception Roman Catholic Church (Elkton); Immaculate Conception Roman Catholic Church (Marydel); Immaculate Heart of Mary Roman Catholic Church; Our Lady of Fatima Roman Catholic Church; Our Lady of Good Counsel Roman Catholic Church; Our Lady of Lourdes Roman Catholic Church; Our Mother

3

of Sorrows Roman Catholic Church; Parish of The Resurrection Roman Catholic Church; Sacred Heart Roman Catholic Church; St. Andrew Roman Catholic Church; St. Ann Roman Catholic Church (Bethany Beach); St. Ann Roman Catholic Church (Wilmington); St. Anthony of Padua Roman Catholic Church; St. Benedict Roman Catholic Church; St. Catherine of Siena Roman Catholic Church; St. Christopher Roman Catholic Church; St. Dennis Roman Catholic Church; St. Elizabeth Roman Catholic Church; St. Elizabeth Ann Seton Roman Catholic Church; St. Francis de Sales Roman Catholic Church; St. Hedwig Roman Catholic Church; St. Helena Roman Catholic Church; St. John Neumann Roman Catholic Church; St. John the Apostle Roman Catholic Church; St. John the Baptist - Holy Angels Roman Catholic Church; St. John the Beloved Roman Catholic Church; St. Joseph Roman Catholic Church (Middletown); St. Joseph Roman Catholic Church (Wilmington); St. Joseph on the Brandywine Roman Catholic Church; St. Jude the Apostle Roman Catholic Church; St. Luke Roman Catholic Church; St. Margaret of Scotland Roman Catholic Church; St. Mary of the Assumption Roman Catholic Church; St. Mary of the Immaculate Conception Roman Catholic Church; St. Mary Magdalen Roman Catholic Church; St. Mary Refuge of Sinners Roman Catholic Church; St. Mary Star of the Sea Roman Catholic Church; St. Matthew Roman Catholic Church; St. Michael the Archangel Roman Catholic Church; St. Patrick Roman Catholic Church; St. Paul Roman Catholic Church (Delaware City); St. Paul Roman Catholic Church (Wilmington); Ss. Peter and Paul Roman Catholic Church; St. Peter the Apostle Roman Catholic Church; St. Polycarp Roman Catholic Church; and St. Thomas the Apostle Roman Catholic Church, their predecessors; all their past and present subsidiaries and the predecessors and successors of such subsidiaries; their past and present affiliates and joint ventures and their predecessors and successors; and all their past, present and future assigns; and,

(ii)     any other entity that was in the past or is now affiliated with, related to or associated with the Parishes including, without limitation, any corporations that have been acquired by, merged into or combined with a Parish or its predecessors, or the Parishes' past and present subsidiaries, affiliates, successors and assigns; provided, however, Persons included within the definition of "Parishes" shall not be included in the definition of "Diocese" or "Related Entities" under this Agreement.

D.     <u>Related Entities</u>

The term "Related Entities" means:

(i)     Diocese of Wilmington Schools, Inc.; DOW Schools, Inc.; Catholic Cemeteries, Inc.; Catholic Charities, Inc.; Siena Hall, Inc.; Seton Villa, Inc.; Children's Home, Inc.; Catholic Youth Organization, Inc. d/b/a Catholic Youth Ministry; Catholic Ministry to the Elderly, Inc.; Catholic Press of Wilmington, Inc.; and Catholic Diocese Foundation, their predecessors; all

4

their past and present subsidiaries and the predecessors and successors of such subsidiaries; their past and present affiliates and joint ventures and their predecessors and successors; and all their past, present and future assigns; and,

(ii)     any other entity that was in the past or is now affiliated with, related to or associated with the Related Entities including, without limitation, any corporations that have been acquired by, merged into or combined with a Related Entity or its predecessors, or the Related Entities' past and present subsidiaries, affiliates, successors and assigns; provided, however, Persons included within the definition of "Diocese" or "Parishes" are not within the definition of "Related Entities."

### E.     Contribution Claim

The term "Contribution Claim" means any claim, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, by one insurer against another insurer for the reimbursement of money paid by the first insurer for having paid a debt, expense, or liability of its insured in a situation where two or more policies by different insurers cover the same insured for the same loss, and the first insurer contends it has paid more than its proper or proportionate share.

### F.     Person

The term "Person" means an individual, a corporation, a partnership, an association, a committee, a trust, any committee or other group established by the Bankruptcy Court, any other entity or organization, and any federal, state or local government or any governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality thereof.

### G.     Subject Claims

The term "Subject Claims" means (i) all Sexual Abuse Claims (as defined below), [RESERVED](ii) all Claims against the Diocese in the Bankruptcy Case, including, but not limited to, any Lay Pension Claim and/or the Lay Pension Litigation, (iii) all Claims, including any for contribution or indemnity, by or on behalf of the Parishes and Related Entities relating to the funds contributed to the Settlement Trust, and (iv) any other Claims held by the Catholic Entities directly related to the Claims in the Bankruptcy Case including, but not limited to, the Lay Pension Claim, the Lay Pension Litigation, the PIA Breach Claims, the PIA Investment Claim and/or the PIA Litigation.

### H.     Sexual Abuse Claims

The term "Sexual Abuse Claims" means:

(i)     Any and all known or unknown, past, existing, potential or future claims, demands, suits, actions or requests for relief or action or forbearance of any kind or description, including defense of same, arising directly or indirectly from, or in any way relating to, actual or alleged Abuse that have been made or asserted or could be

5

made or asserted against the Diocese, the Parishes and the Related Entities from the beginning of time ~~to the time~~ up to and including the date of entry of the Confirmation Order.  The term "Sexual Abuse Claims" includes, but is not limited to, all Abuse and/or Survivor Claims; and

(ii)      ~~[RESERVED]; and,~~ <u>Any and all known or unknown, past, existing, potential or future claims, demands, suits, actions or requests for relief or action or forbearance of any kind or description, including defense of same, arising out of or in any way related to, actual or alleged Abuse, known and/or reported to the Diocese, the Parishes and/or the Related Entities during the period from July 1, 1994 to the date of entry of the Confirmation Order, whether in suit or not, that are not included in sub-section (i) above; and,</u>

(iii)     Any and all past, existing or future claims, demands, suits, actions or other requests for relief or action or forbearance of any kind or description relating to Abuse, at any point in time up to and including the date of entry of the Confirmation Order, including defense of same, asserted by any person either in his or her own or someone else's behalf, required to be reported under the Subject Insurance Policies, that are not otherwise included in sub-sections (i) and (ii) above.

I.     Subject Insurance Policies

The term "Subject Insurance Policies" means:  (i) all insurance policies listed in Attachment A hereto; and (ii) all known and unknown insurance policies subscribed by one or more of the Underwriters, and providing insurance to a Catholic Entity at any time subsequent to July 1, 1994, whether or not listed in Attachment A hereto.

J.     Settlement Plan

The term "Settlement Plan" means (i) the Settlement Plan set forth in the Second Amended Chapter 11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc., dated May 23, 2011, Docket Number 1321 and all Exhibits thereto; and (ii) any alterations, amendments and modifications to the Settlement Plan made after May 23, 2011, ~~[RESERVED]~~<u>but only with the express written consent of Underwriters</u>.

K.     Confirmation Order

The term "Confirmation Order" means the order of the Bankruptcy Court confirming the Settlement Plan pursuant to § 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

2.     **Settlement Amount**

In the Confirmation Order, the Bankruptcy Court shall approve this Agreement and the sale, assignment and transfer of the Subject Insurance Policies by the Catholic Entities to Underwriters free and clear of the Subject Claims, pursuant to § 363(b), (f) and (m) of the Bankruptcy Code and

Federal Rule of Bankruptcy Procedure 9019. Should the Bankruptcy Court not so approve this Agreement, this Agreement shall be void ab initio.

Except as provided below, on the date that is the first business day after the date that is the later of 30 days after (i) the date the Bankruptcy Court has entered the Confirmation Order, which Confirmation Order is accompanied by the findings set forth in Paragraph 5 of this Agreement and such Confirmation Order has become final and non-appealable; and (ii) the date all Parties have executed this Agreement, Underwriters shall pay to the Settlement Trust the total settlement amount of Nine Hundred and Seventy One Thousand and Four Hundred and Fifteen United States Dollars ($971,415) ("Settlement Amount").

On the date that Underwriters pay the Settlement Amount to the Settlement Trust, the sale, assignment and transfer of the Subject Insurance Policies by the Catholic Entities to Underwriters free and clear of all claims and interests of all Persons, including, without limitation, the Catholic Entities, shall be effective and binding, with the intent that no Person shall retain anything whatsoever with respect to the Subject Insurance Policies, with regard to the Subject Claims.

If, before the Settlement Amount has been paid, a Parish or a Related Entity becomes a debtor in a bankruptcy case or insolvency proceeding, under the Bankruptcy Code or otherwise, and Underwriters have not satisfied their payment obligations, then Underwriters shall be excused from performance under this Agreement until such time as such Parish or Related Entity obtains an order from the bankruptcy court approving this Agreement under § 363(b), (f) and (m) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 and authorizing the assumption by such Parish or Related Entity (or any successor thereto) of this Agreement under Bankruptcy Code Section 365 (the "Assumption"), or in the event the insolvency case is proceeding under other law, shall obtain a similar order from the court overseeing the insolvency case approving this Agreement and confirming the binding effect thereof. Each Parish or Related Entity agrees that in the event of a bankruptcy or other insolvency proceeding, it will not present any claim for payment to any Underwriter, until such time as such Parish or Related Entity has made such Assumption and such Assumption has been approved by a bankruptcy court or other applicable court.

3.    **Release**

    A.    By the Catholic Entities

Upon the Settlement Trust's receipt of the Settlement Amount, each Catholic Entity, and any subsequently appointed trustee or representative acting for a Catholic Entity, shall be deemed to remise, release, covenant not to sue and forever discharge the following: (i) each Underwriter; (ii) each of that Underwriter's present and former officers, directors, employees, partners, limited partners, shareholders, members, subsidiaries, affiliates, representatives, attorneys and agents (a) in such capacity and (b) in their individual capacity and (iii) the respective heirs, executors, administrators, successors, assigns and reinsurers (as such) of any of the Persons identified in subparagraphs (i) and (ii) hereof as follows: from and against all manner of action, causes of action, suits, debts, accounts, promises, warranties, damages (consequential or punitive), agreements, costs, expenses, claims or demands whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, whether sounding in tort or contract, or arising under the statutes or administrative regulations of any jurisdiction, with respect to any and all past, present or future

7

claims, of any type whatsoever, that such Catholic Entity ever had, now has, or hereafter may have: (1) for insurance coverage, including, without limitation, both defense costs and indemnification claims, with respect to the Subject Insurance Policies as applied to the Subject Claims; and (2) arising out of or relating to any act, omission, representation, or conduct of any sort in connection with the Subject Insurance Policies as applicable to the Subject Claims.

Those Underwriters entitled to this Release that are described in the definition of Underwriters as entities which subscribed a Subject Insurance Policy either not presently known, or known but to which the identity of the subscribers is not presently known, shall be entitled to all of the terms of this Release (and to the Indemnity set forth in Paragraph 4 below), one-hundred twenty (120) days after the Settlement Trust's receipt of the Settlement Amount.

It is the intention of each Catholic Entity to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies with respect to and/or arising from the Subject Claims as against Underwriters to assure the Underwriters their peace and freedom from such Claims and from all assertions of rights in connection with the Subject Claims.

Upon the Settlement Trust's receipt of the Settlement Amount, any and all rights, duties, responsibilities and obligations of any Underwriter created by or in connection with the Subject Insurance Policies as respects the Subject Claims are hereby terminated. As of the date of such payment the Catholic Entities have no insurance coverage under the Subject Insurance Policies as to the Subject Claims. This Release is intended to operate as though Underwriters had never subscribed to the Subject Insurance Policies as to the Subject Claims.

This Release extends to all those Underwriters that subscribed to any of the Subject Insurance Policies which include both known and unknown policies.

Each Catholic Entity acknowledges that it has been advised by its attorneys concerning, and is familiar with California Civil Code Section 1542 and expressly waives any and all rights under California Civil Code Section 1542 and under any other federal or state statute or law of similar effect.

Each Catholic Entity expressly assumes the risk that acts, omissions, matters, causes or things may have occurred which it does not know or does not suspect to exist. Each Catholic Entity hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (i) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or, (ii) which restricts or prohibits the releasing of such claims.

      B.    <u>By Underwriters</u>

At the same time the Releases described in Paragraph 3.A immediately above become effective, the Underwriters so released, and any subsequently appointed trustee or representative acting for such Underwriters, shall be deemed to remise, release, covenant not to sue and forever discharge: (i) each Catholic Entity; (ii) each of the Catholic Entities' present and former officers, directors, employees, partners, limited partners, shareholders, members, subsidiaries, affiliates, representatives, attorneys and agents (a) in such capacity and (b) in their individual capacity; and (iii) the respective heirs, executors, administrators, successors, and assigns of any of the Persons

identified in subparagraphs (i) and (ii) hereof as follows: from and against all manner of action, causes of action, suits, debts, accounts, promises, warranties, damages (consequential or punitive), agreements, costs, expenses, claims or demands whatsoever, in law or in equity, whether presently known or unknown, asserted or unasserted, whether sounding in tort or in contract, or arising under the statutes or administrative regulations of any jurisdiction, with respect to any and all past, present or future claims, of any type whatsoever, that each such Underwriters ever had, now has or hereinafter may have with respect to the Subject Insurance Policies as respects the Subject Claims, provided, however, that the Catholic Entities shall continue to be bound by any and obligations provided in this Agreement.

4.    **Indemnification**

[RESERVED]

A.    It is the intention of the Parties to this Agreement that Underwriters shall have no further financial obligation of any kind with respect to the Subject Claims. Accordingly, Sections 3 and 4 shall be read broadly and liberally because it is the intention of the Parties that any potential claim by plaintiffs or claimants in the Subject Claims or by any other of the Catholic Entities' insurers seeking contribution or subrogation from Underwriters, for any payments or amounts the plaintiffs or claimants claim are due to them and/or for any payment amounts other insurers assert that they have made (or have to make) toward the Subject Claims, shall be automatically extinguished and satisfied without any further action or effort on the part of the Underwriters.

B.    In further pursuit of eliminating any further obligation on the part of the Underwriters for the Subject Claims, the Catholic Entities hereby represent that they have not, or will not assign or transfer or subrogate, to any other person, any claim or right under any of the Subject Policies arising out of, or relating to, in any way the Subject Claims. In the event the Catholic Entities breach the representation set forth in this paragraph, and as a result any Underwriters incur any cost, or are sued, the Catholic Entity shall defend, indemnify and hold the relevant Underwriters harmless with respect to any such claim.

C.    In yet further pursuit of eliminating any further obligation on the part of the Underwriters for the Subject Claims, the Catholic Entities hereby represent that they will: (i) obtain an assignment to the Settlement Trust of any and all Contribution Claims from other Settling Insurers of the Catholic Entities; and (ii) obtain a release from the Settlement Trust of any and all Claims against Underwriters and/or the Subject Insurance Policies.

D.    The Catholic Entities shall indemnify and hold harmless Underwriters in respect of any and all claims arising under or relating in any way to the Subject Insurance Policies as applied to the Subject Claims, including, without limitation, all claims, whether by way of direct action or otherwise, made by: (i) other insurers of the Catholic Entities; (ii) any Person claiming to be insured under the Subject Insurance Policies; (iii) any Person who has made, will or can make a claim; (iv) any Person

9

who has acquired or been assigned the right to  make a claim under the Subject Insurance Policies; or (v) any federal, state or local government or any political subdivision, agency, department, board or instrumentality thereof, including, without limitation, the State of Minnesota pursuant to the Minnesota Landfill Cleanup Act, Minn. Stat. § 115B.39 et seq. or the Minnesota Insurance Recovery Act of 1996, Minn. Stat. § 115B.441 et seq.  The Parties acknowledge that this indemnification includes, without limitation, claims made by any Person over whom the Catholic Entities do not have control, including, without limitation, former subsidiaries, predecessors in interest, sellers or purchasers of assets, or any other Person who asserts rights to coverage under the Subject Insurance Policies.  For purposes of the indemnification obligation of the Catholic Entities, the term "claim" also includes, without limitation, amounts paid in respect of any judgment, order, decree, settlement, contract or otherwise.

E.    Underwriters shall have the right to defend, with counsel of their choice, all claims identified under Paragraph 4.D immediately above.  Underwriters may begin the defense of any claim upon receipt of such a claim.  Underwriters agree to notify the Catholic Entities as soon as practicable of claims identified under Paragraph 4.D immediately above and of their choice of counsel.

F.    The Catholic Entities shall reimburse all reasonable and necessary attorneys' fees, expenses and amounts incurred by Underwriters in defending any claims described in this Section 4.  Underwriters shall defend any such claim in good faith.  In defense of any such claim, Underwriters may not settle or otherwise resolve a claim without the prior consent of the Catholic Entities, which consent shall not be unreasonably withheld.

G.    In the event that any claim or suit is brought against Underwriters under, arising out of, relating to, or in connection with the Subject Insurance Policies, which claim is subject to the Channeling Injunction provided in the Plan, the Diocese and Underwriters will cooperate in establishing that Underwriters are Protected Parties under the Plan entitled to the protections afforded to such Protected Parties under the Plan; provided, however, that the foregoing shall not in any way affect or limit the Catholic Entities' obligations set forth paragraphs 4.A-F above.

## 5.    Bankruptcy Obligations

A.    The Confirmation Order must:

    i.    approve (i) this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019, and sections 363(b), (f) and (m) of the Bankruptcy Code; and (ii) the sale of the Subject Insurance Policies to Underwriters;

    ii.    authorize the Parties to undertake the settlement and the transactions contemplated by this Agreement;

10

iii.  authorize the sale of the Subject Insurance Policies to Underwriters free and clear of the Subject Claims on the ground that such interests are in *bona fide* dispute;

iv.  provide Underwriters with all the benefits and protections provided to Settling Insurers in the Settlement Plan, with regard to the Subject Claims; and

v.  provide that the sale of the Subject Insurance Policies shall vest in Underwriters all right, title and interest of the Catholic Entities in such property with regard to, and free and clear of, the Subject Claims such that Underwriters are forever adjudged and unconditionally released as to such Claims.

In the event that the Confirmation Order does not include the approval and authorizations set forth in the above sub-paragraphs, this Agreement shall be void ab initio.

B.  The Diocese shall obtain the entry of the following factual findings and legal conclusions:

i.  the Agreement is fair and equitable and in the best interest of the estate and its creditors after consideration of (i) the probability of success in litigating the Dispute, should it be litigated; (ii) the likely difficulties in collection; (iii) the probable complexity of any litigation of the Dispute, the expense, inconvenience and delay necessarily attending such litigation, and the cost savings to the Diocese of avoiding such litigation; and (iv) the paramount interest of creditors;

ii.  Underwriters are good faith purchasers of the Subject Insurance Policies and, as such, are entitled to all protections provided to good faith purchasers under section 363(m) of the Bankruptcy Code; and,

iii.  notice of the sale free and clear of claims and interests was sufficient, and the requirements of Fed. R. Bankr. P. 6004(c) were satisfied, because notice of the motion seeking approval of the Agreement and the motion itself were served upon (i) all known claimants or counsel for claimants who filed a proof of claim in the Bankruptcy Case, who were scheduled by the Diocese, or whose claims are pending and tendered under the Subject Insurance Policies, at the address provided for notice in the proof of claim or the address listed for such claimant in the Diocese's schedules, or the address of such claimant last known to the Diocese, as applicable, (ii) all Persons who filed a notice of appearance in the Bankruptcy Case, and (iii) all Persons known or alleged by the Catholic Entities to have provided general liability insurance to the Catholic Entities.

In the event that the above factual findings and legal conclusions are not entered by the Bankruptcy Court, this Agreement shall be void ab initio.

6.  **Reasonably Equivalent Value**

11

The Parties acknowledge and agree that: (i) this Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations; (ii) based on their respective independent assessments, with the assistance and advice of counsel, of the probability of success, the complexity, the delay in obtaining relief, and the expense of resolving their disputes, the payment of the Settlement Amount pursuant to this Agreement constitute a fair and reasonable settlement of the Catholic Entities' claims; (iii) the payments and other benefits received under this Agreement by the Catholic Entities constitute reasonably equivalent value for the release, indemnity, and other benefits received by Underwriters under this Agreement; and (iv) this Agreement constitutes a full and final resolution of all issues between the Parties, including, without limitation, the Dispute.

7.   **Representations and Warranties**

A.   Each of the Parishes and Related Entities acknowledge and warrant that as of the date of this Agreement they are solvent, in that at fair value their assets exceed their liabilities and they have the liquidity to pay their debts.

B.   Each Catholic Entity acknowledges and warrants that no Person other than a Catholic Entity has legal title or rights as an insured, other insured, or otherwise insured or claims to be insured under the Subject Insurance Policies.

C.   Each Catholic Entity represents and warrants that it has the authority to execute this Agreement as its binding and legal obligation.

D.   The Diocese represents and warrants that each Catholic Entity has the authority to execute this Agreement as a binding and legal obligation.

E.   Each Party represents and warrants that the Persons signing this Agreement on its behalf are authorized to execute this Agreement.

F.   Each individual signing this Agreement on behalf of a Party represents and warrants that he or she has the right, power, legal capacity and authority to enter into this Agreement on behalf of such Party and bind such Party to perform each of the obligations specified herein.

8.   **Judgment Reduction**

A.   In any proceeding, suit or action between a Catholic Entity or the Settlement Trust and any insurer that is not Underwriters ("Other Insurer"), where the Other Insurer has asserted, asserts, or could assert that it has or may have a Contribution Claim against Underwriters relating to claims against such Catholic Entity or the Settlement Trust, as applicable, any judgment obtained by such Catholic Entity or the Settlement Trust against such Other Insurer shall be reduced by the amount, if any, that such Underwriters would have been liable to pay the Other Insurer as a result of such Other Insurer's Contribution Claim, so that the Contribution Claim by the Other Insurer against such Underwriters is thereby satisfied and extinguished.

B.   In order to effectuate the preceding paragraph, such Catholic Entity or the Settlement Trust, as applicable, shall obtain a determination, from the court issuing the

12

judgment against the Other Insurer, of the amount, if any, which such Underwriters would be required to pay the Other Insurer for its Contribution Claim and shall hold any money paid by such Other Insurer in escrow until these judgment reduction provisions can be applied.

C.    All settlements between a Catholic Entity and/or the Settlement Trust and any Other Insurer where the Other Insurer has asserted, asserts, or could assert that it has or may have a Contribution Claim against Underwriters relating to such Catholic Entity or the Settlement Trust, as applicable, shall include a bar of any Contribution Claims by the Other Insurer against Underwriters, relating to the Catholic Entities or the Settlement Trust, as applicable, and identify Underwriters as intended third-party beneficiaries of that provision.

## 9.    **Confidentiality**

The Parties agree that all matters relating to the terms, negotiation and implementation of this Agreement shall be confidential and are not to be disclosed except by order of court or agreement, in writing, of the Parties, or as necessary to obtain approval by the Bankruptcy Court of the Agreement, except that, provided recipients agree to keep such information confidential, this Agreement may be disclosed to:  (i) reinsurers of Underwriters directly or through intermediaries; (ii) outside auditors or accountants of any Party; (iii) representatives of a non-party insurer subscribing or allegedly subscribing to one or more of the Subject Insurance Policies, which insurer is, has been or may become insolvent in the future including, without limitation, any liquidators, provisional liquidators, scheme administrators, trustees, or similarly empowered Persons or entities acting for such insurer.  This Agreement may also be disclosed, as required, to the Inland Revenue, the Internal Revenue Service or other U.S. or U.K. governmental authority that properly requires disclosure, or as otherwise required by law.

In the event a private litigant, by way of document request, interrogatory, subpoena, or questioning at deposition or trial, attempts to compel disclosure of anything protected by this Section, the Party from whom disclosure is sought shall decline to provide the requested information on the ground that this Agreement prevents such disclosure.  In the event such private litigant seeks an Order from any court or governmental body to compel such disclosure, or in the event that a court, government official, or governmental body (other than the Inland Revenue or Internal Revenue Service) requests or requires disclosure of anything protected by this Section, the Party from whom disclosure is sought shall immediately give written notice by facsimile or hand-delivery to the other Parties, and shall immediately provide copies of all notice papers, orders, requests or other documents in order to allow each Party to take such protective steps as may be appropriate.  Notice shall be made under this paragraph to the persons identified in Section 15 of this Agreement.

Material protected by this Section shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## 10.    **Co-operation**

The Catholic Entities will undertake all reasonable actions to co-operate with Underwriters in connection with their respective reinsurers, including, without limitation, responding to reasonable requests for information and meeting with representatives of reinsurers.

## 11.    Non-Prejudice and Construction of Agreement

This Agreement is intended to be and is a compromise between the Parties and shall not be construed as an admission of coverage under the Subject Insurance Policies nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Insurance Policies.

This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions.  Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement.  This Agreement is without prejudice to positions taken by Underwriters with regard to other insureds, and without prejudice with regard to positions taken by any Catholic Entity with regard to Other Insurers.  The Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement.

This Agreement is the jointly drafted product of arms-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed.  As such, no Party will claim that any ambiguity in this agreement shall be construed against another Party.

If any provision of the Settlement Plan or the Settlement Trust Agreement is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence. The Settlement Plan and the Settlement Trust Agreement shall not be construed or interpreted to impose any obligations or modify any rights of Underwriters.

## 12.    No Modification

No change or modification of this Agreement shall be valid unless (i) it is made in writing and signed by the Parties, even upon the receipt of additional consideration; and (ii) approved by the Bankruptcy Court.

## 13.    Execution

There will be two signed originals of this Agreement.

## 14.    Governing Law

This Agreement shall be governed by and shall be construed in accordance with the laws of Delaware.

## 15.    Notices

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the following person:

~~RESERVED~~

| | |
|---|---|
| For Diocese, Related Entities and Parishes: | Rev. Msgr. J. Thomas Cini<br>Vicar General for Administration<br>Catholic Diocese of Wilmington<br>P.O. Box 2030<br>Wilmington, DE 19899-2030 |
| With a copy to: | Anthony G. Flynn, Esq.<br>Young Conaway Stargatt & Taylor LLP<br>The Brandywine Building<br>1000 West St., 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>aflynn@ycst.com |
| For Underwriters: | Head of Claims<br>Kiln Group<br>106 Fenchurch Street<br>London EC3V 5NR England<br><br>Head of Complex Claims<br>XChanging<br>34 Leadenhall Street<br>EC3A 1AX England |
| With a copy to: | Catalina J. Sugayan<br>Sedgwick LLP<br>One North Wacker Drive<br>Suite 4200<br>Chicago, IL 60606-2841 |

16.    **Integration**

This Agreement, including the attachments, constitutes the entire Agreement between Underwriters and the Catholic Entities with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, among the Parties with respect thereto.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives.

Underwriters have respectively designated Sedgwick LLP as their attorneys-in-fact for the limited purpose of executing this Agreement on their behalf with express authority to do so.

15

[RESERVED]

| | |
|---|---|
| Catholic Diocese of Wilmington | Cathedral of St. Peter Roman Catholic Church |
| By: _____ (SEAL)<br>_____(Name) | By: _____<br>_____(Name), as its Trustee |
| Title: _____ | Date: July ____, 2011 |
| Date: July ____, 2011 | |
| Christ Our King Roman Catholic Church | Corpus Christi Roman Catholic Church |
| By: _____<br>_____(Name), as its Trustee | By: _____<br>_____(Name), as its Trustee |
| Date: July ____, 2011 | Date: July ____, 2011 |
| Good Shepherd Roman Catholic Church | Holy Child Roman Catholic Church |
| By: _____<br>_____(Name), as its Trustee | By: _____<br>_____(Name), as its Trustee |
| Date: July ____, 2011 | Date: July ____, 2011 |
| Holy Cross Roman Catholic Church | Holy Family Roman Catholic Church |
| By: _____<br>_____(Name), as its Trustee | By: _____<br>_____(Name), as its Trustee |
| Date: July ____, 2011 | Date: July ____, 2011 |
| Holy Name of Jesus Roman Catholic Church | Holy Rosary Roman Catholic Church |
| By: _____<br>_____(Name), as its Trustee | By: _____<br>_____(Name), as its Trustee |
| Date: July ____, 2011 | Date: July ____, 2011 |
| Holy Spirit Roman Catholic Church | Immaculate Conception Roman Catholic Church (Elkton) |
| By: _____<br>_____(Name), as its Trustee | By: _____<br>_____(Name), as its Trustee |
| Date: July ____, 2011 | Date: July ____, 2011 |

16

Immaculate Conception Roman Catholic Church
(Marydel)

By: _____
      (Name), as its Trustee

Date: July ___, 2011

Our Lady of Fatima Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011


Our Lady of Lourdes Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

Parish of The Resurrection Roman Catholic
Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Andrew Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Ann Roman Catholic Church (Wilmington)

By: _____
      (Name), as its Trustee

Date: July ___, 2011

Immaculate Heart of Mary Roman Catholic
Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

Our Lady of Good Counsel Roman Catholic
Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

Our Mother of Sorrows Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

Sacred Heart Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Ann Roman Catholic Church (Bethany Beach)

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Anthony of Padua Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

17

St. Benedict Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Christopher Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Elizabeth Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Francis de Sales Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Helena Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. John the Apostle Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Catherine of Siena Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Dennis Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Elizabeth Ann Seton Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. Hedwig Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. John Neumann Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

St. John the Baptist - Holy Angels Roman Catholic Church

By: _____
        (Name), as its Trustee

Date: July ____, 2011

18

St. John the Beloved Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Joseph Roman Catholic Church (Wilmington)

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Jude the Apostle Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Margaret of Scotland Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Mary of the Immaculate Conception Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Mary Refuge of Sinners Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Joseph Roman Catholic Church (Middletown)

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Joseph on the Brandywine Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Luke Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Mary of the Assumption Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Mary Magdalen Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

St. Mary Star of the Sea Roman Catholic Church

By: _____
      (Name), as its Trustee

Date: July ___, 2011

19

St. Matthew Roman Catholic Church

By: _____
        (Name), as its Trustee

Date:  July     , 2011


St. Patrick Roman Catholic Church

By: _____
        (Name), as its Trustee

Date:  July     , 2011

St. Paul Roman Catholic Church (Wilmington)

By: _____
        (Name), as its Trustee

Date:  July     , 2011

St. Peter the Apostle Roman Catholic Church

By: _____
        (Name), as its Trustee


Date:  July     , 2011


St. Thomas the Apostle Roman Catholic Church

By: _____
        (Name), as its Trustee

Date:  July     , 2011

Catholic Cemeteries, Inc.

By: _____
        (Name), as its Trustee

Date:  July     , 2011

St. Michael the Archangel Roman Catholic Church

By: _____
        (Name), as its Trustee


Date:  July     , 2011


St. Paul Roman Catholic Church (Delaware City)

By: _____
        (Name), as its Trustee

Date:  July     , 2011

Ss. Peter and Paul Roman Catholic Church

By: _____
        (Name), as its Trustee

Date:  July     , 2011

St. Polycarp Roman Catholic Church

By: _____
        (Name), as its Trustee


Date:  July     , 2011


DOW Schools, Inc.

By: _____
        (Name), as its Trustee


Date:  July     , 2011

Catholic Charities, Inc.

By: _____
        (Name), as its Trustee

Date:  July     , 2011

Siena Hall, Inc.

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Children's Home, Inc.

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Catholic Ministry to the Elderly, Inc.

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Catholic Diocese Foundation

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Seton Villa, Inc.

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Catholic Youth Organization, Inc. d/b/a Catholic Youth Ministry

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Catholic Press of Wilmington, Inc.

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Diocese of Wilmington Schools, Inc.

By: _____
      (Name), as its Trustee

Date:  July ____, 2011


Signed: _____

      _____ (name)

(For Lloyd's Underwriters)

Date:  July ____, 2011

**Attachment A**
**List of All Known Subject Insurance Policies**

Institutional Property Insurance Policies providing Property, Commercial General
Liability, Sexual Misconduct Liability and Other Coverages

| Policy Number | Policy Period |
| --- | --- |
| 517274 | July 1, 1994 – July 1, 1995 |
| 519208 | July 1, 1995 – July 1, 1996 |
| w00360 | July 1, 1996 – July 1, 1997 |
| w00360 | July 1, 1997 – July 1, 1998 |
| F981897 | July 1, 1998 – June 30, 1999 |
| F992050 | July 1, 1999 – June 30, 2000 |
| F000782 | July 1, 2000 – June 30, 2001 |
| F010549 | July 1, 2001 – June 30, 2002 |
| F020860 | July 1, 2002 – June 30, 2003 |
| LU0333024 | July 1, 2003 – June 30, 2004 |
| LU0435093 | July 1, 2004 – June 30, 2005 |
| LU0535670 | July 1, 2005 – June 30, 2006 |
| LU0636951 | July 1, 2006 – June 30, 2007 |
| F070263 | July 1, 2007 – June 30, 2008 |
| LU0737828 | July 1, 2007 – June 30, 2008 |
| F080128 | July 1, 2008 – June 30, 2009 |
| F090128 | July 1, 2009 – June 30, 2011 |
| F100128 | July 1, 2011 – June 30, ~~2011~~2012 |

Excess Policies

| Policy Number | Policy Period |
| --- | --- |
| LU0637200 | July 1, 2006 – June 30, 2007 |
| LU0737845 | July 1, 2007 – June 30, 2008 |
| F080129 | July 1, 2008 – June 30, 2009 |

22

Document comparison by Workshare Professional on Thursday, July 28, 2011 1:25:27 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE01/YCST01/11209223/1 |
| Description | #11209223v1<YCST01> - Buyback - London Post-1994 -- Redaction 6/24/11 |
| Document 2 ID | interwovenSite://WORKSITE01/YCST01/11305782/1 |
| Description | #11305782v1<YCST01> - CDOW - London Post-94 Buyback (Final) |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | Count |
|---|---|
| Insertions | 201 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 212 |