## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CATHOLIC DIOCESE OF WILMINGTON, INC., a Delaware Corporation,[1] | Case No. 09-13560 (CSS) |
| Debtor. | **Ref. Dkt. Nos. 1321, 1363, 1364, 1365, 1368, 1369, 1372, & 1469** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF CATHOLIC DIOCESE OF WILMINGTON, INC.

WHEREAS Catholic Diocese of Wilmington, Inc., the debtor and debtor-in-possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on October 18, 2009 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Court"); and

On May 23, 2011, the Debtor filed the Second Amended Chapter 11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc., dated May 23, 2011 [D.I. 1321] (as subsequently amended, and together with the schedules and exhibits thereto, including all Supplemental Plan Documents, the "Plan"),[2] and contemporaneously therewith filed the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the

---

[1] The last four digits of the Debtor's federal tax identification number are 5439. The Debtor's mailing address is 1925 Delaware Avenue, P.O. Box 2030, Wilmington, Delaware 19899-2030.

[2] Capitalized terms used but not defined herein shall have those meanings ascribed to them in the Plan or the Solicitation Order (defined below), respectively. The rules of interpretation set forth in the Plan shall apply to this Order (the "Confirmation Order"). As set forth in the Plan, if there is any direct conflict between the terms of the Plan (including all exhibits thereto and the Supplemental Plan Documents) or any other document and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. In the event there is a conflict between the terms of the Plan and the exhibits thereto, or the Supplemental Plan Documents, the Plan shall control over the terms of the exhibit or the Supplemental Plan Documents.

Second Amended Chapter 11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc. [D.I. 1322] (together with the exhibits thereto, the "Disclosure Statement"); and

On May 24, 2011, the Court entered an order (i) approving the Disclosure Statement, (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan, (iii) scheduling a hearing on, and establishing certain notice and objection procedures in respect of, confirmation of the Plan, and (iv) granting related relief [Docket No. 1325] (the "Solicitation Order"); and

Pursuant to the Solicitation Order, the Court, inter alia, (i) established June 30, 2011 at 5:00 p.m. (ET) and 4:00 p.m. (ET) as the respective deadlines for submitting Ballots accepting or rejecting the Plan (the "Voting Deadline") and for filing objections to confirmation of the Plan (the "Objection Deadline") and (ii) scheduled a hearing (the "Confirmation Hearing") commencing on July 8, 2011 at 10:00 a.m. (ET) to consider confirmation of the Plan; and

On June 23-24, 2011, the Debtor and the Official Committee of Unsecured Creditors (the "Creditors Committee") filed the Supplemental Plan Documents contemplated by the Plan [Docket Nos. 1363, 1364, 1365, & 1368] (together with the notice of revisions thereto at Docket Nos. 1369, 1372, & 1469 the "Plan Supplement"), which included the following: (i) Form of Lay Pension Plan Reaffirmation Agreement; (ii) Settlement Trust Distribution Procedures; (iii) Settlement Trust Agreement; (iv) Insurance Buy-Back Agreements; (v) Identification of Proposed Officers of the Reorganized Debtor; (vi) Identification of Certain Protected Parties; and (vii) Entities in Whom Reorganization Assets May Vest; and

On July 6, 2011, the Court-appointed claims and balloting agent filed the Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes On and Results of Voting with Respect to the Second Amended Chapter

11 Plan of Reorganization of Catholic Diocese of Wilmington, Inc. [Docket No. 1399] (the

"Voting Declaration") in support of confirmation of the Plan; and

The Court having heard the statements and arguments of counsel in respect of

confirmation of the Plan and the evidence submitted therewith;

NOW, THEREFORE, based upon the Court's review and consideration of the

Plan, the Disclosure Statement, and the Voting Declaration previously filed with the Court, and

upon (i) all of the evidence proffered or adduced in connection therewith; (ii) all objections,

arguments, or other statements of counsel made at or in connection with the Confirmation

Hearing; and (iii) the entire record of this Chapter 11 Case, and of any adversary proceedings

within this Chapter 11 Case; and after due deliberation thereon, and good and sufficient cause

appearing therefor, this Court hereby makes and issues the following Findings of Fact,

Conclusions of Law, and Orders[3]:

---

[3] This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### General Findings

A.    <u>Venue; Core Proceeding; Exclusive Jurisdiction</u>.  On the Petition Date, the

Debtors commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter

11 of the Bankruptcy Code.  The Debtor was qualified and is qualified to be a debtor under

section 109 of the Bankruptcy Code.  Venue was proper as of the Petition Date and continues to

be proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is

a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to enter a Final

Order with respect thereto.  This Court has jurisdiction over this Chapter 11 Case pursuant to 28

U.S.C. §§ 157 and 1334, and this Court has exclusive jurisdiction to determine whether the Plan

complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of this

Chapter 11 Case (and any adversary proceedings within this Chapter 11 Case) maintained by the

Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings,

motions, Claims and other documents filed, all orders entered, and all evidence and arguments

made, proffered or adduced at the hearings held before the Court during this Chapter 11 Case

(and any adversary proceedings within this Chapter 11 Case), including, without limitation, the

hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

C.    <u>Burden Of Proof</u>.  The Debtor, as proponent of the Plan, has the burden of

proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance

of the evidence.  The Debtor has met that burden as further found and determined in this

Confirmation Order.

D.     Bar Date.  On February 1, 2010, the Court entered an order [Docket No. 308] (the "Bar Date Order") establishing a deadline of April 15, 2010, to file proofs of claim for all claims against the Debtors and their estates that arose prior to the Petition Date, including Abuse claims and the claims of governmental units.  As detailed in various affidavits of service and publication (collectively, the "Bar Date Affidavits") and other sources, notice of the various bar dates was properly given in accordance with the Bar Date Order. *See* Docket Nos. 308, 325, 353, 372 & 425.

E.     Solicitation and Notice.  To obtain the requisite acceptance of the Plan, on or about June 1, 2011, the Debtor, through its solicitation agent The Garden City Group, commenced a solicitation mailing of acceptances and rejections of the Plan by distributing the Disclosure Statement and related materials to the Voting Parties (as defined in the Solicitation Order).  As evidenced by the Affidavit of Publication of Debra Wolther filed with this Court on June 8, 2011 [Docket No. 1352] (the "Solicitation Package Affidavit of Publication"), and as required by the Solicitation Order, on June 1, 2011 the Debtor published notice of (i) the approval of the Disclosure Statement; (ii) the Voting Deadline; (iii) the date and time of the Confirmation Hearing; and (iv) the deadline and procedures for filing objections to the Plan in *The News Journal* and the national edition of *USA Today*, and posted the same electronically on the reorganization website maintained by The Garden City Group at www.cdowreorganization.com.

F.     Additionally, as evidenced by the Affidavit of Debra Wolther dated June 3, 2011 [Docket No. 1342] (the "Solicitation Package Affidavit of Service") and the Voting Declaration, and as required by the Solicitation Order, on June 1, 2011 the Debtor served:  (i) written notice (the "Confirmation Hearing Notice") of (a) the Court's approval of the Disclosure

Statement, (b) the Voting Deadline, (c) the date and time of the Confirmation Hearing, and (d) the deadline and procedures for filing objections to confirmation of the Plan; (ii) a CD containing a copy of the Disclosure Statement (together with the Plan and certain other exhibits); and (iii) the appropriate Ballot and Ballot return envelope (collectively, the "Solicitation Packages"), to the Voting Parties in the manner set forth in the Solicitation Order.

G.    Further, as also evidenced by the Solicitation Package Affidavit of Service and the Voting Declaration, and as required by the Solicitation Order, on the Solicitation Commencement Date the Debtors served a Solicitation Package and the Non-Voting Creditor Notice (as defined in the Solicitation Order) to those parties in interest who are not Voting Parties, but who were entitled to a Solicitation Package and the Non-Voting Creditor Notice under the terms of the Solicitation Order (the "Non-Voting Parties").

H.    Adequacy of Notice.  The Disclosure Statement, the Plan, the Ballots, the Confirmation Hearing Notice, the Plan Supplement, and all exhibits thereto each, along with any and all amendments or modifications thereto, each, were transmitted and served in compliance with the Solicitation Order, section 1128 of the Bankruptcy Code, the Bankruptcy Rules and other applicable law, where required, and such transmittal and service constituted (i) adequate and sufficient notice for the Confirmation Hearing and (ii) adequate and sufficient notice of the sales pursuant to the Insurance Buy-Back Agreements free and clear of claims and interests, in satisfaction of the requirements of Bankruptcy Rule 6004.  All parties in interest had the opportunity to appear and be heard at the Confirmation Hearing and no other or further notice was required.

I.    Good Faith Solicitation, No Requirement for Resolicitation.  Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure

6

Statement, the Solicitation Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. Based on the record in this Chapter 11 Case, the Debtor (and its officers, member, employees, attorneys, financial advisors, and other Professionals) and each of the other Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and the Bankruptcy Rules in compliance with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions provided for in Article XVI of the Plan. Based upon the Court's review of the amendments and modifications embodied in the Plan, all such amendments and modifications are non-material and do not adversely change the treatment of creditors, and no further solicitation or resolicitation of any holders of Claims in this Chapter 11 Case is necessary.

J.      Voting Declaration. As evidenced by the Voting Declaration, all procedures used to distribute solicitation materials to the applicable holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, and all other applicable rules, laws and regulations. As evidenced by the Voting Declaration, pursuant to sections 1124 and 1126 of the Bankruptcy Code, all but one of the Impaired Classes entitled to vote on the Plan as a Settlement Plan has voted to accept the Plan as a Settlement Plan.

K.      This Confirmation Order is in form and substance acceptable to the Debtor and the Creditors Committee.

YCST01:11205830.6

068902.1001

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

L.    Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for confirmation set forth in subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard. The Court also finds that the Debtor has satisfied the elements of section 1129(a) and (b) of the Bankruptcy Code under a clear and convincing standard of proof.

M.    Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123.

N.    Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates nine Classes of Claims. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims that are substantially similar to the other Claims within that Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and the Plan's treatment thereof does not unfairly discriminate between holders of Claims. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims and Priority Tax Claims are not classified under the Plan.

O.    In compliance with section 1123(a)(2) of the Bankruptcy Code, Article IV of the Plan specifies that Class 1 Secured Claims, Class 2 Priority Claims, Class 3D Clergy Pension Claims, Class 3E Gift Annuity Claims, and Class 3F Other Unsecured Claims are not impaired in a Settlement Plan in that the legal, equitable or contractual rights of holders of Claims in these classes are not altered under the Plan. Accordingly, Class 1 Secured Claims,

8

Class 2 Priority Claims, Class 3D Clergy Pension Claims, Class 3E Gift Annuity Claims, and

Class 3F Other Unsecured Claims are conclusively presumed to have accepted the Plan in

accordance with section 1126(f) of the Bankruptcy Code.

        P.      In compliance with section 1123(a)(3) of the Bankruptcy Code, Article IV

of the Plan specifies the treatment of each impaired Class of Claims under the Plan.  Class 3A

Survivor Claims, Class 3B Lay Pension Claims, Class 3C DEDA Bond Transaction Claims, and

Class 4 Penalty Claims are designated as impaired under a Settlement Plan in that the legal,

equitable or contractual rights of holders of claims in these classes are altered under the Plan.

        Q.      Article IV of the Plan provides for the same treatment by the Debtor of

each Claim in a particular class as required by section 1123(a)(4) of the Bankruptcy Code.

        R.      In compliance with sections 1123(a)(5) and 1123(b)(1)-(6) of the

Bankruptcy Code, Article VI of the Plan and various other provisions of the Plan set forth the

means for implementation of the Plan as a Settlement Plan, which means are adequate and

proper.  The Debtor and other relevant parties will be able to make all of the payments under,

and comply with all other provisions of, the Plan.  Additionally, Article VI and various other

provisions of the Plan provide adequate and proper means for the Plan's implementation

including, without limitation:  (i) the creation of the Settlement Trust; (2) the vesting of all

Settlement Trust Assets in the Settlement Trust; (3) the assumption by the Settlement Trust of

liability for all Survivor Claims arising prior to the Effective Date (other than Survivor Claims

that are Administrative Claims, if any); (4) the promulgation of the Settlement Trust Distribution

Procedures; (5) the retention of jurisdiction by the Bankruptcy Court over the matters set forth in

Section 6.6 of the Plan; (6) the various settlement mechanisms set forth in Section 5.1 of the

Plan; and (7) the continued corporate existence of, and vesting of Reorganization Assets in, the

Reorganized Debtor (or the vesting of Reorganization Assets in other entities designated by the Debtor, as applicable) as set forth in Article XVII of the Plan.  Such provisions satisfy the requirements of sections 1123(a)(5) and 1123(b)(1)-(6) of the Bankruptcy Code, and these provisions, along with all other provisions of the Plan, are consistent with the Bankruptcy Code.

S.      No non-voting equity securities will be issued pursuant to the Plan or at any time in the future with respect to the Debtor, so the Plan does not violate section 1123(a)(6) of the Bankruptcy Code.

T.      Section 17.3 of the Plan provides that the identities and affiliations of the Persons proposed to serve as officers of the Reorganized Debtor on and after the Effective Date shall be set forth in a Supplemental Plan Document.  The Plan Supplement identified the identities and affiliations of the Persons proposed to serve as officers of the Reorganized Debtor upon the Effective Date.  As required by section 1123(a)(7) of the Bankruptcy Code and pursuant to the Plan, the continuance of these Persons as officers is consistent with the interests of the holders of Claims and with public policy.

U.      The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).

V.      Section 1129(a)(2) – Compliance by the Debtor with Applicable Provisions of the Bankruptcy Code.  The Debtor, as the proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018 regarding the Disclosure Statement and solicitation of the Plan.  The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with Bankruptcy Rules 3017 and 3018 and section 1126 of the

Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

Based on the record before the Court, the Debtor (and its officers, member, employees, attorneys, financial advisors, and other Professionals) and the other Exculpated Parties who have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code have done so in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation and limitation of liability provisions provided for in Article XVI of the Plan and this Confirmation Order.

W.      Section 1129(a)(3) – Proposal of the Plan in Good Faith.  The Debtor proposed the Plan in good faith and not by any means forbidden by law.  The Plan is designed to allow the Debtor to reorganize while maximizing recoveries to the Debtor's creditors. Moreover, the Plan itself, the process leading to its formation, and the support for the Plan received from the accepting voting Classes provides independent evidence of the Debtor's good faith, and of the good faith of those who assisted with the solicitation process.  The Debtor (and its officers, member, employees, attorneys, financial advisors, and other Professionals) has thus acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in proposing the Plan and securing its confirmation.  Accordingly, the Plan satisfies the "good faith" requirement of Section 1129(a)(3).  Furthermore, the Plan is the product of extensive, arms'-length negotiations among, *inter alia*, the Debtor, the Creditors Committee, the Lay Employees Committee, the Non-Debtor Catholic Entities, the Settling Insurers, State Court Counsel, and

11

each of the foregoing groups' respective representatives, and reflects the results of these arms' length negotiations and embodies the best interests of all the constituencies of the Debtor's estate.

X.    Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable.  Pursuant to section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtor or by any person acquiring property under the Plan, for services or for costs and expenses in, or in connection with, this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, has been disclosed to this Court.  Any such payment made on a final basis before confirmation of the Plan is reasonable.  Any such payment to be fixed or approved on a final basis after confirmation of the Plan is subject to approval of this Court as reasonable.

Y.    Section 1129(a)(5) – Disclosure of Information Regarding Officers.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Plan Supplement identified the identities and affiliations of the Persons proposed to serve as officers of the Reorganized Debtor upon the Effective Date, and their compensation was disclosed at the Confirmation Hearing.  As required by section 1129(a)(5) of the Bankruptcy Code and pursuant to the Plan, the continuance of these Persons as officers is consistent with the interests of the holders of Claims and with public policy.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

Z.    Section 1129(a)(6) – Governmental Regulatory Control Over Rate

Changes.  The Plan does not provide for or contemplate any rate change that would require the

approval of any regulatory agency.  Accordingly, section 1129(a)(6) of the Bankruptcy Code is

inapplicable to this Chapter 11 Case and the Plan.

AA.    Section 1129(a)(7) – Best Interests of Creditors.  With respect to each

impaired Class of Claims, the Voting Declaration and the Liquidation Analysis attached as

Exhibit C to the Disclosure Statement (as subsequently amended or modified in connection with

the Confirmation Hearing, the "Liquidation Analysis") indicate that each holder of a Claim in an

impaired Class has accepted the Plan or will receive or retain under the Plan on account of such

Claim property of a value, as of the Effective Date, that is not less than the amount that such

holder would so receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy

Code.  The Liquidation Analysis, including the methodology used and estimations and

assumptions made therein, (a) is persuasive and credible as of the dates such evidence was

prepared, presented or proffered, (b) has not been controverted by other persuasive evidence and

is not the subject of any objection, (c) is based upon reasonable and sound assumptions, and (d)

provides a reasonable estimate of the liquidation value of the Debtor's estate upon a hypothetical

conversion to a chapter 7 proceeding.  Therefore, the Plan satisfies the requirements of section

1129(a)(7) of the Bankruptcy Code.

BB.    Section 1129(a)(8) – Acceptance of the Plan.  Pursuant to sections 1126

and 1129(a)(8) of the Bankruptcy Code: (a) Class 1 Secured Claims, Class 2 Priority Claims,

Class 3D Clergy Pension Claims, Class 3E Gift Annuity Claims, and Class 3F Other Unsecured

Claims are unimpaired under the Plan as a Settlement Plan and are deemed to have accepted the

Plan; and (b) as evidenced by the Voting Declaration, Class 3A Survivor Claims and Class 3C

13

DEDA Bond Transaction Claims overwhelmingly voted to accept the Plan. The provisions of the Plan with respect to holders of the unimpaired Claims in Classes 1, 2, 3D, 3E and 3F under the Plan are fair and appropriate. Because the Plan provides that holders of Class 4 Penalty Claims will not receive or retain any property on account of such Claims, such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Additionally, although a majority of Class 3B Lay Pension Plan Claims voted to accept the Plan as a Settlement Plan, less than two-thirds of the outstanding amount of such Claims voted to accept the Plan as a Settlement Plan so Class 3B is deemed to reject the Plan as a Settlement Plan. Nonetheless, the Plan is confirmable because the Plan includes a request to confirm the Plan as a "Cramdown Plan" and, as more fully set forth below, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code with respect to Classes 3B and 4.

As set forth in the Voting Declaration, and after giving effect to the *Stipulated Order Resolving Objection of Joseph Curry to Confirmation of Debtor's Second Amended Plan of Reorganization as a Settlement Plan* [D.I. 466] (the "Curry Order"), the percentages of holders of Claims in Classes entitled to vote on the Plan as a Settlement Plan that voted to accept or reject the Plan as a Settlement Plan are as follows:

| Class of Impaired Creditors | Amount Accepting Plan (% of $ Amount Voted) | Amount Rejecting Plan (% of $ Amount Voted) | Number Accepting Plan (% of Number Voted) | Number Rejecting Plan (% of Number Voted) |
|---|---|---|---|---|
| CLASS 3A | 100.00 | 0.00 | 100.00 | 0.00 |
| CLASS 3B | 54.80 | 45.20 | 54.80 | 45.20 |
| CLASS 3C | 100.00 | 0.00 | 100.00 | 0.00 |

CC.    Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code. The Plan provides for treatment of Allowed Claims

entitled to priority pursuant to section 507(a)(2)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

DD.  Section 1129(a)(10) – Acceptance by at Least One Impaired Class.  As required by section 1129(a)(10) of the Bankruptcy Code, and as evidenced by the Voting Declaration, at least one impaired Class of Claims entitled to vote has accepted the Plan, excluding the votes cast by insiders, if any.  Accordingly, section 1129(a)(10) of the Bankruptcy Code has been satisfied in all respects.

EE.  Section 1129(a)(11) – Feasibility of the Plan.  The Plan is feasible.  The Debtor has demonstrated through the projected financial information provided as Exhibit D to the Disclosure Statement (as subsequently amended or modified in connection with the Confirmation Hearing, the "Financial Projections") and evidence introduced and/or adduced at the Confirmation Hearing, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, the Reorganized Debtor or any successor to the Reorganized Debtor.  The Plan, therefore, complies with section 1129(a)(11) of the Bankruptcy Code.

FF.  Section 1129(a)(12) – Payment of Statutory Bankruptcy Fees.  In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 2.2 of the Plan provides that all fees payable on or before the Effective Date pursuant to 28 U.S.C. § 1930 will be paid by the Debtor on or before the Effective Date.

GG.  Section 1129(a)(13) – Retiree Benefits.  The Debtor does not offer "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code.  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

YCST01:11205830.6                    068902.1001

HH.  <u>Section 1129(a)(14) – No Domestic Support Obligations</u>.  The Debtor is not required by a judicial or administrative order, or by statute, to pay domestic support obligations.  Accordingly, section 1129(a)(14) of the Bankruptcy Cod e is inapplicable to this Chapter 11 Case and the Plan.

II.  <u>Section 1129(a)(15) – Debtor is Not an Individual</u>.  The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to this Chapter 11 Case and the Plan.

JJ.  <u>Section 1129(a)(16) – Applicable Non-Bankruptcy Law Regarding Transfers</u>.  All transfers under the Plan comply with applicable nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, and the Plan therefore satisfies the requirements of section 1129(a)(16) of the Bankruptcy Code.

KK.  <u>Section 1129(b) – Confirmation of the Plan Over Non-Acceptance of Impaired Classes</u>.  The votes of Holders of Penalty Claims in Class 4 under the Plan were not solicited because the Plan provides that holders of Class 4 Claims will not receive or retain any property on account of such Claims, and such Classes are therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Additionally, Class 3B Lay Pension Claims voted to reject the Plan.  Notwithstanding non-compliance with section 1129(a)(8) of the Bankruptcy Code as to Class 3B Lay Pension Claims and Class 4 Penalty Claims, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  Other than the failure to satisfy the requirement in section 1129(a)(8) of the Bankruptcy Code with respect to Class 3B Lay Pension Claims and Class 4 Penalty Claims, all of the requirements of section 1129(a) of the Bankruptcy Code have been met.  The Plan does not discriminate unfairly and is fair and

YCST01:11205830.6

068902.1001

equitable with respect to Class 3B Lay Pension Claims and Class 4 Penalty Claims. With respect to both Class 3B Lay Pension Claims and Class 4 Penalty Claims, the Plan provides, among other things, that no holders of junior Claims will receive or retain any property under the Plan on account of their respective Claims and, as evidenced by the estimates contained in the Disclosure Statement and by the evidence in the record, no holders of Claims senior to Classes 3B and 4 are receiving more than full payment on account of such senior Claims, therefore section 1129(b)(2)(B) is satisfied.

LL.    Section 1129(c) – One Plan. Other than the Plan (including previous versions thereof), no plan has been filed in this Chapter 11 Case. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

MM.    Section 1129(d) – Principal Purpose of Plan. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental entity has filed any objection asserting such avoidance.

**Compliance with Applicable Law, Miscellaneous**

NN.    Satisfaction of Conditions Precedent. Each of the conditions precedent to the occurrence of the Effective Date of the Plan as a Settlement Plan, as set forth in Section 15.1 of the Plan, have been satisfied by the Debtor in accordance with Section 15.1 of the Plan, or are reasonably likely to be satisfied or may be waived by the Debtor (and State Court Counsel where required by the Plan).

OO.    Compliance with Bankruptcy Code. No provisions of the Plan or this Confirmation Order, or the implementation of the terms under each of the Plan and this Confirmation Order, violate the terms of any provision of the Bankruptcy Code.

17

PP.    <u>Compliance with Bankruptcy Rule 3016(c)</u>.  In accordance with Bankruptcy Rule 3016(c), Article XVI of the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities that would be subject to the injunction.

QQ.    <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, it is appropriate for this Court, except as otherwise provided in the Plan or herein, to retain jurisdiction over the Chapter 11 Case and all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case to the fullest extent permitted by applicable law, including, but not limited to, the matters set forth in Section 6.6 of the Plan.

RR.    <u>Settlements and Compromises</u>.  The compromises and settlements provided for in the Plan, including, without limitation, the compromises and settlements set forth in Articles IV, V, XI, XV, XVI and XVII of the Plan, those settlements entered into in connection with the Plan or the Confirmation Hearing, including but not limited to the settlement between the Lay Employees Committee and the Debtor, and the consideration being exchanged by the parties to such compromises and settlements, are fair, equitable, adequate and reasonable under the circumstances of the Chapter 11 Case, constitute good-faith compromises and settlements, and meet the applicable standards for settlements and compromises under Bankruptcy Rule 9019 and controlling Third Circuit law after consideration of, among other things, (i) the probability of success in litigating the disputes resolved in the Plan, should they be litigated; (ii) the likely difficulties in collection; (iii) the probable complexity of any litigation of the disputes, the expenses, inconvenience and delay necessarily attending such litigation, and the cost savings to the Debtor of avoiding such litigation; and (iv) the paramount interest of creditors.  All holders of Claims and parties in interest have received adequate notice of the

settlements and compromises and have had a sufficient opportunity to object to such compromises and settlements.

SS.   <u>Resolution of PIA Litigation</u>.  Without limiting the generality of the preceding paragraph of this Confirmation Order, and in consideration of the Non-Debtor Catholic Entities' agreement to provide the NDCE Settlement Contribution and other consideration set forth in Section 5.1(a) of the Plan, and to withdraw the appeal of the Phase I Judgment and Orders as set forth in Section 5.1(e) of the Plan, it is fair, adequate and reasonable under the circumstances of the Chapter 11 Case, and appropriate under the applicable standards for settlements and compromises under Bankruptcy Rule 9019 and controlling Third Circuit law, for (i) the Phase I Judgment and Orders to be vacated, and the PIA Litigation to be dismissed, with prejudice, all subject to the occurrence of the Effective Date; (ii) this Court to find (which it hereby does) that, as of the Effective Date and subject to its occurrence, the Disputed Non-Debtor PIA Funds do not constitute property of the estate by operation of section 541(d) of the Bankruptcy Code; and (iii) this Court to find (which it hereby does) that, effective immediately upon entry of this Confirmation Order, the transfer of Cash proceeds of Disputed Non-Debtor PIA Funds to the Settlement Trust in an aggregate amount not to exceed the NDCE Settlement Contribution is authorized.  Other necessary components of the foregoing compromise and settlement are requirements that, as soon as practicable after the Effective Date, the Debtor and the Non-Debtor Catholic Entities who are party to the PIA Litigation shall withdraw (or move to dismiss, to the extent necessary) their appeal of the Phase I Judgment and Orders, and that all parties to the PIA Litigation are required to take all necessary actions to withdraw or otherwise dismiss the appeal of the Phase I Judgment and Orders at the request of the Debtor and the Non-Debtor Catholic Entities who are party to the PIA Litigation.

YCST01:11205830.6

068902.1001

TT.    <u>Releases, Exculpations and Injunctions</u>.  Pursuant to section 1123(b)(3) of the Bankruptcy Code, the releases, discharges, exculpations, limitation of liability, and injunctive provisions contained in the Plan, including, but not limited to those provided in Articles V and XVI of the Plan and herein, and implemented by this Confirmation Order, are fair, equitable, reasonable and in the best interests of the Debtor, the Reorganized Debtor, the Estate and its estate, and all parties in interest.  The releases of non-Debtors under the Plan are fair to holders of Claims and parties in interest, and are necessary to the proposed reorganization, thereby satisfying the requirements of <u>In re Continental Airlines, Inc.</u>, 203 F.3d 203, 214 (3d Cir. 2000), and <u>In re Zenith Electronics Corp.</u>, 241 B.R. 92, 110-11 (Bankr. D. Del. 1999).  The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to support the releases, exculpations and injunctions provided for in the Plan and this Confirmation Order.

UU.    <u>Lay Pension Plan Reaffirmation Agreement.</u>  Pursuant to section 524(c) of the Bankruptcy Code, the Lay Pension Plan Reaffirmation Agreement constitutes a voluntary agreement of the Debtor waiving a discharge of certain indebtedness and reaffirming certain debt on the terms set forth in the Lay Pension Plan Reaffirmation Agreement (as may be amended) and the Lay Pension Plan (as defined in the Lay Pension Plan Reaffirmation Agreement).  The Lay Pension Plan Reaffirmation Agreement (i) will be made before the granting of the Debtor's discharge under section 1141 of the Bankruptcy Code; (ii) will be voluntarily executed by the Debtor with the assistance of counsel and with fully informed knowledge of the consequences of its reaffirmation, after the receipt of all disclosures required by the Bankruptcy Code for such an agreement; and (iii) does not constitute an undue hardship on the Debtor or the Reorganized Debtor.  Additionally, the Lay Pension Plan Reaffirmation Agreement constitutes a valid

exercise of the Debtor's right to voluntarily repay one or more creditors in accordance with
section 524(f) of the Bankruptcy Code and applicable nonbankruptcy law.

        VV.    <u>Resolution of Disputes Regarding Restricted PIA Funds</u>.  Subject to the
occurrence of the Effective Date, the Restricted PIA Funds (including the Capital Campaign
Fund, the Clergy Pension Fund, and the Gift Annuity Funds) are Restricted Assets and constitute
Undisputed Restricted PIA Funds for all purposes under the Plan.

        WW.    <u>Continuation of PIA Custody Agreement and Investment Management
Agreements</u>.  The Court need not, and does not, decide whether the PIA Custody Agreement and
the Investment Management Agreements constitute Executory Contracts under the Bankruptcy
Code.  To the extent that the PIA Custody Agreement and the Investment Management
Agreements do constitute Executory Contracts, the Plan constitutes a motion to assume the PIA
Custody Agreement and the Investment Management Agreements pursuant to sections 365,
1123(b)(2) and 1123(a)(5)(A) of the Bankruptcy Code.  To the extent the PIA Custody
Agreement and the Investment Management Agreements constitute Executory Contracts, each
such assumption is in the best interests of the Debtor, the Reorganized Debtor, the Estate and its
creditors, and all parties in interest in this Chapter 11 Case.  Additionally, unless this Court finds
otherwise after notice and a hearing upon a motion of the counterparties to the PIA Custody
Agreement and/or the Investment Management Agreements Filed prior to the Effective Date, no
payments are required to cure any defaults of the Debtor existing as of the Effective Date with
respect to the PIA Custody Agreement or the Investment Management Agreements.  The
assumption of the PIA Custody Agreement and the Investment Management Agreements meets
all requirements of all applicable provisions of section 365 of the Bankruptcy Code, and such
assumption shall be legal, valid and binding in accordance with the terms and conditions of the

21

Plan and to the same extent as if such assumption had been effectuated pursuant to an order of the Court entered before this Confirmation Order. To the extent the PIA Custody Agreement and the Investment Management Agreements are not Executory Contracts, the reservation and preservation of all rights of the Debtor thereunder and the vesting of those rights in the Reorganized Debtor is an adequate and necessary means to implementation of the Plan pursuant to Sections 12.1 and 17.2 of the Plan and sections 1123(a)(5)(A) and 1123(b)(6) of the Bankruptcy Code, and meets the requirements of sections 1123(a)(5)(A) and 1123(b)(6) of the Bankruptcy Code.

XX.    <u>Final § 345 Waiver</u>. In accordance with Section 12.6 of the Plan, the Plan constitutes a renewed, final motion to waive the deposit requirements of section 345(b) of the Bankruptcy Code in connection with the Pooled Investment Account. Cause exists for such a waiver, and such waiver is in the best interests of the Debtor, the Reorganized Debtor, the Estate and its creditors, and all parties in interest in the Chapter 11 Case.

YY.    <u>Continuation of Insurance Policies</u>. The Court need not, and does not, decide whether the Designated Insurance Policies constitute Executory Contracts under the Bankruptcy Code. To the extent that the Designated Insurance Policies do constitute Executory Contracts, the Plan constitutes a motion to assume the Designated Insurance Policies pursuant to sections 365, 1123(b)(2) and 1123(a)(5)(A) of the Bankruptcy Code. To the extent the Designated Insurance Policies constitute Executory Contracts, each such assumption is in the best interests of the Debtor, the Reorganized Debtor, the Estate and its creditors, and all parties in interest in this Chapter 11 Case. Additionally, unless this Court finds otherwise after notice and a hearing upon a motion of the Insurers under the Designated Insurance Policies Filed prior to the Effective Date, or upon agreement of the Debtor prior to the Effective Date, no payments

are required to cure any defaults of the Debtor existing as of the Effective Date with respect to the Designated Insurance Policies. The assumption of the Designated Insurance Policies meets all requirements of all applicable provisions of section 365 of the Bankruptcy Code, and such assumption shall be legal, valid and binding in accordance with the terms and conditions of the Plan and to the same extent as if such assumption had been effectuated pursuant to an order of the Court entered before this Confirmation Order. To the extent the Designated Insurance Policies are not Executory Contracts, the reservation and preservation of all rights of the Debtor thereunder and the vesting of those rights in the Reorganized Debtor is an adequate and necessary means to implementation of the Plan pursuant to Section 11.1 of the Plan and sections 1123(a)(5)(A) and 1123(b)(6) of the Bankruptcy Code, and meets the requirements of sections 1123(a)(5)(A) and 1123(b)(6) of the Bankruptcy Code.

ZZ.    Sale of Insurance Interests. The treatment of the Settling Insurers under the Plan and the consideration to be received from them in return, all effective on and as of the Effective Date, including but not limited to: (i) the sale of the Estate's interest in each Settled Insurance Policy to the applicable Settling Insurer free and clear of all claims and interests, in accordance with the applicable Insurance Buy-Back Agreement executed by each Settling Insurer and Section 5.1(b) of the Plan; (ii) treatment of the Settling Insurers as Protected Parties under Section 16.3 of the Plan; (iii) the waiver and release of all Causes of Action of the Estate against the Settling Insurers or property of the Settling Insurers as set forth in Section 5.1(g) of the Plan; (iv) the assignment of all right, title and interest in and to any and all Order/Perpetrator Indemnification Claims from the Settling Insurers to the Settlement Trust (subject to the limitations set forth in paragraph 41 below); (v) the irrevocable and unconditional release, acquittal, and discharge of each of the Non-Debtor Catholic Entities and Settling Insurers from

any and all Causes of Action of the Estate (including Chapter 5 Actions, Alter Ego Claims, and Substantive Consolidation Claims) against any such Non-Debtor Catholic Entity or Settling Insurer, or the property of any such Non-Debtor Catholic Entity or Settling Insurer, by the Debtor, on behalf of itself and the Debtor Releasors; and (vi) the irrevocable and unconditional release, acquittal, and discharge of each Settling Insurer and their property from any and all Causes of Action that any other Settling Insurer may otherwise bring against them or their property relating to any Protected Party (other than the other Settling Insurers in their role as an Insurer for a non-Protected Party), including but not limited to any Cause of Action for or relating to indemnification and contribution, is in the best interests of the Debtor, the Reorganized Debtor, the Estate and its creditors, and all parties in interest in the Chapter 11 Case; is an adequate and necessary means to the implementation of the Plan; and meets all requirements imposed by sections 363(b), (f) and (m), 1123(a)(5) and 1123(b)(6)of the Bankruptcy Code, and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure. Without limiting the generality of the foregoing, each of the Settling Insurers is a "good faith purchaser" entitled to all protections afforded good faith purchasers under section 363(m) of the Bankruptcy Code.

AAA.  Vesting of Assets.  In accordance with Section 17.2 of the Plan and sections 1123(a)(5), 1123(b)(6) and 1141 of the Bankruptcy Code, the vesting of the Reorganization Assets (except those expressly excepted from such vesting by the Plan or remainder of this Confirmation Order) in the Reorganized Debtor and/or the non-debtors Catholic Diocese of Wilmington Fund, Catholic Diocese of Wilmington Affiliates Fund, Catholic Diocese of Wilmington Parish Fund, and Reorganized CDOW Holdings, LLC (at the election of the Debtor as set forth below) on and after the Effective Date free and clear of all

liens, Claims, and interests of Creditors (including successor liability Claims) such that the

Reorganized Debtor may thereafter operate and manage its affairs and may use, acquire and

dispose of property without notice to any Person, and without supervision or approval by the

Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy

Rules, or the Bankruptcy Court (other than those restrictions expressly imposed by the Plan or

the Confirmation Order) is an adequate and necessary means to implementation of the Plan and

meets the requirements of, *inter alia*, sections 1123(a)(5), 1123(b)(6) and 1141 of the

Bankruptcy Code.  An election of the Debtor that Reorganization Assets, or any of them, shall

vest in Catholic Diocese of Wilmington Fund, Catholic Diocese of Wilmington Affiliates Fund,

Catholic Diocese of Wilmington Parish Fund, or Reorganized CDOW Holdings, LLC, shall be

made by the filing of a notice with this Court identifying the particular Reorganization Assets

and the entity or entities in which they shall vest.  Upon the filing of such notice, subject to the

occurrence of the Effective Date, the vesting of Reorganization Assets in such entity or entities

shall be deemed to occur pursuant to this Confirmation Order, free and clear of all liens, Claims,

and interests of Creditors (including successor liability Claims), and such entity or entities shall

be considered "Enjoined Civil Entities" subject to paragraph 57 hereof.  Catholic Diocese of

Wilmington Fund, Catholic Diocese of Wilmington Affiliates Fund, Catholic Diocese of

Wilmington Parish Fund, and Reorganized CDOW Holdings, LLC are independent from, and

shall not be for any purposes deemed successors of, the Debtor.

> BBB.  <u>Rejection of Unassumed Executory Contracts</u>.  The rejection of each

Executory Contract on the Effective Date that was entered into by the Debtor prior to the Petition

Date and that has not previously expired or terminated pursuant to its own terms, and which was

not previously assumed or rejected by an Order of the Bankruptcy Court (including this

Confirmation Order) prior to the Effective Date, was not otherwise assumed or rejected pursuant

to sections 365, 1123(b)(2) and/or 1123(a)(5) of the Bankruptcy Code, or that is not subject to a

pending motion to assume or reject before the Bankruptcy Court on the Effective Date, is in the

best interest of the Debtor, the Reorganized Debtor, the Estate and its creditors, and all parties in

interest in the Chapter 11 Case, and otherwise complies with the requirements of sections 365,

1123(b)(2) and 1123(a)(5) of the Bankruptcy Code.

## ORDERS

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT**:

1.      <u>Solicitation and Disclosure Statement.</u>  The Disclosure Statement contains

adequate information in accordance with sections 1125 and 1126 of the Bankruptcy Code and the

solicitation of the Plan is hereby approved in all respects.

2.      <u>Confirmation of the Plan.</u>  Subject to the terms and conditions of this

Confirmation Order, the Plan is approved and confirmed under section 1129 of the Bankruptcy

Code.  The terms of each of the documents in the Plan and the Plan Supplement (subject to any

further modifications by the Debtor or the Creditors Committee, as applicable, which

modifications shall not be inconsistent with the terms and conditions of the Plan or this

Confirmation Order) are approved, and are incorporated by reference into, and are an integral

part of, the Plan.  Within ten (10) days after entry of this Confirmation Order, (i) the Debtor shall

file a revised Plan conforming to the terms and conditions of this Confirmation Order, and

(ii) the Creditors Committee shall file a revised Settlement Trust Agreement and Settlement

Trust Distribution Procedures conforming to the terms and conditions of this Confirmation

Order.  For the avoidance of doubt, the Settlement Funding Date shall remain sixty (60) days

from the Confirmation Date.  References to the "Plan" herein shall mean the Plan as modified in

connection with this paragraph.

3.    Objections Withdrawn or Overruled.  Any objections and responses to the

Plan not heretofore settled or withdrawn are overruled in their entirety.  Any objections or

responses to the Plan previously settled and/or withdrawn or deemed withdrawn were withdrawn

with prejudice.

4.    Notice.  As established by the Solicitation Package Affidavit of Service,

and as set forth herein, the Debtor provided good and sufficient notice of the Confirmation

Hearing and the deadline for filing and serving objections to the Plan, which notice is hereby

approved.

5.    Record Closed.  The record of the Confirmation Hearing is hereby closed.

6.    Provisions of Plan and Confirmation Order Non-Severable and Mutually

Dependent.  Except as may be specifically provided in the Plan, the provisions of the Plan and

this Confirmation Order, including the findings of fact and conclusions of law set forth herein,

constitute interrelated compromises and are not severable, and no provision of the Plan may be

stricken, altered, or invalidated, except by amendment of the Plan by the Debtor.

7.    Plan Classification Controlling.  The classification of Claims for purposes

of distributions under the Plan shall be governed solely by the terms of the Plan.  The

classifications included in the Ballots tendered to, or returned by, the holders of Claims for

purposes of voting on the Plan:  (a) were included in the Ballots solely for purposes of voting on

the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or

otherwise affect, the actual classification of such Claims under the Plan for distribution purposes;

(c) may not be relied upon by any holder of a Claim as representing the actual classification of

27

such Claims under the Plan for distribution purposes; and (d) shall not be binding on the Settlement Trustee, the Debtor and its Estate, the Plan Administrator, or on the Reorganized Debtor.

8.    <u>Authorization and Direction to Act</u>.  In accordance with section 1142 of the Bankruptcy Code, the Debtor, the Plan Administrator, the Reorganized Debtor, the Settlement Trustee and each other appropriate party are hereby authorized and directed to take all steps and perform such acts as may be necessary to implement and effectuate the Plan, and are further authorized and directed to execute and deliver any instrument and perform any other act that is necessary for the consummation of the Plan.

9.    <u>Additional Documentation; Non-Material Modifications</u>.  Without limiting the generality of the preceding paragraph of this Confirmation Order, from and after the Effective Date, the Settlement Trustee, the Reorganized Debtor, and the Settling Parties shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in Article V of the Plan without further Order of the Bankruptcy Court. Additionally, the Settlement Trustee, the Reorganized Debtor, and the Settling Parties may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement contained in Article V of the Plan, subject to Bankruptcy Court approval, <u>provided that</u> the amendment or modification does not materially and adversely change the treatment of any holder of a Survivor Claim without the prior written agreement of such holder. A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented under this paragraph and/or Section 5.1(i) of the Plan, if the proposed alteration, amendment, modification or supplement does not materially and

adversely change the treatment of the Claims within such Class. An Order of the Bankruptcy Court approving any amendment or modification made pursuant to this paragraph and/or Section 5.1(i) of the Plan shall constitute an Order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

10.     Binding Nature of the Plan. In accordance with section 1141 of the Bankruptcy Code, the provisions of the Plan shall be binding upon the Debtor, the Plan Administrator, the Reorganized Debtor, the Settlement Trustee, any person acquiring or receiving property under the Plan, any party to a contract with the Debtor, any lessor or lessee of property to or from the Debtor and any holder of a Claim against the Debtor, whether or not such Claim is impaired under the Plan and whether or not such holder will receive or retain any property or interest in property under the Plan, has filed a Proof of Claim in the Chapter 11 Case, or failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan, and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

11.     Administrative Claims. All requests for payment of Administrative Claims that arose between the Petition Date and the Effective Date (other than any Administrative Claim that is a Survivor Claim) must be Filed with this Court and at the same time served upon the Post-Confirmation Notice Parties no later than (A) thirty (30) days after a notice of the Effective Date is Filed with the Bankruptcy Court and served, or (B) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 30-day period (the "Administrative Claim Bar Date"). Holders of Administrative Claims (including the holders of any Claims for federal, state or local taxes, but excluding Professional Claims and Survivor Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims

against the Debtor, the Plan Administrator, the Reorganized Debtor, or any of their property. Notwithstanding the foregoing, any Bar Dates established during the course of this Chapter 11 Case shall remain in full force and effect.

        12.     Professional Fee Claims.  All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Case) shall File and serve on the Post-Confirmation Notice Parties an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than (A) sixty (60) days after a notice of the Effective Date is filed with the Bankruptcy Court and served, or (B) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 60-day period (the "Professional Claims Bar Date").  All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Court.  Only the Professional Fee Claims that are authorized by the Court will be owed and required to be paid under the Plan.

        13.     United States Trustee Fees.  All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date.  From the Effective Date until a Final Decree is entered, the Plan Administrator shall, within thirty (30) days of the end of each fiscal quarter, File with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports setting forth all receipts and disbursements as required by the U.S. Trustee guidelines.

14.     Releases, Exculpation and Limitation of Liability.  The releases,

discharges, exculpations, limitation of liability, and injunctive provisions contained in the Plan,

including, but not limited to, those provided in Articles V and XVI of the Plan, and this

Confirmation Order, are fair and equitable and given for sufficient and valuable consideration,

are in the best interests of the Debtor, the Reorganized Debtor, the Estate and its creditors, and

all parties in interest, and, accordingly, are hereby authorized, approved, and binding on all

Persons and entities described therein.

15.     Continuation of Existing Injunctions and Stays.  Unless otherwise

provided in the Plan or this Confirmation Order to have a different duration, all injunctions or

stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, the

Plan, by orders of the Bankruptcy Court, or otherwise, and extant on the Confirmation Date,

shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the

dissolution of the Settlement Trust.

16.     Channeling Injunction.  On and after the Effective Date, in consideration

of (a) the promises and obligations of the Debtor, the Reorganized Debtor, the Bishop, and the

Non-Debtor Catholic Entities under the Plan (including the provision of the NDCE Settlement

Contribution and the non-monetary undertakings set forth in Sections 17.5(b) and (c) thereof),

and (b) consideration provided, or to be provided, by the Settling Insurers, all Persons who have

held or asserted, hold or assert, or may in the future hold or assert any Survivor Claim arising

prior to the Effective Date (other than a Survivor Claim that is an Administrative Claim) shall be

forever barred and permanently enjoined from pursuing such Survivor Claim against any

Protected Party based upon or in any manner arising from or related to any acts or omissions of

any Protected Party including (w) for damages of any type, including bodily injury, personal

31

injury, emotional distress, wrongful death and/or loss of consortium, (x) for exemplary or punitive damages, (y) for attorneys' fees and other expenses, fees or costs, (z) for any remedy at law, in equity or admiralty whatsoever, heretofore, now or hereafter asserted against any Protected Party; and all Survivor Claims arising prior to the Effective Date (other than Survivor Claims that are Administrative Claims) shall be forever channeled to and shall be treated, administered, determined, and, if Allowed, paid under the procedures and protocols and in the amounts as established under the Plan and the Settlement Trust Agreement as the sole and exclusive remedy for all Survivor Claimants.  The foregoing channeling injunction is an integral part of the Plan and essential to its consummation and implementation.  It is intended that the channeling of the Survivor Claims as provided in this injunction shall inure to and for the benefit of the Protected Parties and shall not, directly or indirectly, inure to or for the benefit of the Holy See (State of Vatican City) or any Non-Settling Insurer, any Religious Order, any insurer of a Religious Order (in such capacity, and not in its capacity as an insurer of any other entity), or any Perpetrator.  In a successful action to enforce this injunction in response to a willful violation thereof, upon notice and a hearing the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper.  This channeling injunction is permanent and will remain in full force and effect following the Effective Date of the Settlement Plan and the entry of a Final Decree closing the Chapter 11 Case.

17.    Discharge Injunction.  The occurrence of the Effective Date shall serve to satisfy all Claims or Causes of Action arising out of any Claim addressed by the terms of the Plan and will operate as a permanent injunction against the taking any action, directly or indirectly for the purposes of asserting, enforcing or attempting to assert of enforce any

YCST01:11205830.6                                                                  068902.1001

Discharged Claim, including: (i) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Discharged Claim against the Debtor, the Reorganized Debtor, or property of the Reorganized Debtor; (ii) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or Order against the Debtor, the Reorganized Debtor, or property of the Reorganized Debtor, with respect to any Discharged Claim; (iii) creating, perfecting, or enforcing any encumbrance or lien of any kind against the Debtor, the Reorganized Debtor, or property of the Reorganized Debtor with respect to any Discharged Claim; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Reorganized Debtor with respect to any Discharged Claim; and (v) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan.  In the event any Person takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this injunction, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the Claim of such Person is asserted will automatically be transferred to the Bankruptcy Court or the District Court for enforcement of the Plan.  In a successful action to enforce this injunctive provision in response to a willful violation thereof, upon notice and a hearing the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper.

18.    Scope and Effect of Discharge.  Pursuant to sections 524 and 1141 of the Bankruptcy Code and except as otherwise expressly provided elsewhere in the Plan or this Confirmation Order, on the Effective Date, each of the Debtor, the Reorganized Debtor, and the Estate shall be discharged and released from any and all Discharged Claims, including Claims and Liens that arose before the date of entry of this Confirmation Order, and any debts of a kind

33

specified in sections 502(g), (h) or (i) of the Bankruptcy Code, whether or not (a) a Proof of

Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code,

(b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code, or

(c) the holder of a Claim based upon such debt has accepted the Plan.  In addition, except as

otherwise expressly provided in the Plan or this Confirmation Order, the rights afforded under

the Plan and the treatment of Allowed Claims under the Plan shall be in exchange for and in

complete satisfaction, discharge and release of all Allowed Claims against the Debtor and any of

its Assets, including any Allowed Claim for interest accruing after the Petition Date and prior to

the Effective Date.  On the Effective Date, except as otherwise provided in the Plan or this

Confirmation Order, all holders of Allowed Claims arising prior to the Effective Date shall be

permanently barred and enjoined from asserting against the Debtor or the Reorganized Debtor, or

any of their respective officers, directors, managers, agents, employees, attorneys, professional

advisors, successors or assigns or their assets, any other or further claims, debts, rights, causes of

action, or liabilities arising out of any act or omission, transaction or other activity of any kind or

nature that occurred prior to the Effective Date and that is discharged under the Plan or this

Confirmation Order.

        19.    Exculpation; Limitation of Liability.  From and after the Effective Date,

none of the Debtor, the Estate, the Creditors Committee, the Lay Employees Committee, the Fee

Examiner, the Mediator, the Special Arbitrator, the Lay Pension Plan Trustee, the Custodian, the

Investment Managers, the Non-Debtor Catholic Entities, the Settlement Trust, the Settlement

Trustee, the Settlement Arbitrator, the Settling Insurers, State Court Counsel, and the respective

officers, directors, employees, members, attorneys, financial advisors, and professionals of each

of the same Persons (collectively, the "Exculpated Parties") shall have or incur any liability for,

34

and each Exculpated Party shall be released from, any Claim, Cause of Action or liability to any other Exculpated Party, to any holder of a Claim, or to any other party in interest, for any act or omission that occurred during and in connection with the Chapter 11 Case or in connection with the preparation and Filing of the Chapter 11 Case, the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except for Claims, Causes of Action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, the Debtor and its officers, member, employees, attorneys, financial advisors, and other Professionals shall be entitled to and granted the benefits of section 1125(e) of the Bankruptcy Code. For the avoidance of doubt, this paragraph shall not, directly or indirectly, inure to or for the benefit of the Holy See (State of Vatican City), any Religious Order, any insurer of a Religious Order (in such capacity, and not in its capacity as an insurer of any other entity), or any Perpetrator.

20.     <u>Protected Parties</u>.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no Cause of Action of the Estate against any Protected Party (including but not limited to the Settling Insurers) shall vest in the Settlement Trust. For the avoidance of doubt and without limiting the generality of the foregoing or expanding the Causes of Action assigned to the Settlement Trust under the Plan, the Settlement Trust shall be forever barred and permanently enjoined from pursuing any Survivor Claim against any Protected Party (including

but not limited to the Settling Insurers) based upon or in any manner arising from or related to any acts or omissions of any Protected Party.

21.    Section 1145 Exemption.  Pursuant to section 1145(a) of the Bankruptcy Code, neither section 5 of the Securities Act of 1933 nor any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, shall apply with respect to any security being offered, sold or transferred under the Plan, to the extent applicable.

22.    Section 1146 Exemption.  Pursuant to § 1146 of the Bankruptcy Code, the delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, including any such acts by the Debtor (if prior to the Effective Date), and the Plan Administrator (on or after the Effective Date), including any subsequent transfers of property by the Plan Administrator, and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

23.    Substantial Consummation.  On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

24.    Waiver of Fourteen (14) Day Stay.  Pursuant to Bankruptcy Rule 3020(e), the fourteen-day stay of this Confirmation Order imposed thereby is waived and this Confirmation Order shall be effective and enforceable immediately upon its entry.

YCST01:11205830.6                                                                                      068902.1001

25.     <u>Notice of Confirmed Plan and Effective Date</u>.  In accordance with

Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), as soon as reasonably practicable after the

Effective Date, the Debtor shall serve notice of the Effective Date by first-class mail, postage

prepaid on all known Creditors; provided, however, that such notice need not be given or served

under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy

Practice and Procedure for the United States Bankruptcy Court for the District of Delaware or

this Confirmation Order to any Person or entity to whom the Debtor mailed a notice of the

Confirmation Hearing, but received such notice returned marked "undeliverable as addressed,"

"moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the

Debtor has been previously informed in writing by such Person or entity of that Person's new

mailing address.  The notice described herein is adequate and appropriate under the particular

circumstances and no other or further notice is necessary or required.

26.     <u>Reversal or Modification of this Confirmation Order</u>.  Except as otherwise

provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order

are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any

other court of competent jurisdiction, such reversal, stay, modification, or vacatur shall not affect

the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien

incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the date

that the Debtor or Reorganized Debtor received actual written notice of the effective date of such

reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification,

or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant

to, or in reliance on, this Confirmation Order prior to the date that the Debtor received actual

written notice of the effective date of such reversal, stay, modification, or vacatur shall be

governed in all respects by the provisions of this Confirmation Order and the Plan, or any amendments or modifications thereto, in effect prior to the date that the Debtor received such actual written notice.

27.    Retention of Jurisdiction.  Following the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Case and all core matters arising under the Bankruptcy Code or arising in the Bankruptcy Case to the fullest extent legally permissible, including without limitation such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out and jurisdiction over the specific matters set forth in Section 6.6 of the Plan.

28.    Reference to and Validity and Enforceability of Plan Provisions.  The failure to reference any particular provision of the Plan in this Confirmation Order shall have no effect on the binding effect, enforceability or legality of such provisions and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan. Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

29.    Headings.  The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or otherwise affect the meaning or interpretation of the text of this Confirmation Order.

30.    Lay Pension Plan Reaffirmation Agreement.  The form of Lay Pension Plan Reaffirmation Agreement satisfies the requirements of section 524(c) of the Bankruptcy Code and constitutes a binding agreement under applicable nonbankruptcy law.  Pursuant to sections 524(c) and 524(f) of the Bankruptcy Code, the form of Lay Pension Plan Reaffirmation Agreement is approved, to the extent Court approval is necessary.

38

31.    <u>Continuation of Lay Pension Plan Trust</u>.  All rights under the Catholic
Diocese of Wilmington, Inc. Lay Employees Pension Plan Defined Benefit Plan Trust
Agreement dated as of November 1, 1998, by and among the Debtor and Mellon Bank, N.A. (as
subsequently amended from time to time) shall be reserved and preserved in the Debtor and shall
vest in the Reorganized Debtor pursuant to Sections 12.1 and 17.2 of the Plan and
sections 1123(a)(5)(A) and 1123(b)(6) of the Bankruptcy Code.

32.    <u>Liability of Participating Employers Not Affected</u>.  Nothing in this
Confirmation Order or the Plan shall release, discharge, settle, compromise or otherwise resolve
the Claims, rights or Causes of Action, if any, that any lay employee may have against any non-
Debtor Participating Employer under the Lay Pension Plan, or any Non-Debtor Catholic Entity
that participated in the Lay Pension Plan.

33.    <u>No Proof of Claim Necessary for Lay Pension Plan Participants.</u>  Any
failure to file a Proof of Claim in this Chapter 11 Case on account of a Lay Pension Claim shall
not prejudice the rights under the Lay Pension Plan (as modified by the Lay Pension Plan
Reaffirmation Agreement) of any Participant or Beneficiary thereunder.  The rights of
Participants and Beneficiaries, and the obligations of the Reorganized Debtor, under the Lay
Pension Plan (as modified by the Lay Pension Plan Reaffirmation Agreement) shall be
determined under applicable non-bankruptcy law irrespective of section 502 of the Bankruptcy
Code.

34.    <u>Settlements and Compromises</u>.  The compromises and settlements
provided for in the Plan, including, without limitation, the compromises and settlements set forth
in Articles IV, V, XI, XV, XVI and XVII of the Plan, are approved and shall be binding and
enforceable on all Persons as set forth in the Plan and this Confirmation Order.

YCST01:11205830.6    068902.1001

35.    <u>Resolution of PIA Litigation</u>.  Without limiting the generality of the preceding paragraph of this Confirmation Order and in consideration of the Non-Debtor Catholic Entities' agreement to provide the NDCE Settlement Contribution and other consideration set forth in Section 5.1(a) of the Plan, and to withdraw the appeal of the Phase I Judgment and Orders as set forth in Section 5.1(e) of the Plan, the Phase I Judgment and Orders are hereby vacated, and the PIA Litigation is dismissed, with prejudice, all subject to the occurrence of the Effective Date; (ii) as of the Effective Date and subject to its occurrence, the Disputed Non-Debtor PIA Funds do not constitute property of the estate by operation of section 541(d) of the Bankruptcy Code; and (iii) effective immediately upon entry of this Confirmation Order, the transfer of Cash proceeds of Disputed Non-Debtor PIA Funds to the Settlement Trust in an aggregate amount not to exceed the NDCE Settlement Contribution is hereby authorized.  As soon as practicable after the Effective Date, the Debtor and the Non-Debtor Catholic Entities who are party to the PIA Litigation shall withdraw (or move to dismiss, to the extent necessary) their appeal of the Phase I Judgment and Orders, and all parties to the PIA Litigation are required to take all necessary actions to withdraw or otherwise dismiss the appeal of the Phase I Judgment and Orders within ten (10) business days after a request by the Debtor and the Non-Debtor Catholic Entities who are party to the PIA Litigation.

36.    <u>Resolution of Disputes Regarding Restricted PIA Funds</u>.  Subject to the occurrence of the Effective Date, the Restricted PIA Funds (including the Capital Campaign Fund, the Clergy Pension Fund, and the Gift Annuity Funds) are Restricted Assets and constitute Undisputed Restricted PIA Funds for all purposes under the Plan.

37.    <u>Continuation of PIA Custody Agreement and Investment Management Agreements</u>.  To the extent that the PIA Custody Agreement and the Investment Management

Agreements constitute Executory Contracts, the Plan constitutes a motion to assume the PIA

Custody Agreement and the Investment Management Agreements pursuant to sections 365,

1123(b)(2) and 1123(a)(5)(A) of the Bankruptcy Code.  This motion is granted upon the

occurrence of the Effective Date and shall be legal, valid and binding in accordance with the

terms and conditions of the Plan, and to the same extent as if such assumption had been

effectuated pursuant to an order of the Court entered before this Confirmation Order.  Unless this

Court finds otherwise after notice and a hearing upon a motion of the counterparties to the PIA

Custody Agreement and/or the Investment Management Agreements Filed prior to the Effective

Date, no payments are required to cure any defaults of the Debtor existing as of the Effective

Date with respect to the PIA Custody Agreement or the Investment Management Agreements.

To the extent the PIA Custody Agreement and the Investment Management Agreements are not

Executory Contracts, all rights thereunder shall be reserved and preserved in the Debtor and shall

vest in the Reorganized Debtor pursuant to Sections 12.1 and 17.2 of the Plan and

sections 1123(a)(5)(A) and 1123(b)(6) of the Bankruptcy Code.  Notwithstanding all of the

foregoing, however, the right of the Debtor to seek rejection of the PIA Custody Agreement or

any Investment Management Agreement, or seek other available relief, is hereby reserved until

the Effective Date.

      38.    <u>Partial Escrow of NDCE Settlement Contribution</u>.  From and after the

Interest Shift Date, $50,000,000 of the NDCE Settlement Contribution on deposit in the

Settlement Account (the "<u>Escrowed Settlement Funds</u>") shall be deemed to be held *in custodia*

*legis* for the benefit of the Settlement Trust and holders of Survivor Claims, subject to the

funding of the Settlement Trust and the occurrence of the Effective Date.  While *in custodia*

*legis*, the Escrowed Settlement Funds (i) shall not be subject to attachment, encumbrance, or

forfeiture by any means without prior Order of the Bankruptcy Court, and (ii) shall be managed

by the Debtor for the benefit of the Settlement Trust and holders of Survivor Claims.  On or

before the Settlement Funding Date, the Debtor shall transfer the Escrowed Settlement Funds,

together with accrued interest thereon, to the Settlement Trust on behalf of the Non-Debtor

Catholic Entities.  The balance of the NDCE Settlement Contribution ($11,968,441) shall be

contributed to the Settlement Trust in accordance with Section 5.1(a) of the Plan.

39.    Final § 345 Waiver.  As of the Confirmation Date, the Debtor is hereby

granted a renewed waiver of the deposit requirements of section 345(b) of the Bankruptcy Code,

to the extent applicable, with respect to the Pooled Investment Account, for cause shown.

Subject to the occurrence of the Effective Date, this waiver shall constitute a final waiver of the

deposit requirements of section 345(b) of the Bankruptcy Code.

40.    Continuation of Insurance Policies.  To the extent that the Designated

Insurance Policies constitute Executory Contracts, the Plan constitutes a motion to assume the

Designated Insurance Policies pursuant to sections 365, 1123(b)(2) and 1123(a)(5)(A) of the

Bankruptcy Code.  This motion is granted upon the occurrence of the Effective Date and shall be

legal, valid and binding in accordance with the terms and conditions of the Plan, and to the same

extent as if such assumption had been effectuated pursuant to an order of the Court entered

before this Confirmation Order.  Unless this Court finds otherwise after notice and a hearing

upon a motion of the Insurers under the Designated Insurance Policies Filed prior to the

Effective Date, or upon the agreement of the Debtor prior to the Effective Date, no payments are

required to cure any defaults of the Debtor existing as of the Effective Date with respect to the

Designated Insurance Policies.  To the extent the Designated Insurance Policies are not

Executory Contracts, all rights thereunder shall be reserved and preserved in the Debtor and shall

vest in the Reorganized Debtor pursuant to Section 11.1 of the Plan and sections 1123(a)(5)(A) and 1123(b)(6) of the Bankruptcy Code. Notwithstanding all of the foregoing, however, the right of the Debtor to seek rejection of the Designated Insurance Policies, or seek other available relief, is hereby reserved until the Effective Date.

41.    Sale of Insurance Interests. On or before the Settlement Funding Date, Cash in the amount of $15,456,559 in the aggregate shall be contributed by or on behalf of the Settling Insurers to the Settlement Trust, in consideration for, and expressly conditioned upon, each of the following conditions, which are all hereby approved pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code, and the Debtor is authorized, empowered and directed to take any and all actions necessary or appropriate to effect and consummate the following: (i) the sale of the Estate's interest in each Settled Insurance Policy to the applicable Settling Insurer pursuant to sections 363(b), (f) and (m) and/or 1123(a)(5) of the Bankruptcy Code, free and clear of all claims and interests and with all protections afforded to them in their role as good faith purchasers under section 363(m) of the Bankruptcy Code, in accordance with Section 5.1(b) of the Plan and the applicable Insurance Buy-Back Agreement executed by each Settling Insurer substantially in the form of the Insurance Buy-Back Agreement filed for each Settling Insurer as a Supplemental Plan Document, and each Settled Insurance Policy of a Settled Insurer shall be deemed sold, transferred and assigned free and clear of all claims and interests pursuant to sections 363(b), (f) and (m) and/or 1123(a)(5) of the Bankruptcy Code effective as of the date set forth in the applicable Insurance Buy-Back Agreement; (ii) treatment of the Settling Insurers as Protected Parties under Section 16.3 of the Plan; and (iii) the waiver and release of all Causes of Action of the Estate against the Settling Insurers or property of the Settling Insurers as set forth in Section 5.1(g) of the Plan. As additional consideration for, and expressly conditioned

43

upon, clauses (i)-(iii) of the preceding sentence, and subject to the occurrence of the Effective

Date, each of the Settling Insurers shall assign to the Settlement Trust all right, title and interest

in and to any and all Order/Perpetrator Indemnification Claims *provided, however*, that (i) said

assignment shall be limited to those Order/Perpetrator Indemnification Claims arising from

payments made (a) pursuant to an Insurance Buy-Back Agreement, or (b) prepetition; and (ii)

said assignment shall be limited to the use by the Settlement Trust to grant releases when settling

with Religious Orders, Perpetrators and/or their insurers.  Should the Settlement Trust enter into

a settlement of such Order/Perpetrator Indemnification Claims with a Religious Order,

Perpetrator or an insurer of a Religious Order or Perpetrator, the Settlement Trust must obtain a

full release from the settling Religious Order, Perpetrator and/or insurer of all Claims against the

Settling Insurers arising from or relating to the settled Order/Perpetrator Indemnification Claims.

In consideration of the contributions and other consideration to be provided by the Non-Debtor

Catholic Entities and the Settling Insurers pursuant to Sections 5.1(a) and (b) of the Plan, the

Debtor, on behalf of itself and the Debtor Releasors, irrevocably and unconditionally, without

limitation, releases, acquits, and forever discharges each of the Non-Debtor Catholic Entities and

Settling Insurers from any and all Causes of Action of the Estate (including Chapter 5 Actions,

Alter Ego Claims, and Substantive Consolidation Claims) against any such Non-Debtor Catholic

Entity or Settling Insurer, or the property of any such Non-Debtor Catholic Entity or Settling

Insurer, such release to be effective upon the Effective Date.  Additionally, in consideration for

the foregoing, each Settling Insurer, irrevocably and unconditionally, without limitation,

releases, acquits, and forever discharges each of the other Settling Insurers and their property

from any and all Causes of Action that it may otherwise bring against them or their property

relating to any Protected Party (other than the other Settling Insurers in their role as an Insurer

for a non-Protected Party), including but not limited to any Cause of Action for or relating to indemnification and contribution. Notwithstanding the foregoing, the purchase of Settled Insurance Policies by the Current Underwriters, which policies provided coverage to the Diocese and Related Catholic Entities as defined in the applicable Insurance Buy-Back Agreement with the Current Underwriters (the "Post-1994 London Policies"), shall only be free and clear of those claims and interests specified in the applicable Insurance Buy-Back Agreement with the Current Underwriters, and not free and clear of all claims and interests under the Post-1994 London Policies.

42.    Vesting of Assets.  In accordance with sections 1141, 1123(a)(5) and 1123(b)(6) of the Bankruptcy Code, and except as otherwise provided in the Plan or this Confirmation Order, the Reorganization Assets shall vest in the Reorganized Debtor and/or Catholic Diocese of Wilmington Fund, Catholic Diocese of Wilmington Affiliates Fund, Catholic Diocese of Wilmington Parish Fund, and Reorganized CDOW Holdings, LLC (at the election of the Debtor as set forth above, and provided that any such entity in which Reorganization Assets may vest pursuant to this Confirmation Order shall be an "Enjoined Civil Entity" subject to paragraph 57 hereof) on and after the Effective Date free and clear of all liens, Claims, and interests of Creditors, including successor liability Claims.  On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

45

43.     <u>Certain Actions</u>.  By reason of entry of this Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Debtor under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and implementation of other matters provided for under the Plan involving the Debtor or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant applicable non-bankruptcy law, without any requirement of further action by the officers of the Debtor.

44.     <u>Rejection of Unassumed Executory Contracts</u>.  On the Effective Date, except for any Executory Contract (i) that was previously assumed or rejected by an Order of the Bankruptcy Court (including this Confirmation Order) prior to the Effective Date or otherwise pursuant to sections 365, 1123(b)(2) and/or 1123(a)(5) of the Bankruptcy Code or (ii) that is subject to a pending motion to assume or reject before the Bankruptcy Court on the Effective Date, each Executory Contract entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, and which is not expressly assumed in the Plan, shall be rejected pursuant to sections 365, 1123(b)(2) and 1123(a)(5) of the Bankruptcy Code, effective as of the Confirmation Date.  This Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejection pursuant to sections 365, 1123(b)(2) and 1123(a)(5) of the Bankruptcy Code as of the Effective Date.

45.     <u>Rejection Damages Bar Date</u>.  Except to the extent another Bar Date applies pursuant to an order of the Court, any Proofs of Claim with respect to a Claim arising from the rejection of an Executory Contract under the Plan must be Filed with The Garden City

Group, Inc., Attn: CDOW Bankruptcy Administration, P.O. Box 9561, Dublin, Ohio 43017-4861, and a copy served on counsel for the Debtor, within thirty (30) days after the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtor or its property, the Reorganized Debtor or its property, or the Estate. Nothing in the Plan or this Confirmation Order extends or modifies any previously applicable Bar Date.

46.    Non-Monetary Undertakings. The non-monetary undertakings set forth in Section 17.5(b) of the Plan and Exhibit D (as modified pursuant to Exhibit 1 hereto) and Exhibit E to the Plan (collectively, the "Non-Monetary Undertakings") are approved, to the extent Court approval is necessary. All disputes regarding compliance with these Non-Monetary Undertakings are hereby referred to a disinterested Person to be agreed upon by the Debtor and the Creditors Committee who shall serve as an arbitrator (the "Special Arbitrator"). Decisions by the Special Arbitrator shall be final and non-reviewable by any court or other tribunal or authority. Except as otherwise expressly set forth in Exhibit D to the Plan, the responsibility for paying the reasonable fees and expenses of the Special Arbitrator in connection with the arbitration of any dispute shall be shared by the parties to the dispute.

47.    No Interest on Claims. Postpetition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order or Settlement Trust Documents, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes and Allowed Claim.

48.    Settlement Trustee.  In accordance with Section 7.6 of the Plan, Marla Eskin, Esq., is appointed the Settlement Trustee.  The Settlement Trustee shall commence serving no later than on the Effective Date.  The Settlement Trustee may not assign any of her rights or obligations, and will act only pursuant to the provisions of the Plan, this Confirmation Order, and the Settlement Trust Documents.

49.    Settlement Arbitrator.  In accordance with Section 7.7 of the Plan, the Hon. Thomas B. Rutter (retired), is appointed the Settlement Arbitrator.  The Settlement Arbitrator shall commence serving no later than on the Effective Date.  Amounts paid to the Settlement Arbitrator by the Debtor prior to the Effective Date in accordance with prior orders of this Court shall be credited against the NDCE Settlement Contribution.

50.    Notices.  In accordance with Section 18.11 of the Plan, any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by each and all of the following parties:

**If to the Debtor or the Reorganized Debtor:**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Attn:   Anthony G. Flynn
        Patrick A. Jackson

**If to the Settlement Arbitrator:**

ADR OPTIONS, INC.
Two Commerce Square, Suite 1100
2001 Market Street
Philadelphia, Pennsylvania  19103

48

Telephone: (215) 564-1775
Facsimile: (215) 564-1822
Attn:   Thomas B. Rutter

**If to the Settlement Trust or the Settlement Trustee:**

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Attn:   James I. Stang

51.    <u>Contribution Rights</u>.  Nothing in the Plan or in this Confirmation Order

shall preclude any Person from asserting in any proceeding, or against any award or judgment

entered in such proceeding, any and all rights that may be accorded under the Delaware Uniform

Contribution Among Tortfeasors Law, 10 Del. C. § 6301, *et seq.*, or any other applicable

statutory or common law, of reduction, credit, or setoff, arising from the settlement and

resolution of the Survivor Claims.

52.    <u>Survivor JohnVai</u>.  Except to the extent otherwise agreed by Survivor John

Vai in a writing Filed with the Court prior to the Effective Date, Mr. Vai shall receive from the

Settlement Trust a gross distribution of not less than three million dollars ($3,000,000) from the

Settlement Trust Assets allocated to The Neuberger Firm, P.A., subject to Mr. Vai's obligations

under his contract with his counsel.

53.    <u>Approval of LEC Settlement Term Sheet</u>.  The settlement term sheet

attached hereto as <u>Exhibit 2</u> by and among the Debtor and the Lay Employees Committee (the

"<u>LEC SettlementTerm Sheet</u>") is hereby approved, subject to final documentation in the Plan,

the Default Note, and the Lay Pension Plan Reaffirmation Agreement.  Notwithstanding

anything to the contrary in the Plan, the Lay Employees Committee shall continue in existence

post-Effective Date, and shall be entitled to representation of counsel whose fees shall be

49

payable by the Reorganized Debtor in accordance with the interim compensation procedures applicable in this Chapter 11 Case, until the agreement set forth in the LEC Settlement Term Sheet is fully documented (if not documented prior to the Effective Date). The Court shall retain jurisdiction to resolve any disputes between the Debtor and the Lay Employees Committee regarding the Debtor's compliance with the LEC Settlement Term Sheet.

54.    <u>Effective Date of the Plan.</u> Notwithstanding anything to the contrary in the Plan, the Effective Date of the Plan shall occur, if at all, no later than the Settlement Funding Date.

55.    <u>Modification of Clergy Pension Plan.</u> The Debtor shall modify the Clergy Pension Plan to provide that Francis G. DeLuca, Douglas W. Dempster, Edward F. Dudzinski, Kenneth J. Martin, Joseph A. McGovern, Francis J. Rogers, John A. Sarro, Harry P. Weaver, and Charles W. Wiggins (the "<u>Removed Priests</u>") shall be ineligible for benefits of any kind arising on or after the Petition Date. Such modification is hereby approved pursuant to § 363(b) of the Bankruptcy Code, effective as of the Confirmation Date.

56.    <u>Objection to Certain Claims.</u> Within sixty (60) days after the Confirmation Date, the Debtor shall object to any and all Claims, in their entirety, of the Removed Priests asserted against the Debtor, regardless of whether such Claims are asserted as pre-petition, post-petition, or post-confirmation Claims (the "<u>Removed Priest Claims</u>"). The Plan shall be modified accordingly.

57.    <u>Prohibition of Consideration to Certain Individuals.</u> Catholic Diocese of Wilmington, Inc. and each of the Non-Debtor Catholic Entities organized and existing as a civil, corporate and secular entity under the laws of a State, shall be the "Enjoined Civil Entities." The Enjoined Civil Entities shall be forever barred and permanently enjoined from providing any

money, salary, wages, employment benefits, pensions, medical benefits, housing benefits, medical insurance, sustenance, charity, or other financial benefits of any kind whatsoever, to the Removed Priests.  This injunction shall further preclude the direct or indirect use of the assets of the Enjoined Civil Entities, whether by the Enjoined Civil Entities themselves or by their officers, agents, servants, employees, and attorneys, to provide any of the enumerated benefits to any of the persons listed.  Notwithstanding the foregoing, this injunction shall not apply to the payment of any Allowed prepetition Removed Priest Claims (including any claims arising under the Clergy Pension Plan), *provided, however,* that no such payment may be made until the entry of a Final Order resolving the Debtor's objection to the Removed Priest Claims as required by paragraph 56 hereof.  In addition, this injunction shall not apply to services provided by Catholic Charities, Inc. in the ordinary course that are generally available to the public~~[[, *provided* that Catholic Charities, Inc. shall not actively solicit the Removed Priest for the provision of such services]]~~.  For the avoidance of doubt, this injunction shall not be construed to prohibit the provision of any of the enumerated benefits to any of the persons listed by any individual, in his or her individual capacity, or by any individual who holds an ecclesiastical office (including the Bishop), in his capacity as ecclesiastical officer, provided that such benefits are provided using assets other than the assets of the Enjoined Civil Entities.  The Plan shall be modified accordingly.

  58. <u>Curry Judgment Unaffected</u>.  The channeling injunction set forth in paragraph 16 of this Confirmation Order shall not apply to the $1,629,763 judgment and lien of Survivor Joseph Curry against St. Dennis Roman Catholic Church (the "<u>Curry Judgment</u>").  The Plan shall be modified accordingly.  As provided in the Curry Order, Mr. Curry's claim against St. Dennis shall otherwise be treated as a Class 3A Claim under the Plan, which shall be payable

from the Settlement Trust in accordance with the Settlement Trust Distribution Procedures.  In

addition, gross distributions to Mr. Curry from the Settlement Trust (including, for the avoidance

of doubt, from the proceeds of any litigation or settlements with Religious Orders), before any

deductions for attorneys' fees or expenses, shall be credited against the Judgment.  There shall be

no manipulation of Mr. Curry's distribution from the Settlement Trust to decrease any credit

against the Judgment.  Notwithstanding anything to the contrary set forth herein, no Settling

Insurer shall be liable for any portion of the Curry Judgment, and neither Mr. Curry, St. Dennis,

the Debtor, the Settlement Trust, nor any other entity or their successors and assigns, shall seek

payment or bring any Claims or Causes of Action against the Settling Insurers for any reason

whatsoever relating the Curry Judgment and Mr. Curry.

59.     Wiggins Personnel File.  Entry of this Confirmation Order is without

prejudice to the right of Charles Wiggins to challenge whether he is an "Abusive Person" as

defined in Exhibit D to the Plan, or to assert any right or privilege against disclosure of his

personnel file by the Debtor, or against the use of such file for any particular purpose by the

Creditors Committee or any other recipient of such file (without regard for any waiver by the

Debtor of any privilege as set forth in Exhibit D to the Plan, which waivers shall not be

enforceable against Mr. Wiggins), by seeking a protective order in this Court not later than sixty

(60) days after entry of this Confirmation Order.  By agreement of Mr. Wiggins and the

Creditors Committee, the Court's disposition of any request by Mr. Wiggins for a protective

order shall be final and non-appealable.

60.     Releases by Survivors.  Prior to the Settlement Funding Date, and as a

condition of the payment of the NDCE Settlement Contribution ~~and the Insurer Settlement Contribution~~ to the Settlement Trust, each holder of a Survivor Claim who is represented by

*State Court* Counsel shall(,) **absent further order of the Court,(,)** execute a release of the Debtor, the Non-Debtor Catholic Entities ~~and Settling Insurers~~ from such Survivor Claim in a form reasonably acceptable to the Debtor and Catholic Diocese Foundation, such release to be effective upon the funding of the Settlement Trust with the NDCE Settlement Contribution and the Insurer Settlement Contribution. The Settlement Trust Agreement and/or the Settlement Trust Distribution Procedures, as applicable, shall be revised to require any holder of a Survivor Claim who did not previously execute a release of the Debtor and the Non-Debtor Catholic Entities to execute such a release as a prerequisite to receiving any distribution from the Settlement Trust. For the avoidance of doubt, the releases contemplated by and provided under this paragraph are separate from and complementary to the channeling injunction in the Plan and this Confirmation Order.

61.     For the avoidance of doubt, this Confirmation Order does not confirm the Plan as a CDOW-Only Plan.

Dated:     Wilmington, Delaware
           July 28, 2011

Christopher S. Sontchi
United States Bankruptcy Judge

YCST01:11205830.6

068902.1001